Jennifer L. Brown #10885
Hawai'i Civil Rights Project
P.O. Box 8415
Honolulu, HI 96830
Phone: 808-554-5576
Email: hawaiicivilrightsproject@gmail.com

Alphonse A. Gerhardstein #0032053
Jacqueline Greene # 0092733
Friedman, Gilbert, + Gerhardstein
441 Vine Street, Suite 3400
Cincinnati, Ohio 45202
PH: 513.572.4200
FAX: 216.621.0427
Email: al@fgggirm.com
(*Pro Hac Vice Pending*)

Paul Hoffman #71244
John Washington #315991
Schonbrun, Seplow, Harris, Hoffman & Zeldes
200 Pier Avenue # 226
Hermosa Beach, California 90254
Ph: 310-717-7373
Emails: hoffpaul@aol.com; jwashington@sshhzlaw.com
(*Pro Hac Vice Pending*)

Attorneys for Plaintiff
JOSHUA SPRIESTERSBACH

## UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| JOSHUA SPRIESTERSBACH,<br><br>               Plaintiff,<br>vs. | Case No.<br><br>COMPLAINT; SUMMONS<br><br>(1)  42 U.S.C. 1983 – Fourth<br>       Amendment |

STATE OF HAWAI'I, CITY AND COUNTY OF HONOLULU, OFFICER ABRAHAM K. BRUHN, DEPARTMENT OF PUBLIC SAFETY, OFFICE OF THE PUBLIC DEFENDER, NIETZSCHE LYNN TOLAN, MICHELLE MURAOKA, LESLIE MALOIAN, JACQUELINE ESSER, JASON BAKER, MERLINDA GARMA, SETH PATEK, DR. JOHN COMPTON, DR. MELISSA VARGO, DR. SHARON TISZA, HAWAI'I STATE HOSPITAL, DR. ALLISON GARRETT, and JOHN/JANE DOES 1-20,

Defendants.

(2)  42 U.S.C. 1983 – Fourteenth Amendment
(3)  Americans with Disabilities Act
(4)  Abuse of Process
(5)  Malicious Prosecution
(6)  False Imprisonment
(7)  Negligence
(8)  False Imprisonment
(9)  Negligence
(10) Medical Malpractice
(11) Intentional Infliction of Emotional Distress
(12) Negligent Infliction of Emotional Distress
(13) Legal Malpractice

JURY TRIAL DEMANDED

**INTRODUCTION**

1.     Plaintiff Joshua Spriestersbach challenges his outrageous arrest, detention, and forced medical treatment in the Oahu Community Correctional Center and the Hawai'i State Hospital over a period of 32 months under the name of Thomas R. Castleberry, which is not his name, for felonies that Thomas R. Castleberry committed, not Joshua.

2.     Joshua was arrested and detained on May 11, 2017, for crimes committed by a person named Thomas R. Castleberry. Before Joshua's release on January 17, 2020, he was forced to take psychiatric medications in increasing doses until he became catatonic, all because Joshua continued to assert that he was

not Thomas R. Castleberry and had not committed any of Thomas R. Castleberry's

felony crimes.

3.     These traumatic events have already shocked America. *See e.g.*

https://www.nytimes.com/2021/08/06/us/hawaii-mistaken-identity-release.html.

But the trauma continues. Unless all law enforcement and medical records

reflecting Joshua's misidentification are immediately corrected, Joshua faces being

rearrested and incarcerated for Thomas R. Castleberry's crimes.

4.     Joshua presents federal claims for relief that arise under 42 U.S.C. §

1983 and supplemental state law claims.  Joshua seeks damages and declaratory,

equitable, and injunctive relief requiring Defendants to update and properly

maintain their warrants so that Joshua is permanently excluded as the subject of

Thomas R. Castleberry's warrant for which he was previously arrested. Joshua also

seeks an order requiring the H.P.D., P.S.D., and H.S.H. Defendants to revise their

policies and procedures to ensure proper identification of the persons in their

custody.

## JURISDICTION AND VENUE

5.     This case arises under the Fourth and Fourteenth Amendments of the

U.S. Constitution and Hawai'i law.

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§

1331 and 1343.  The Court has supplemental jurisdiction over the state law claims

under 28 U.S.C. § 1367(a).

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(1) and (b)(2) in that the unlawful actions challenged herein occurred in the District of Hawai'i, and the defendants reside in the District of Hawai'i.

8.    Joshua timely filed a notice of claim under H.R.S. § 46-72 on August 11, 2021 and an amended notice of claim on November 20, 2021.

## PARTIES

### A. Plaintiff

9.    Plaintiff JOSHUA SPRIESTERSBACH ("Plaintiff" or "Joshua") was at all times relevant to the facts of this case a resident of the City and County of Honolulu, State of Hawai'i.

### B. Defendants

10.    Defendant STATE OF HAWAI'I ("State") is a state in the United States.

11.    Defendant CITY AND COUNTY OF HONOLULU ("City") is, and was at all relevant times, a municipal corporation formed and existing under the laws of the State of Hawai'i. The City is or was the employer of the Individual Honolulu Police Department ("H.P.D.") Officers.

12.    Defendant, OFFICER ABRAHAM K. BRUHN and Does 1-5 (collectively the "H.P.D. Officer Defendants" or "Defendant H.P.D. Officers") were at all times relevant to this case, officers with H.P.D. They are sued individually and were at all relevant times, acting under the color of law and in the

course and scope of their employment as police officers with the H.P.D. of the Defendant City.

13.     Defendant DEPARTMENT OF PUBLIC SAFETY ("P.S.D.") operates the Oahu Community Correctional Center ("O.C.C.C.") and was at all relevant times, a Hawai'i state corporation formed and existing under the laws of the State of Hawai'i.  Defendant Does 6-10 were at all times relevant to this case employees of the P.S.D. who were employed at the O.C.C.C.  Defendant Does 6-10 were at all times relevant hereto, citizens and residents of the City and County of Honolulu, State of Hawai'i. They are sued individually and were at all relevant times, acting under the color of law and in the course and scope of their employment at the P.S.D.

14.      Defendant OFFICE OF THE PUBLIC DEFENDER ("O.P.D.") is, and at all relevant times was, a Hawai'i state corporation formed and existing under the laws of the State of Hawai'i.

15.     Defendants NIETZSCHE LYNN TOLAN, MICHELLE MURAOKA, LESLIE MALOIAN, JACQUELINE ESSER, JASON BAKER, MERLINDA GARMA, and SETH PATEK and Defendant Does 11-15 (collectively "Defendant Public Defenders") were, at all times relevant, employed as Public Defenders by the State of Hawai'i, and were at all times relevant hereto, citizens and residents of the City and County of Honolulu, State of Hawai'i and working for O.P.D.

Defendant Public Defenders are sued in their individual capacities as they were exercising their professional judgment and discretion in representing Joshua and they were acting in their capacity as lawyers and not as government officials.

16.    Defendants DR. JOHN COMPTON ("Dr. Compton"), DR. MELISSA VARGO ("Dr. Vargo"), and DR. SHARON TISZA ("Dr. Tisza") (collectively "Individual Psychiatric and Psychological Defendants") were at all times relevant hereto, citizens and residents of the City and County of Honolulu, State of Hawaiʻi. Individual Psychiatric and Psychological Defendants were, at all times relevant, employed as psychiatrists and psychologists by the State of Hawaiʻi and appointed by the First Circuit Court of Hawaiʻi to evaluate Joshua. Individual Psychiatric and Psychological Defendants are sued in their individual capacities as they were exercising their professional judgment and discretion in evaluating Joshua and acting in their capacity as psychiatrists or psychologists and not as government officials.

17.    Defendant HAWAIʻI STATE HOSPITAL ("H.S.H.") is and was at all relevant times, a Hawaiʻi state corporation formed and existing under the laws of the State of Hawaiʻi.

18.    Defendant DR. ALLISON GARRETT ("Dr. Garrett") and Does 16-20 were at all times relevant hereto, citizens and residents of the City and County of Honolulu, State of Hawaiʻi. Dr. Garrett was, at all times relevant, employed as a

Doctor by the State of Hawai'i at the Hawai'i State Hospital ("H.S.H."). Does 16-20 were doctors and other professional staff at H.S.H. Dr. Garrett and these Doe Defendants 16-20 are sued in their individual capacities as they were exercising their professional judgment and not based on actions taken as government officials.

19.     Dr. Garrett, Does 16-20, and the Individual Psychiatric and Psychological Defendants are collectively referred to as the "Medical Defendants."

20.     Defendants JOHN/JANE DOES 1-20's identities are unknown to Joshua at this time, but upon information and belief, at all relevant times were acting under color of law in their official capacity and in the scope of their employment with H.P.D., P.S.D. or H.S.H. of Defendant State of Hawai'i or City. Joshua will give notice of their true names and capacities when ascertained. Joshua is informed and believes and thereon alleges that Defendant Does are responsible in some manner for the damages and injuries hereinafter complained of.

21.     Defendants OFFICER ABRAHAM K. BRUHN, NIETZSCHE LYNN TOLAN, MICHELLE MURAOKA, LESLIE MALOIAN, JACQUELINE ESSER, JASON BAKER, MERLINDA GARMA, SETH PATEK, DR. JOHN COMPTON, DR. MELISSA VARGO, DR. SHARON TISZA, DR. ALLISON GARRETT, and JOHN/JANE DOES 1-20 are collectively referred to herein as "Individual Defendants."

22.     Joshua is informed and believes and based thereon alleges that the acts complained of herein were done within the course and scope of employment by the various officials of the Entity defendants, and under color of state law. Joshua is further informed and believes and thereon alleges that wrongful acts and/or omissions by any individual defendant was done intentionally, maliciously, or with reckless disregard for the rights of Joshua.

## STATEMENT OF FACTS

**A.     Joshua Spriestersbach's Early Life**

1.     Joshua was born on April 12, 1971 in Sacramento, California. He graduated in 1989 from Mira Loma High School in Sacramento.

2.     Between 1999 and 2001 Joshua lived for periods of time in California, Kentucky, and Tennessee.  He developed mental health problems and was hospitalized several times during that period.

3.     Joshua was hospitalized for several months at the H.S.H. in 2002 for treatment of a mental illness that developed while living with his family in military base housing.

4.     When Joshua was released from the hospital in 2003, he moved to Hawaiʻi Island with the assistance of his sister and brother-in-law. Joshua lived in a cabin in Orchidland Estates and remained on Hawaiʻi Island from approximately 2003 until 2006.

5.     In 2006, at the time of Thomas R. Castleberry's crimes on Oahu, Joshua was being treated at a mental health facility on Hawai'i Island and was not present on Oahu.

6.     When Joshua later moved to Oahu, he largely remained houseless when he wasn't being treated by H.S.H. or by Care Hawai'i, an adult mental health care facility. He had lost all communication with his sister and other family members while he was houseless and living on Oahu.

7.     Despite living in poverty and experiencing houselessness, Joshua remained nonviolent, law abiding, and he was a free citizen, able to seek medical care and other contact with institutions as he saw fit. The only "crimes" that Joshua has ever been charged or convicted of were crimes of poverty, such as trespass and sitting or lying on public sidewalks because he was houseless.

**B.     Thomas R. Castleberry's Early Life**

8.     Unlike Joshua, Thomas R. Castleberry has spent much of his life facing serious criminal charges and incarceration.

9.     Since as early as 2001 until his arrest and incarceration in Hawai'i in 2006, Thomas R. Castleberry faced numerous charges and civil actions in Georgia, Missouri, and Iowa. These are states that Joshua has never lived in nor visited during that time.

10.     On July 16, 2006, Thomas R. Castleberry was arrested by H.P.D. officers for numerous charges including Unauthorized Control of Propelled Vehicle, Promoting a Dangerous Drug in the First Degree, and Unlawful Use of Drug Paraphernalia.

11.     H.P.D. fingerprinted and photographed Thomas R. Castleberry, and his mugshot was entered into their criminal database. Once Thomas R. Castleberry was transferred to O.C.C.C. while his charges were pending, his identifying information was also entered into the O.C.C.C. database. Additionally, per state policy, Thomas R. Castleberry's identifying information was also submitted to the Hawaiʻi Criminal Justice Data Center, a division of the Hawaiʻi State Attorney General, which is required by law to collect and maintain a database of all individuals charged and convicted of crimes in the state of Hawaiʻi.

12.     Thomas R. Castleberry never represented to anyone and never claimed to be Joshua.

13.     In 2007, Thomas R. Castleberry plead guilty to his crimes and was placed on felony HOPE probation.

14.     Thomas R. Castleberry remained on HOPE probation and was monitored by the First Circuit Court until July 14, 2009, when the State of Hawaiʻi requested that HOPE Probation Judge Court Judge Michael Wilson issue a bench warrant for the arrest of Thomas R. Castleberry for failing to appear in court.

15.     On July 24, 2009, Judge Wilson conducted a hearing and issued the bench warrant for Thomas R. Castleberry. The bench warrant did not include Joshua's name, identifying information, or list Joshua as an alias of Thomas R. Castleberry.

16.     It appears that Thomas R. Castleberry left Hawai'i on or after 2009 and moved to Arizona. From 2011-2014, Thomas R. Castleberry was charged with various felony crimes and incarcerated in Arizona.

17.     On or before 2016, Thomas R. Castleberry moved to Alaska where he committed additional crimes. Thomas R. Castleberry is currently in custody with the Alaska Department of Corrections with an expected release date in 2022.

18.     Joshua never used the name Thomas R. Castleberry, nor has Joshua ever told the police that his name is Thomas R. Castleberry. Thomas R. Castleberry's date of birth and social security number are completely different than Joshua's. The only commonality they share is that they both share the same birth year – 1971. Additionally, Thomas R. Castleberry's H.P.D. arrestee/prisoner number is A1077743, whereas Joshua's is A6017796.

**C.     Joshua Spriestersbach's Arrest and Detention on October 14, 2011**

19.     On October 14, 2011, Joshua was houseless and sleeping on the stairwell of Kawananakoa Middle School in Honolulu. An H.P.D. woke up Joshua

11

and repeatedly asked Joshua his name. Joshua would only give the arresting officer his grandfather's last name, Castleberry. Joshua refused to give a first name.

20.     The arresting officers entered the last name Castleberry into the mobile data computer and a warrant for Thomas R. Castleberry issued in July of 2009 appeared.

21.     Without any further investigation the officers arrested Joshua for the outstanding warrant of Thomas R. Castleberry.

22.     Joshua told them he was not Thomas R. Castleberry, and that he was William C. Castleberry, again which was Joshua's grandfather's name and a name he would use on occasion.

23.     However, Joshua was never brought before the court in 2011 on Thomas R. Castleberry's warrant. This is likely due to the fact that at some point during the booking process H.P.D. Officers realized that Joshua was not Thomas R. Castleberry.

24.     On information and belief Does 1-5 H.P.D. officers had a duty to correct the police department records and with deliberate indifference to Joshua's constitutional rights, failed to do so.

**D.     Joshua Spriestersbach's Arrest and Detention on January 17, 2015**

25.     On or about January 17, 2015, Joshua was houseless and was sleeping in Aala Park after hours in the City and County of Honolulu.

26.     The arresting officer approached Joshua and asked his name. Joshua initially refused to give his name, but ultimately told the officer his name, Joshua Spriestersbach.

27.      An officer ran prints and identified him as Joshua Spriestersbach.

28.     Since H.P.D. Officers did not correct their mistake in 2011, when Joshua was arrested in 2015, the H.P.D. database continued to list Thomas R. Castleberry as an alias of Joshua.

29.      A warrant check was then performed for the name Joshua Spriestersbach,  alias William C. Castleberry, and Thomas R. Castleberry.

30.     The 2009 warrant for Thomas R. Castleberry was active so the officers checked Joshua's prints against Thomas R. Castleberry's and found that Joshua's prints did not match the prints they had on file for Thomas R. Castleberry.

31.     This time, because the officers had compared Joshua and Thomas R. Castleberry's prints before booking Joshua on Thomas R. Castleberry's warrant, Joshua was not arrested on Thomas R. Castleberry's outstanding warrant.

32.     On information and belief Does 1-5 H.P.D. officers had a duty to correct the police department records and with deliberate indifference to Joshua's constitutional rights, failed to do so.

**E.**      **Joshua Spriestersbach's Arrest and Detention on May 11, 2017**

33.     On May 11, 2017, Joshua, was houseless and waiting for food with many others outside of Safe Haven, located at 126 N. Pauahi St. Honolulu, HI 96817.

34.     Due to the long lines and heat, Joshua fell asleep on the sidewalk while waiting in line. At some point, Joshua was awoken by Defendant H.P.D. Officer Bruhn alone or with unknown H.P.D officer(s) Does 1-5, who promptly arrested Joshua.

35.     Joshua did not have identification on his person, but he provided H.P.D. Officer Bruhn, who was acting alone or with unknown H.P.D officer(s) Does 1-5, with his full name "Joshua Spriestersbach", date of birth, and social security number.

36.     On information and belief, on or about May 11, 2017, Defendant H.P.D. Officer Bruhn acting alone or with unknown H.P.D officer(s) Does 1-5 hand wrote the name Joshua Spriestersbach as an alias to Thomas R. Castleberry on the face of the warrant, which had remained active and open. In adding Joshua's name to the warrant, Defendant H.P.D. Officer Bruhn, acting alone or with unknown H.P.D officer(s) Does 1-5, acted without probable cause or authority as there was no basis to add Joshua's name to Thomas R. Castleberry's warrant.

37.     On May 11, 2017, Defendant H.P.D. Officer Bruhn acting alone or with unknown H.P.D officer(s) Does 1-5, arrested Joshua under Thomas R. Castleberry's eight-year-old bench warrant, without any probable cause.

38.     On May 11, 2017, Joshua was transported to Department of Public Safety's ("P.S.D.") O.C.C.C., where he was fingerprinted and his photograph was taken.

39.     Defendant H.P.D. Officer Bruhn and unknown Defendants H.P.D. Officers Does 1-5 and unknown employees Defendant Does 6-10 at O.C.C.C., failed to verify Joshua's identity by comparing his name, photo, fingerprints, and date of birth to that of Thomas R. Castleberry. By failing to verify his identity these defendants acted in violation of all applicable rules and regulations and relevant standards of care, causing injury to Joshua.

40.     If unknown Defendants Does 6-10, employees at O.C.C.C., had simply compared the booking photos of Joshua to the photo of Thomas R. Castleberry when he was booked at O.C.C.C., they would have discovered the misidentification of Joshua.

 

Joshua C. Spriestersbach          Thomas R. Castleberry

As evidenced by Joshua and Thomas R. Castleberry's photos above and their other identifying information, none of the identifying information of Joshua matched Thomas R. Castleberry's.

41.    Joshua remained at O.C.C.C. for approximately four months. During that entire time Joshua was never properly identified.

**F.    Defendant Public Defenders and State Hospital Defendants Fail to Verify Identify of Joshua Spriestersbach *For More than Two Years***

42.    Defendant D.P.D. Tolan was appointed to represent Joshua.

43.    Prior to his first court hearing, Joshua told Defendant D.P.D. Tolan that he was not Thomas R. Castleberry and had not committed Thomas R. Castleberry's crimes. He provided D.P.D. Tolan with his identifying information and told D.P.D. Tolan that he was not even on Oahu in 2006 when Thomas R. Castleberry committed his crimes.

44.     Instead of investigating or verifying his client's information, D.P.D. Tolan requested that the court order a three-doctor panel (Individual Psychiatric and Psychological Defendants Dr. John Compton, Dr. Vargo, and Dr. Tisza) to evaluate Joshua and determine his mental fitness to proceed.

45.     While Joshua was held at H.S.H. under the name of Thomas R. Castleberry and subject to competency evaluations and hearings, he was represented by *six* additional public defenders, all of whom are Defendants in this case. Namely, Michelle Muraoka, Leslie Maloian, Jacqueline Esser, Jason Baker, Merlinda Garma, Seth Patek, and unknown Doe Public Defender Defendants 11-15. Neither Defendant Tolan nor any of these additional Defendant Public Defenders verified the identity of their client Joshua, his presence on Oahu in 2006, or otherwise acted on the information Joshua provided to establish that he was not Thomas R. Castleberry.

46.     Defendant Dr. Garrett, H.S.H. staff, and unknown Does 16-20 failed to verify Joshua's identity when he was transferred from O.C.C.C. to H.S.H. Despite having treated Joshua previously and having access to Joshua's medical records and identifying information, H.S.H. staff and doctors failed to review their own files and records to verify Joshua's identity.

47.     At H.S.H., Joshua was evaluated on multiple occasions by Individual Psychiatric and Psychological Defendants Dr. John Compton, Dr. Vargo, and Dr.

Tisza. Despite being required to access and having actual access to both Joshua's legal and medical records, they failed to verify his identity. Throughout this time, Joshua continually advised them and other staff at H.S.H. of his real name and identity. These Defendants also ignored the fact that Joshua had been an occasional patient at H.S.H. under his name – Joshua Spriestersbach – since at least 2002.

48.     In fact, the Defendant Public Defenders, unknown Public Defender Doe Defendants 11-15, Dr. Garrett, Does 16-20, and the Individual Psychiatric and Psychological Defendants actually used Joshua's protests regarding his identity as evidence of his incompetency. Every single one of them had access to all of Joshua's records and files, which included Joshua's identifying information and the identifying information of Thomas R. Castleberry. Prior to January 2020, not a single person acted on the available information to determine that Joshua was telling the truth – that he was not Thomas R. Castleberry. Instead, they determined that Joshua was delusional and incompetent just because he refused to admit that he was Thomas R. Castleberry and refused to acknowledge Thomas R. Castleberry's crimes.

49.     Joshua provided the Defendant Public Defenders, unknown Public Defender Doe Defendants 11-15, Individual Doctor Defendants, H.S.H staff and doctors, and Does 16-20 with his name, date of birth, social security number, but they simply failed to use that information to properly identify Joshua.

50.      On or about February 26, 2018, unknown H.S.H. staff and Doctors including Does 11-15 took Joshua into the community to get copies of his social security card and his Hawaiʻi state identification card.

51.      Joshua was issued identification documents demonstrating to the H.S.H. that he was in fact Joshua Spriestersbach and not Thomas R. Castleberry.

52.      In spite of having conclusive proof that Joshua was not Thomas R. Castleberry, Defendant Garrett, unknown H.S.H. staff and Doctors Does 16-20, and the entire treatment team responsible for Joshua, continued to illegally incarcerate Joshua for two more years.

53.      Unknown H.S.H. staff and Doctors Does 16-20 also had a history of previously treating Joshua, but they all failed to review Joshua's records and files, failed to believe their own client and their own patient, and failed to investigate his identity whatsoever.

**G.      Joshua Spriestersbach's Identity Finally Confirmed and He is Released but Remains at Risk of Rearrest**

54.      Eventually in January 2020, Defendant Dr. Garrett, a physician at H.S.H., verified that Joshua was in fact Joshua Spriestersbach and not Thomas R. Castleberry.

55.      Joshua was released from H.S.H on January 17, 2020.  He was provided fifty cents, two copies of his birth certificate, state I.D., a social security

card, and a ride right back to the homeless shelter where he was arrested on May 17, 2017, thirty-two months earlier.

56.     On or about January 20, 2020, Defendant Public Defender Seth Patek, unknown Public Defender Defendant Does 11-15, representatives of the attorney general, and the prosecutor all met in court in an off the record session, without notice to Joshua and without him being present. These representatives discussed Joshua's  release from the hospital, and worked collectively to cover up Joshua's false imprisonment and unwanted medical treatment.

57.     None of the Defendants took any steps at the time of Joshua's release, or any time after, to properly update the warrant for Thomas R. Castleberry and/or correct records that improperly list Joshua Spriestersbach as an alias for Thomas R. Castleberry and vice-versa. As of the date of this filing, the Hawai'i Criminal Justice Data Center which is maintained by Hawai'i Attorney General's office still lists Thomas R. Castleberry as an alias of Joshua Spriestersbach. Joshua therefore remains in jeopardy of once again being falsely arrested and incarcerated for Thomas R. Castleberry's many crimes, because Thomas R. Castleberry's warrant was reissued without correction by the Court after Joshua was released from H.S.H.

58.     It was not until after Joshua was released that the State of Hawaii's Data base had, for the first time, listed Thomas R. Castleberry with the alias of

Joshua Spriestersbach. Thomas R. Castleberry never had or used the alias name of Joshua Spriestersbach,

59.     On information, and belief, the database was altered as an attempt to cover-up, explain and excuse the gross miscarriage of justice that was done to Joshua.

**H.     Failures By Defendant Individuals and Institutions**

60.     At all times relevant to this case the Defendants acted recklessly, willfully and with deliberate indifference to the rights and health of Joshua. Defendants, individually and collectively, owed a duty to Joshua and breached their duty to Joshua by failing to investigate and confirm his identity so that he would not be unlawfully held in custody for someone else's crimes.

61.     At all times relevant to this action the City had a practice of authorizing warrants to be amended by officers without authority from the issuing Court; of failing to correct the records after discovery that persons have been arrested improperly on warrants for other individuals; of failing to properly investigate the identity of  houseless and mentally ill persons that are arrested; and of failing to correct the records of houseless and mentally ill persons who have been improperly arrested. These practices and customs were the moving force behind Joshua's improper arrest and detention.

62.    At all times relevant to this action, the City has failed to train and supervise Officer Defendant Braun, Defendant H.P.D. Officers Does 1-5, and other officers to determine exactly who they are arresting and to make sure accurate information is in their records, particularly when the officers are interacting with mentally ill and/or houseless members of the community. These failures to train and supervise were the moving force behind Joshua's improper arrest and detention.

### I.    Joshua Spriestersbach's Physical and Mental Injuries

63.    As a direct, proximate and/or legal result of the individual and/or collective negligence and/or other fault of the Defendants, Joshua suffered special and general economic and non-economic damages to be proven at trial, including forced medical treatment and medication, loss of freedom, great mental anguish, severe emotional distress, anxiety, embarrassment, humiliation, worry, and anger.

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 - VIOLATIONS OF U.S. CONST. AMEND. IV
### (Against H.P.D. Officer Defendants, City, P.S.D., and Medical Defendants)

64.    Joshua restates and incorporates by reference the foregoing paragraphs as if each paragraph was fully set forth herein.

65.    H.P.D. Officer Defendants, City, P.S.D., and Medical Defendants knew or should have known that Joshua was not Thomas R. Castleberry. Despite

that knowledge, Defendants unreasonably and without cause arrested and detained Joshua in May 2017.

66.     Does 6-10, who were on information and belief employees of the P.S.D. at O.C.C.C., caused Joshua to be detained without probable cause beginning in 2017 after Joshua's arrival at O.C.C.C. There was no reasonable basis to detain Joshua, and indeed the O.C.C.C.'s own booking photographs showed that Joshua was not Thomas R. Castleberry.

67.     Medical Defendants (Dr. Allison Garrett, Dr. John Compton, Dr. Melissa Vargo, Dr. Sharon Tisza, and Does 16-20) caused Joshua to be detained beginning in 2017, when Joshua was subjected to their evaluation and treatment. They failed to verify Joshua's identify despite Joshua continuously advising them that he was not Thomas R. Castleberry, and despite these Defendants having the correct medical information, including records of previous treatment of Joshua. These defendants acted with deliberate indifference to Joshua's serious medical needs. Further, their response to his medical needs was objectively unreasonable.

68.     The City is liable for these Fourth Amendment violations due to its customs, policies, and practices which tolerated and allowed such conduct by H.P.D. officers to occur and were a moving force causing the violation.

69.     As a proximate result of Defendants' acts and omissions, Joshua was arrested, detained, and suffered the injuries discussed above.

70.     In engaging in the inactions and actions alleged, the Defendants listed in this claim acted under color of law and acted maliciously, oppressively, and/or in reckless disregard of Joshua's constitutional rights, and are liable for punitive damages.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C.  § 1983 - VIOLATION OF DUE PROCESS,**
**U.S. CONST. AMEND. XIV**
**(Against H.P.D. Officer Defendants, City, Individual Defendants, and Medical Defendants)**

71.     Joshua restates and incorporates by reference the foregoing paragraphs as if each paragraph was fully set forth herein.

72.     Defendants H.P.D. Officer Defendants, City, Individual Defendants, and Medical Defendants knew or should have known that Joshua was not Thomas R. Castleberry and that Joshua was not the subject of the warrant for which he was arrested and detained. In spite of this, Defendants actively established Joshua as the target of the warrant – including modifying the warrant or Joshua's identifiers to falsely indicate he was Thomas R. Castleberry – or failed to take any action to correct the false information, which Defendants knew or should have known to be false and would likely to cause Joshua to be falsely detained.

73.     Joshua had a significant interest in his right to be free of detention and arrests, and failing to update Thomas R. Castleberry's warrant and related

databases Defendants Does 1-5 created a substantial risk of the deprivation of that interest.

74.    It was eminently reasonable, available, and costless to simply update Joshua's information and release him. Nonetheless, Defendants took no reasonable steps to do either until January 2020, causing him to baselessly remain in custody and be deprived of his liberty interest for 32 months.

75.    The City is liable for these Fourteenth Amendment violations due to its customs, policies, and practices which tolerated and allowed such conduct by H.P.D. officers to occur and were a moving force causing the violation.

76.    As a proximate result of Defendants' acts and omissions, Joshua was arrested and detained and suffered the injuries discussed above.

77.    In engaging in the inactions and actions alleged, the Defendants listed in this claim acted maliciously, oppressively, and/or in reckless disregard of Joshua's constitutional rights, and are liable for punitive damages.

## THIRD CLAIM FOR RELIEF
**DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**(42 U.S.C. § 12101 et seq.)**
**(Against City, P.S.D., H.S.H., State of Hawai'i, Office of Public Defender)**

78.    Joshua restates and incorporates by reference the foregoing paragraphs as if each paragraph was fully set forth herein.

79.     Joshua suffers from a "disability" within the meaning and scope of 42 U.S.C. § 12102. In particular, Joshua's disability and the perception of him by those in authority makes it difficult for his statements of fact about his identity to be trusted; makes his statements regarding his understanding of legal proceedings to be discounted; and causes him to be confused, all resulting in difficulty in locating and staying in touch with his mother and sister and other family, difficulty in expressing his mental health treatment needs, and otherwise meeting his daily medical, shelter, food, and mental health needs. Thus his disability substantially interferes with his ability to work, secure food, secure housing, navigate interactions with police and persons in authority, and remain safe without reasonable accommodation. Accordingly, Joshua is a member of the class of persons protected by 42 U.S.C. § 12132, which makes it unlawful for a public entity to discriminate against an individual with a disability or to deny the benefits of services, programs, or activities of a public entity to a person with a disability.

80.     As alleged herein, Defendants listed in this claim discriminated against Joshua and failed to provide reasonable accommodations for Joshua's disability as described above. For example, the employees of Defendants knew that Joshua suffered from a mental health disability, and discounted and ignored Joshua's statements about his identity, even when his documents and other information verified his identity, and failed to provide him the reasonable

accommodation of crediting and investigating his statements and ending his baseless arrest and extended detention.

81.    Defendant City is a public entity within the meaning of 42 U.S.C. § 12131. Defendant City is vicariously liable for the acts of the Officer Bruhn and H.P.D. Officer Defendant Does 1-5, and directly liable for its own failures to provide reasonable accommodations for Joshua, including through its failure to provide any reasonable training or policies concerning accommodating or interacting with the mentally ill.

82.    Defendant P.S.D. is a public entity within the meaning of 42 U.S.C. § 12131. It is vicariously liable for the acts of the Does 6-10, and directly liable for its own failures to provide reasonable accommodations for Joshua, including through its failure to provide reasonable training and policies accommodating or interacting with the mentally ill.

83.    Defendant O.P.D. is a public entity within the meaning of 42 U.S.C. § 12131. It is vicariously liable for the acts of the Defendant Public Defenders and Does 11-15, and directly liable for its own failures to provide reasonable accommodations for Joshua, including through its failure to provide reasonable training and policies accommodating or interacting with the mentally ill.

84.    Defendant H.S.H. is a public entity within the meaning of 42 U.S.C. § 12131. It is vicariously liable for the acts of Dr. Garrett, hospital staff, and Does

16-20, and is directly liable for its own failures to provide reasonable accommodations for Joshua, including through its failure to provide reasonable training and policies accommodating or interacting with the mentally ill.

85.    Defendant State of Hawai'i is a public entity within the meaning of 42 U.S.C. § 12131. It is vicariously liable for the acts of the state employees and directly liable for its own failures to provide reasonable accommodations for Joshua, including through its failure to provide reasonable training and policies at O.C.C.C. and H.S.H., thereby denying reasonable accommodations to the Joshua and other mentally ill persons.

86.    As a proximate result of the acts and omissions of the City, State of Hawai'i, H.S.H., P.S.D. and O.P.D., and the acts and omissions for which each is vicariously liable, Joshua was arrested and detained and suffered the injuries discussed above.

## FOURTH CLAIM FOR RELIEF
### 42 U.S.C.  § 1983 - VIOLATIONS OF U.S. CONST. AMEND. IV
### ABUSE OF PROCESS
### (Against Defendants Officer Abraham K. Bruhn, Does 1-5, and City)

87.    Joshua restates and incorporates by reference the foregoing paragraphs as if each paragraph was fully set forth herein.

88.    On August 11, 2021, Joshua timely filed a notice of claim under H.R.S. § 46-72 and filed an amended notice of claim on November 20, 2021.

89.     After initiating proceedings against Joshua, the Defendants Officer Abraham K. Bruhn, Does 1-5, and City's continued to commit multiple willful actions for the improper purpose of prosecuting Joshua for a crime he did not commit, as more fully alleged above. The Defendants Officer Abraham K. Bruhn, Does 1-5, and City used the courts and their authority to cause pain and harm to Joshua despite his innocence and for an improper purpose.

90.     As a result of the Defendants Officer Abraham K. Bruhn, Does 1-5, and City's misconduct described in this count, Joshua suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

## FIFTH CLAIM FOR RELIEF
### MALICIOUS PROSECUTION
### (Against Defendants Officer Abraham K. Bruhn and Does 1-5)

91.     Joshua restates and incorporates by reference the foregoing paragraphs as if each paragraph was fully set forth herein.

92.     On August 11, 2021, Joshua timely filed a notice of claim under H.R.S. § 46-72 and filed an amended notice of claim on November 20, 2021.

93.     The Defendants H.P.D. Officer Bruhn and Does 1-5, actions and conduct as set forth above were malicious, as they maliciously initiated proceedings against Joshua without probable cause, resulting in Joshua's wrongful detention and prosecution, until the proceedings were terminated in favor of Joshua

when he was correctly identified as Joshua C. Spriestersbach (and not Thomas R. Castleberry) and finally released from custody, as more fully alleged above.

94.     As a result of Defendants H.P.D. Officer Bruhn and Does 1-5's misconduct described in this count, Joshua suffered loss of liberty, great emotional anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

## SIXTH CLAIM FOR RELIEF
### FALSE IMPRISONMENT
**(Against Defendant Does 6-10, P.S.D., and State of Hawaiʻi)**

95.     Joshua restates and incorporates by reference the foregoing paragraphs as if each paragraph was fully set forth herein.

96.     On August 11, 2021, Joshua timely filed a notice of claim under H.R.S. § 46-72 and filed an amended notice of claim on November 20, 2021.

97.     Defendant Does 6-10, P.S.D., and State of Hawaiʻi intentionally confined Joshua without lawful privilege and against his consent, causing him physical and emotional injury.

## SEVENTH CLAIM FOR RELIEF
### NEGLIGENCE
**(Against Defendant Does 6-10, P.S.D., and State of Hawaiʻi)**

98.     Joshua restates and incorporates by reference the foregoing paragraphs as if each paragraph was fully set forth herein.

99.    On August 11, 2021, Joshua timely filed a notice of claim under H.R.S. § 46-72 and filed an amended notice of claim on November 20, 2021.

100.    Defendant Does 6-10, P.S.D., and State of Hawaiʻi owed Joshua a legal duty to conform to a standard of care, namely, to ensure that it did not deprive him of his liberty without a valid basis.

101.    Defendant Does 6-10, P.S.D., and State of Hawaiʻi breached the duty, causing Joshua injury.

102.    As a proximate result of the breach of the duties of Defendant Does 6-10, P.S.D., and State of Hawaiʻi, Joshua suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

## EIGHTH CLAIM FOR RELIEF
### FALSE IMPRISONMENT
**(Against Medical Defendants, H.S.H., and State of Hawaiʻi)**

103.    Joshua restates and incorporates by reference the foregoing paragraphs as if each paragraph was fully set forth herein.

104.    On August 11, 2021, Joshua timely filed a notice of claim under H.R.S. § 46-72 and filed an amended notice of claim on November 20, 2021.

105.    The Medical Defendants (Dr. Garrett, the Individual Psychiatric and Psychological Defendants, and Does 16-20), H.S.H., and State of Hawaiʻi

intentionally confined Joshua without lawful privilege and against his consent, as described above, causing physical and emotional injury to him.

## NINTH CLAIM FOR RELIEF
### NEGLIGENCE
### (Against Medical Defendants, H.S.H., and State of Hawai'i)

106.    Joshua restates and incorporates by reference the foregoing paragraphs as if each paragraph was fully set forth herein.

107.   On August 11, 2021, Joshua timely filed a notice of claim under H.R.S. § 46-72 and filed an amended notice of claim on November 20, 2021.

108.   The Medical Defendants (Dr. Garrett, the Individual Psychiatric and Psychological Defendants, and Does 16-20), H.S.H., and State of Hawai'i owed Joshua a duty to conform to a standard of medical care, namely, to ensure that they did not deprive him of his liberty without a valid basis and provided him with adequate medical care.

109.   The Medical Defendants, H.S.H., and State of Hawai'i failed to properly identify Joshua once he was in the care of H.S.H.

110.   The Medical Defendants, H.S.H., and State of Hawai'i all had in their possession, copies of all of Joshua's legal and medical records which included identifying information of Joshua and Thomas R. Castleberry.

111.   The Medical Defendants, H.S.H., and State of Hawai'i failed to review their own files and further failed to investigate claims raised by Joshua

throughout the course of his confinement at H.S.H. that he was not Thomas R. Castleberry and had not committed Thomas R. Castleberry's crimes.

112. The Medical Defendants, H.S.H., and State of Hawaiʻi ignored Joshua's claims and determined him to be delusional and decompensating, and recommended more medication be administered to Joshua against his will. Ignoring Joshua, Defendants H.S.H., Medical Defendants, and State of Hawaiʻi got a court order to administer strong anti-psychotic medication that caused Joshua much physical and emotional anguish.

113. The Medical Defendants, H.S.H., and State of Hawaiʻi owed Joshua a duty to conform to a standard of medical care, namely, to ensure that it did not deprive him of his liberty without a valid basis and provided him with adequate medical care.

114. The Medical Defendants, H.S.H., and State of Hawaiʻi breached their duty, causing Joshua injury.

115. As a proximate result of the breach of their duties by the Medical Defendants, H.S.H., and State of Hawaiʻi Joshua suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

<u>**TENTH CLAIM FOR RELIEF**</u>
**MEDICAL MALPRACTICE**
**(Against Medical Defendants, H.S.H., and State of Hawaiʻi)**

116.   Joshua restates and incorporates by reference the foregoing paragraphs as if each paragraph was fully set forth herein.

117.   On August 11, 2021, Joshua timely filed a notice of claim under H.R.S. § 46-72 and filed an amended notice of claim on November 20, 2021.

118.   The Medical Defendants (Dr. Garrett, the Individual Psychiatric and Psychological Defendants, and Does 16-20), H.S.H., and State of Hawaiʻi owed Joshua a duty to conform to a standard of medical care, namely, to ensure that they did not deprive him of his liberty without a valid basis and provided him with adequate medical care.

119.   The Medical Defendants, H.S.H., and State of Hawaiʻi failed to properly identify Joshua once he was in the care of H.S.H.

120.   The Medical Defendants, H.S.H., and State of Hawaiʻi all had in their possession, copies of all of Joshua's legal and medical records which included identifying information of Joshua and Thomas R. Castleberry.

121.   The Medical Defendants, H.S.H., and State of Hawaiʻi failed to review their own files and further failed to investigate claims raised by Joshua throughout the course of his confinement at H.S.H. that he was not Thomas R. Castleberry and had not committed Thomas R. Castleberry's crimes.

122.   The Medical Defendants, H.S.H., and State of Hawaiʻi ignored Joshua's claims and determined him to be delusional and decompensating, and

recommended more medication be administered to Joshua against his will. Ignoring Joshua, Defendants H.S.H., Medical Defendants, and State of Hawai'i got a court order to administer strong anti-psychotic medication that caused Joshua much physical and emotional anguish.

123.   The Medical Defendants, H.S.H., and State of Hawai'i owed Joshua a duty to conform to a standard of medical care, namely, to ensure that it did not deprive him of his liberty without a valid basis and provided him with adequate medical care.

124.   The Medical Defendants, H.S.H., and State of Hawai'i breached their duty, causing Joshua injury.

125.   As a proximate result of the breach of their duties by the Medical Defendants, H.S.H., and State of Hawai'i Joshua suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages

## ELEVENTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Against Individual Defendants, City, P.S.D., H.S.H., and State of Hawai'i)**

126.   Joshua restates and incorporates by reference the foregoing paragraphs as if each paragraph was fully set forth herein.

127.   On August 11, 2021, Joshua timely filed a notice of claim under H.R.S. § 46-72 and filed an amended notice of claim on November 20, 2021.

128.   The Individual Defendants, City, P.S.D., H.S.H., and State of

Hawai'i's actions and conduct as set forth above were intentional, reckless,

extreme, and outrageous. Additionally, the Individual Defendants, City, P.S.D.,

H.S.H., and State of Hawai'i's actions were rooted in an abuse of power of

authority and were undertaken with the intent to cause or were in reckless

disregard for the probability that their actions would cause Joshua severe emotional

distress, as more fully alleged above.

129.   As an actual and proximate result of the Individual Defendants, City,

P.S.D., H.S.H., and State of Hawai'i's actions, Joshua suffered and continues to

suffer severe emotional distress.

**TWELFTH CLAIM FOR RELIEF**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(Against Individual Defendants, City, P.S.D., H.S.H., and State of**
**Hawai'i)**

130.    Joshua restates and incorporates by reference the foregoing

paragraphs as if each paragraph was fully set forth herein.

131.   On August 11, 2021, Joshua timely filed a notice of claim under

H.R.S. § 46-72 and filed an amended notice of claim on November 20, 2021.

132.   Alternatively, the Individual Defendants, City, P.S.D., H.S.H., and

State of Hawai'i's actions and conduct as set forth above were negligent, but still

extreme and outrageous. The Individual Defendants, City, P.S.D., H.S.H., and

State of Hawai'i's actions were rooted in an abuse of power of authority and were

36

undertaken negligently and with disregard for the probability that they would cause

Joshua severe emotional distress, as more fully alleged above.

133.   As an actual and proximate result of the Individual Defendants , City,

P.S.D., H.S.H., and State of Hawaiʻi's actions, Joshua suffered and continues to

suffer severe emotional distress.

## THIRTEENTH CLAIM FOR RELIEF
### LEGAL MALPRACTICE
**(Against Defendant O.P.D. and Individual Public Defenders)**

134.   Joshua restates and incorporates by reference the foregoing

paragraphs as if each paragraph was fully set forth herein.

135.   On August 11, 2021, Joshua timely filed a notice of claim under

H.R.S. § 46-72 and filed an amended notice of claim on November 20, 2021.

136.   Defendant O.P.D., Individual Public Defenders, and Public Defender

Does 11-15 owed Joshua a duty of care to diligently investigate the issue of

identity in his case.

137.   Defendant O.P.D., Individual Public Defenders, and Public Defender

Does 11-15 had a duty to confer with Joshua on the objective of their

representation.

138.   Defendant O.P.D., Individual Public Defenders, and Public Defender

Does 11-15 had a duty to read Thomas R. Castleberry's court file, Joshua's files,

and Joshua's medical reports. The medical reports submitted to the court on the

issue of competency mentioned numerous times that Joshua was insisting he was not Thomas R. Castleberry and that some Individual Defendant Doctors confirmed he was not Thomas R. Castleberry. Defendant O.P.D., Individual Public Defenders, and Public Defender Does 11-15 failed to act on this information in the files and otherwise investigate their client's identity, which would have shown that Joshua was not Thomas R. Castleberry and that Joshua was telling the truth.

139.   In January 2020, once they admitted that Joshua had been wrongfully incarcerated for Thomas R. Castleberry's crimes, Defendant Patek, Defendant O.P.D., Individual Public Defenders, and Public Defender Does 11-15 had a duty to make a record with the Court and also request that the criminal database be corrected so that Joshua would not be unlawfully arrested and incarcerated as Thomas R. Castleberry in the future. None of those actions were taken and Joshua was not even given notice of or transported to the courtroom for the off the record meeting on his case.

140.   Defendant O.P.D., Individual Public Defenders, and Public Defender Does 11-15 breached their duty as written above.

141.   As a proximate result of the breach of their duties by the Defendant O.P.D., Individual Public Defenders, and Public Defender Does 11-15**,** Joshua suffered loss of liberty, great mental anguish, humiliation, degradation, physical

and emotional pain and suffering, and other grievous and continuing injuries and damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Joshua respectfully requests relief as follows:

142.  General and compensatory damages against all Defendants, jointly and severally, in an amount according to proof at trial;

143.  Punitive and exemplary damages against all Defendants sued in their individual capacities in an amount to be proven at trial;

144.  Attorney's fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, and any appropriate state law theory;

145.  Any and all other damages allowed by law according to proof to be determined at the time of trial in this matter;

146.  All fees and costs allowed by law;

147.  An Injunction prohibiting defendants from continuing to enforce Thomas R. Castleberry's warrant until it is properly updated and actions are taken to prevent any further false arrest of Joshua on that warrant and to correct the criminal database that has the name Thomas R. Castleberry as an alias of Joshua Spriestersbach.

148.  Any other relief the court deems just, including appropriate orders to remedy systemic defects in warrant and arrest procedures at the City, booking and

detention procedures at O.C.C.C., patient identification, admission and treatment procedures at H.S.H., and client identification and representation procedures at D.P.D.

## DEMAND FOR JURY TRIAL

Joshua hereby respectfully demands that a trial by jury be conducted with respect to all issues presented herein.

Dated:  November 22, 2021          HAWAI'I CIVIL RIGHTS PROJECT

By: /s/ Jennifer L. Brown
               Jennifer L. Brown
               Alphonse A. Gerhardstein
               Jacqueline Greene
               Paul Hoffman
               John Washington

               Attorneys for Plaintiff
               JOSHUA SPRIESTERSBACH