JENNIFER L. BROWN #10885
Hawai'i Civil Rights Project
P.O. Box 8415
Honolulu, HI 96830
Phone: 808-554-5576
Email: hawaiicivilrightsproject@gmail.com

Attorneys for Plaintiff
JOSHUA SPRIESTERSBACH

*Additional counsel continued on next page.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAI'I

| | |
|---|---|
| JOSHUA SPRIESTERSBACH,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF HAWAI'I, CITY AND COUNTY OF HONOLULU, OFFICER ABRAHAM K. BRUHN, DEPARTMENT OF PUBLIC SAFETY, OFFICE OF THE PUBLIC DEFENDER, NIETZSCHE LYNN TOLAN, MICHELLE MURAOKA, LESLIE MALOIAN, JACQUELINE ESSER, JASON BAKER, MERLINDA GARMA, SETH PATEK, DR. JOHN COMPTON, DR. MELISSA VARGO, DR. SHARON TISZA, HAWAI'I STATE HOSPITAL, DR. ALLISON GARRETT, and JOHN/JANE DOES 1-20,<br><br>Defendants. | Case No. 1:21-cv-00456-LEK-RT<br><br>**PLAINTIFF'S OPPOSITION TO CITY'S MOTION FOR JUDGMENT ON THE PLEADINGS (Dkt. No. 79) MOTION HEARING DATE 5/13/22 9:45 A.M.** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Alphonse A. Gerhardstein #0032053 (OH)
Jacqueline Greene # 0092733 (OH)
Friedman, Gilbert, + Gerhardstein
441 Vine Street, Suite 3400
Cincinnati, Ohio 45202
PH: 513.572.4200
FAX: 216.621.0427
Email: al@fggfirm.com; jacqueline@fggfirm.com

Paul Hoffman #71244
John Washington #315991
Schonbrun, Seplow, Harris, Hoffman & Zeldes
200 Pier Ave. Ste. 226
Hermosa Beach, California 90254
Phone: 310-717-7373
Emails: hoffpaul@aol.com; jwashington@sshhzlaw.com

Attorneys for Plaintiff
JOSHUA SPRIESTERSBACH

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND.................................................................................2

    A.    Thomas Castleberry Commits Crimes in Hawaii and Elsewhere. A Bench Warrant Issues for His Arrest. ..................................2

    B.    HPD Officers Arrest Plaintiff without Probable Cause, and with No Basis Add Him as the Subject for Thomas Castleberry's Warrant..........................................................................................3

    C.    HPD Officers Refuse to Correct the Information Falsely Indicating Plaintiff Is an Alias for a Wanted Criminal. Instead, they Seize and Arrest Plaintiff, Causing him to Spend Nearly Three Years Incarcerated and Sedated. HPD still Does Not Correct the Erroneous Identification..........................................4

LEGAL STANDARD ...........................................................................................5

ARGUMENT ........................................................................................................6

I.    THE FEDERAL CLAIMS ARE NOT BARRED BY STATUTES OF LIMITATIONS. ...............................................................................6

II.    PLAINTIFF ADEQUATELY ALLEGES A FOURTEENTH AMENDMENT CLAIM. ...............................................................7

III.    PLAINTIFF ADEQUATELY ALLEGES A FOURTH AMENDMENT CLAIM. ...............................................................12

IV.    PLAINTIFF ADEQUATELY ALLEGES AN ADA CLAIM. ...................13

V.    PLAINTIFF ADEQUATELY ALLEGES AN ABUSE OF PROCESS CLAIM. ..............................................................................16

VI.    PLAINTIFF ADEQUATELY ALLEGES IIED AND NIED CLAIMS. .......17

VII.    IN THE EVENT FURTHER ALLEGATIONS ARE REQUIRED LEAVE TO AMEND SHOULD BE GRANTED. ..........................18

CONCLUSION...................................................................................................19

CERTIFICATE OF SERVICE ...........................................................................19

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555(2007)…………………………………….5

*Black v. Correa*, No. 07-00299 DAE-LEK, 2008 WL 3845230, at *17 (D. Haw. Aug. 18,2008)…………………………………………………………………………………17

*Borawick v. City of L.A.*, 793 F. App'x 644, 646 (9th Cir. 2020)………………..13,15

*Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530, 541 (9th Cir. 1998)….7

*Cook v. Sheldon*, 41 F.3d 73, 79–80 (2d Cir. 1994)……………………………………..15

*Danner v. Cty. of San Joaquin*, No. 2:15-cv-0887-MCE-EFB, 2015 U.S. Dist. LEXIS 161908, at *19 (E.D. Cal. Dec. 1, 2015)…………………………………………...18

*Donoghue v. Cty. of Orange*, 848 F.2d 926, 931 (9th Cir. 1987)……………………7

*Duvall v. Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001)…………………………14,16

*Fairley v. Luman,* 281 F.3d 913, 918 (9th Cir. 2002) …………………………..9, 12

*Fleming v. The Charles Schwab Corp.*, 878 F.3d 1146, 1151 (9th Cir. 2017)………5

*Gaspar v. Nahale*, 14 Haw. 574, 575 (1903)………………………………………….18

*Gowin v. Altmiller*, 663 F.2d 820, 823 (9th Cir. 1981)……………………………16

*Harper v. Cty. Of Merced*, No. 1:18-cv-00562-LJO-SKO, 2018 U.S. Dist. LEXIS 191567, at *26 (E.D. Cal. Nov. 7, 2018)……………………………………………...15

*Harvey v. United States*, 681 Fed. Appx. 850, 853–54 (11th Cir. 2017)…………..15

*Henry v. Cty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997)…………………………9

*Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir. 1977)…………………………17

*Johnson v. Shasta Cty.*, 83 F. Supp. 3d 918, 929 (E.D. Cal. 2015)………………...15

*Kirbyson v. Tesoro Ref. & Mktg. Co.*, No. 09-3990 SC, 2010 WL 761054, at *6 (N.D. Cal. Mar. 2, 2010)……………………………………………………………14

*Kirkpatrick v. City of Washoe*, 843 F. 3d 784, 797 (9th Cir. 2016)……………...11,13

*Lee v. City of L.A.,* 250 F.3d 668, 684-85 (9th Cir. 2001)……………………...3,9,12

*Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006)……………..11,13

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019)….5

*McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986)……………………………8

*Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)……………………………9

*Pierce v. Cty. Of Marin*, 291 F.Supp. 3d 982, 995 (N.D. Cal. 2018)……………9,10

*Pit River Tribe v. BLM*, 793 F.3d 1147, 1155 (9th Cir. 2015)………………………5

*Polich v. Burlington N., Inc.,* 942 F.2d 1467, 1472 (9th Cir. 1991) (citing Kelson v. City of Springfield, 767 F.2d 651 (9th Cir.1985)…………………………………..18

*Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)……………………………12

*Powe v. Chicago*, 664 F.2d 639, 651 (7th Cir. 1981)…………………………...10,13

*Reyes v. City of Glendale*, No. CV05-0253 CAS MANX, 2009 WL 2579614, at *40 (C.D. Cal. Aug. 19, 2009)………………………………………………………………11

*Rogan v. Los Angeles*, 668 F. Supp. 1384, 1395-96 (C.D. Cal. 1987)……………..11

*Ruppersberger v. Ramos*, No. 11-00145 ACK-KJM, 2020 U.S. Dist. LEXIS 136824, at *6 & *8 n. 2 (D. Haw. July 31, 2020)……………………………………...7

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)………………………………………………………………………………..18

*Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1233 (9th Cir. 2014)…………..14,15

*Sincerny v. City of Walnut Creek*, No. 17-cv-02616-HSG, 2018 U.S. Dist. LEXIS 54881, at *2 (N.D. Cal. Mar. 30, 2018)…………………………………………………11

*Soto v. Unknown Sweetman*, 882 F.3d 865, 871 (9th Cir. 2018) (citing *Two Rivers v. Lewis*, 174 F.3d 987, 991-92 (9th Cir. 1999)………………………………………..6

*Smith v. Cty. of Los Angeles, No. CV 11-10666 DDP PJWX, 2015 WL 1383539 (C.D. Cal. Mar. 25, 2015)*………………………………………………………9,12

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)……………………………..10

*Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999)……………………………7

*Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)………………6

*Takaki v. Allied Mach. Corp.*, 87 Haw. 57, 68, 951 P.2d 507, 518 (Ct. App. 1998).18

*United States CFTC v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019)……...6

*United States v. Salerno*, 481 U.S. 739, 746 (1987)………………………………12

*Updike v. Multnomah Cty.*, 870 F.3d 939, 951 (9th Cir. 2017) (citing *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)………………………………16

*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)………………………………………………………………………6

*Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018) (citing *Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1215 (9th Cir. 2014)……………………14,15

*Wallace v. Kato*, 549 U.S. 384, 389, 127 S. Ct. 1091, 1095-96 (2007)……………6

**Statutes**

Haw. Rev. Stat. Ann. § 657-13………………………………………………7

42 U.S.C. § 12102(4)(A)…………………………………………………...14

# INTRODUCTION

Plaintiff's complaint alleges numerous HPD officers repeatedly arrested Plaintiff without probable cause on an outstanding warrant for a completely different person.  On each occasion different officers refused to correct their own database thus triggering the repeated arrests. Even after these actions forced Plaintiff to spend nearly three years incarcerated on a warrant for another man, the City *still* did not correct its own records or the warrant that lead to Plaintiff's arrest. The City makes multiple arguments that it should face no liability for any of these actions and the case should be dispensed with at the pleading stage. These arguments fail.

First, Defendant argues that the two-year statute of limitations precludes federal claims against it, because all of Plaintiff's claims accrued while he was illegally detained, and he should have litigated a civil lawsuit while imprisoned in a mental hospital and often sedated and medicated against his will.  But Plaintiff's claims sounding in false imprisonment accrued when he was released; even apart from which, equitable tolling would require tolling in this circumstance.

Second, Defendant argues the Fourth and Fourteenth Amendment claims fail because, *inter alia*, they cannot allege a deliberately indifferent custom or policy. The repeated violations for the same matter across numerous HPD officers permit a plausible inference that the City tolerated such conduct, or else it would not occur. Apart from this, Plaintiff also specifically alleged that the City permits its officers to engage in this conduct, does not train its officers on how to determine who exactly they are arresting, or on how officers can correct faulty records, all of which is further underscored by the facts here.

Third, Defendants' argument that Plaintiff does not state an ADA claim fails given Plaintiff's allegations that Defendant and its employees, for whom it is vicariously liable, failed to provide reasonable accommodations to Plaintiff by reason of his disability, including through failing to simply listen to a person stating he is not the subject of a warrant, particularly where all relevant information clearly

1

established that Plaintiff was correct.

Fourth, Plaintiff alleges a due process violation, including altering a state database only after Plaintiff's release to attach the alias Thomas Castleberry to cover up Plaintiff's false imprisonment.  Compl. ¶¶ 58-59. Such conduct is more than mere issuance of process, and a willful act for a purpose other than that for which it is designed, with the ulterior purpose of abusing the process to cover up misdeeds.

Fifth, Defendant argues Plaintiff does not state a claim of negligent or intentional infliction of emotional distress on the grounds that there is no malice, and HPD officers' conduct was not outrageous. Plaintiff does state malice, which may also be inferred from causing an action against a person without probable cause, as occurred here.  Willfully refusing to correct patently incorrect warrant and database information, which unsurprisingly led to Plaintiff's repeated arrest, certainly appears outrageous and reasonable persons might so find.

## **FACTUAL BACKGROUND**

### **A. Thomas Castleberry Commits Crimes in Hawaii and Elsewhere. A Bench Warrant Issues for His Arrest.**

On July 16, 2006, Thomas Castleberry was arrested by H.P.D. officers for crimes committed in Hawai'i. Compl. ¶ 10. At the time of those crimes, Plaintiff, Joshua Spriestersbach was being treated in a mental health facility on Hawai'i island. Compl. ¶ 5.

When Mr. Castleberry was arrested, he was fingerprinted and photographed, and his mugshot taken by H.P.D. and entered into their criminal database.  Compl. ¶ 11. In 2007, Mr. Castleberry pleaded guilty to his crimes.  Compl. ¶ 13.  He was placed on HOPE probation[1] and monitored until July of 2009, when he failed to appear in court and a bench warrant issued for his arrest.  Compl. ¶¶ 13-14.  That bench

---

[1] "Hawai'i's Opportunity Probation with Enforcement."

warrant did not have Joshua Spriestersbach's name, or identifying information, and Joshua Spriestersbach was not an alias associated with the warrant. Compl. ¶ 15.

At some point in 2009 Mr. Castleberry left Hawaiʻi and moved to Arizona and was incarcerated there from 2011 to 2014. Compl. ¶ 16. He then moved to Alaska where he was again imprisoned. Compl. ¶ 17.

### B. HPD Officers Arrest Plaintiff without Probable Cause, and with No Basis Add Him as the Subject for Thomas Castleberry's Warrant.

Plaintiff Joshua Spriestersbach is a fifty-year-old man with disabilities.  Compl. ¶¶ 1, 79.  Because of his mental disabilities his statements, including statements about his identity are not credited by people interacting with him. Compl. ¶ 79. The only crimes with which he has ever been charged are those relating to being houseless, such as trespass and sitting or lying on sidewalks while houseless. Compl. ¶ 7.

On October 14, 2011, Plaintiff was sleeping on a stairwell.  Compl. ¶ 19.  An officer who arrested him requested his name.  *Id.* Joshua gave the last name "Castleberry," as he sometimes goes by his grandfather's name, William C. Castleberry.  *Id.* He did not give a first name.  *Id.*  Plaintiff has a different birthday from Thomas Castleberry, a different social security number, looks different, is a different height and weight, has a different HPD arrestee number, and has different fingerprints from Thomas Castleberry. Compl. ¶ 18; see photos Compl. p. 16.

HPD nonetheless arrested Plaintiff for having a surname Castleberry, notwithstanding their identifying information and physical appearance did not match and even though Plaintiff insisted that he was not Thomas R. Castleberry to the officers, and that his name was not Thomas.  Compl. ¶ 19.   There was no basis to arrest Plaintiff other than that he had the same last name as a wanted person, and clearly did not match the subject of the warrant. The HPD officers arrested Plaintiff anyway without probable cause, discrediting his protestations that he was not

Thomas Castleberry, knowing that he had a mental health disability. Compl. ¶¶ 21, 80.

The City tolerates and allows officers to engage in such conduct.  Compl. ¶ 68. It also does not train its officers on how to determine who exactly who they are arresting, particularly when interacting with the mentally ill, and has a practice of not investigating the identity of persons they arrest who are mentally ill.  Compl. ¶¶ 62, 61.

Ultimately, Plaintiff had to be released given he was clearly not Thomas Castleberry.   Nonetheless, HPD officers *added* that Plaintiff Joshua Spriestersbach was, in fact, Thomas Castleberry's alias to its database for HPD officers to make arrests based on such information, notwithstanding there was no basis for this. Compl. ¶¶ 28, 15.

### C. HPD Officers Refuse to Correct the Information Falsely Indicating Plaintiff Is an Alias for a Wanted Criminal.  Instead, they Seize and Arrest Plaintiff, Causing him to Spend Nearly Three Years Incarcerated and Sedated.  HPD still Does Not Correct the Erroneous Identification.

Notwithstanding that Plaintiff clearly was not Thomas Castleberry and was released for this reason, HPD declined to correct the database for HPD officers indicating to its officers that Plaintiff was the proper target of arrest for the outstanding warrant, making it likely that Plaintiff would be arrested again on the Thomas Castleberry warrant. Defendant's policy is that warrants need not be and are not corrected when HPD officers discover that they target the wrong individuals. Compl. ¶¶ 61, 68.

Again, HPD officers detained Plaintiff in 2015. Compl. ¶¶ 25-32. They identified him as a subject of the same 2009 Thomas Castleberry warrant, given that HPD's database had not been corrected. Compl. ¶ 28.  Again the HPD officers made no effort to update the erroneous information, further ensuring that Plaintiff would be rearrested.  Compl. ¶ 32.

4

Plaintiff was in fact rearrested. On May 11, 2017, HPD officers awoke and then arrested Plaintiff.  Compl. ¶ 34. Compl. ¶¶ 33-34. Plaintiff provided his name, and his date of birth, as well as his social security number, none of which matched the target of the warrant. Compl. ¶¶ 33-34.  HPD officers nonetheless arrested Plaintiff. One of the HPD officers, Officer Bruhn hand wrote the name Joshua Spriestersbach as an alias to Thomas Castleberry on the then eight-year-old warrant, without court approval, without probable cause and in spite of the fact that the person before him did not match the physical and other descriptions of the warrant suspect. Compl. ¶ 36.  Plaintiff was transferred to Oahu Community Correctional Center, where he was held on that warrant and then to Hawaii State Hospital, spending nearly three years of his life incarcerated, ultimately being released in January 2020, and left at the homeless shelter where he had been arrested last time. Compl. ¶ 38, 55

After this, HPD *still* made no efforts to correct their records associating Plaintiff with Thomas Castleberry's warrant, or the warrant.  Compl. ¶ 57.

### LEGAL STANDARD

The standard for judgment on the pleadings is similar to that for a motion to dismiss.  *Pit River Tribe v. BLM*, 793 F.3d 1147, 1155 (9th Cir. 2015).  To overcome such a motion, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). All factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019).  The complaint need only state a claim to relief that is plausible on its face, and need not have detailed allegations.  *Id.* (citing *Twombly*, 550 U.S. at 555, 570); *see also, e.g.*, *Fleming v. The Charles Schwab Corp.*, 878 F.3d 1146, 1151 (9th Cir. 2017) (holding any general allegations embrace those specific facts necessary to support the claim).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **ARGUMENT**

## **I.    THE FEDERAL CLAIMS ARE NOT BARRED BY STATUTES OF LIMITATIONS.**

The City argues that a two-year statute of limitations applies to Section 1983 claims and bars relief on Plaintiff's federal claims here.  MTD 4-5.  This is incorrect.  "A claim may be dismissed . . . on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* (quoting *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)); *see also United States CFTC v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019). The face of the complaint does not require such dismissal here.

Initially, the claims did not accrue on March 11, 2017, in that all claims are for false arrest, as Defendant claims.  MTD 9.   When a judge has not issued a warrant for a person's arrest, or arraigned the person, detention sounds instead in unlawful imprisonment.  *Wallace v. Kato*, 549 U.S. 384, 389, 127 S. Ct. 1091, 1095-96 (2007).  "The running of the statute of limitations on false imprisonment is subject to a distinctive rule--dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned: '*Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends*." *Id.* (emphasis added)

Even if the claim did accrue in 2017, however, the claims are tolled. Section 1983 claims borrow the forum state's tolling rules. *See, e.g.*, *Soto v. Unknown Sweetman*, 882 F.3d 865, 871 (9th Cir. 2018) (citing *Two Rivers v. Lewis*, 174 F.3d

987, 991-92 (9th Cir. 1999)).  This includes a state's equitable tolling law. *See, e.g.*, *Donoghue v. Cty. of Orange*, 848 F.2d 926, 931 (9th Cir. 1987) (applying equitable tolling to 1983 claim).  The complaint does not preclude equitable tolling from applying here. Hawaii has adopted the same test for tolling as is applied federally, with federal cases thus indicating whether tolling applies.  *E.g. Ruppersberger v. Ramos*, No. 11-00145 ACK-KJM, 2020 U.S. Dist. LEXIS 136824, at *6 & *8 n. 2 (D. Haw. July 31, 2020).  Namely, the statute of limitations is tolled where Plaintiff pursues his rights diligently but some extraordinary circumstance stood in his way and prevented timely filing.  *Id.*\*6.

Here, Plaintiff was seized, involuntarily committed, held under a different name, where he repeatedly insisted he was not Thomas Castleberry, was not believed including by those holding him against his will, and was sedated until the point he was catatonic. *E.g.* Compl. ¶¶ 2, 49.  These facts are by no means facially incompatible with equitable tolling, and indeed the face of the complaint *establishes* that tolling applies.  *See Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530, 541 (9th Cir. 1998) (en banc) (applying equitable tolling where petitioner's mental incompetence rendered him unable to assist in his own defense); *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (applying equitable tolling where petitioner's condition hindered them from cooperating with counsel).

Even apart from this, under Hawaii law, which applies to the federal claims' tolling here, claims other than those against officers are tolled during imprisonment for a criminal charge.  Haw. Rev. Stat. Ann. § 657-13.

## II.    PLAINTIFF ADEQUATELY ALLEGES A FOURTEENTH AMENDMENT CLAIM.

Plaintiff alleges a Fourteenth Amendment due process claim based on HPD's repeated arrests, failure to verify any identifying information, refusal to correct any clearly false information, and indeed affirmatively adding false

information which ensured Plaintiff was arrested and detained again and again, three times.  In 2011, Plaintiff was taken into custody, based solely on purportedly having the same surname as a person for whom a warrant issued, despite the fact that Plaintiff repeatedly stated he was not "Thomas" Castleberry, the target of the warrant; that there was no information connecting the two, and Plaintiff has entirely different physical characteristics, including a different height and weight, and has different fingerprints and identifiers from Thomas Castleberry.  Rather than verify any of this, HPD arrested Plaintiff, and *added* that he was, in fact, Thomas Castleberry's alias.  Compl. ¶ 28.  When it became apparent that this was not true, HPD released Plaintiff and refused to correct the warrant, ensuring he would be arrested again.

Plaintiff was arrested again in 2015.  It was obvious that Plaintiff was not Thomas Castleberry and the HPD officers eventually confirmed this.  The only connection was the false statement that Plaintiff was the alias of the wanted person.  As they released him, HPD again made no effort to correct or even investigate or note the fact that the warrant clearly targeted the wrong person, whose name was not Thomas Castleberry, ensuring Plaintiff would be arrested again.  Compl. ¶ 32.

HPD officers arrested Plaintiff again in 2017.  Compl. ¶ 34.  Plaintiff made clear he was not the target of the warrant, giving his full name, Joshua Spriestersbach; his date of birth; and his social security number.  Compl. ¶ 35.  Again, officers made no effort to provide even basic verification.  Instead, they affirmatively, and without any probable cause, wrote Plaintiff's name onto the warrant and caused him to be incarcerated at the Oahu Community Correctional Center, where his nearly three year detention began.  Compl. ¶¶ 37-38.

Defendant makes no argument that the conduct here did not violate Plaintiff's constitutional rights under the Fourth or Fourteenth Amendment.  *See generally* MTD at 5-12.  Instead, the City argues vaguely that the claim must arise only under the Fourth Amendment.  *See* MTD at 11.  That is not correct.  As the Ninth Circuit

1  has found, the failure to verify information about a person, including his

2  fingerprints, which did not match those of the suspect states a Fourteenth

3  Amendment violation.  *Lee v. City of L.A.,* 250 F.3d 668, 684-85 (9th Cir. 2001).  It

4  is also well established that the failure to take reasonable procedural steps to ensure

5  a person is not wrongfully arrested on another's warrant violates due process. *E.g.*

6  *Id.*; *Fairley v. Luman,* 281 F.3d 913, 918 (9th Cir. 2002); *Pierce v. Cty. Of Marin*,

7  291 F.Supp. 3d 982, 995 (N.D. Cal. 2018) (finding distinct due process claim where

8  Defendants "failed to take corrective action, resulting in further wrongful arrests or

9  detention."); *Smith v. Cty. of Los Angeles, No. CV 11-10666 DDP PJWX, 2015 WL*

10  *1383539 (C.D. Cal. Mar. 25, 2015).*

11  The majority of Defendant's argument on the Fourteenth Amendment claim is

12  devoted to the contention, borrowed from its arguments about the Fourth

13  Amendment, that injunctive relief for Plaintiff's federal constitutional claims fail

14  because there is no *Monell* violation connecting the City to the failure to update the

15  warrant. MTD. at 11-12, 5-10.  This is false.

16  A Monell claim may be established for failing to act where a plaintiff shows:

17  "(1) that he possessed a constitutional right of which he was deprived; (2) that the

18  municipality had a policy; (3) that this policy "amounts to deliberate indifference" to

19  the plaintiff's constitutional right; and (4) that the policy is the "moving force behind

20  the constitutional violation." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

21  As addressed above Plaintiff was deprived of a constitutional right, so the first

22  element is satisfied.  The second element is also satisfied.  As the Ninth Circuit has

23  held, when a municipality continues to turn a blind eye to violations a rational fact

24  finder may infer, even at the summary judgment stage, the existence of a previous

25  policy or custom of deliberate indifference.  *Henry v. Cty. of Shasta*, 132 F.3d 512,

26  519 (9th Cir. 1997) )(policy of abusing persons arrested for minor traffic violations).

27  Indeed, *Monell* liability is properly found where a City even fails to take the

28  remedial step of disciplining those responsible – let alone where the same known

unconstitutional conduct is permitted to continue for over a decade.  *E.g. McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986).  Plaintiff's warrant was not corrected and has been clearly brought to the City's and its employees attention repeatedly for over ten years, during which time Plaintiff has been arrested, rearrested and detained, with numerous officers interacting with Castleberry's warrant and still no meaningful protection for the Plaintiff.  Indeed, after Plaintiff was arrested for the *third* time, jailed for nearly three years and sedated into catatonia, even *then* the City took no step whatsoever to update the Castleberry warrant, or include any corrections, notwithstanding it is eminently simple and costless to do so.  Compl. ¶¶ 57, 74. A rational inference – if not the *only* reasonable one – is that numerous officers repeatedly allowed and engaged in this action because the City had an unofficial practice or custom of permitting such actions.  Defendant is welcome to argue otherwise, but the matter is contested and Plaintiff's allegations are sufficient to survive a motion to dismiss.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss . . . . Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*.")

Unsurprisingly, courts addressing a failure to correct faulty information on a warrant, and the continued maintenance of such a record, find that such conduct establishes a custom or policy under *Monell* – with less clear notice and deliberate indifference.  *E.g. Pierce v. Cty. of Marin*, 291 F. Supp. 3d 982, 995 (N.D. Cal. 2018); *see, also, e.g.*, *Powe v. Chicago*, 664 F.2d 639, 651 (7th Cir. 1981) (noting that fact that person was repeatedly falsely arrested on an inadequate warrant permits the reasonable inference "that the inadequacy of the description in the warrant was systemic in nature-that is, that it resulted from the procedures followed by the defendants' law enforcement agencies" and *Monell* liability based on that

inference). Such facts support *Monell* liability, and indeed require a judgment for the Plaintiff even at the summary judgment stage. *See, e.g., Rogan v. Los Angeles*, 668 F. Supp. 1384, 1395-96 (C.D. Cal. 1987) (granting summary judgment for Plaintiff on Monell claim).[2]

Even apart from this, Plaintiff alleges Defendant has a policy where faulty warrants need not be and are not corrected when HPD officers discover that they target the wrong individuals. Compl. ¶ 61. This amply satisfies the pleading standard at this stage. *See, e.g.*, *Sincerny v. City of Walnut Creek*, No. 17-cv-02616-HSG, 2018 U.S. Dist. LEXIS 54881, at *2 (N.D. Cal. Mar. 30, 2018) (finding Fourth Amendment *Monell* claim adequately alleged based on failure to perform proper show ups); *Reyes v. City of Glendale*, No. CV05-0253 CAS MANX, 2009 WL 2579614, at *40 (C.D. Cal. Aug. 19, 2009)(policy not to update warrant database with known information supports *Monell* liability).

Even apart from this, a failure to train amounts to deliberate indifference when it is highly predictable that the absence of such training could lead to constitutional violations.  *See, e.g.*, *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006)(fact issue stated where plaintiff alleges failure to train staff on providing medical care to inmates causing death); *Kirkpatrick v. City of Washoe*, 843 F. 3d 784, 797 (9th Cir. 2016)(en banc)(fact issue as to whether failure to train social workers caused seizure of baby without a warrant).  Plaintiff alleges that the City does not train its officers on how to make sure their records are accurate, or even how to determine who exactly they are arresting. Compl.¶62.   Such facts support *Monell* liability.  The failure to provide fundamental training on these matters could foreseeably result in harm.

_____

[2] The City's contention that Plaintiff's *Monell* claim fails because there is no pattern suggesting violations, and that the City may have "hired one bad apple" fails for this reason too.  MTD at 7-8.

1    Defendant argues in the alternative that there is no due process claim because

2  the behavior does not "shock the conscience."  MTD at 11-12 (citing *Porter v.*

3  *Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).  As addressed above, this is a

4  procedural due process claim – that the City has refused to institute basic process,

5  such as correcting a known erroneous warrant, to prevent Plaintiff's baseless arrest

6  and liberty deprivation.   Such claims are governed by a balancing test as to whether

7  further procedural steps are warranted.  *E.g. Fairley*, 281 F.3d at 918 n.6; *Smith*,

8  2015 U.S. Dist. 2015 WL 1383539  at *5 n.5 (same).  There is no "shock the

9  conscience" requirement for procedural due process claims – that is for substantive

10  due process claims. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 746 (1987).

11  Regardless, a jury could certainly find that failing to correct a clearly erroneous

12  warrant such that it causes a nearly three year involuntary commitment of a man,

13  and then *still* refusing to correct it, shocks the conscience.

14    Lastly, there is no causation bar precluding a claim here. Defendant claims

15  that there is an intervening cause because Plaintiff was also detained at O.C.C.C. for

16  an extended period of time. Opp. at 9-11. This is wrong, but also irrelevant. Even

17  setting aside the fact that there may be multiple proximate causes of an action,

18  Plaintiff has every right not to be seized, arrested, and detained without probable

19  cause, regardless of whether this continues under O.C.C.C. and HSH custody.

20

21  **III.   PLAINTIFF ADEQUATELY ALLEGES A FOURTH**
**        AMENDMENT CLAIM.**

22

23    Defendant also does not dispute that Plaintiff's Fourth Amendment rights

24  were violated.  MTD at 5-11.   As the Ninth Circuit also held in *Lee v. City of L.A.,*

25  causing a person's arrest and sending him to be incarcerated where his identifying

26  information does not match the intended target for arrest violates the Fourth

27

28

Amendment.  250 F.3d6 668, 685 (9th Cir. 2001).[3]

Defendant contends, however, that Plaintiff's claim must be dismissed on the basis that its policies could not plausibly have caused the officers' underlying conduct.  MTD at 5-11.  This argument fails for most of the same reasons above.  Here, the officers repeatedly arrested Plaintiff when there was no basis or probable cause to do so.  The indifference to Plaintiff and to the need for probable cause was so extreme that officers added Plaintiff as an alias; writing it on to the warrant themselves, and without judicial approval; and decided to leave the information there once it was repeatedly made clear that Plaintiff was not the proper target.  This underscores *Monell* liability.  *See, e.g.*, *Powe v. Chicago*, 664 F.2d 639, 651 (7th Cir. 1981) (noting that a person's repeated arrests in violation of the Fourth Amendment by various members of the police department over time permitted the inference of *Monell* liability and the existence of a custom or practice permitting the actions. The City does not train its officers on determining who exactly they are arresting or even on ensuring records are accurate; or investigating the identity of houseless and mentally ill persons before simply arresting them.  Compl. ¶ 62.  Such actions violate the Fourth Amendment, and it is not implausible that failing to provide such training would predictably result in a Fourth Amendment violation.  *E.g Kirkpatrick*, 843 F. 3d at 797; *Long,* 442 F.3d at 1186 (9th Cir. 2006).

## IV.    PLAINTIFF ADEQUATELY ALLEGES AN ADA CLAIM.

Under the Americans with Disability Act, the City is liable both for its own actions and failures to provide reasonable accommodations for a disability, and vicariously for those of any officers who do the same.  *E.g. Borawick v. City of L.A.*,

_____

[3] As the Court also acknowledged, arresting Plaintiff on a warrant for Thomas Castleberry erroneously identifying Plaintiff violates the Fourth Amendment.  Dkt. 93 at 10.

793 F. App'x 644, 646 (9th Cir. 2020) (citing *Duvall v. Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001).

An ADA claim lies where a Plaintiff shows:  (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of his disability. *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018) (citing *Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1215 (9th Cir. 2014)).  Plaintiff's complaint adequately alleges a violation of each.  Defendant contests the first, third, and fourth prongs.  MTD at 12-13.

Plaintiff pleads that he has a disability within the meaning of the ADA.  To fulfill this requirement, a Plaintiff need show only that he has an "impairment that substantially limits one or more major life activities," or is regarding of having such an impairment.  42 U.S.C. § 12102(1)(A).  Plaintiff does so, extensively.  Compl. ¶ 79. Plaintiff pled what the ADA requires. There is no requirement that Plaintiff also provide specific medical terminology.[4] *See, e.g. Kirbyson v. Tesoro Ref. & Mktg. Co.*, No. 09-3990 SC, 2010 WL 761054, at *6 (N.D. Cal. Mar. 2, 2010) (Plaintiff states a claim of disability where he doesn't state the medical diagnosis, but he – even barely – indicates an effect on a major life activity.) Regardless, Plaintiff is schizophrenic  and could amend the complaint to so state if necessary. *See infra* § VII.

Plaintiff also adequately alleges he was excluded from participation in benefits or discriminated against by reason of his disability.  Such discrimination

---

[4]  There is no requirement for a diagnosis with specific terminology at all, and the ADA requires that the concept of a disability be construed in favor of broad coverage to the maximum extent permitted.  42 U.S.C. § 12102(4)(A).

1  occurs where a person alleges he suffered an injury because officers failed to

2  "reasonably accommodate a person's disability." *Sheehan*, 743 F.3d at 1231.

3      Joshua is disabled, and because of his disability his protestations of innocence

4  if he is arrested may be discounted and ignored, as they were here.  Compl. ¶ 79.

5  An eminently reasonable accommodation then would have been, for example: (1)

6  the City having a policy which does not permit officers to arrest based on minimal

7  information and without verifying the mentally ill suspect's identity; or (2) where

8  Plaintiff was falsely associated with a crime, at minimum removing false

9  information such that he is not *again* subjected to being stopped, disbelieved when

10  he protests his innocence, and arrested again because of his disability and officers'

11  disinterest in crediting or listening to him.

12      Because Plaintiff has identified reasonable accommodations, which were not

13  provided by Defendant or its employees by reason of his disability, he has plausibly

14  alleged an ADA claim. This Circuit has repeatedly found ADA claims based on far

15  less than failing to provide the obvious accommodations here.  *See, e.g.*, *Vos v. City*

16  *of Newport Beach*, 892 F.3d 1024, 1037 (9th Cir. 2018) (finding ADA claim would

17  lie where police failed to reasonably accommodate a person where they did not use

18  "de-escalation, communication, or specialized help" on an armed suspect who cut a

19  man with scissors and charged officers with a pointed object); *Sheehan v. City &*

20  *Cty. of S.F.*, 743 F.3d 1211, 1233 (9th Cir. 2014) (similar); *Borawick v. City of L.A.*,

21  793 F. App'x 644, 646 (9th Cir. 2020) (knowledge of a reasonable accommodation

22  and failure to employ it despite having the time and opportunity to do so states Title

23  II ADA claim); *see also*, e.g., *Johnson v. Shasta Cty.*, 83 F. Supp. 3d 918, 929 (E.D.

24  Cal. 2015); *Harper v. Cty. Of Merced*, No. 1:18-cv-00562-LJO-SKO, 2018 U.S.

25  Dist. LEXIS 191567, at *26 (E.D. Cal. Nov. 7, 2018). At a minimum this issue

26  cannot be resolved on a motion based solely on the pleadings and should proceed to

27  discovery.

28      Defendant suggests that the claim fails because Plaintiff never expressly

15

asked for these accommodations, and instead only informed different Defendants that he was not Thomas Castleberry. MTD 13.  First, that is factually wrong. Plaintiff did indicate he was not Thomas Castleberry to HPD officers, who ignored him.. Compl. ¶ 22.  The City is liable for their conduct.  Second, it is not entirely clear what Defendant means or how it contends this issue of requesting accommodation is at all relevant to Plaintiff's claim, because Defendant does not explain and offers no caselaw. *Id.* At any rate, insofar as Defendant means to critique Plaintiff's ADA claim insofar as it seeks damages, to recover such damages, a Plaintiff need not specifically request that he be accommodated, including where the need for accommodation was obvious or required.  *E.g. Updike v. Multnomah Cty.*, 870 F.3d 939, 951 (9th Cir. 2017) (citing *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)). That Plaintiff should not have erroneously had false information entered and maintained against him, or be ignored and arrested without probable cause is both clearly obvious, and legally required.

Defendant also argues that the claim must fail because Plaintiff does not allege Defendant knew Plaintiff had a disability.  MTD 14.   Plaintiff alleges that the employees of the Defendants subject to this claim, including City, knew Joshua was disabled.  Compl. ¶ 80.  To the extent needed Plaintiff could, moreover, provide further factual allegations establishing the same.  *See infra* § VII.

## V.   PLAINTIFF ADEQUATELY ALLEGES AN ABUSE OF PROCESS CLAIM.

Defendant argues the Ninth Circuit has not recognized a federal 1983 abuse of process claim.  Mot. at 15-16. It appears this Circuit has not explicitly addressed whether abuse of process is constitutionally impermissible, though it has presumed so for some time. *See, e.g., Gowin v. Altmiller*, 663 F.2d 820, 823 (9th Cir. 1981) (addressing Section 1983 claim for abuse of process, though dispensing with it on other grounds). Other Circuits have held "[a]n abuse of process is by

definition a denial of procedural due process." *Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir. 1977); *Cook v. Sheldon*, 41 F.3d 73, 79–80 (2d Cir. 1994) (similar); *see also, e.g., Harvey v. United States*, 681 Fed. Appx. 850, 853–54 (11th Cir. 2017) (acknowledging abuse of process claim under §1983 and allowing it to proceed).

Defendant also argues that a claim fails because Plaintiff does not plead (1) an ulterior purpose, (2) a willful act in the use of a process other than that for which it was designed, or (3) something more than mere issuance of process.  MTD 15.

Plaintiff alleges each here.   Plaintiff alleges that the Hawaii State Database, in which Defendant City can have the information altered, *see* Opp. Ex. A, was altered only after Plaintiff's release to add Plaintiff as the alias of Thomas Castleberry in order to cover up Plaintiff's false imprisonment.  Compl. ¶¶ 58-59.  Falsely adding such information after the fact is patently something more than mere issuance of process, and a willful act for a purpose other than that for which hit is designed, with the ulterior purpose of abusing the process to cover up misdeeds.  The City is a named defendant on this claim and the allegations support *Monell* liability.  Compl. ¶¶57-59, 61, 87-90.

## VI.    PLAINTIFF ADEQUATELY ALLEGES IIED AND NIED CLAIMS.

Defendant states Plaintiff cannot succeed on an intentional infliction of emotional distress or negligent infliction of emotional distress because this requires some form of malice from any of their employees, and there are no adequate allegations of malice.  Opp. at 16.  This is wrong.  Malice is specifically alleged in Compl. ¶22 and that paragraph is incorporated into the IIED and NEID claims.  Compl.¶¶ 126, 130.  Further, malice is satisfied and may be inferred, for example, from initiating or continuing an action against a person without probable cause, and amply inferred here.  *E.g. Black v. Correa*, No. 07-00299 DAE-LEK, 2008 WL

3845230, at *17 (D. Haw. Aug. 18, 2008); *Gaspar v. Nahale*, 14 Haw. 574, 575 (1903) (similar). Plaintiff alleges that City employees initiated an arrest without probable cause, and that for over ten years its employees have refused to correct a warrant patently lacking probable cause, causing Plaintiff to be repeatedly arrested. Malice is amply plead here. *Id.*

Defendant disputes causation on an IIED and NIED claim for the same reasons "discussed above . . . .".  MTD 16-17.  For reasons discussed above, these arguments are baseless.

Lastly Defendant states, with no explanation, that no one could not find its employees acted outrageously. MTD 17.  The facts strongly suggest otherwise. Even where reasonable minds might differ as to whether conduct is outrageous, the matter should proceed past a motion to dismiss. *E.g. Takaki v. Allied Mach. Corp.*, 87 Haw. 57, 68, 951 P.2d 507, 518 (Ct. App. 1998).  The City's willful refusing to correct patently incorrect warrant and database information, which unsurprisingly led to Plaintiff's repeated arrest, appears outrageous and reasonable persons might so find.  *See, e.g.*, *Danner v. Cty. of San Joaquin*, No. 2:15-cv-0887-MCE-EFB, 2015 U.S. Dist. LEXIS 161908, at *19 (E.D. Cal. Dec. 1, 2015) (causing an arrest even on a "less than credible account" leading to a six-day detention, let alone causing a baseless arrest numerous times could satisfy IIED).

## VII.   IN THE EVENT FURTHER ALLEGATIONS ARE REQUIRED LEAVE TO AMEND SHOULD BE GRANTED.

"Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.,* 942 F.2d 1467, 1472 (9th Cir. 1991) (citing Kelson v. City of Springfield, 767 F.2d 651 (9th Cir.1985)); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  To the extent the Court finds any allegations are lacking, Plaintiff should be granted leave to amend to add

1 allegations.

2 ## CONCLUSION

3 Defendant's motion for judgment on the pleadings should be denied for the

4 reasons set forth above.

5

6 DATED:   April 14, 2022                    Respectfully submitted,

7

8                                           /s/ Alphonse A. Gerhardstein

9                                           Jennifer L. Brown

10                                          Alphonse A. Gerhardstein
                                            Jacqueline Greene
11                                          Paul Hoffman
                                            John Washington
12

13                                          Attorneys for Plaintiff
                                            JOSHUA SPRIESTERSBACH
14

15

16

17

18

19                             **CERTIFICATE OF SERVICE**

20

21        I hereby certify that on April 14, 2022, a copy of the foregoing pleading was
   filed electronically. Notice of the filing will be sent to all parties for whom counsel
22 has entered an appearance by operation of the Court's electronic filing system.
   Parties may access this filing through the Court's system. I further certify that a
23 copy of the foregoing pleading has been served by ordinary U.S. mail upon all
24 parties for whom counsel has not yet entered an appearance electronically.

25                                          s/ Alphonse A. Gerhardstein
                                            Attorney for Plaintiff
26

27

28

                                          19