DANA M. O. VIOLA          6095
Corporation Counsel

RICHARD D. LEWALLEN   7092
ROBERT M. KOHN          6291
Deputies Corporation Counsel
City and County of Honolulu
530 S. King Street, Room 110
Honolulu, Hawaiʻi  96813
Telephone:  (808) 768-5242, (808) 768-5129
Facsimile:  (808) 768-5105
Email: rlewallen@honolulu.gov; robert.kohn@honolulu.gov

Attorneys for Defendant
CITY AND COUNTY OF HONOLULU

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JOSHUA SPRIESTERSBACH,<br><br>            Plaintiff,<br><br>      vs.<br><br>STATE OF HAWAIʻI, CITY AND COUNTY OF HONOLULU, OFFICER ABRAHAM K. BRUHN, DEPARTMENT OF PUBLIC SAFETY, OFFICE OF THE PUBLIC DEFENDER, NIETZSCHE LYNN TOLAN, MICHELLE MURAOKA, LESLIE MALOIAN, JACQUELINE ESSER, JASON BAKER, MERLINDA GARMA, SETH PATEK, DR. JOHN COMPTON, DR. MELISSA VARGO, DR. SHARON TISZA, HAWAIʻI STATE HOSPITAL, DR. ALLISON GARRETT, and JOHN/JANE DOES 1-20,<br><br>            Defendants. | CIVIL NO. CV21-00456 LEK/RT<br><br>DEFENDANT CITY AND COUNTY OF HONOLULU'S **REPLY** TO PLAINTIFF'S OPPOSITION TO CITY'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 106)<br><br><br><br>Trial Date: None. |

# Table of Contents

**Page(s)**

INTRODUCTION ................................................................................1

ARGUMENT ....................................................................................1

    I.    The Running of the Statute of Limitations Is Apparent on the Face of  the Complaint, and *Wallace v. Kato* is Distinguishable. ................1

    II.    Plaintiff Cannot State a Separate Claim Under the Fourteenth Amendment Against the City. ................................................................4

    III.    Plaintiff's *Monell* Cases Are Inapposite. ................................................5

    IV.    Plaintiff Is Not Bringing a Substantive Due Process Claim. ...............8

    V.    Plaintiff's Causation Argument is Incorrect. .........................................9

    VI.    Plaintiff's Fourth Amendment Arguments Fail. ...................................9

    VII.    Plaintiff Misapprehends the ADA Law................................................10

    VIII.  The Federal Abuse-of-Process Claim Is Nonexistent or Fails............13

    IX.    Malice and Improper Purpose Are Pled Conclusorily. .......................15

CONCLUSION ................................................................................15

# Table of Authorities

**Cases**                                                                **Page(s)**

*Bird v. Hawaii*,
  935 F.3d 738 (9th Cir. 2019) ............................................................... 2

*Bonner v. Carey*,
  No. SACV 99-00091-DOC (MAN), 2009 U.S. Dist. LEXIS 12055 (C.D. Cal.
  Dec. 2, 2009) ...................................................................... 3

*Borawick v. City of Los Angeles*,
  793 F. App'x 644 (9th Cir. 2020) ..................................................... 10

*Burke v. City & Cty. of Honolulu*,
  No. 08-00339 BMK, 2010 U.S. Dist. LEXIS 121397 (D. Haw. Nov. 16, 2010)
  ............................................................................. 3-4

*Bylsma v. Hawaii*,
  No. 19-cv-00611-DKW-RT, 2019 U.S. Dist. LEXIS 219200 (D. Haw.
  Dec. 18, 2019) .................................................................. 12

*Cameron v. Gila Cty.*,
  No. CV11-80-PHX-JAT, 2011 U.S. Dist. LEXIS 56650 (D. Ariz. May 25,
  2011) .......................................................................... 10

*Gant v. County of Los Angeles*,
  772 F.3d 608 (9th Cir. 2014) ........................................................ 4

*Gowin v. Altmiller*,
  663 F.2d 820 (9th Cir. 1981) ....................................................... 13

*Harvey v. United States*,
  No. 15-CV-24012-ALTONAGA, 2020 U.S. Dist. LEXIS 75356 (S.D. Fla.
  Apr. 28, 2020) ................................................................. 14

*Henry v. Cty. of Shasta*,
  132 F.3d 512 (9th Cir. 1997) ........................................................ 5

*Hooper v. City of St. Paul*,
  No. 17-CV-3442 (PJS/DTS), 2019 U.S. Dist. LEXIS 145084 (D. Minn.
  Aug. 26, 2019) ................................................................. 11

*Jones v. City of Detroit,*
No. 21-1055, 2021 U.S. App. LEXIS 37757 (6th Cir. Dec. 21, 2021) ............. 11

*K.H. v. Antioch Unified Sch. Dist.,*
424 F. Supp. 3d 699–02 (N.D. Cal. 2020) ....................................................... 11

*Lee v. City of Los Angeles,*
250 F.3d 668 (9th Cir. 2001) ............................................................................. 5

*McRorie v. Shimoda,*
795 F.2d 780 (9th Cir. 1986) ............................................................................. 5

*Nordenstrom v. Corizon Health, Inc.,*
No. 3:18-cv-01754-HZ, 2021 U.S. LEXIS 115139 (D. Or. June 18, 2021) ....... 8

*Pierce v. Cty. of Marin,*
291 F. Supp. 3d 982 (N.D. Cal. 2018) ............................................................... 5

*Powe v. Chicago,*
664 F.2d 639 (7th Cir. 1981) ............................................................................. 5

*Ravenna v. Village of Skokie,*
388 F. Supp. 3d 999–08 (N.D. Ill. 2019) ................................................... 10-11

*Reyes v. City of Glendale,*
No. CV05-0253 CAS MANX, 2009 WL 2579614 (C.D. Cal. Aug. 19, 2009) .. 5

*Rogan v. Los Angeles,*
668 F. Supp. 1384 (C.D. Cal. 1987) ................................................................... 5

*Ruppersberger v. Ramos,*
No. 11-00145 ACK-KJM, 2020 U.S. Dist. LEXIS 136824 (D. Haw. July 31, 2020) ................................................................................................................ 2

*Sheehan v. City and Cty. of San Francisco,*
743 F.3d 1211 (9th Cir. 2014) ......................................................................... 12

*Sincerny v. City of Walnut Creek,*
No. 17-cv-02616-HSG, 2018 U.S. Dist. LEXIS 54881 (N.D. Cal. Mar. 30, 2018) ................................................................................................................. 5

*Starr v. Baca,*
652 F.3d 1202 (9th Cir. 2011) ........................................................................... 5

*Wallace v. Kato*
    549 U.S. 384 (2007) ............................................................ 2

*West v. City of Mesa*,
    708 F. App'x 288 (9th Cir. 2017) ...................................... 14

**Statutes**

HRS § 657-13 .......................................................................... 3

DEFENDANT CITY AND COUNTY OF HONOLULU'S REPLY
<u>REGARDING MOTION FOR JUDGMENT ON THE PLEADINGS</u>

## INTRODUCTION

All of Plaintiffs' claims are barred by the two-year statute of limitations. The Complaint was filed more than two years after the statute had run on the separate and distinct 2011, 2015, and 2017 incidents involving HPD. The claims as against HPD also sound in false arrest, not false imprisonment, and even assuming they sound in false imprisonment, the Complaint itself points to years of representation by State public defenders and at least one court date that would start the clock on any false imprisonment claim.

In addition, the Complaint fails to state a *Monell* claim, which cannot be pled conclusorily under the *Iqbal* standard.  The other claims suffer similar deficiencies, discussed further below.

## ARGUMENT

### I.    The Running of the Statute of Limitations Is Apparent on the Face of the Complaint, and *Wallace v. Kato* is Distinguishable.

The City agrees with the opposition that the statute of limitations applies in situations where the face of the Complaint establishes the time-barred nature of the claim. ECF 106 (Opp.) at 12 of 25.[1] Such is the case here, with the factually distinct actions of HPD officers in 2011, 2015, and 2017 are specified and pled.

---

[1] Citations to the opposition use the pagination at the top of the page.

Plaintiff cites to *Wallace v. Kato*, 549 U.S. 384, 389 (2007), arguing that because his claim sounds in false imprisonment rather than false arrest, the statute of limitations did not begin to run until his imprisonment ended. *Id*. But the claim does not sound in false imprisonment as to the City and HPD officers. The City does not own or run the state prisons, does not oversee the booking process at OCCC, did not employ the various public defenders that represented Plaintiff, and did not employ any doctors or nurses at the State hospital. Even in false imprisonment claims, the "legal process" that starts the clock occurred long ago because there were over two years of representation by various state public defenders.[2] Plaintiff repeatedly revealed his true identity "prior to his first court hearing." *Id*. ¶ 43. The 2011, 2015, and 2017 incidents are factually distinct incidents involving different officers: they are not continuing violations. That doctrine has been limited to hostile work environment and class-wide pattern-and-practice claims. *Bird v. Hawaii*, 935 F.3d 738 (9th Cir. 2019).

As for the opposition's equitable tolling argument, Plaintiff has not met his burden of demonstrating both (1) that he pursued his rights diligently, *and* (2) that some extraordinary circumstances stood in his way preventing a timely filing. *See Ruppersberger v. Ramos*, No. 11-00145 ACK-KJM, 2020 U.S. Dist. LEXIS 136824, at *6–8 (D. Haw. July 31, 2020). Even accepting Plaintiff's own theory,

---

[2] Complaint, ECF No. 1 at ¶¶ 42–53.

his duty to conduct due diligence was triggered in 2011, 2015, and 2017, at least as to the City. Not only does Plaintiff have the burden of demonstrating both elements, it is also his burden to show the causal connection between the extraordinary circumstance and the untimeliness. *Bonner v. Carey*, No. SACV 99-00091-DOC (MAN), 2009 U.S. Dist. LEXIS 12055, at *21–24 (C.D. Cal. Dec. 2, 2009). The allegations in the Complaint negate both diligence as to claims against the City and the requisite causal connection. The Complaint was not filed until November 21, 2021, just two months shy of two years after Plaintiff's release on January 17, 2020. Complaint ¶ 55.

Finally, the opposition cites HRS § 657-13, arguing that tolling applied during his imprisonment. Opp. at 13. But Plaintiff's claim did not accrue as against the City *during* Plaintiff's imprisonment, as the statute requires. HRS § 657-13 (Tolling applies when imprisoned "at the time the cause of action accrued."). The allegations are that actions in 2011, 2015, and 2017 caused his imprisonment. HRS § 657-13 is inapplicable because accrual as to both the City and HPD defendants occurred prior to his imprisonment. But even if it were applicable, the statute would not apply to claims that rely on respondeat superior to hold the City liable. HRS § 657-13 (Tolling does not apply to "actions against the sheriff, chief of police, or other officers."); *see, e.g., Burke v. City & Cty. of Honolulu*, No. 08-00339 BMK, 2010 U.S. Dist. LEXIS 121397, at *24 (D. Haw. Nov. 16, 2010)

("Under the doctrine of respondeat superior, if an employee is immune from suit, then the employer is also immune from suit and cannot be liable.") (cleaned up).

## II. Plaintiff Cannot State a Separate Claim Under the Fourteenth Amendment Against the City.

Plaintiff cites various cases for the proposition that a Fourteenth Amendment claim against the City is viable. Opp. at 15. While Plaintiff is correct that a wrongful detention can ripen into a due process violation in certain situations, the cases cited involve factual scenarios where the entity being sued is the same as the entity overseeing the detention. Binding Ninth Circuit precedent prohibits Plaintiff's argument here. *See Gant v. County of Los Angeles*, 772 F.3d 608, 621 (9th Cir. 2014) (affirming dismissal of post-arrest detainment claim under the Fourteenth Amendment where "the Chino defendants did not detain Ventura beyond his arrest.").

It should also be noted that the allegations regarding repeated protestations by Plaintiff that he was Joshua Spriestersbach are not allegations against HPD Defendants. Rather, during the 2011 incident, Plaintiff refused to give his real name. Complaint at 11–12. While Plaintiff allegedly and reluctantly gave his real name in 2015 when he was illegally sleeping after-hours in Aala Park, he was not arrested for Castleberry's warrant in 2015. *Id.* at 13. Thus, Plaintiff's contention that there were repeated unlawful arrests within a short period is erroneous.

Even more importantly, there was no widespread and "well-settled"

deliberately indifferent policy, as required by *Monell*, nor allegations that a final policymaker was aware of the incidents. The allegations regarding the 2017 incident are that an HPD officer wrongly wrote Thomas R. Castleberry as an alias on the face of the warrant. Complaint ¶ 36. The Complaint is devoid of any non-conclusory allegations of other such incidents, ever, and there are no allegations that a final policymaker was aware of or ratified any such action.

And if Plaintiff intends the failure to correct HPD records to be the intended City policy, this also fails. For policies of inaction, the custom or policy of inaction must be the result of a conscious or deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *See Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001). That is not the case here.

## III.   Plaintiff's *Monell* Cases Are Inapposite.

Plaintiff appears to contend that the Complaint is sufficient to state a *Monell* claim absent any factual allegations of prior similar incidents, citing cases,[3] all of

---

[3] *Henry v. Cty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997), *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986), *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *Pierce v. Cty. of Marin*, 291 F. Supp. 3d 982, 995 (N.D. Cal. 2018), *Powe v. Chicago*, 664 F.2d 639, 651 (7th Cir. 1981), *Rogan v. Los Angeles*, 668 F. Supp. 1384 (C.D. Cal. 1987), *Sincerny v. City of Walnut Creek*, No. 17-cv-02616-HSG, 2018 U.S. Dist. LEXIS 54881, at *2 (N.D. Cal. Mar. 30, 2018), and *Reyes v. City of Glendale*, No. CV05-0253 CAS MANX, 2009 WL 2579614 (C.D. Cal. Aug. 19, 2009).

which are inapposite.

The plaintiff in *Henry,* which is a pre-*Iqbal* case, did in fact produce evidence that both he and others received similar treatment on other occasions. *McRorie* involved a complaint that alleged that a prison guard attempted to plunge a riot stick into the plaintiff's anus during a strip search after a shakedown, that the guard was acting under the orders of his superiors, that 28 other inmates were also seriously injured during the strip search, and other facts showing that the attack was not an isolated incident. In *Baca*, the plaintiff specifically alleged numerous incidents in which inmates in the county jails had been killed or injured due to the actions of subordinates of the defendant-supervisor and there were "detailed factual allegations" about the numerous incidents. *Pierce* is a non-binding California district court decision that pointed to numerous specific factual allegations, including knowledge of the plaintiff's court dates, reissuance of the warrant, and the sending of a booking photo by an employee to the Ukiah police after being informed by the police that the plaintiff had claimed that she had been repeatedly mistakenly arrested under the warrant issued for Huggard. *Powe* is a Seventh Circuit pre-*Iqbal* case that not only has not been adopted by the Ninth Circuit, but has also been questioned and distinguished in the Seventh Circuit. *Rogan* is a 1987 non-binding, pre-*Iqbal* California district court decision involving stolen identity and an individual who was arrested multiple times at gunpoint over

6

three years. *Sincerny* is a non-binding California district court opinion regarding alleged unconstitutional show-up procedures, and a case that provides very little factual or legal analysis, with facts that bear no resemblance to this case. In *Reyes*, it appears that the specific policies of the police department were undisputed, and in any event, the order mentioned *Monell* only three times in the context of a motion in limine that was ultimately decided on state, not federal, law.

As to the HPD Defendants, this case does not involve either (1) repeated unlawful arrests within a short period of time prior to 2017 so as to put the City on notice, (2) knowledge by a final policymaker of the incidents or ratification of the incidents, or (3) repeated insistence by Plaintiff *to HPD officers* that he was Joshua Spriestersbach. Rather, in 2011 he did not give his real name, and in 2015 he was not arrested on Castleberry's warrant. There is no authority for finding those two prior factually dissimilar incidents to constitute the requisite notice, nor for showing a widespread City custom that was deliberately indifferent and the moving force behind the constitutional violation. Furthermore, there are no incidents alleged in the Complaint that are similar to the 2017 incident.

Plaintiff next argues that this is a case in which the failure to train amounts to deliberate indifference when it is highly predictable that the absence of such training could lead to constitutional violations. Opp. at 17–18. This argument suffers several infirmities. "Single-incident" liability is "rare" and found "in a

narrow range of circumstances," only where the violation is a "highly predictable consequence of the failure to train."[4] This narrow exception does not apply because Plaintiff is not claiming that this is a "single incident." Causation is also lacking because it is not alleged that the affirmative writing of Thomas R. Castleberry as an alias on the face of the warrant[5] was part of any training by HPD.  It is not specifically alleged (nor could it be) that HPD is in charge of the booking process at OCCC. And the allegations that failure to identify Plaintiff's identity violated "all applicable rules and regulations and relevant standards of care, causing injury to Joshua"[6] is causally invalid as to the City Defendants: it contradicts the conclusion that the City was on notice of his lengthy detention by the State, in which he had access to public defenders, the court system, and a hospital that previously treated him. Those events are too attenuated to be viewed as a "highly predictable" cause of HPD's alleged failure to train.

## IV.   Plaintiff Is Not Bringing a Substantive Due Process Claim.

While the Complaint fails to clarify, the opposition confirms that Plaintiff is only pursuing a *procedural* due process claim, not a substantive due process claim. Opp. at 18.

---

[4] *See Nordenstrom v. Corizon Health*, Inc., No. 3:18-cv-01754-HZ, 2021 U.S. LEXIS 115139, at *44-45 (D. Or. June 18, 2021) (citations omitted).

[5] Complaint ¶ 36.

[6] *See* ECF No. 1, ¶ 39.

## V.  Plaintiff's Causation Argument is Incorrect.

Plaintiff claims (without citation to authority) that this is not an intervening cause case because he has every right not to be seized, arrested, and detained without probable cause. Opp. at 18. But this argument contradicts his earlier assertion that this is really a false *imprisonment* claim that is not time-barred.

The argument also fails because all of the subsequent events were unforeseeable: (1) the booking procedures by OCCC, (2) his multiple public defenders, and (3) his various trained doctors at a facility that had already housed and treated this exact same person, and (4) the repeated protestations *to them* that he was not Spriestersbach, It was unforeseeable that all of these would result in his lengthy detention.

## VI.  Plaintiff's Fourth Amendment Arguments Fail.

Plaintiff argues that the Fourth Amendment states a *Monell* claim, citing to the same out-of-circuit, factually distinguishable, and pre-*Iqbal* cases discussed above. Opp. at 19. But the so-called "extreme" nature of the three distinct incidents is factually inaccurate. There were no repeated arrests on Castleberry's warrant prior to 2017. The vague and non-specific allegations that "the City does not train its officers on determining who exactly they are arresting or even on ensuring records are accurate; or investigating the identity of houseless and mentally ill persons before simply arresting them"—do not show a non-conclusory and specific

9

deficiency in training that is "closely related to the ultimate injury." *See Cameron v. Gila Cty.*, No. CV11-80-PHX-JAT, 2011 U.S. Dist. LEXIS 56650, at *8 (D. Ariz. May 25, 2011).

## VII.   Plaintiff Misapprehends the ADA Law.

Plaintiff begins his ADA discussion with two assertions: (1) the City is liable for both its own actions and failures to provide reasonable accommodations for a disability, *and* (2) the City is vicariously liable for the same conduct. For authority he cites *Borawick v. City of Los Angeles*, 793 F. App'x 644, 646 (9th Cir. 2020) (citing *Duvall v. Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001). While *Borawick* and *Duvall* hold that respondeat superior liability is appropriate, they do not suggest that an ADA claim *based on Monell* is appropriate. Any *Monell* claim fails here under *Iqbal* because there is no widespread and well-settled discriminatory policy, and there are no allegations regarding final policymakers.

It is also worth noting that most other circuits have rejected the straight respondeat superior theory adopted by the Ninth Circuit, and even Ninth Circuit cases express skepticism of *Duvall*:

- *Ravenna v. Village of Skokie*, 388 F. Supp. 3d 999, 1004–08 (N.D. Ill. 2019) ("Unlike the Ninth Circuit's decision in *Duvall*, the Eleventh Circuit's decision in *Liese* finding no respondeat superior liability under Title II of the ADA stands on much stronger ground. It tracks the Supreme Court's

10

reasoning in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998)") (cleaned up);

- *Hooper v. City of St. Paul*, No. 17-CV-3442 (PJS/DTS), 2019 U.S. Dist. LEXIS 145084, at *27–28 (D. Minn. Aug. 26, 2019) ("The foundation of the Ninth Circuit's decision in Duvall is questionable.…In short, Duvall is the only appellate decision that has not relied on a Title I case in determining that vicarious liability is available under Title II of the ADA.");

- *Jones v. City of Detroit*, No. 21-1055, 2021 U.S. App. LEXIS 37757, at *8 (6th Cir. Dec. 21, 2021) ("But time and circumstances have not favored either decision. Our conclusion that vicarious liability does not apply to Title II of the ADA or § 505 of the Rehabilitation act takes us to the end of the road for Jones's two failure-to-accommodate claims against the City.") (cleaned up).

And at least one recent district court in the Ninth Circuit held that while respondeat superior still applies in the ADA and Section 504 contexts, the district could be liable only if a person with sufficient authority had advance notice of the problem. *See K.H. v. Antioch Unified Sch. Dist.*, 424 F. Supp. 3d 699, 700–02 (N.D. Cal. 2020).

Even if one assumes *Duvall* is good law in the Ninth Circuit, it requires an individual upon whom the City's liability is based to "act with a mens rea of

intentional discrimination," and *Iqbal* further requires courts to exclude "rhetorical hyperbole and conclusory assertions" when making such a determination. *See, e.g., Bylsma v. Hawaii*, No. 19-cv-00611-DKW-RT, 2019 U.S. Dist. LEXIS 219200, at *5–6 (D. Haw. Dec. 18, 2019) (cleaned up) (citing *Duvall*, 260 F.3d at 1138). None of the incidents with respect to the three HPD individuals here show such a culpable state of mind.

Again, there is no unlawful imprisonment claim against the HPD Defendants. In the ADA context, there are two types of unlawful arrest claims, neither of which are adequately pled here: "(1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of the disability as a criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater indignity in that process than other arrestees." *Sheehan v. City and Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014). The second type does not apply because the Complaint alleges that there was no probable cause for arrest. The first type also fails because there is no indication that HPD officers misperceived the effects of Plaintiff's disability as a criminal activity.

The opposition fails to clarify what disability Plaintiff is asserting, instead

12

merely pointing to conclusory allegations that any HPD officer knew of such a disability or acted or failed to act "by reason of" that disability. Complaint ¶ 80. Indeed, Plaintiff cites to no case law or other authority that would suggest that "Joshua's disability and the perception of him by those in authority makes it difficult for his statements of fact about his identity to be trusted"[7]—is a recognized disability or that the officers should have known of such a disability during their interactions with him.

Plaintiff's argument that a reasonable accommodation was "obvious"[8] is particularly specious where the nature of the disability itself is framed in terms of it being difficult for others to trust what Plaintiff was saying. To the extent Plaintiff is suggesting that he offered his real name in 2011—that not true. He only said that he was Castleberry, and later, once, stated that he was William Castleberry. Complaint at ¶¶ 19–22.

## VIII.  The Federal Abuse-of-Process Claim Is Nonexistent or Fails.

Plaintiff ignores the City's recent case law indicating that neither the Ninth Circuit nor the Supreme Court has recognized a federal 1983 abuse-of-process claim. Instead he only cites *Gowin v. Altmiller*, 663 F.2d 820, 823 (9th Cir. 1981), claiming that the Ninth Circuit has "presumed" such a cause of action "for some

---

[7] Complaint ¶ 79.

[8] Opp. at 22.

13

time." Opp. at 22. But the elements and case law cited in the *Gowin* case are for the California state abuse-of-process claim, not a federal claim. In any event, the case law case confirms both (1) that the Ninth Circuit has not adopted such a claim, and (2) that most federal courts that have considered the issue have held that an alleged abuse of process cannot give rise to a constitutional violation absent "conscience-shocking egregious wrongdoing." *See, e.g., West v. City of Mesa*, 708 F. App'x 288, 292 (9th Cir. 2017); *Emmanuel v. King County*, No. C18-0377JLR, 2020 Dist. LEXIS 152320, at *40–41 (W.D. Wash. Aug. 21, 2020); *Harvey v. United States*, No. 15-CV-24012-ALTONAGA, 2020 U.S. Dist. LEXIS 75356, at *39–41 (S.D. Fla. Apr. 28, 2020) (collecting cases).

The opposition also ignores the City's arguments regarding the state abuse-of-process elements, instead merely asserting that the elements are met because it is alleged that some defendant must have "altered" the *State* database to cover up the false imprisonment. Opp. at 23. But there are no allegations suggesting that any HPD officer was part of any cover-up, or that any HPD officer was the one who allegedly altered the State database. The fact that the City may have "access" to the State database does not make it plausible that an HPD Defendant was the one who allegedly altered it, particularly where it is not alleged that any HPD Defendant attended any of the alleged cover-up meetings. The opposition cites no authority suggesting that alteration of a database is the type of *legal* process contemplated in

14

abuse of process claims that are tied to *legal proceedings*, prosecution, etc. And there is no *Monell* aspect to the claim that a State database was allegedly altered by someone: there is no widespread custom of altering State databases or a final policymaker who did so.

## IX.    Malice and Improper Purpose Are Pled Conclusorily.

The state law claims require factual allegations of a clear and convincing nature that an HPD employee acted with malice and an improper purpose. The opposition only cites conclusory allegations of malice, and again mischaracterizes the three distinct police interactions. Opp. at 23–24. The cases cited are not factually analogous, not to mention that federal pleading standards, not state, govern this motion. The state law claims should be dismissed for the reasons stated in the motion, which were not adequately addressed in the opposition.

### CONCLUSION

The motion for judgment on the pleadings should be granted.

DATED:  Honolulu, Hawai'i, April 28, 2022.

DANA M.O. VIOLA
Corporation Counsel

By:  /s/ Robert M. Kohn
     RICHARD D. LEWALLEN
     ROBERT M. KOHN
     Deputies Corporation Counsel

     Attorneys for Defendant
     CITY AND COUNTY OF HONOLULU