LYONS, BRANDT, COOK & HIRAMATSU
Attorneys at Law
A Law Corporation

THOMAS E. COOK 1752-0
EDQUON LEE 3845-0
1800 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 524-7030
Facsimile: (808) 533-3011
Email: tcook@lbchlaw.com
Email: elee@lbchlaw.com

Attorneys for Defendant
DR. SHARON TISZA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JOSHUA SPRIESTERSBACH,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF HAWAI'I, CITY AND COUNTY OF HONOLULU, OFFICER ABRAHAM K. BRUHN, DEPARTMENT OF PUBLIC SAFETY, OFFICE OF THE PUBLIC DEFENDER, NIETZSCHE LYNN TOLAN, MICHELLE MURAOKA, LESLIE MALOIAN, JACQUELINE ESSER, JASON BAKER, MERLINDA GARMA, SETH PATEK, DR. JOHN COMPTON, DR. MELISSA VARGO, DR. SHARON TISZA, HAWAI'I STATE | ) | CIVIL NO. 21-00456 LEK-RT<br><br>DEFENDANT DR. SHARON TISZA'S **REPLY** MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT, FILED ON MARCH 14, 2022; CERTIFICATE OF SERVICE<br><br>Judge: Hon. Leslie E. Kobayashi |

HOSPITAL, DR. ALLISON GARRETT, and JOHN/JANE DOES 1-10, )
)
Defendants. )
)

DEFENDANT DR. SHARON TISZA'S **REPLY** MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT, FILED ON MARCH 14, 2022

Defendant SHARON TISZA, M.D. ("Dr. Tisza"), by and through her attorneys, Lyons, Brandt, Cook & Hiramatsu, hereby submits this reply memorandum in further support of her Motion to Dismiss Complaint ("Dr. Tisza's Motion") [ECF No. 80] and in response to Plaintiff's Opposition to Defendant Tisza's Motion to Dismiss ("Plaintiff's Opposition") [ECF No. 105].

## I. DISCUSSION

### A. Dr. Tisza's Involvement With Plaintiff Was Limited to Her Court Appointment As A Psychiatric Examiner

Plaintiff erroneously contends that judicial notice of the court orders in the case entitled State of Hawaii v. Thomas R. Castleberry, Case No. 1PC061001421, Circuit Court of the First Circuit, State of Hawaii (hereinafter the "Criminal Case"), create contested facts. It is clear that the Circuit Court orders, Exhibits 3, 4, 5 and 6 to Dr. Tisza's Motion, establish that Dr. Tisza was a court appointed psychiatrist who was ordered to evaluate the fitness to proceed and penal responsibility in the Criminal Case of Plaintiff, who was the person in the custody of the State of Hawaii. Plaintiff does not dispute that Dr. Tisza only acted in her

21419 REPLY 01

capacity as a court appointed psychiatrist performing examinations of Plaintiff as ordered by the Circuit Court. As a court appointed psychiatric, Dr. Tisza is entitled to judicial immunity from suit for acts and omissions which allegedly occurred during her court ordered evaluations.

B. Dr. Tisza's Performance Of Court-Ordered Examinations Was Not An Act In The Clear Absence Of All Jurisdiction

The sole basis of Plaintiff's contention that Dr. Tisza is not entitled to judicial immunity is that there was an alleged absence of jurisdiction because she evaluated Plaintiff, who was identified as Thomas Castleberry by the Honolulu Police Department ("HPD"), the State of Hawaii, the Deputy Public Defenders, and the Circuit Court, instead of the actual Thomas Castleberry. See Plaintiff's Opposition at pp. 9-10. However, Plaintiff misconstrues the meaning of the "clear absence of all jurisdiction" exception to the doctrine of judicial immunity.

The law is well-established that "[a] clear absence of all jurisdiction means a **clear lack of all subject matter jurisdiction**." Mullis v. U.S. Bankr. Court for Dist. of Nevada, 828 F.2d 1385, 1389 (9th Cir. 1987) (emphasis added). Jurisdiction should be broadly construed to effectuate the policies supporting immunity. Miller v. Davis, 521 F.3d 1142, 1147 (9th Cir. 2008) (citation omitted); see also Stump v. Sparkman, 435 U.S. 349, 98 S. Ct. 1099, 55 L. Ed. 2d 331(1978) ("Because 'some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction ...,' the

scope of the judge's jurisdiction must be construed broadly ....”

(quoting Bradley, 80 U.S. at 352)) (citation omitted). The meaning of a lack of subject matter jurisdiction in the context of nullifying quasi-judicial immunity was exemplified in the seminal case Bradley v. Fisher. As acknowledged by Plaintiff, the Supreme Court in Bradley illustrated that there is no subject matter jurisdiction where a probate judge tries a criminal case in his court. 80 U.S. 335, 351-52 (1871). The Bradley Court also held that an act in the clear absence of jurisdiction is distinct from an act in excess of jurisdiction. Id. Acts in excess of jurisdiction do not abrogate judicial immunity even when such acts are alleged to have been done maliciously or corruptly. Id.

The only case that Plaintiff cites to where a court found a defendant acting in clear absence of jurisdiction is Von Arx v. Shafer, 241 F. 649, 651 (9th Cir. 1917). Unlike the magistrate in Von Arx, Dr. Tisza did not participate in any scheme to confine Plaintiff. There is no allegation to suggest that Dr. Tisza engaged in or ratified any type of conduct outside of what she was appointed to do in evaluating Plaintiff.

The circumstances of the instant case are largely analogous to case law, in which the courts found that defendants did not act in the absence of jurisdiction and immunity was preserved. See O'Neil v. City of Lake Oswego, 642 F.2d 367, 369 (9th Cir.1981) (holding that a judge who convicted defendant for

contempt, an act within the court's jurisdiction, but without the affidavit required by statute to confer jurisdiction over the offense charged was still entitled to immunity; his act was merely in excess of his jurisdiction); Mullis v. U.S. Bankr. Court for Dist. of Nevada, 828 F.2d 1385, 1390-91 (9th Cir. 1987) (holding that a bankruptcy trustee who allegedly refused to recommend debtor's motion to withdraw, refused to acknowledge that bankruptcy court lost jurisdiction once notice of appeal was filed, filed motion for appointment of guardian ad litem in attempt to prevent debtor from representing himself, and communicated ex parte with bankruptcy judges had absolute quasi-judicial immunity from civil damages); Schucker v. Rockwood, 846 F.2d 1202, 1204 (9th Cir.1988) (holding that a judge who "misinterpreted a statute and erroneously exercised jurisdiction" did not act in the "clear absence of all jurisdiction").

Here, Dr. Tisza was clearly performing evaluations of the person in custody at the Oahu Community Correctional Center ("OCCC") and the Hawaii State Hospital pursuant to orders of the Circuit Court. Plaintiff does not allege that Dr. Tisza performed any other action outside the realm of the mandated psychiatric evaluations. Rather, Plaintiff argues that Dr. Tisza lacked jurisdiction because she "knew or should have known" that Plaintiff was not Thomas Castleberry since Dr. Tisza's reports submitted to the Circuit Court detail Plaintiff's statements to her. See Plaintiff's Opposition at pp. 7-9. Plaintiff alleges that Dr. Tisza was "required"

to review the records, verify the identity of the Plaintiff and "to act on the information in these records and files as required by the Court's order, which caused Plaintiff's wrongful incarceration." Id. at 8 & 9[1]. The gist of Plaintiff's arguments and allegations is that Dr. Tisza negligently performed her evaluations by failing to conclude that Plaintiff was not the actual Thomas Castleberry. Alleged negligence, even if proven true, is not conduct that is undertaken in the clear absence of all subject matter jurisdiction. Negligence is a mistake in excess of jurisdiction, which does not abrogate judicial immunity.

Moreover, the State of Hawaii did have custody of Plaintiff at OCCC and Plaintiff's attorneys in the Criminal Case requested that the Circuit Court order an evaluation of Plaintiff, the person in custody. See Exhibit 2 at Dkt. Nos. 57 and Exhibit 3 to Dr. Tisza's Motion. Plaintiff's own attorneys and the Circuit Court had named Plaintiff as Thomas Castleberry when the Circuit Court ordered Plaintiff's evaluations by Dr. Tisza. Accordingly, the Circuit Court had jurisdiction over Plaintiff since he was the person in custody of the State at OCCC.

---

[1] Plaintiff misinterprets the Circuit Court orders (Exhibits 3-6 of Dr. Tisza's Motion). There is nothing in the Complaint, Circuit Court orders, and Dr. Tisza's reports (Exhibits H and I of Plaintiff's Opposition) indicating that medical records from California were provided to Dr. Tisza's review.

C. Dr. Tisza's Performance Of Court-Ordered Evaluations Was A Function Integral To The Judicial Process, Involving The Exercise Of Discretionary Judgment, And Functionally Comparable To Those Of Judicial Officers

Plaintiff erroneously argues that his claims against Dr. Tisza are not barred by judicial immunity as Dr. Tisza's acts lacked the appropriate judicial character. Determining an accused defendant's competency to stand trial and penal responsibility are fundamental to the criminal justice system in adjudicating criminal charges.

Plaintiff erroneously contends that the rule in Seibel v. Kemble, 631 P.2d. 173 (1981), which granted court-appointed psychiatrists' absolute judicial immunity because they were performing a "function integral to the judicial process" has been overruled by Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435. Despite Plaintiff's unfounded claim that this application of immunity was overturned, this remains Hawaii law and law in the 9th Circuit. Modern law is well-defined that judicial officers maintain absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an "integral part of the judicial process". See Mullis, 828 F.2d at 1390 (finding that court clerks who allegedly failed to give a debtor proper counseling and notice regarding chapters of the Bankruptcy Code under which the debtor could file, accepted and filed incomplete bankruptcy petition, and refused to accept an amended petition were performing integral parts of the judicial process and thereby had absolute

immunity from damages); Grindling v. Taylor, No. CV 18-00495 JMS-RT, 2020 WL 1861655, at *3 (D. Haw. Apr. 13, 2020) (holding that the tasks of the drug court administrator in determining treatment plans for incarcerated participants and reviewing and making recommendations to the drug court judge for imposition of court-ordered incentives and sanctions were "clearly integral to the judicial process"). The courts have simply specified that for quasi-judicial immunity to apply to a nonjudicial officer, the function performed "must be a judicial act with a sufficiently close nexus to the adjudicative process," and involve the exercise of discretionary judgment." In re Castillo, 297 F.3d 940, 948-49 (9th Cir. 2002), as amended (Sept. 6, 2002).

Here, Dr. Tisza was appointed by the Circuit Court and ordered to examine the person in custody at OCCC and at the Hawaii State Hospital. Dr. Tisza was ordered to prepare reports concerning that person in custody's trial competency. These duties involve the "exercise of discretionary judgement" and thus are functionally comparable to those of judicial officers. See Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435-36 (1993).

Although Plaintiff dismisses Seibel's applicability to the instant case and grossly contorts Dr. Tisza's argument to mean that court-appointed psychiatrists enjoy immunity for anything they do, Seibel is directly applicable here. It is undisputed that Dr. Tisza's role was to examine and provide reports

concerning the person in custody's trial competency. The person in custody was Plaintiff. Dr. Tisza had no authority or role in arresting and detaining Plaintiff. Plaintiff does not dispute that Dr. Tisza's duties involve discretion and are integral to the judicial process. Rather, he disagrees that there is a distinction between those who initially put Plaintiff in custody of the criminal justice system and those who were required by the Court to evaluate fitness of the person in custody.

In addition, Plaintiff relies heavily on Swift v. California, 384 F.3d 1184, 1188 (9th Cir. 2004) and Garcia v. Cnty. Of Riverside, 817 F.3d. 635, 640 (9th Cir. 2016) in arguing that quasi-judicial immunity does not apply to Dr. Tisza. The Ninth Circuit Court has been clear that incarceration based on mistaken identity "might" violate the Due Process Clause in some circumstances. Garcia, 817 F.3d. at 640. Unlike Plaintiff's characterization of this breadth of law, this is not a unilateral rule that all non-judicial officers, serving integral judicial functions in cases where there is an unfortunate incarceration based on mistaken identity should be subject to an abrogation of their qualified immunity.

One such category of cases is where circumstances indicated to the defendants that further investigation was warranted, which Plaintiff erroneously contends is applicable to Dr. Tisza. A "further investigation" case requires significant differences between the arrestee and the true warrant subject. Id. In Garcia, the Ninth Circuit Court specifically concluded that an officer was not

entitled to qualified immunity because, for "further investigation" cases, 'the standards for determining whether alleged police conduct violates the Fourteenth Amendment were clearly established and that "officers violate the Fourteenth Amendment if they wrongly detain a person where 'the circumstances indicated to [them] that further investigation was warranted.'" Id. at 643 (citations omitted). The case law cited by Plaintiff in his contention that Dr. Tisza failed to meet her burden of establishing a defense of absolute quasi-judicial immunity has exclusively been applied to law enforcement officers, including sheriffs, parole officers, and prison officials, who explicitly had the authority to detain and imprison a misidentified person, and municipalities and related agencies that had oversight of training, policies, and procedures that governed law enforcement officers conduct specific to detention and imprisonment. See Swift v. California, 384 F.3d 1184, 1188 (9th Cir. 2004) (finding that **parole officers** were not entitled to absolute immunity for their conduct while investigating suspected parole violations and other functions not requiring exercise of discretionary judgment) (emphasis added); Rivera v. County of Los Angeles, 745 F.3d 384, 393 (9th Cir. 2014) (finding that the **counties and sheriff's departments** had immunity from claims for false imprisonment by an arrestee who was mistakenly identified as subject of an arrest warrant, where the sheriff's deputies had reasonable belief that the arrestee was the subject named in the warrant) (emphasis added); Garcia v.

Cnty. Of Riverside, 817 F.3d. 635, 640 (9th Cir. 2016) (finding that the **county** and **sheriff** were not entitled to absolute immunity where they mistakenly incarcerated a man on a warrant without a reasonable investigation of his identity, when the circumstances clearly demanded it at the time of the man's arrest). To extend this analysis to a court-appointed psychiatrist, who had a specific court-determined role of evaluating the trial fitness of a person who was already in custody, would be contrary to existing case law and policy.

Accordingly, Dr. Tisza is entitled to judicial immunity on all claims asserted by Plaintiff.

D. It Is Futile To Amend The Complaint

While the courts freely give leave to amend a complaint "when justice so requires," the courts may deny a motion to amend a complaint when a proposed complaint would be futile. See Carrico v. City & Cty. of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011); Gordon v. City of Oakland, 627 F.3d 1092, 1094 (9th Cir. 2010). Assuming arguendo that the Court finds that Dr. Tisza is immune from suit, it would be futile to allow Plaintiff to amend his Complaint and therefor, the request for leave to amend should be denied.

II. CONCLUSION

Based upon the forgoing, Dr. Tisza respectfully requests that the Court grant her Motion to Dismiss the Complaint.

DATED: Honolulu, Hawaii, April 28, 2022.

/s/ Edquon Lee
THOMAS E. COOK
EDQUON LEE
Attorneys for Defendant
DR. SHARON TISZA