UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JOSHUA SPRIESTERSBACH,<br><br>            Plaintiff,<br><br>    vs.<br><br>STATE OF HAWAII, CITY AND COUNTY OF HONOLULU, OFFICER ABRAHAM K. BRUHN, DEPARTMENT OF PUBLIC SAFETY, OFFICE OF THE PUBLIC DEFENDER, NIETZSCHE LYNN TOLAN, MICHELLE MURAOKA, LESLIE MALOIAN, JACQUELINE ESSER, JASON BAKER, MERLINDA GARMA, SETH PATEK, DR. JOHN COMPTON, DR. MELISSA VARGO, DR. SHARON TISZA, HAWAII STATE HOSPITAL, DR. ALLISON GARRETT, JOHN/JANE DOES 1-20,<br><br>            Defendants. | CIV. NO. 21-00456 LEK-RT |

**ORDER: GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR JUDGMENT ON THE PLEADINGS; GRANTING DEFENDANT DR. SHARON TISZA'S MOTION TO DISMISS COMPLAINT; AND GRANTING DEFENDANTS DR. JOHN COMPTON AND DR. MELISSA VARGO'S SUBSTANTIVE JOINDER IN DEFENDANT DR. SHARON TISZA'S MOTION TO DISMISS COMPLAINT**

On March 14, 2022, Defendant City and County of Honolulu ("the City") filed its Motion for Judgment on the Pleadings ("City Motion"), and Defendant Dr. Sharon Tisza ("Dr. Tisza") filed a Motion to Dismiss Complaint ("Tisza Motion"). [Dkt. nos. 79, 80.] On March 17, 2022, Defendants Dr. John Compton ("Dr. Compton") and Dr. Melissa Vargo ("Dr. Vargo") filed a substantive joinder in the Tisza Motion

("Compton/Vargo Joinder").[1]  [Dkt. no. 84.]  On April 14, 2021, Plaintiff Joshua Spriestersbach ("Spriestersbach") filed his opposition to the Tisza Motion and the Compton/Vargo Joinder ("Examiners Opposition") and his opposition to the City Motion ("City Opposition").[2]  [Dkt. nos. 105, 106.]  On April 28, 2022, the City and Dr. Tisza filed their respective replies ("City Reply" and "Tisza Reply"), [dkt. nos. 110, 111,] and Drs. Compton and Vargo filed their reply and an errata thereto,[3] [dkt. nos. 112, 113].  The Court finds these matters suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").  For the reasons set forth below, the City Motion is granted in part and denied in part, and the Tisza Motion and the Compton/Vargo Joinder are

---

[1] On March 22, 2022 Defendants Jason Baker, Jacqueline Esser, Merlinda Garma, Leslie Maloian, Michelle Muraoka, Office of the Public Defender, Seth Patek, and Nietzsche Lynn Tolan ("PD Defendants") filed statements of no position as to the City Motion, the Tisza Motion, and the Compton/Vargo Joinder.  [Dkt. nos. 89, 90, 91.]  Dr. Tisza filed a statement of no opposition to the City Motion on March 24, 2022.  [Dkt. no. 94.]  On April 14, 2021, Defendant Dr. Allison Garrett ("Dr. Garrett") filed a statement of no position as to the Tisza Motion and the Compton/Vargo Joinder and a statement of no position as to the City Motion.  [Dkt. nos. 103, 104.]

[2] Dr. Tisza, Dr. Compton, and Dr. Vargo will be referred to collectively as "the Examiner Defendants."

[3] Docket numbers 112 and 113 will be referred to collectively as the "Compton/Vargo Reply."

granted.  Judgment on the pleadings is granted in favor of the City as to all of Spriestersbach's claims against it, but Spriestersbach is granted leave to amend those claims, and all of Spriestersbach's claims against the Examiner Defendants are dismissed with prejudice.

<u>**BACKGROUND**</u>

The instant case arises from Spriestersbach's May 11, 2017 arrest for crimes committed by Thomas R. Castleberry and Spriestersbach's subsequent detention related to that arrest until January 17, 2020.  <u>See</u> Complaint, filed 11/21/21 (dkt. no. 1), at pg. 2, ¶ 2.[4]

On October 14, 2011, when Spriestersbach was arrested for sleeping on a stairwell, he gave the name "Castleberry," with no first name, to the arresting officer.  [<u>Id.</u> at pgs. 11-12, ¶ 19.]  When the arresting officers entered the name Castleberry into their computer, they learned of a July 2009 warrant for Thomas R. Castleberry ("Castleberry Warrant"), and they arrested Spriestersbach for the warrant.  Spriestersbach later explained that William C. Castleberry was his grandfather, and that he would occasionally use his grandfather's name. Spriestersbach was not required to make a court appearance in connection with this arrest.  [<u>Id.</u> at pg. 12, ¶¶ 20-23.]

---

[4] Because there are two sets of paragraphs numbers 1 through 22, citations to those paragraphs also include page numbers.

On January 17, 2015, Spriestersbach was approached by police officers because he was houseless and sleeping in a City park.  Although he initially refused to tell them his name, he eventually told the officers his name was Joshua Spriestersbach.  [Id. at ¶¶ 25-26.]  The Honolulu Police Department ("HPD") database listed Thomas R. Castleberry as one of Joshua Spriestersbach's aliases.  The officers then looked for any outstanding warrants for either Joshua Spriestersbach or his aliases, Thomas R. Castleberry and William C. Castleberry.  The officers learned about the Castleberry Warrant, but they did not arrest Spriestersbach because his fingerprints did not match the fingerprints on file for Thomas Castleberry.  [Id. at ¶¶ 27-31.]

On May 11, 2017, Spriestersbach was arrested after he fell asleep on a sidewalk while waiting in a food distribution line.  Spriestersbach gave his full name, birth date, and social security number to an HPD officer, Defendant Abraham Bruhn ("Bruhn"), and to the other HPD officers who participated in Spriestersbach's arrest.  [Id. at ¶¶ 33-35.]  One of the officers had a copy of the Castleberry Warrant, and Bruhn, either acting alone or together with other HPD officers, hand wrote "Joshua Spriestersbach" on the warrant as an alias for Thomas R. Castleberry.  [Id. at ¶ 36.]  Bruhn, either acting alone or with other officers, arrested Spriestersbach for the Castleberry Warrant and transported him to the Oahu Community

4

Correctional Center ("OCCC"), which is operated by Defendant State of Hawai`i Department of Public Safety ("DPS"). Spriestersbach was fingerprinted and photographed at OCCC. Spriestersbach alleges neither Bruhn, the other arresting officers, nor any OCCC employee compared his photograph, fingerprints, or other identifying information with Thomas Castleberry's identifying information. Spriestersbach asserts that, if they had done so, they would have realized that he had been misidentified as Thomas Castleberry. [Id. at ¶¶ 37-40.]

Before his first court hearing, Spriestersbach told his attorney, Deputy Public Defender Nietzsche Lynn Tolan ("Tolan"), that he was not Thomas Castleberry and that he had not committed the crimes attributed to Thomas Castleberry. Spriestersbach also provided Tolan with identifying information. Tolan requested a court-ordered evaluation to determine if Spriestersbach was mentally fit to proceed. The Examiner Defendants were the panelists appointed to perform the evaluation. [Id. at ¶¶ 42-44.]

The Examiner Defendants evaluated Spriestersbach on multiple occasions, including after his transfer from OCCC to the Hawai`i State Hospital ("HSH"). Spriestersbach states he told the Examiner Defendants multiple times that he was not Thomas Castleberry, and he asserts they had access to his legal records and his medical records. However, the Examiner

Defendants did not confirm his identity. [Id. at ¶¶ 46-47.] Instead, the Examiner Defendants cited Spriestersbach's protests about his identity as evidence that he was not fit to proceed in the pending criminal case. [Id. at ¶ 48.]

According to the Complaint, Dr. Garrett, an HSH physician, verified in January 2020 that Spriestersbach was not Thomas Castleberry, and Spriestersbach was released on January 17, 2020. [Id. at ¶¶ 54-55.]

The Complaint alleges thirteen claims against seventeen defendants. Relevant to the matters addressed in this Order, Spriestersbach alleges the following claims:

-a 42 U.S.C. § 1983 claim against the City and the Examiner Defendants alleging violations of Spriestersbach's rights under the Fourth Amendment ("Count I");

-a § 1983 claim against the City and the Examiner Defendants alleging violations of Spriestersbach's due process rights under the Fourteenth Amendment ("Count II");

-a disability discrimination claim against the City, based upon violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* ("Count III");

-a § 1983 claim against the City alleging abuse of process, in violation of Spriestersbach's rights under the Fourteenth Amendment ("Count IV");

-a false imprisonment claim against the Examiner Defendants ("Count VIII");

-a negligence claim against the Examiner Defendants ("Count IX");

-a medical malpractice claim against the Examiner Defendants ("Count X");

-an intentional infliction of emotional distress ("IIED") claim against the City and the Examiner Defendants ("Count XI"); and

-a negligent infliction of emotional distress ("NIED") claim against the City and the Examiner Defendants ("Count XII").

The City seeks judgment on the pleadings as to all of the claims against it because: the federal law claims are time-barred; Spriestersbach has not pled sufficient factual allegations to support any of his claims against the City; and, as to his IIED and NIED claims, Spriestersbach has not pled sufficient factual allegations to support his position that one or more City employees acted with malice, which is required to hold the City liable under respondeat superior for torts committed by its employees.  As to Spriestersbach's federal law claims, the City urges this Court to grant judgment on the pleadings without leave to amend.  The City does not address whether leave to amend should be granted if the City is granted judgment on the pleadings as to Spriestersbach's state law claims.

Drs. Tisza, Compton, and Vargo seek the dismissal, with prejudice, of all of Spriestersbach's claims against them, based on quasi-judicial immunity.

## DISCUSSION

I.   **The City Motion**

    A.   **Statute of Limitations**

        The City first argues all of Spriestersbach's federal law claims against it are time-barred.

        1.   **Spriestersbach's § 1983 Claims**

        Spriestersbach's § 1983 claims are governed by the Hawai`i limitations period for personal injury actions.  See Nance v. Ward, 142 S. Ct. 2214, 2225 (2022).  The Hawai`i statute of limitations for personal injury actions is two years. Haw. Rev. Stat. § 657-7.  State tolling statutes are also applied to § 1983 claims, see Artis v. Dist. of Columbia, 138 S. Ct. 594, 603 (2018), as are equitable tolling rules, "except to the extent any of these laws is inconsistent with federal law[,]" Butler v. Nat'l Cmty. Renaissance of Cal., 766 F.3d 1191, 1198 (9th Cir. 2014) (quotation marks and citations omitted).  However, "the time at which a § 1983 claim accrues is a question of federal law, conforming in general to common-law tort principles."  McDonough v. Smith, 139 S. Ct. 2149, 2155, 204 L. Ed. 2d 506 (2019) (citation and internal quotation marks omitted).  Courts look to "the most natural common-law analogy" to determine when a particular § 1983 claim accrues.  Id.

a.   **Accrual of Spriestersbach's § 1983 Claims**

The City argues all of Spriestersbach's § 1983 claims against it "are based on acts or omissions by HPD officers on or prior to May 11, 2017," the date of his arrest, and they are time barred because they accrued on or before that date.[5]  [Mem. in Supp. of City Motion at 5.]  Spriestersbach argues his § 1983 claims are most closely analogous to the common law torts of false arrest and false imprisonment.  The United States Supreme Court has stated:

> False arrest and false imprisonment overlap; the former is a species of the latter.  "Every confinement of the person is an imprisonment, whether it be in a common prison or in a private house, or in the stocks, or even by forcibly detaining one in the public streets; and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in which he is."  M. Newell, Law of Malicious Prosecution, False Imprisonment, and Abuse of Legal Process § 2, p. 57 (1892) (footnote omitted).  See also 7 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 27:2, pp. 940–942 (1990).  We shall thus refer to the two torts together as false imprisonment.  That tort provides the proper analogy to the cause of action asserted against the present respondents for the following reason: The sort of unlawful detention remediable by the tort of false imprisonment is detention **without legal process**, see, *e.g.*, W. Keeton, D. Dobbs,

---

[5] Although the Complaint describes Spriestersbach's arrest and detention on October 14, 2011 and January 17, 2015, [Complaint at pgs. 11-13,] this Court construes those factual allegations as background for Spriestersbach's claims arising from his arrest on May 11, 2017 and subsequent detention.  This Court therefore rejects the City's suggestion that Spriestersbach is asserting claims based directly on the 2011 and 2015 events.  See City Reply at 1.

R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 11, p. 54, § 119, pp. 885–886 (5th ed. 1984); 7 Speiser, *supra*, § 27:2, at 943–944, and the allegations before us arise from respondents' detention of petitioner **without legal process** in January 1994.  They did not have a warrant for his arrest.

The running of the statute of limitations on false imprisonment is subject to a distinctive rule — dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned: "Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends."  2 H. Wood, Limitation of Actions § 187d(4), p. 878 (rev. 4th ed. 1916); see also 4 Restatement (Second) of Torts § 899, Comment c (1977); A. Underhill, Principles of Law of Torts 202 (1881).  Thus, to determine the beginning of the limitations period in this case, we must determine when petitioner's false imprisonment came to an end.

Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held **pursuant to such process** — when, for example, he is bound over by a magistrate or arraigned on charges.  1 Dobbs, *supra*, § 39, at 74, n.2; Keeton, *supra*, § 119, at 888; H. Stephen, Actions for Malicious Prosecution 120–123 (1888).  Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by **wrongful institution** of legal process. Keeton, *supra*, § 119, at 885–886; see 1 F. Harper, F. James, & O. Gray, Law of Torts § 3.9, p. 3:36 (3d ed. 1996); 7 Speiser, *supra*, § 27:2, at 943–945.  "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.  From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention

> itself." Keeton, *supra*, § 119, at 888; see also
> Heck [v. Humphrey], [512 U.S. 477,] 484 [(1994)];
> 8 Speiser, *supra*, § 28:15, at 80. Thus,
> petitioner's contention that his false
> imprisonment ended upon his release from custody,
> after the State dropped the charges against him,
> must be rejected. It ended much earlier, when
> legal process was initiated against him, and the
> statute would have begun to run from that date,
> but for its tolling by reason of petitioner's
> minority.

Wallace v. Kato, 549 U.S. 384, 388-90 (2007) (emphases in

Wallace) (footnotes omitted).

Wallace, the petitioner, had been subjected, prior to

his formal arrest, to extended interrogations regarding a

shooting that occurred two days earlier, and had eventually

agreed to confess to the murder. Wallace was fifteen years old

at that time. He was charged and convicted of first-degree

murder. The state appellate courts held that Wallace had been

arrested without probable cause and that his confession was

inadmissible. The case was remanded for a new trial, but the

prosecutors dropped the charges against him. See Wallace, 549

U.S. at 386-87. Wallace filed a § 1983 action against the City

of Chicago and several individual police officers. Only the

Fourth Amendment false arrest claim was before the Supreme

Court. See id. at 387 & n.1.

The Supreme Court held that Wallace's § 1983 claim

based on his improper arrest accrued when a wrongful prosecution

was instituted against him. See id. at 389-90. In the instant

11

case, Spriestersbach was arrested on May 11, 2017 on the Castleberry Warrant.  <u>See</u> Complaint at ¶ 37.[6]  Unlike Wallace, legal process was never instituted against Spriestersbach; he was held in custody, under the name Thomas Castleberry.  <u>See,</u> <u>e.g.</u>, <u>id.</u> at ¶¶ 43-45.  This Court therefore concludes that Spriestersbach's § 1983 claims are most closely analogous to false arrest/imprisonment, not malicious prosecution, and therefore his § 1983 claims did not accrue until his release on January 17, 2020 from HSH, where he was being held in connection with the criminal case against Thomas Castleberry.  <u>See</u> <u>id.</u> at ¶ 55.  Spriestersbach's § 1983 claims were timely filed within two years of their accrual.  The City Motion is therefore denied as to the City's argument that Spriestersbach's § 1983 claims are time-barred.

### b.    <u>Tolling</u>

For the sake of completeness, this Court will also address Spriestersbach's argument that the statute of limitations was tolled, based on either Haw. Rev. Stat. § 657-13(3) or equitable tolling.  Section 657-13 provides that:

> If any person entitled to bring any action specified in this part (excepting actions against the sheriff, chief of police, or other officers)

---

[6] In considering a motion for judgment on the pleadings, this Court accepts the factual allegations of the complaint as true.  <u>See</u> <u>Gregg v. Hawai`i, Dep't of Pub. Safety</u>, 870 F.3d 883, 887 (9th Cir. 2017).

is, at the time the cause of action accrued,
either:

(1)  Within the age of eighteen years;

(2)  Insane; or

(3)  Imprisoned on a criminal charge, or in
execution under the sentence of a criminal
court for a term less than the person's
natural life;

such person shall be at liberty to bring such
actions within the respective times limited in
this part, after the disability is removed or at
any time while the disability exists.

This district court has concluded that the § 657-13 exception

for "the sheriff" precludes application of the statute to claims

against DPS or its employees.  See Namauu v. Dep't of Pub.

Safety, CIV. NO. 18-00062 JMS-RLP, 2018 WL 1733978, at *3 (D.

Hawai`i Apr. 10, 2018) (citing Coles v. Eagle, 2014 WL 2214046,

at *4 (D. Haw. May 27, 2014); Rodenhurst v. Hawaii, 2010 WL

1783568, at *3 (D. Haw. Apr. 29, 2010) (citing Samonte v.

Sandin, 2007 WL 461311, at *4 (D. Haw. Feb. 07, 2007))).

Similarly, this Court concludes that the exception for the

"chief of police, or other officers" precludes the application

of § 657-13 to claims against HPD, HPD's other employees, or the

City.[7]

_____

[7] This Court acknowledges that the Hawai`i Supreme Court
held that Haw. Rev. Stat. § 657-13(1) applied to the City in
Kahale v. City & County of Honolulu, 104 Hawai`i 341, 349, 90
P.3d 233, 241 (2004).  However, the plaintiffs' claims against
(. . . continued)

Spriestersbach also argues the doctrine of equitable tolling applies.  This district court has stated:

> Hawaii has adopted federal equitable tolling principles:
>
> > In order to toll a statute of limitations for a complaint filed after its expiration, a plaintiff must demonstrate "(1) that he . . . has been pursuing his right diligently, and (2) that some extraordinary circumstance stood in his way." Felter v. Norton, 412 F. Supp. 2d 118, 126 (D.D.C. 2006) (citing Pace v. DiGuglielmo, 544 U.S. 408, 417, 125 S. Ct. 1807, 1814, 161 L. Ed. 2d 669 (2005); Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003)).  Extraordinary circumstances are circumstances that are beyond the control of the complainant and make it impossible to file a complaint within the statute of limitations. Id. (citing United States v. Cicero, 214 F.3d 199, 203 (D.C. Cir. 2000)).
>
> Office of Hawaiian Affairs v. State, 110 Haw. 338, 360, 133 P.3d 767, 789 (2006). See also Reyes v. HSBC Bank USA, Nat'l Ass'n, 135 Haw. 407, 2015 WL 3476371, at *6 (Haw. Ct. App. May 29, 2015) (applying federal equitable tolling principles to fraudulent concealment); Paco v. Myers, 143 Haw. 330, 2018 WL 6177430, at *2 (Haw. Ct. App. Nov. 27, 2018).  This test "is a very high bar, and is reserved for rare cases." Yow Ming Yeh v. Martel, 751 F.3d 1075, 1077 (9th Cir. 2014).

---

the City in that case did not arise from the actions and omissions of HPD officers; the plaintiffs' daughter was injured, while she was in a City park, when she was attacked by the third-party defendant's dog. See id. at 343, 90 P.3d at 235.

Chun v. City & Cnty. of Honolulu, Civ. No. 18-00131 JMS-RT, 2020 WL 3965943, at *3 (D. Hawaiʻi July 13, 2020) (alteration in Chun) (footnote omitted), *aff'd*, No. 20-16558, 2022 WL 501586 (9th Cir. Feb. 18, 2022).

Accepting the factual allegations of the Complaint as true, Spriestersbach diligently attempted to assert his rights by, *inter alia*: giving his full name, birth date, and social security number to Bruhn on May 11, 2017; see Complaint at ¶ 35; telling his public defender, prior to his first court hearing, that he was not Thomas Castleberry; see id. at ¶ 43; and "continually advis[ing the psychiatrists and psychologists who evaluated him] and other staff at H.S.H. of his real name and identity[,]" see id. at ¶ 47. Spriestersbach's arrest, detention at OCCC, and commitment for evaluation at HSH, all under the name of Thomas Castleberry, constitute extraordinary circumstances that were beyond Spriestersbach's control and that made it impossible for him to file a complaint within the statute of limitations. Thus, the instant case is one of the rare cases where equitable tolling would apply.

Even if Spriestersbach's § 1983 claims against the City accrued at the time of his arrest, or shortly thereafter when formal process was initiated against him (albeit as Thomas Castleberry), this Court would still conclude, for purposes of the City Motion, that Spriestersbach's claims were timely filed.

2.   **Spriestersbach's ADA Claim**

Spriestersbach argues he "is a member of the class of persons protected by 42 U.S.C. § 12132[.]"  [Complaint at ¶ 79.] Section 12132 states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

"Title II of the ADA does not contain an express statute of limitations."  Sharkey v. O'Neal, 778 F.3d 767, 770 (9th Cir. 2015).  This district court has stated:

> Before 1990, federal courts generally borrowed
> the statute of limitations provided by the
> analogous state law.  See Jones v. R.R. Donnelley
> & Sons Co., 541 U.S. 369, 377–78, 124 S. Ct.
> 1836, 158 L. Ed. 2d 645 (2004).  However, in
> 1990, Congress passed 28 U.S.C. § 1658, which
> provides a "catchall 4-year statute of
> limitations for actions arising under federal
> statutes enacted after December 1, 1990."  Id. at
> 371, 124 S. Ct. 1836; Sharkey, 778 F.3d at 770;
> 28 U.S.C. § 1658.  Although . . . the ADA w[as]
> enacted before this date, the Supreme Court has
> held that Section 1658's statute of limitations
> also applies to claims brought under amendments
> to existing statutes if "the plaintiff's claim
> against the defendant was made possible by a
> post-1990 enactment."  Id. at 382, 124 S. Ct.
> 1836; Sharkey, 778 F.3d at 770.  The ADA . . .
> w[as] amended by the ADA Amendments Act of 2008
> ("ADAAA"), which became effective on January 1,
> 2009.  Accordingly, to determine the appropriate
> statute of limitations period, the Court must
> consider whether Plaintiff's claims were "made
> possible" by the ADAAA.  See Jones, 541 U.S. at
> 382, 124 S. Ct. 1836.

16

Toma v. Univ. of Hawai`i, 304 F. Supp. 3d 956, 960–61 (D. Hawai`i 2018).

The City's position is that the running of the statute of limitations is apparent on the face of the Complaint.  The City Motion appears to argue the two-year limitations period for the ADA applies, not the four-year limitations period for claims made possible by the ADAAA.  See Mem. in Supp. of City Motion at 4 ("All Federal Claims Against the City Are Barred By the Applicable Two Year Statute of Limitations" (emphasis omitted)).  However, the City does not present any specific argument to support its position that Spriestersbach's ADA claim is time barred.  See generally id. at 4-5.  Because the City has not provided sufficient support for its position that Spriestersbach's ADA claim is time-barred, the City Motion is denied as to that argument.  The denial is without prejudice to the City revisiting the issue in a future motion.

**B.** **Liability Under § 1983**

42 U.S.C. § 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

17

Section 1983 liability cannot be based on respondeat superior.

Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009).

> A municipality may be held liable as a "person"
> under 42 U.S.C. § 1983 when it maintains a policy
> or custom that causes the deprivation of a
> plaintiff's federally protected rights. Monell
> [v. Dep't of Soc. Servs. of N.Y.C.], 436 U.S.
> [658,] 694, 98 S. Ct. 2018 [(1978)]. To state
> such a claim, a plaintiff must allege either that
> (1) "a particular municipal action **itself**
> violates federal law, or directs an employee to
> do so"; or (2) the municipality, through
> inaction, failed to implement adequate policies
> or procedures to safeguard its community members'
> federally protected rights. Board of
> Commissioners of Bryan County v. Brown, 520 U.S.
> 397, 404, 407-08, 117 S. Ct. 1382, 137 L. Ed. 2d
> 626 (1997); see also Tsao v. Desert Palace, Inc.,
> 698 F.3d 1128, 1143 (9th Cir. 2012). When, as
> here, a plaintiff pursues liability based on a
> failure to act, she must allege that the
> municipality exhibited deliberate indifference to
> the violation of her federally protected rights.
> Tsao, 698 F.3d at 1143.

Park v. City & Cnty. of Honolulu, 952 F.3d 1136, 1141 (9th Cir.

2020) (emphasis in Park).

### 1. Count I - Fourth Amendment Violation (Wrongful Arrest and Detention)

Count I is based upon Spriestersbach's arrest and

detention in May 2017, which he asserts was unreasonable because

HPD and its officers knew or should have known that he was not

Thomas Castleberry. [Complaint at ¶ 65.] Spriestersbach does

not allege that the City, through someone authorized to act on

its behalf, expressly directed the individual HPD officers to

arrest him on May 11 2017, nor does he allege a City policy required them to do so.  See generally id. at ¶¶ 64-70.  Thus, Count I is based upon the City's alleged inaction and failure to implement adequate polices.

> When . . . a plaintiff pursues liability based on a failure to act, she must allege that the municipality exhibited deliberate indifference to the violation of her federally protected rights. Tsao, 698 F.3d at 1143. . . .
>
> Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Brown, 520 U.S. at 410, 117 S. Ct. 1382.  Deliberate indifference exists when the need "for more or different" action "is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 & n.10, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).  A plaintiff can meet this standard in one of two ways.  In some circumstances, the policy may be so facially deficient that any reasonable policymaker would recognize the need to take action.  Brown, 520 U.S. at 409, 117 S. Ct. 1382.  When that is the case, a plaintiff need point only to the policy itself to establish that the municipality's policymakers were on notice that the plaintiff's federally protected rights would likely be violated if they failed to act.  See id.  Alternatively, if the policy is not obviously, facially deficient, a plaintiff must ordinarily point to a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice.  Connick v. Thompson, 563 U.S. 51, 62, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011); Clouthier v. County of Contra Costa, 591 F.3d 1232, 1253 (9th Cir. 2010), overruled on other grounds by Castro [v. Cnty. of Los

>     Angeles], 833 F.3d [1060,] 1070 [(9th Cir.
>     2016)].

Park, 952 F.3d at 1141–42 (alteration in Park) (footnote omitted).

Spriestersbach alleges "[t]he City is liable for these Fourth Amendment violations due to its customs, policies, and practices which tolerated and allowed such conduct by H.P.D. officers to occur and were a moving force causing the violation." [Complaint at ¶ 68.] This is insufficient to allege a policy that is "so facially deficient that any reasonable policymaker would recognize the need to take action." See Park, 952 F.3d at 1141. Even in light of the allegations regarding Spriestersbach's two prior arrests as Thomas Castleberry, paragraph 68 is also insufficient to allege "a pattern of prior, similar violations of federally protected rights, **of which the relevant policymakers had actual or constructive notice**." See id. at 1142 (emphasis added). This Court therefore concludes that the City is entitled to judgment as a matter of law as to Spriestersbach's claim against it in Count I, and this Court grants judgment on the pleadings in favor of the City as to that claim. See Gregg, 870 F.3d at 887 ("A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party

is entitled to judgment as a matter of law." (citation and internal quotation marks omitted)).

However, in considering a motion for judgment on the pleadings, a district court has discretion to grant partial judgment on the pleadings or to grant leave to amend.  See Lieblong v. Abella, 503 F. Supp. 3d 1011, 1021 (D. Hawai`i 2020) (citing Curry v. Baca, 497 F. Supp. 2d 1128, 1138 (C.D. Cal. 2007)).  This Court grants Spriestersbach leave to amend his claim against the City in Count I because it is arguably possible for him to cure the defects in the claim by amendment. Cf. Anderson v. Ghaly, 930 F.3d 1066, 1081 (9th Cir. 2019) (stating, in an appeal from the dismissal of a 42 U.S.C. § 1983 action, "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment" (quotation marks and citation omitted)).  The City Motion is therefore granted in part and denied in part as to Count I.

### 2.   Count II - Fourteenth Amendment Violation

Count II asserts Spriestersbach's due process rights were violated because, after his arrest on May 11, 2017, HPD officers failed to confirm Spriestersbach's identity and update the information associated with the Castleberry Warrant and the records for Spriestersbach's May 11, 2017 arrest. Spriestersbach alleges that, if they had done so, he would not

21

have remained in custody until January 2020.  See Complaint at

¶¶ 72-74.  Similar to Count I, Count II alleges "[t]he City is

liable for these Fourteenth Amendment violations due to its

customs, policies, and practices which tolerated and allowed

such conduct by H.P.D. officers to occur and were a moving force

causing the violation."  [Id. at ¶ 75.]  For the same reasons

stated as to Count I, the City is entitled to judgment on the

pleadings as to Count II, but Spriestersbach is granted leave to

amend because it is arguably possible for him to cure the

defects in the claim by amendment.  The City Motion is therefore

granted in part and denied in part as to Count II.

### 3.    Count IV - Fourth Amendment Violation (Abuse of Process)

Spriestersbach asserts his abuse of process claim

against Bruhn and the City.  See Complaint at pg. 28.  This

district court has stated:

> The Ninth Circuit has not determined whether
> an abuse of process claim is cognizable under
> Section 1983.  See West [v. City of Mesa], 708 F.
> App'x [288,] 292 [(9th Cir. 2017)] (stating,
> "[e]ven assuming an abuse of process claim is
> cognizable under § 1983 in our circuit," West
> failed to plead sufficient facts to state a
> claim).  Most federal courts to consider the
> issue have concluded that there is no
> constitutional violation for abuse of process
> under Section 1983 without conscience-shocking,
> egregious wrongdoing.  See Martin A. Schwartz,
> Section 1983 Claims and Defenses, § 3.18
> Malicious Prosecution; Abuse of Civil Process
> (4th ed. 2018 Supp.) (collecting cases); Brown v.
> Lever, 2018 WL 1903120, at *6 (D. Nev. Apr. 20,

> 2018) (dismissing abuse of process claim).  An
> abuse of process claim is essentially a malicious
> prosecution clam, which requires a showing that
> the defendant prosecuted the plaintiff with
> malice, without probable cause, and for the
> purpose of denying equal protection or some other
> specific constitutional right, and that the
> criminal case terminated in favor of the accused.
> Lacey v. Maricopa Cty., 693 F.3d 896, 919 (9th
> Cir. 2012) (en banc).

Char v. Simeona, CIV. NO. 18-00303 DKW-KJM, 2018 WL 5815519, at *4 (D. Hawai`i Nov. 6, 2018).  However, in Awabdy v. City of Adelanto, the Ninth Circuit noted that it "incorporated the relevant elements of the common law tort of malicious prosecution into [its] analysis under § 1983."  368 F.3d 1062, 1066 (9th Cir. 2004) (citing Usher v. City of Los Angeles, 828 F.2d 556, 562 (9th Cir. 1987); Heck v. Humphrey, 512 U.S. 477, 483, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)).  Under Hawai`i law, the elements of an abuse of process claim are: "(1) an ulterior purpose and (2) a wilful act in the use of the process which is not proper in the regular conduct of the proceeding." Young v. Allstate Ins. Co., 119 Hawai`i 403, 412, 198 P.3d 666, 675 (2008) (citations omitted).

At this stage of the case, the Court need not decide whether the Hawai`i law elements of an abuse of process claim also constitute a § 1983 abuse of process claim or whether egregious conduct that shocks the conscience is required.  Under either standard, Spriestersbach has not pled sufficient factual

23

allegations to support his abuse of process claim against the City because Count IV only makes the conclusory allegation that the City "continued to commit multiple willful actions for the improper purpose of prosecuting [him] for a crime he did not commit, as more fully alleged above."  See Complaint at ¶ 89.

The City is entitled to judgment on the pleadings as to Count IV, but Spriestersbach is granted leave to amend because it is arguably possible for him to cure the defects in the claim by amendment.  The City Motion is therefore granted in part and denied in part as to Count IV.

C.    **Liability under the ADA**

In Count II, Spriestersbach alleges the City discriminated against him and failed to provide reasonable accommodations for his known disability.  [Id. at ¶ 80.] Spriestersbach asserts the City is a "public entity" for purposes of the ADA.  [Id. at ¶ 81.]  The City denied paragraph 81 in its entirety.  See Defendant City and County of Honolulu's Answer to Complaint Filed November 21, 2021, filed 1/24/22 (dkt. no. 34), at ¶ 15.  However, it is clear that the City is a "public entity" for purposes of the ADA.  See 42 U.S.C. § 12131 ("The term 'public entity' means - (A) any State or local government . . . .").

> Title II of the ADA prohibits public
> entities from discriminating on the basis of
> disability.  42 U.S.C. § 12132. . . .  To state a

24

> prima facie case for a violation of Title II, "a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability."  Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (citation omitted). . . .

Payan v. Los Angeles Cmty. Coll. Dist., 11 F.4th 729, 737–38 (9th Cir. 2021).

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).  The following ADA definitions are relevant to this case:

> (1)  Disability
>
> "The term "disability" means, with respect to an individual--
>
> > (A)  a physical or mental impairment that substantially limits one or more major life activities of such individual;
> >
> > (B)  a record of such an impairment; or
> >
> > (C)  being regarded as having such an impairment (as described in paragraph (3)).
>
> (2)  Major life activities

> (A)  In general
>
> For purposes of paragraph (1), major life
> activities include, but are not limited to,
> caring for oneself, performing manual tasks,
> seeing, hearing, eating, sleeping, walking,
> standing, lifting, bending, speaking,
> breathing, learning, reading, concentrating,
> thinking, communicating, and working.

42 U.S.C. § 12102(1)-(2)(A).

Spriestersbach states: "[h]e developed mental health problems and was hospitalized several times" between 1999 and 2001; [Complaint at pg. 8, ¶ 2;] he "was hospitalized for several months at the H.S.H. in 2002 for treatment of a mental illness"; [id. at pg. 8, ¶ 3;] in 2006, he was "treated at a mental health facility on Hawai`i Island;" and, after moving to Oahu, he was treated at various times by HSH or "Care Hawai`i, an adult mental health care facility," [id. at pg. 9, ¶ 6].  He also states his disability

> causes him to be confused, . . . resulting in
> difficulty in locating and staying in touch with
> his mother and sister and other family,
> difficulty in expressing his mental health
> treatment needs, and otherwise meeting his daily
> medical, shelter, food, and mental health needs.
> Thus his disability substantially interferes with
> his ability to work, secure food, secure housing,
> . . . and remain safe without reasonable
> accommodation.

[Id. at ¶ 79.]  Spriestersbach's factual allegations, which are accepted as true for purposes of the City Motion, are sufficient

to support his position that he is a qualified person with a disability for purposes of the ADA.

Spriestersbach also states his "disability and the perception of him by those in authority makes it difficult for his statements of fact about his identity to be trusted; [and] makes his statements regarding his understanding of legal proceedings to be discounted[.]" [Id.] Thus, "his disability substantially interferes with his ability to . . . . navigate interactions with police and persons in authority . . . ." [Id.]

> In Sheehan v. City & County of San Francisco, 743 F.3d 1211 (9th Cir. 2014), the Ninth Circuit concluded, in light of the broad manner in which it had previously interpreted these statutory phrases, that "[t]he ADA therefore applies to arrests" conducted by local law enforcement agencies. Id. at 1232.[8] In a related vein, the Sheehan court recognized that a plaintiff may assert a claim under Title II of the ADA for "wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity." Id. Although the Ninth Circuit has never expressly delineated the elements of such a claim, district courts within the Ninth Circuit have concluded that, "[t]o prevail on a theory of wrongful arrest under the ADA, [a plaintiff] must prove that (1) he was

---

[8] Sheehan, 743 F.3d 1211, was affirmed in part and reversed in part on other grounds. City & Cnty. of San Francisco v. Sheehan, 575 U.S. 600 (2015). The Supreme Court dismissed, as improvidently granted, certiorari on the question of whether § 12132 "requires law enforcement officers to provide accommodations to an armed, violent, and mentally ill suspect in the course of bringing the suspect into custody." Id. at 608 (quotation marks and citation omitted); see also id. at 610.

> disabled; (2) the officers knew or should have
> known he was disabled; and (3) the officers
> arrested him because of legal conduct related to
> his disability." Lawman v. City & County of San
> Francisco, 159 F. Supp. 3d 1130, 1147 (N.D. Cal.
> 2016). Additionally, "exigent circumstances
> inform the reasonableness analysis under the ADA,
> just as they inform the distinct reasonableness
> analysis under the Fourth Amendment." Sheehan,
> 743 F.3d at 1232.

Leibel v. City of Buckeye, 556 F. Supp. 3d 1042, 1074–75 (D. Ariz. 2021) (some alterations in Leibel) (footnote omitted), appeal dismissed sub nom. C.L. ex rel. Kevin v. Grossman, No. 21-16524, 2022 WL 780439 (9th Cir. Jan. 21, 2022).

Thus, it is possible for a plaintiff to assert an ADA claim against the City based on a theory that HPD officers arrested him because of conduct related to his disability. As previously noted, Spriestersbach has alleged sufficient factual allegations to support his position that he is a qualified person with a disability, for purposes of the ADA. Viewing the Complaint as a whole, Spriestersbach appears to be alleging that, when he was arrested on May 11, 2017 for the Castleberry Warrant, the arresting officers disregarded his statements about his identity because of his disability. In other words, Spriestersbach alleges that, but for his disability, the officers would have investigated his statements about his identity, would have confirmed that he was not Thomas Castleberry, and would not have arrested him. This is

sufficient to allege that Spriestersbach was denied the benefits of the City's police services, or that he was subjected to discrimination by a City agency, because of his disability.

However, Spriestersbach had not alleged sufficient factual allegations to support his position that the arresting officers knew or should have known about his disability. Spriestersbach has pled factual allegations regarding his history of mental health issues and treatment, but he does not allege that that HPD became aware of his disability in connection with either his October 14, 2011 arrest, his January 17, 2015 arrest, or the events on May 11, 2017 prior to his arrest.  Spriestersbach's ADA claim against the City therefore fails as a matter of law.

The City is entitled to judgment on the pleadings as to Count III, but Spriestersbach is granted leave to amend because it is arguably possible for him to cure the defects in the claim by amendment.  The City Motion is therefore granted in part and denied in part as to Count III.

D.    **Spriestersbach's IIED and NIED Claims**

Spriestersbach's IIED and NIED claims against the City appear to be based upon a theory of respondeat superior.  See Complaint at ¶¶ 126-33.  This Court has stated:

> "Under Hawaii law, a municipality can have respondeat superior liability for torts maliciously committed by an employee acting

within the scope of his authority." McCormack v. City & Cty. of Honolulu, 762 F. Supp. 2d 1246, 1253 (D. Haw. 2011). The employee must be motivated by malice in his commission of the tort, and the plaintiff is required to allege malice in the complaint. Alexander v. City & Cty. of Honolulu, 545 F. Supp. 2d 1122, 1136 (D. Haw. 2008).

Hollandsworth [v. City & Cty. of Honolulu, Civ. No. 19-00587 ACK-WRP], 2020 WL 913216, at *11 [(D. Hawai`i Feb. 25, 2020)]. Hawai`i courts use the Restatement (Second) of Agency § 228 analysis to determine whether the employee's tortious actions were within the scope of his employment. See Hollandsworth, 2020 WL 913216, at *12 (quoting State v. Hoshijo ex rel. White, 102 Hawai`i 307, 320, 76 P.3d 550, 563 (2003)). Section 228 states:

(1)  Conduct of a servant is within the scope of employment if, but only if:

(a)  it is of the kind he is employed to perform;

(b)  it occurs substantially within the authorized time and space limits;

(c)  it is actuated, at least in part, by a purpose to serve the master, and

(d)  if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2)  Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Vargas v. City & Cnty. of Honolulu, CIV. NO. 19-00116 LEK-WRP, 2020 WL 3547941, at *18-19 (D. Hawai`i June 30, 2020).

Accepting the factual allegations of the Complaint as true, Braun and other HPD officers: initiated contact with Spriestersbach on May 11, 2017 because he was sleeping on the sidewalk; asked Spriestersbach for his name; and arrested Spriestersbach on the Castleberry Warrant on the ground that that "Joshua Spriestersbach" and "Thomas Castleberry" were aliases for the same person. See Complaint at ¶¶ 34-37. These actions are the type of actions HPD officers are employed to perform, these actions occurred within the authorized time and space for HPD officers in the incident, and the officers undertook these actions, at least in part, to serve the City. See Restatement (Second) of Agency § 228(1)(a)-(c). Thus, Spriestersbach has sufficiently alleged that Braun and the other HPD officers involved in Spriestersbach's arrest were acting within the scope of their authority.

Spriestersbach asserts malice is specifically pled in paragraph 22 of the Complaint, and that paragraph is incorporated in his IIED and NIED claims. Paragraph 22 alleges the "wrongful acts and/or omissions by any individual defendant was done intentionally, maliciously, or with reckless disregard for [his] rights[.]" This general allegation that all individual defendants' acts and omissions were intentional **or** malicious **or** in reckless disregard is insufficient to support Spriestersbach's position that Braun and other HPD officers

acted with malice in relation to Spriestersbach's May 11, 2017 arrest and detention.

Spriestersbach also argues malice can be inferred because he was arrested without probable cause. [City Opp. at 17-18 (citing Black v. Correa, No. 07-00299 DAE-LEK, 2008 WL 3845230, at *17 (D. Haw. Aug. 18, 2008); Gaspar v. Nahale, 14 Haw. 574, 575 (1903)).] The district court in Correa did note, in the context of a malicious prosecution claim, that "malice may be inferred from a lack of probable cause[.]" 2008 WL 3845230, at *16. However, Braun and the other HPD officers arguably had probable cause to arrest Thomas Castleberry on the outstanding warrant. The issue relevant here is whether Braun and the other HPD officers acted maliciously when they misidentified and arrested Spriestersbach as Thomas Castleberry. Spriestersbach has not pled sufficient factual allegations to support that position, and therefore he has not pled sufficient factual allegations to support his position that the City is liable, based on respondeat superior, for IIED and NIED. The City is entitled to judgment on the pleadings as to Counts XI and XII, and the City Motion is granted as to those claims.[9] However, Spriestersbach is granted leave to amend because it is

---

[9] In light of this ruling, it is not necessary to reach the City's arguments regarding whether the factual allegations of the Complaint sufficiently allege the elements of Spriestersbach's IIED and NIED claims against the City.

arguably possible for him to cure the defects in those claims by amendment.

### E.  **Ruling**

In sum, judgment on the pleadings is granted in favor of the City as to all of Spriestersbach's claims against it. However, Spriestersbach is granted leave to amend as to each of his claims against the City.

## II.  **The Tisza Motion and the Compton/Vargo Joinder**

### A.  **Request for Judicial Notice**

The Examiner Defendants ask this Court to take judicial notice of the record in <u>State of Hawai`i v. Thomas R. Castleberry</u>, Case No. 1PC-06-1-001421 ("Castleberry Criminal Case"), filed in the State of Hawai`i Circuit Court of the First Circuit ("state court").  <u>See</u> Mem. in Supp. of Tisza Motion at 2-3; Mem. in Supp. of Compton/Vargo Joinder at 2 n.1. Spriestersbach does not oppose the request as to the records attached to the Tisza Motion, and he asks this Court to take judicial notice of additional filings in the Castleberry Criminal Case which address his identity.  <u>See</u> Examiners Opp. at 2.

Pursuant to Fed. R. Evid. 201, this Court takes judicial notice of the relevant state court records from the Castleberry Criminal Case that are electronically available. <u>See</u> <u>United States v. Raygoza-Garcia</u>, 902 F.3d 994, 1001 (9th

Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through [the public access to court electronic records system]." (citations omitted)). However, this Court "cannot take judicial notice of disputed facts contained in such public records." See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018) (citation omitted). This Court will therefore take judicial notice of the existence of the relevant filings in the Castleberry Criminal Case, and, where appropriate, judicial notice of adjudicative facts. See Rule 201.

**B.  Judicial Immunity**

This Court has stated:

"Judges are absolutely immune from civil liability for damages for their judicial acts." Mullis v. U.S. Bankr. Ct. for Dist. of Nev., 828 F.2d 1385, 1388 (9th Cir. 198[7]) (citations omitted). "This immunity applies even when the judge is accused of acting maliciously or corruptly, and it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." Pierson v. Ray, 386 U.S. 547, 554 (1967) (citations and internal quotation marks omitted). "Judicial immunity may be overcome only if the judge's actions are 'not taken in the judge's judicial capacity,' or are 'taken in the complete absence of all jurisdiction.'" Ah Puck v. Werk, CIV. NO. 17-00154 DKW-KJM, 2017 WL 1731685, at *3 (D. Haw. May 2, 2017) (quoting Mireles v. Waco, 502 U.S. 9, 11-12 (1991)).

34

Lapina v. Gierlach, CIV. NO. 19-00452 LEK-KJM, 2022 WL 1294568, at *4 (D. Hawai`i Apr. 29, 2022) (some citations omitted).

> "Under the doctrine of quasi-judicial immunity, absolute judicial immunity may be 'extended to certain others who perform functions closely associated with the judicial process.'" Bridge Aina Le`a, LLC v. Haw. Land Use Comm'n, 125 F. Supp. 3d 1051, 1074 (D. Haw. 2015) (quoting Duvall v. County of Kitsap, 260 F.3d 1124, 1133 (9th Cir. 2001)), aff'd, 950 F.3d 610 (9th Cir. 2020). . . .

Sullivan v. Kennedy, CIVIL NO. 21-00235 JAO-RT, 2021 WL 2383224, at *3 (D. Hawai`i June 10, 2021), appeal dismissed, No. 21-16123, 2021 WL 4597834 (9th Cir. Sept. 17, 2021), cert. denied, 142 S. Ct. 789 (2022).  Quasi-judicial immunity is a form of absolute immunity, which "'is an immunity from suit rather than a mere defense to liability[.]'"  See Chavez v. Robinson, 817 F.3d 1162, 1168 (9th Cir. 2016) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)).

In Sullivan, this district court ruled that Dr. Reneau Kennedy ("Dr. Kennedy"), who performed a court-ordered competency examination of Leihinahina Sullivan ("Sullivan") in the criminal case against Sullivan, was entitled to quasi-judicial immunity from the claims asserted in Sullivan's civil action arising from Dr. Kennedy's preparation and transmission of the competency report.  See id.  This district court stated:

> Court-appointed psychologists and psychiatrists who perform court-ordered evaluations enjoy

quasi-judicial immunity.  See Doe v. Arizona, 240
F. App'x 241 (9th Cir. 2007) (affirming dismissal
of the claims against a doctor who performed
court-ordered evaluations because he was entitled
to quasi-judicial immunity (citing Burkes v.
Callion, 433 F.2d 318, 319 (9th Cir. 1970) (per
curiam))); Xoss v. County of Los Angeles, CV 12-
1400 PSG (RZx), 2013 WL 11324011, at *2 (C.D.
Cal. May 22, 2013) ("The Ninth Circuit has held
that a court-appointed psychiatrist has quasi-
judicial immunity from damages liability for acts
committed 'in the performance of an integral part
of the judicial process,' such as preparing and
submitting medical reports[.]" (citations
omitted)); cf. Mullis v. U.S. Bankr. Ct. for
Dist. of Nev., 828 F.2d 1385, 1390 (9th Cir.
1987) (in the Bivens context, applying absolute
quasi-judicial immunity from damages for civil
rights violations to court clerks "when they
perform tasks that are an integral part of the
judicial process" (citations omitted)).

Id. (alteration in Sullivan).  A similar immunity exists under

Hawai`i law.  See Seibel v. Kemble, 63 Haw. 516, 525, 631 P.2d

173, 179 (1981) ("Appellees[, court appointed psychiatrists,]

examined and reported their findings on [the defendant] to the

court.  Thus, appellees were arms of the court and performed a

function integral to the judicial process. As arms of the court,

appellees are entitled to the absolute immunity given to judges

and other judicial officials.").

        In the Castleberry Criminal Case, the state court

issued the following orders relevant here:

-Order Granting the Appointment of Examiners to Determine
    Defendant's Fitness to Proceed and Penal Responsibility on
    the Motion for Modification of the Terms and Conditions of
    Probation, filed on July 12, 2017; [Tisza Motion, Decl. of
    Edquon Lee ("Lee Decl."), Exh. 3;]

-Order Appointing Examiners to Determine Defendant's Current
    Fitness to Proceed, Likelihood to Regain Fitness, and
    Dangerousness, filed on October 10, 2018; [id., Exh. 4;]

-Order Appointing Examiners to Determine Defendant's Fitness to
    Proceed, Likelihood to Regain Fitness, and Dangerousness,
    filed on May 8, 2019; [id., Exh. 5;] and

-Amended Order Granting Motion for Mental Examination to
    Determine Defendant's Current Fitness to Proceed, filed
    November 19, 2019, [id., Exh. 6].

The Examiner Defendants were appointed to, *inter alia*, "examine
and report upon the Defendant's **FITNESS TO PROCEED**," [Lee Decl.,
Exh. 3 at 2 (emphasis in original),] and "examine and report
upon the defendant's physical and mental condition," [id.,
Exh. 6 at 2].

        Spriestersbach does not contest the fact that the
Examiner Defendants evaluated him pursuant to these orders.  See
Examiners Opp. at 1 (stating Defendants Tisza, Compton and Vargo
"evaluated Joshua Spriestersbach").  He contends that the state
court ordered them to evaluate the defendant in the Castleberry
Criminal Case, *i.e.* Thomas Castleberry, and therefore they were
acting in the clear absence of jurisdiction.  To the extent that
the Examiner Defendants argue they evaluated the person
presented to them as Thomas Castleberry, Spriestersbach responds
that, based on factual allegations of the Complaint, the
Examiner Defendants knew or should have known the person
presented to them was not Thomas Castleberry.  Spriestersbach

contends such knowledge would preclude the Examiner Defendants from asserting quasi-judicial immunity.  He therefore asserts the Tisza Motion and the Compton/Vargo Joinder should be denied, and he should be permitted to conduct discovery regarding the extent of the Examiner Defendants' knowledge about his identity at the time of their evaluations.

### 1.   Whether the Examiner Defendants Were Acting Within Their Quasi-Judicial Capacity

Spriestersbach contends that, to the extent the Examiner Defendants have quasi-judicial immunity, it is limited to their findings regarding the issues such as fitness to proceed or dangerousness.  Spriestersbach argues the immunity does not apply to the Examiner Defendants' decisions not to confirm his identity before conducting their respective evaluations of him.  In other words, he contends that, when the Examiner Defendants made that decision, they were not acting within their quasi-judicial capacity.

The Examiner Defendants' reports to the state court show that Spriestersbach told the Examiner Defendants in the early stages of their evaluations either that his name was Joshua Spriestersbach or that he thought he was arrested for something someone else did.  See Examiners Opp., Decl. of Attorney Alphonse A. Gerhardstein ("Gerhardstein Decl."), Exh. B (letter dated 8/30/17 from Dr. Compton) at 2; id., Exh. E

38

(letter dated 8/30/17 from Dr. Vargo) at 5; id., Exh. H (letter dated 8/31/17 from Dr. Tisza) at 4.  Nevertheless, the Examiner Defendants each proceeded to evaluate Spriestersbach as Thomas Castleberry.

The Supreme Court has stated:

This Court in Stump [v. Sparkman] made clear that "whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."  435 U.S. [349,] 362 [(1978)].  See also Forrester v. White, 484 U.S. [219,] 227-229 [(1988)].  A judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge.  See generally Cal. Civ. Proc. Code Ann. §§ 128, 177, 187 (West 1982 and Supp. 1991) (setting forth broad powers of state judges in the conduct of proceedings).  Waco, who was called into the courtroom for purposes of a pending case, was dealing with Judge Mireles in the judge's judicial capacity.

Of course, a judge's direction to police officers to carry out a judicial order with excessive force is not a "function normally performed by a judge."  Stump v. Sparkman, 435 U.S., at 362.  But if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge.  If judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority."  Id., at 356.  See also Forrester v. White, 484 U.S., at 227 (a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive").  Accordingly, as the language in Stump indicates,

39

> the relevant inquiry is the "nature" and
> "function" of the act, not the "act itself."   435
> U.S., at 362.   In other words, we look to the
> particular act's relation to a general function
> normally performed by a judge . . . .

Mireles, 502 U.S. at 12–13, (some alterations in Mireles)

(footnote omitted).

          In the instant case, Spriestersbach was arrested on a

bench warrant and appeared in state court.   See Lee Decl.,

Exh. 2 (docket sheet for the Castleberry Criminal Case) at

docket # 26 (entry dated 7/24/09 regarding bench warrant),

docket # 52 (entry dated 5/11/17 noting "Bench Warrant Served").

Spriestersbach's counsel made a motion for a mental examination,

and the state court granted the motion.   The state court

appointed the Examiner Defendants to conduct the mental

examination.   Thus, Spriestersbach dealt with the state court

judges in their judicial capacity, and he dealt with the

Examiner Defendants in their quasi-judicial capacity.   Although

Spriestersbach asks this Court to focus upon the Examiner

Defendants' decision not to confirm his identity after he made

statements denying that he was Thomas Castleberry, under

Mireles, this Court does not consider only "the act itself"; it

must consider "the nature and function of the act[.]"   See

Mireles, 502 U.S. at 13 (quotation marks and citation omitted).

Interviewing a defendant and considering the defendant's

statements are parts of the standard process that court-

appointed mental health professionals go through when conducting a court-ordered mental fitness evaluation.  Even accepting Spriestersbach's position that it was error for the Examiner Defendants to evaluate him as Thomas Castleberry after he made statements raising the issue of mistaken identity, that error was not enough to bring their actions outside of the scope of their quasi-judicial capacity.

### 2.    Whether the Examiner Defendants Were Acting in the Absence of All Jurisdiction

Spriestersbach next argues that, even if the Examiner Defendants were performing actions that were quasi-judicial in nature, they are not immune from suit because they acted "in the complete absence of all jurisdiction," having examined a person other than the defendant named in the relevant court orders. See id. at 12 (citations omitted).

"In determining judicial immunity, [the Ninth Circuit] distinguishe[s] between acts 'in excess of jurisdiction' and acts 'in the clear absence of jurisdiction' by looking to the subject-matter jurisdiction of the judge: '[a] clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction.'"  Miller v. Davis, 521 F.3d 1142, 1147 (9th Cir. 2008) (some alterations in Miller) (quoting Mullis v. U.S. Bankr. Court, Dist. of Nev., 828 F.2d 1385, 1389 (9th Cir. 1987)).

> In Bradley [v. Fisher], the Court
> illustrated the distinction between lack of
> jurisdiction and excess of jurisdiction with the
> following examples: if a probate judge, with
> jurisdiction over only wills and estates, should
> try a criminal case, he would be acting in the
> clear absence of jurisdiction and would not be
> immune from liability for his action; on the
> other hand, if a judge of a criminal court should
> convict a defendant of a nonexistent crime, he
> would merely be acting in excess of his
> jurisdiction and would be immune.  [80 U.S. 335,]
> 352 [(1871)].

Stump, 435 U.S. at 357.  Under this analysis, the Examiner

Defendants were acting within the scope of their subject matter

jurisdiction; they are mental health professionals who were

performing court-ordered evaluations of a defendant facing

criminal charges in the state court.

However, Spriestersbach urges this Court to apply case

law addressing whether law enforcement officers or prison

official executing court orders are entitled to quasi-judicial

immunity.  The Ninth Circuit has stated:

> It is true that "prison officials charged
> with executing facially valid court orders enjoy
> absolute immunity from section 1983 liability for
> conduct prescribed by those orders."  Engebretson
> v. Mahoney, 724 F.3d 1034, 1039 (9th Cir. 2013).
> However, absolute immunity applies "only to the
> **fact** of a prisoner's incarceration pursuant to a
> facially valid court order — i.e., the prison
> official in question must act within his or her
> authority and strictly comply with the order."
> Id. at 1041 (emphasis in original).  Here,
> according to Plaintiff's allegations, **Baca did
> not strictly comply with the order, as it was
> applied to the wrong person,** and Plaintiff
> challenged not just the fact of his

42

>            incarceration, but also the lack of procedures to
>            prevent the misidentification. . . .

Garcia v. Cnty. of Riverside, 817 F.3d 635, 644 (9th Cir. 2016)
(first emphasis in original, second emphasis added).

        The plaintiff, Mario Alberto Garcia ("Garcia"), was
arrested on November 26, 2012 by the Riverside County Sheriff's
Department ("RCSD") for driving under the influence.  RCSD
officers found a warrant issued in 1994 by a Los Angeles
Superior Court for Mario L. Garcia.  Because Garcia's first
name, last name, and birth date matched the information
associated with the warrant, Garcia was detained on the warrant,
even though he protested that he was not Mario L. Garcia and
that he had previously been erroneously detained for that
warrant.  When he was transferred to a Los Angeles County jail,
Garcia repeated his protests to the Los Angeles County Sheriff's
Department ("LASD") officers.  Id. at 638.  According to Garcia,

>            LASD knew or should have known that he was not
>            Mario L. Garcia for several reasons: (1) their
>            middle names do not match; (2) their height and
>            weight differ considerably (Mario L. Garcia is
>            listed as 5'1", 130 lbs.  Plaintiff is 5'10",
>            170 lbs.); (3) [Garcia]'s biometric identifiers,
>            including fingerprints and [criminal
>            identification and information ("CII")] number,
>            did not match the subject's; and (4) [Garcia]'s
>            criminal history, which was linked in the system
>            to his fingerprints, did not match the subject's.
>            [Garcia] contends that it is the policy of LASD
>            to ignore CII numbers for identification
>            purposes, to ignore prisoners' complaints of
>            misidentification, and to accept an outside
>            agency's determination that an arrestee is the

43

subject of a warrant rather than conduct an independent identity check upon booking in LA County.

Id.

Lee Baca ("Baca"), one of the individual LASD defendants, argued on appeal that he was entitled to quasi-judicial immunity because "[l]aw enforcement officers . . . have no duty to 'go behind [a] judicial order . . . to inquire into the validity of the procedure leading up to its issuance.'" Id. at 644 (quoting Francis v. Lyman, 216 F.2d 583, 585 (1st Cir. 1954)). In rejecting Baca's argument, the Ninth Circuit stated:

> [Garcia] is not challenging the validity of the warrant itself, or its issuance in 1994; he is claiming that it was wrongfully applied to him. Taking simple, readily available steps to verify that they had booked the man they sought, in the presence of marked physical differences and [Garcia]'s protestations of misidentification, does not require officers to "inquire into the validity" of a warrant or its issuance. Rather, the question is whether the LASD procedures were reasonably calculated to determine that an arrestee was the person described in the outstanding warrant.

Id. Thus, the Ninth Circuit affirmed the district court's ruling that Baca was not entitled to quasi-judicial immunity. Id. at 644-45.

There are factual similarities between Garcia's arrest on Mario L. Garcia's warrant, and Spriestersbach's arrest on the Castleberry Warrant. However, there is a significant distinction between Baca, who was a law enforcement officer

44

involved in Garcia's incarceration because of the mistaken arrest on the Mario L. Garcia warrant, and the Examiner Defendants, who evaluated Spriestersbach pursuant to court orders in a case where he was being prosecuted as Thomas Castleberry and where he was represented by counsel.  It is arguably true that the Examiner Defendants "did not strictly comply with the [court examination] order[s], as [they] w[ere] applied to the wrong person[.]"  See Garcia, 817 F.3d at 644. However, Spriestersbach's claims in this case challenge his incarceration on the Castleberry Warrant and the lack of procedures to prevent wrongful arrest for the warrant, which led to the proceedings against Spriestersbach in the Castleberry Criminal Case.  His claims do not directly challenge the validity of the proceedings against him in the Castleberry Criminal Case.  Thus, this Court concludes that the Ninth Circuit's holding that Baca was not entitled to quasi-judicial immunity because he had a duty to confirm Garcia's identity as the person named in the warrant does not create a similar duty for the Examiner Defendants to confirm Spriestersbach's identity as the person named in the state court's examination orders. Spriestersbach's argument that the Examiner Defendants were acting in the absence of all jurisdiction is rejected.

On the basis of the foregoing, the Examiner Defendants are entitled to quasi-judicial immunity.  All of

Spriestersbach's claims against the Examiner Defendants are therefore dismissed.  Further, because this Court concludes that it is clear that the defects in those claims cannot be cured by amendment, the dismissal must be with prejudice.  See Hoang v. Bank of Am., N.A., 910 F.3d 1096, 1102 (9th Cir. 2018) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." (quotation marks and citation omitted)).  The Tisza Motion and the Compton/Vargo Joinder are therefore granted.

## CONCLUSION

For the foregoing reasons, the City's Motion for Judgment on the Pleadings, filed March 14, 2022, is HEREBY GRANTED IN PART AND DENIED IN PART.  The City Motion is GRANTED insofar as judgment on the pleadings is granted in favor of the City as to all of Spriestersbach's claims against it.  The City Motion is DENIED insofar as Spriestersbach is GRANTED leave to amend those claims.  If Spriestersbach chooses to amend one or more of his claims against the City, he must file an amended complaint by **September 16, 2022**.  This Court emphasizes that leave to amend is limited to adding further allegations to support the claims that Spriestersbach asserted against the City in the Complaint, and Spriestersbach does not have leave to add new claims against the City.  If Spriestersbach does not file an

46

amended complaint by **September 16, 2022**, the Clerk's Office will terminate the City as a party on **September 19, 2022**, pursuant to this Order.

In addition, Dr. Tisza's Motion to Dismiss Complaint, filed March 14, 2022, and Dr. Compton and Dr. Vargo's Substantive Joinder in Defendant Dr. Sharon Tisza's Motion to Dismiss Complaint, filed March 17, 2022, are HEREBY GRANTED. All of Spriestersbach's claims against Dr. Tisza, Dr. Compton, and Dr. Vargo are DISMISSED WITH PREJUDICE. The Clerk's Office is DIRECTED to terminate them as parties on **September 2, 2022**, unless any party files a timely motion for reconsideration of their dismissal.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 18, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JOSHUA SPRIESTERSBACH VS. STATE OF HAWAII, ET AL; CV 12-00456 LEK-RT; ORDER:  GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR JUDGMENT ON THE PLEADINGS; GRANTING DEFENDANT DR. SHARON TISZA'S MOTION TO DISMISS COMPLAINT; AND GRANTING DEFENDANTS DR. JOHN COMPTON AND DR. MELISSA VARGO'S SUBSTANTIVE JOINDER IN DEFENDANT DR. SHARON TISZA'S MOTION TO DISMISS COMPLAINT**