UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JOSHUA SPRIESTERSBACH,<br><br>           Plaintiff,<br><br>     vs.<br><br>STATE OF HAWAII, CITY AND COUNTY OF HONOLULU, OFFICER ABRAHAM K. BRUHN, DEPARTMENT OF PUBLIC SAFETY, OFFICE OF THE PUBLIC DEFENDER, NIETZSCHE LYNN TOLAN, MICHELLE MURAOKA, LESLIE MALOIAN, JACQUELINE ESSER, JASON BAKER, MERLINDA GARMA, SETH PATEK, DR. JOHN COMPTON, DR. MELISSA VARGO, DR. SHARON TISZA, HAWAII STATE HOSPITAL, DR. ALLISON GARRETT, JOHN/JANE DOES 1-20,<br><br>           Defendants. | CIV. NO. 21-00456 LEK-RT |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ALLISON GARRETT, M.D.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FILED OCTOBER 18, 2023 (ECF 250)**

Before the Court is Defendant Allison Garrett, M.D.'s ("Dr. Garrett") Motion to Dismiss First Amended Complaint Filed October 18, 2023 (ECF 250), which Dr. Garrett filed on November 1, 2023 ("Motion"). [Dkt. no. 262.] Plaintiff Joshua Spriestersbach ("Spriestersbach") filed his memorandum in opposition on December 29, 2023, and Dr. Garrett filed her reply on January 12, 2024. [Dkt. nos. 299, 308.] On December 29, 2023, Defendants Office of the Public Defender, Nietzsche Lynn Tolan,

Michele Muraoka, Lesley Maloian, Jason Baker, and Seth Patek filed a statement of no position as to Dr. Garrett's Motion. [Dkt. no. 296.]

This matter came on for hearing on February 12, 2024.[1] Dr. Garrett's Motion is hereby granted in part and denied in part for the reasons set forth below. The Motion is granted insofar as all of Spriestersbach's claims against Dr. Garrett are dismissed, and the Motion is denied insofar as the dismissal is without prejudice.

<u>**BACKGROUND**</u>

Spriestersbach filed his original Complaint on November 21, 2021. [Dkt. no. 1.] The operative pleading is his October 18, 2023 First Amended Complaint ("Amended Complaint"). [Dkt. no. 250.] This Court previously issued an order addressing some of Spriestersbach's claims in the original Complaint. <u>See</u> Order: Granting in Part and Denying in Part Defendant City and County of Honolulu's Motion for Judgment on the Pleadings; Granting Defendant Dr. Sharon Tisza's Motion to Dismiss Complaint; and Granting Defendants Dr. John Compton and Dr. Melissa Vargo's Substantive Joinder in Defendant Dr. Sharon

---

[1] Dr. Garrett's Motion was heard with three other motions, which will be addressed in separate orders.

Tisza's Motion to Dismiss Complaint, filed 8/18/22 (dkt. no. 151) ("8/18/22 Order").[2]

The case arises from Spriestersbach's May 11, 2017 arrest and prosecution for crimes committed by Thomas R. Castleberry and Spriestersbach's subsequent detention and civil commitment until January 17, 2020. See Complaint, filed 11/21/21 (dkt. no. 1), at ¶¶ 2, 4. Relevant to the instant Motion, the claims in the Amended Complaint are:[3]

-a Title 42 United States Code Section 1983 claim against Defendant City & County of Honolulu ("the City") and Dr. Garrett, alleging violations of Spriestersbach's rights under the Fourth Amendment to the United States Constitution ("Count I"); [Amended Complaint at pg. 43;]

-a Section 1983 claim against the City and Dr. Garrett alleging violations of Spriestersbach's due process rights under the Fourteenth Amendment ("Count II");

-a false imprisonment claim against Dr. Garrett ("Count VIII");

-a negligence claim against Dr. Garrett ("Count IX");

-a medical malpractice claim against Dr. Garrett ("Count X");

-an intentional infliction of emotional distress ("IIED") claim against Defendants Nietzsche Lynn Tolan, Michele Muraoka, Lesley Maloian, Jason Baker, and Seth Patek (collectively "Individual PD Defendants"), the City, and Dr. Garrett ("Count XI"); and

---

[2] The 8/18/22 Order is also available at 622 F. Supp. 3d 948.

[3] The claims that are not alleged against Dr. Garrett and Spriestersbach's claims against Doe Defendants 1-20 are not relevant to his claims against Dr. Garrett and will not be addressed in this Order.

-a negligent infliction of emotional distress ("NIED") claim against the City, the Individual PD Defendants, and Dr. Garrett ("Count XII").

Only the factual allegations relevant to Spriestersbach's claims against Dr. Garrett will be addressed in this Order.

On May 11, 2017, Honolulu Police Department ("HPD") officers arrested Spriestersbach based upon a bench warrant issued for Thomas R. Castleberry, and Spriestersbach was transported to HPD's Central Police Station. [Amended Complaint at ¶ 79.] The arrest report listed "Joshua Spriestersbach" as the defendant and included his state identification number, birth date, and social security number. The arrest report also listed "Thomas R. Castleberry" as an alias, with Thomas Castleberry's social security number. [Id. at ¶¶ 99-100.] On May 12, 2017, Spriestersbach was transported to the State of Hawai`i First Circuit Court ("state court") and later to Defendant Department of Public Safety's Oahu Community Correctional Center ("OCCC"). [Id. at ¶ 142.]

Defendant Nietzsche Lynn Tolan, a Deputy Prosecuting Attorney ("Tolan"), was appointed to represent Spriestersbach.[4] He told Tolan that he was not Thomas Castleberry and that he had

---

[4] The case was State of Hawai`i v. Thomas R. Castleberry, Case No. 1PC-06-1-001421 ("Castleberry Criminal Case").

4

not committed the crimes committed by Thomas Castleberry. Tolan requested, and the state court granted, a three-doctor panel to evaluate Spriestersbach and to determine whether he was fit to proceed in the case against him as Thomas Castleberry.[5] Spriestersbach was held at Defendant Hawai`i State Hospital's facility ("HSH") under the name Thomas R. Castleberry while the competency evaluations and hearings were pending. [Id. at ¶¶ 146-49.]

At all times relevant to this case, Dr. Garrett was employed as a doctor by Defendant State of Hawai`i at HSH. She is being sued in her individual capacity. [Id. at ¶ 18.] Spriestersbach alleges Dr. Garrett "failed to verify [his] identity when he was transferred from O.C.C.C. to H.S.H. Despite having treated [Spriestersbach] previously and having access to [his] medical records and identifying information, H.S.H. staff and doctors failed to review their own files and records to verify [his] identity." Id. at ¶ 150; see also id. at ¶ 152 (alleging Spriestersbach "had been an occasional patient at

---

[5] The three doctors appointed to the panel were Dr. John Compton, Dr. Melissa Vargo, and Dr. Sharon Tisza (collectively "the Examiner Defendants"). [Amended Complaint at ¶¶ 16, 148.] The Amended Complaint refers to them as the "Medical Defendants," [id. at pg. 2 n.1,] and as the "Individual Psychiatric and Psychological Defendants," [id. at ¶ 16]. Spriestersbach's claims against the Examiner Defendants were dismissed with prejudice. See 8/18/22 Order, 622 F. Supp. 3d at 971.

H.S.H. under his real name – Joshua Spriestersbach – since at least 2002"). Throughout the time that he was being evaluated at HSH under the name Thomas R. Castleberry, Spriestersbach "continually advised [the Examiner Defendants] and other staff at H.S.H. of his real name and identity," but the Amended Complaint does not specifically name Dr. Garrett as one of the staff to whom Spriestersbach **continually** gave his real name. See Amended Complaint at ¶ 151. However, reading the Amended Complaint as a whole, Spriestersbach alleges he advised Dr. Garrett of his real name and personal identifying information on at least one occasion. See id. at ¶ 153 (alleging he "provided the . . . H.S.H. staff and doctors . . . with his name, date of birth, social security number"); id. at ¶ 152 (alleging Dr. Garrett used Spriestersbach' "protests regarding his identity as evidence of his incompetency").

        According to Spriestersbach, on February 26, 2018, unknown HSH staff took him to obtain copies of his social security card and State identification card. Those documents should have demonstrated to HSH staff that he was Joshua Spriestersbach and not Thomas Castleberry. Dr. Garrett and others, however, continued to hold Spriestersbach at HSH for two more years. [Id. at ¶¶ 154-56.]

        In January 2020, Dr. Garrett confirmed Spriestersbach's identity and that he was not Thomas

Castleberry, and Spriestersbach was released on January 17,
2020. [Id. at ¶¶ 158-59.]

Spriestersbach makes a general allegation that:

At all times relevant to this case the
Defendants acted recklessly, willfully and with
deliberate indifference to the rights and health
of [Spriestersbach]. Defendants, individually and
collectively, owed a duty to [Spriestersbach] and
breached their duty to [Spriestersbach] by
failing to investigate and confirm his identity
so that he would not be unlawfully held in
custody for someone else's crimes.

[Amended Complaint at ¶ 164.]

In the instant Motion, Dr. Garrett asks this Court to
dismiss all of Spriestersbach's claims against her because he
fails to state a claim upon which relief can be granted. [Motion
at 2 (citing Rule 12(b)(6) of the Federal Rules of Civil
Procedure).] Dr. Garrett emphasizes that Spriestersbach's claims
against her arise from the medical care and services that she
provided in the course and scope of her employment at HSH.
[Motion, Mem. in Supp. at 1-2 (citing Amended Complaint at
¶ 18).] Dr. Garrett asserts she is entitled to qualified
immunity as to Counts I and II because she was acting in the
course and scope of her employment at HSH, and her actions were
reasonable because they were in accordance with Hawai`i law and
the state court orders. [Id. at 12.] As to the state law claims
against her, Dr. Garrett argues that she is entitled to
qualified/conditional privilege. See id. at 16-17. Further,

Dr. Garrett argues all of Spriestersbach's state law claims are insufficiently pled, and he has pled insufficient factual allegations to support an award of punitive damages under either federal or state law. [Id. at 18-24.] Finally, Dr. Garret argues any portion of Spriestersbach's claims against her based on the medical care, treatment, or advice she provided to him before November 21, 2019 is time-barred pursuant to Hawai`i Revised Statutes Section 657-7.23. [Id. at 24-25.] Dr. Garrett argues Spriestersbach's claims against her should be dismissed with prejudice. [Id. at 25.]

## DISCUSSION

### I.   Materials Beyond the Pleadings

Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).[6] When "matters outside the pleading are presented to and not excluded by the court," the 12(b)(6) motion converts into a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Then, both parties must have the opportunity "to present all the material that is pertinent to the motion." Id.

---

[6] Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125-26 (9th Cir. 2002), overruled Lee on grounds not relevant to the issues presented in the instant Motion. See, e.g., Cortez v. Klique Car Club, Inc., Case No. 2:23-cv-07210-MEMF-MAA, 2024 WL 988374, at *1 (C.D. Cal. Mar. 6, 2024). Galbraith was abrogated on other grounds by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). See, e.g., Higa v. Kobayashi, CIV. NO. 19-00664 LEK-WRP, 2020 WL 2027290, at *4 (D. Hawai`i Apr. 27, 2020).

There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201. Both of these procedures permit district courts to consider materials outside a complaint, but each does so for different reasons and in different ways. . . .

Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018).

## A.   **Judicial Notice**

Dr. Garrett asks this Court to take judicial notice of the filings and pleadings in the Castleberry Criminal Case. [Motion, Mem. in Supp. at 4 n.1.]

Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2).

Accordingly, "[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." Lee, 250 F.3d at 689 (quotation marks and citation omitted). But a court cannot take judicial notice of disputed facts contained in such public records. Id.

Khoja, 899 F.3d at 999 (alteration in Khoja). Public records that a district court can take judicial notice of include "documents filed with courts, 'both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.'" Bartolotti v. Maui Mem'l

9

Med. Ctr., Civil No. 14-00549 SOM/KSC, 2015 WL 4545818, at *3 (D. Hawai`i July 28, 2015) (quoting United States v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992)). This Court therefore grants Dr. Garrett's request and takes judicial notice of the docket and filings in the Castleberry Criminal Case, but this Court does not take judicial notice of the disputed facts within those filings.

**B.   Incorporation by Reference**

Dr. Garrett notes that the Amended Complaint cites and relies upon a July 26, 2022 article in the New York Times Magazine, and she includes a copy of the article with the Motion. [Motion, Mem. in Supp. at 4 (citing Amended Complaint at ¶ 3); Motion, Declaration of Lois H. Yamaguchi, Exh. 2.] The Motion recounts various factual assertions from the article about Spriestersbach and the events that gave rise to this case. [Motion, Mem. in Supp. at 4-8.] Dr. Garrett appears to argue that the article is incorporated by reference in the Amended Complaint. See id. at 8-10 (discussing case law regarding incorporation by reference).

> Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims. Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998),

10

> *superseded by statute on other grounds as*
> *recognized in* Abrego Abrego v. Dow Chem. Co., 443
> F.3d 676, 681–82 (9th Cir. 2006) (observing "the
> policy concern underlying the rule: Preventing
> plaintiffs from surviving a Rule 12(b)(6) motion
> by deliberately omitting references to documents
> upon which their claims are based").
>
>     Although the doctrine is straightforward in
> its purpose, it is not always easy to apply. In
> Ritchie, we said that a defendant may seek to
> incorporate a document into the complaint "if the
> plaintiff refers extensively to the document or
> the document forms the basis of the plaintiff's
> claim." [United States v.] Ritchie, 342 F.3d
> [903,] 907 [(9th Cir. 2003)]. How "extensively"
> must the complaint refer to the document? This
> court has held that "the mere mention of the
> existence of a document is insufficient to
> incorporate the contents of a document" under
> Ritchie. Coto Settlement v. Eisenberg, 593 F.3d
> 1031, 1038 (9th Cir. 2010) (citing Ritchie, 342
> F.3d at 908–09). . . .

Khoja, 899 F.3d at 1002.

    The New York Times Magazine article is cited only once

in the Amended Complaint, and it is only cited as an

illustration of Spriestersbach's assertion that the "traumatic

events [giving rise to this case] have already shocked America."

See Amended Complaint at ¶ 3. Because the Amended Complaint does

not refer to the article extensively, and because the article

does not form the basis of any claim asserted in the Amended

Complaint, this Court concludes that the article is not

incorporated by reference in the Amended Complaint. Considering

the article attached to the Motion would require converting the

Motion into a motion for summary judgment, see Khoja, 899 F.3d

at 998, and this Court declines to do so. Therefore, this Court
will not consider the factual statements in Dr. Garrett's Motion
that were taken from the article.

## II.  <u>Qualified Immunity</u>

Dr. Garrett argues Spriestersbach's Section 1983
claims against her must be dismissed because she is entitled to
qualified immunity.

> Qualified immunity "shields government officials
> performing discretionary functions from liability
> for civil damages 'insofar as their conduct does
> not violate clearly established statutory or
> constitutional rights of which a reasonable
> person would have known.'" <u>Scott v. Henrich</u>, 39
> F.3d 912, 914 (9th Cir. 1994) (quoting <u>Harlow v.
> Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727,
> 73 L. Ed. 2d 396 (1982)). When an officer claims
> qualified immunity, we ask "(1) whether there has
> been a violation of a constitutional right; and
> (2) whether that right was clearly established at
> the time of the officer's alleged misconduct."
> <u>Jessop v. City of Fresno</u>, 936 F.3d 937, 940 (9th
> Cir. 2019) (quoting <u>Lal v. California</u>, 746 F.3d
> 1112, 1116 (9th Cir. 2014)). Courts have
> discretion to decide which of the two prongs
> "should be addressed first in light of the
> circumstances in the particular case at hand."
> <u>Pearson v. Callahan</u>, 555 U.S. 223, 236, 129 S.
> Ct. 808, 172 L. Ed. 2d 565 (2009). "Addressing
> the second prong before the first is especially
> appropriate where 'a court will rather quickly
> and easily decide that there was no violation of
> clearly established law.'" <u>Jessop</u>, 936 F.3d at
> 940 (quoting <u>Pearson</u>, 555 U.S. at 239, 129 S. Ct.
> 808).

<u>Saved Mag. v. Spokane Police Dep't</u>, 19 F.4th 1193, 1198 (9th
Cir. 2021).

A.   <u>Constitutional Violation</u>

Spriestersbach's Section 1983 claims against Dr. Garrett allege violations of his rights under the Fourth Amendment and the due process clause of the Fourteenth Amendment. <u>See</u> Amended Complaint at ¶¶ 177-78, 182-84.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." <u>Manuel v. City of Joliet</u>, 580 U.S. 357, 364 (2017) (alterations in <u>Manuel</u>). "The general rule is that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." <u>Id.</u> (brackets, citation, and some internal quotation marks omitted). Further, a wrongful pretrial detention is a Fourth Amendment violation, even where the deprivation of liberty occurs after the legal process as a result of the arrest has commenced. <u>Id.</u> at 364-66. A plaintiff's arrest on a bench warrant is not an unreasonable seizure if there was probable cause to believe that there was a bench warrant issued for the plaintiff's arrest. <u>See</u> <u>Wang v. Monterey Park Police Dep't</u>, No. CV 07-6188-VBF (MLG), 2008 WL 2676846, at *4 (C.D. Cal. July 7, 2008) (citing <u>Beck v.</u> <u>State of Ohio</u>, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964) ("[T]he facts and circumstances within their knowledge and of which they had reasonably trustworthy information were

13

sufficient to warrant a prudent man believing that the petitioner had committed or was committing an offense.")).

In the instant case, Spriestersbach alleges he was wrongfully arrested and detained on May 11, 2017 on a bench warrant issued for Thomas Castleberry because the arresting officers did not have probable cause to believe that he was Thomas Castleberry. See Amended Complaint at ¶¶ 2, 78-79. He was detained at OCCC and HSH until his release on January 17, 2020, and during this time he continued to assert he was not Thomas Castleberry. See id. at ¶¶ 1-2. This Court concludes that these allegations are sufficient pled a plausible Fourth Amendment violation. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)).

The Ninth Circuit has stated:

> "Liberty is protected from unlawful state deprivation by the due process clause of the Fourteenth Amendment." Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc). Moreover, "[t]he Supreme Court has recognized that an individual has a liberty interest in being free from incarceration absent a criminal conviction." Oviatt [ex rel. Waugh v. Pearce], 954 F.2d [1470,] 1474 [(9th Cir. 1992)] (citing Baker v. McCollan, 443 U.S. 137, 144, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)). As the Court explained:

14

> [D]epending on what procedures the State
> affords defendants following arrest and
> prior to actual trial, mere detention
> pursuant to a valid warrant but in the face
> of repeated protests of innocence will after
> the lapse of a certain amount of time
> deprive the accused of "liberty . . .
> without due process of law."
>
> Baker, 443 U.S. at 145, 99 S. Ct. 2689. Thus, the
> loss of liberty caused by an individual's
> mistaken incarceration "after the lapse of a
> certain amount of time" gives rise to a claim
> under the Due Process Clause of the Fourteenth
> Amendment. Id. . . .

Lee, 250 F.3d at 683 (some alterations in Lee). The allegations

summarized above are also sufficient to plead a Fourteenth

Amendment due process violation. The Court next turns to the

issue of whether Spriestersbach sufficiently alleged that Dr.

Garrett's actions and omissions were a cause of the

constitutional violations.

In Rivera v. Corrections Corp. of America, the

plaintiff, Rudy Rivera ("Rivera"), was indicted in the District

of Nevada for marijuana-related offenses and arrested in

California. 999 F.3d 647, 650 (9th Cir. 2021). Rivera was to be

transferred to the District of Nevada for arraignment and a

detention hearing. The United States Marshals Service ("the

Marshals") transferred Rivera to the Nevada Southern Detention

Center ("NSDC") on November 4, 2015. However, Rivera did not

have his first hearing in the District of Nevada until

October 24, 2016. NSDC was private detention facility operated

by CoreCivic, formerly known as Corrections Corporation of America. Id. While he was detained at NSDC, "Rivera repeatedly informed CoreCivic employees that he had not been to court and did not have counsel," but his "interactions with CoreCivic employees led him to believe that his case was proceeding normally and there was no further action he could take to prompt a hearing." Id. at 650-51. He also testified that the CoreCivic employees never explained to him that he was in the custody of the Marshals and that he could raise his concerns to a Marshals deputy at NSDC. Id. at 650.

On appeal, the Ninth Circuit reversed the district court's grant of summary judgment in favor of CoreCivic, holding that "[a] rational jury could find that, in failing to notify the Marshals of Rivera's detention and in dissuading and preventing Rivera from seeking other help, CoreCivic was a cause of Rivera's pre-hearing detention . . . ." Id. at 654. In so holding, the Ninth Circuit rejected CoreCivic's argument that it did not cause Rivera's prolonged detention because it could neither release Rivera nor bring him before judge. Id. at 653.

> Even though CoreCivic could not schedule a
> hearing for Rivera, it could have almost
> certainly prompted a hearing by notifying the
> Marshals of Rivera's plight. . . . [W]hen the
> Public Defender's Office informed the Marshals of
> Rivera's detention, the Marshals brought Rivera
> to court the next business day. We have no reason
> to believe the Marshals would have responded
> differently had CoreCivic, and not the Public

16

> Defender's Office, informed them of Rivera's
> prolonged detention.

Id. at 653–54. Similarly, in the instant case, when Dr. Garrett confirmed Spriestersbach's identity in January 2020, he was released within that month. [Id. at ¶¶ 158-59.] Spriestersbach alleges he was an occasional patient at HSH, under the name Spriestersbach, since 2002. Thus, Dr. Garrett had access to medical records under the name that the purported Thomas Castleberry was asserting was his real name. See id. at ¶ 151. It can be reasonably inferred that, had Dr. Garrett checked Spriestersbach's records sooner, Spriestersbach could have been released earlier. Spriestersbach has pled sufficient factual allegations to allow this Court to draw the reasonable inference that Dr. Garrett was a cause of Spriestersbach's prolonged detention. See Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citation omitted)). This Court therefore turns to the next step of the qualified immunity analysis.

### B.  **Clearly Established Right**

The Ninth Circuit has stated:

> As the Supreme Court explained, . . . "clearly
> established law must be 'particularized' to the
> facts of the case." White v. Pauly, –– U.S. ––,
> 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017)

17

> (quoting Anderson v. Creighton, 483 U.S. 635,
> 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).[7]
> If this is not done, "[p]laintiffs would be able
> to convert the rule of qualified immunity that
> our cases plainly establish into a rule of
> virtually unqualified liability simply by
> alleging violation of extremely abstract rights."
> Anderson, 483 U.S. at 639, 107 S. Ct. 3034.

Saved Mag., 19 F.4th at 1199 (brackets in Saved Mag.). In

evaluating Dr. Garrett's assertion of qualified immunity, this

Court must determine whether "the right asserted by

[Spriestersbach was] so clearly established that a reasonable

[state official in Dr. Garrett's position] would have known that

his conduct violated that right?" See id. (citation and internal

quotation marks omitted).

As previously noted, Spriestersbach does not allege

that Dr. Garrett was one of the HSH staff to whom he **continually**

gave his real name. See Amended Complaint at ¶ 151. However, he

apparently advised Dr. Garrett of his name and personal

identifying information on at least one occasion. See id. at

¶¶ 152-53. For purposes of the instant Motion, this Court

assumes that the factual allegations in the Amended Complaint

are true. See Iqbal, 556 U.S. at 678 ("for the purposes of a

motion to dismiss we must take all of the factual allegations in

---

[7] Anderson was overruled on other grounds by Pearson v.
Callahan, 555 U.S. 223 (2009). See, e.g., Donaghe v. Lashaway,
Case No. 16-cv-5973-RJB-JRC, 2017 WL 8942557, at *11 (W.D. Wash.
May 2, 2017), *report and recommendation adopted*, 2017 WL 2458875
(June 7, 2017).

the complaint as true" (citation omitted)). Dr. Garrett heard Spriestersbach's assertion of misidentification after he had been arrested by HPD officers as Thomas Castleberry, [Amended Complaint at ¶¶ 79, 141,] held at OCCC as Thomas Castleberry, [id. at ¶¶ 142, 145,] brought before the state court, with counsel, as Thomas Castleberry, [id. at ¶¶ 147-48,] and transferred to HSH under the name Thomas Castleberry pursuant to the state court's order for an evaluation by a three-doctor panel, [id. at ¶ 149]. Further, Spriestersbach acknowledges that his "disability and the perception of him by those in authority makes it difficult for his statements of fact about his identity to be trusted; makes his statements regarding his understanding of legal proceedings to be discounted; and causes him to be confused . . . ."[8] [Id. at ¶ 189.]

Based on Lee and the cases cited therein, at the time of the events at issue in this case, it was clearly established that, without adequate arrest and pretrial procedures, the mistaken arrest of a person on a facially valid warrant and detention constitutes a due process violation "'after the lapse of a certain amount of time.'" Lee, 250 F.3d at 684 (discussing Baker, 443 U.S. at 144-45, 99 S. Ct. 2689; Erdman v. Cochise

---

[8] Spriestersbach states that, at all times relevant to this case, he "was schizophrenic, bipolar and dysfunctional." See, e.g., Amended Complaint at ¶ 48.

County, Arizona, 926 F.2d 877, 882 (9th Cir. 1991)). It was also clearly established that "[a]n arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." Id. at 685 (quotation marks and citation omitted). However, although this Court has concluded, based on Rivera, that Spriestersbach has sufficiently alleged that Dr. Garrett was a cause of the constitutional violations, Rivera was decided after the events at issue in this case. Thus, at the time of the events at issue in this case, the clearly established law did not include Rivera.

Further, Lee does not constitute clearly established law as to Dr. Garrett. In Lee, Kerry Sanders - who had a history of mental illness - was arrested in Los Angeles, California and mistakenly identified as Robert Sanders - who had absconded from a temporary release program at a correctional facility in New York. 250 F.3d at 677. The Los Angeles Police Department ("LAPD") informed officials with the New York State Department of Correctional Services ("NYSDCS") that LAPD had Robert Sanders in custody. NYSDCS provided LAPD with an identification packet for Robert Sanders, but LAPD failed to verify that the person in its custody was Robert Sanders. Based on LAPD representations, Philip Coombe, Jr. ("Coombe"), NYSDCS's acting director, or other NYSDCS officials, instructed NYSDCS employees to arrange for Kerry Sanders to be extradited to New York. After an

20

extradition hearing, NYSDCS employees took custody of Kerry Sanders in California and brought him back to New York. They did not verify that the person they transported was in fact Robert Sanders. Kerry Sanders remained incarcerated in New York until NYSDCS officials realized the mistake after Robert Sanders was arrested in another jurisdiction. Id. at 677-78.

Marry Sanders Lee ("Lee"), individually and as conservator for Kerry Sanders and his estate, brought Section 1983 claims and other claims. The defendants were the City of Los Angeles, four LAPD officers, Coombe, and other unnamed City of Los Angeles and NYSDCS employees. Id. at 677. In relevant part, the district court dismissed the claims against the NYSDCS defendants for lack of personal jurisdiction and dismissed the Section 1983 claims against the City of Los Angeles and the LAPD defendants. Id. at 679. On appeal, the Ninth Circuit affirmed in part and reversed in part the district court's personal jurisdiction ruling, as well as the district court's dismissal of the Section 1983 claims against the City of Lost Angeles and the LAPD Defendants. The Ninth Circuit held that the plaintiffs stated valid Section 1983 claims based on, inter alia, violations of the Fourth Amendment and the Fourteenth Amendment due process clause. Id. at 695. Because the Fourteenth Amendment analysis and the Fourth Amendment analysis only addressed the City of Los Angeles and the LAPD, id. at 683-

85, Lee does not constitute clearly established law as

Dr. Garrett. Although there was at least one instance when

Dr. Garrett heard Spriestersbach assert his real identity, she

was not in the same position as the LAPD defendants in Lee. LAPD

was involved in the initial mistaken identification of Kerry

Sanders as Robert Sanders, and LAPD failed to utilize the

identification packet that it received from NYSDCS to verify

that the person in their custody was Robert Sanders. See id. at

677-78. In contrast, Dr. Garrett was not involved in the

mistaken identification of Spriestersbach as Thomas Castleberry,

and she was not provided with information from a government

agency that could have been used to determine whether her

patient was in fact Thomas Castleberry. Therefore, Lee is not

sufficiently "particularized to the facts of the case" to

constitute clearly established law as to Dr. Garrett. See White

v. Pauly, 580 U.S. 73, 79, 137 S. Ct. 548, 552 (2017) (citation

and internal quotation marks omitted).

Similarly, the other cases discussed in the relevant

portion of Lee - Baker, 443 U.S. at 144-45, and Erdman, 926 F.2d

at 882 - are not sufficiently particularized to constitute

clearly established law as to Dr. Garrett. The defendants in

Baker were 1) the sheriff of the county in which the plaintiff

was held for three days after being arrested on a warrant issued

for offenses committed by his brother, and 2) the sheriff's

22

surety. 443 U.S. at 140-41. The defendants in Erdman were two counties that were involved in the plaintiff's arrest for conduct to which he had already pleaded and for which he had already served time in custody. 926 F.2d at 878.

This Court therefore concludes that, at the time of the events at issue in this case, Spriestersbach's Fourth and Fourteenth Amendment rights were not so clearly established that a reasonable state official in Dr. Garrett's position would have known that failing to immediately investigate Spriestersbach's report of mistaken identification would constitute a violation of Spriestersbach's rights. See Saved Mag., 19 F.4th at 1199. Because Spriestersbach's rights were not clearly established, Dr. Garrett is entitled to qualified immunity from his Section 1983 claims. The portions of Counts I and II alleging Section 1983 claims against Dr. Garrett are therefore dismissed because Spriestersbach has failed to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." Hoang v. Bank of Am., N.A., 910 F.3d 1096, 1102 (9th Cir. 2018) (citation and quotation marks omitted)). Although it is unlikely that Spriestersbach will be able to do so, it may be possible for him to amend his factual allegations to bring his Section 1983 claims against

Dr. Garrett within the realm of clearly established law. The dismissal of his Section 1983 claims against Dr. Garrett is therefore without prejudice.

## III. Qualified/Conditional Privilege

Dr. Garrett argues Spriestersbach's state law claims against her must be dismissed because she has a qualified or conditional privilege.

Hawaii law provides that a nonjudicial government official has a qualified or conditional privilege with respect to his or her tortious actions taken in the performance of his or her public duty. Towse v. State of Hawaii, 647 P.2d 696, 702 (Haw. 1982); Runnels v. Okamoto, 525 P.2d 1125, 1128 (Haw. 1974). This privilege shields all but the most guilty nonjudicial officials from liability, but not from the imposition of a suit itself. Towse, 647 P.2d at 702. The privilege is the result of the Hawaii Supreme Court's balancing of competing interests. It protects the innocent public servant's pocketbook, yet it allows an injured party to be heard. See Medeiros v. Kondo, 522 P.2d 1269, 1272 (Haw. 1974).

For a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose. Towse, 647 P.2d at 702–03; Medeiros, 522 P.2d at 1272. When a public official is motivated by malice, and not by an otherwise proper purpose, Hawaii law provides that the cloak of immunity is lost and the official must defend the suit same as any other defendant. Marshall v. Univ. of Haw., 821 P.2d 937, 946 (Haw. Ct. App. 1991), abrogated on other grounds by Hac v. Univ. of Haw., 73 P.3d 46 (Haw. 2003).

24

> The existence or absence of malice is
> generally a question for the jury. <u>Runnels</u>,
> 525 P.2d at 1129. However, when the
> existence or absence of malice is
> demonstrated to the court via uncontroverted
> affidavits or depositions, the court may
> rule on the existence or absence of malice
> as a matter of law. <u>See</u> <u>id.</u>
>
> <u>Edenfield v. Estate of Willets</u>, Civ. No. 05-00418 SOM-
> BMK, 2006 WL 1041724, at *11-12 (D. Haw. Apr. 14,
> 2006) (parallel citations omitted).

<u>Begley v. Cnty. of Kauai</u>, CIVIL 16-00350 LEK-KJM, 2018 WL 3638083, at *6 (D. Hawai`i July 31, 2018) (some citations omitted). "Except in claims for defamation, an actual malice standard applies as to all tort claims." <u>Id.</u> (citation and internal quotation marks omitted). The qualified or conditional privilege under Hawai`i law will be referred to in this Order as the "conditional privilege."[9]

First, Spriestersbach argues conditional privilege is not available to Dr. Garrett. <u>See</u> Mem. in Opp. at 22 (arguing conditional privilege "only applies to a person who acts so as to 'set and carry out governmental policies, while acting within the scope of his or her powers as a governmental official'" (quoting <u>Slingluff v. State Dep't of Pub. Safety</u>, 131 Haw. 239,

---

[9] The qualified or conditional privilege is sometimes referred to as "qualified immunity." <u>See, e.g.</u>, <u>Slingluff v. Hawai`i</u>, 131 Hawai`i 239, 244, 317 P.3d 683, 688 (Ct. App. 2013). Because this order also discusses qualified immunity under federal law, the term "conditional privilege" is used in this Order to distinguish between the two.

245 (Ct. App. 2013)). Spriestersbach misstates <u>Slingluff</u>. In the passage he quotes, the Hawai`i Intermediate Court of Appeals ("ICA") merely notes that the issue in <u>Barr v. Matteo</u>, 360 U.S. 564 (1959), "was whether the protections given to high officials, *i.e.*, 'executive officers of cabinet rank,' should be extended to other government officials who set and carry out governmental policies, while acting within the scope of his or her powers as a government official[,]" and that the United States Supreme Court answered that question in the affirmative. See <u>Slingluff</u>, 131 Hawai`i at 245, 317 P.3d at 689 (quoting <u>Barr</u>, 360 U.S. at 572, 79 S. Ct. 1335). The ICA ultimately stated that

> the primary purpose of [conditional privilege] is to ensure that public officers and employees are not unduly hampered, deterred and intimidated in the discharge of their **duties** by the threat of lawsuits. It seeks to avoid making public officials unduly fearful in their **exercise of authority** and to avoid discouraging them from taking prompt and decisive action.

<u>Id.</u> at 246, 317 P.3d at 690 (emphases added) (brackets, citations, and internal quotation marks omitted). Although determining and carrying out government policy clearly falls within the scope of the conditional privilege, they are not the **only** circumstances when the conditional privilege applies. The privilege also applies when the defendant makes decisions exercising governmental discretion. See <u>id.</u> at 250, 317 P.3d at

26

694 (holding that the circuit court did not err when it denied
two physician defendants' motion for summary judgment because
their decisions "did not involve policy making or any other type
of governmental discretion"). This Court therefore rejects
Spriestersbach's argument that the conditional privilege only
applies when the defendant is setting and carrying out
government policy.

Spriestersbach also points out that "[p]hysicians
employed by the state and indeed even treating in a state prison
do not necessarily enjoy the privilege." [Mem. in Opp. at 22
(citing Slingluff v. State Dep't of Pub. Safety, 131 Haw. 239,
246 (Ct. App. 2013)).] Spriestersbach argues that, similarly,
Dr. Garrett is not entitled to the conditional privilege merely
because she treated him at HSH. See id. In Slingluff, the ICA
held that "the exercise of purely medical judgment is not
entitled to the shield of [the conditional privilege]." 131
Hawai`i at 247, 317 P.3d at 691. The circuit court had concluded
that:

> the defendant physicians were negligent in:
> (1) failing to promptly treat Slingluff in order
> to apply [an incision and drainage] treatment to
> the abscess, and that the delay in treatment fell
> below the standard of care; (2) prescribing the
> wrong dosage of antibiotic; and (3) failing to
> prescribe a different antibiotic when it became
> apparent that the original antibiotic was not
> working.

Id. at 249–50, 317 P.3d at 693–94. On appeal, the ICA held that the physician defendants were not entitled to the conditional privilege as to these matters because they "all pertain to the exercise of purely **medical** discretion because they involved strictly medical diagnosis and treatment. The decisions made did not involve policy making or any other type of governmental discretion." Id. at 250, 317 P.3d at 694.

In the instant case, the decision at issue is Dr. Garrett's decision not to undertake independent investigation when she initially heard her patient's statement, or statements, that he was Spriestersbach and not Thomas Castleberry. That was not a medical diagnosis of her patient's condition nor was it a decision regarding the appropriate medical treatment for her patient. Her decision not to undertake an investigation into his identity was an exercise of government discretion because the investigation would have required her to question, *inter alia*, HPD's, OCCC's, and the state court's records identifying her patient as Thomas Castleberry. This Court therefore concludes that Dr. Garrett's decision is protected by the conditional privilege.

Spriestersbach next argues that, even if the conditional privilege would otherwise apply, Dr. Garrett is not entitled to the protection of the privilege because she acted in reckless disregard of the law or his legal rights. [Mem. in Opp.

at 22 (some citations omitted) (citing Awakuni v. Awana, 115
Haw. 126, 141, 165 P.3d 1027, 1042 (2007)).] The Amended
Complaint does not contain a specific allegation that
Dr. Garrett acted with malice or in reckless disregard for the
law or his legal rights when she initially decided not to
investigate his report(s) of mistaken identification.
Spriestersbach makes only general allegations applicable to
several defendants. See, e.g., Amended Complaint at ¶ 22
(alleging "wrongful acts and/or omissions by any individual
defendant was done intentionally, maliciously, or with reckless
disregard for the rights of Joshua"). Such conclusory assertions
of malice and reckless disregard, which are not supported by
other factual allegations, are insufficient for Spriestersbach's
state law claims to survive dismissal. See Iqbal, 556 U.S. at
678 ("Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice."
(citation omitted)).

As previously noted, ultimately, to defeat
Dr. Garrett's assertion of conditional privilege, Spriestersbach
will have to "demonstrate by clear and convincing proof that
[Dr. Garrett] was motivated by malice and not by an otherwise
proper purpose." See Edenfield, 2006 WL 1041724 at *12 (citing
Towse, 647 P.2d at 702-03; Medeiros, 522 P.2d at 1272).
Spriestersbach has not pled factual allegations that, if proven

to be true, would establish by clear and convincing evidence that Dr. Garrett "was motivated by malice and not by an otherwise proper purpose." This Court therefore concludes that Dr. Garrett is entitled to the protection of the conditional privilege. All of Spriestersbach's state law claims against her must therefore be dismissed because he has failed to state a claim upon which relief can be granted.

Although it is unlikely that Spriestersbach will be able to do so, it may be possible for Spriestersbach to amend his allegations to render the conditional privilege inapplicable, at least for purposes of a motion to dismiss. The dismissal of his state law claims against Dr. Garrett is therefore without prejudice.

## IV.  **Other Arguments**

This Court has dismissed all of Spriestersbach's claims against Dr. Garrett without prejudice. If Spriestersbach chooses to file a second amended complaint, the new factual allegations that he includes in an attempt to address the defects discussed in this Order are likely to affect the other defects that Dr. Garrett alleges exist in the Amended Complaint. This Court therefore declines to address the other arguments that Dr. Garrett raises in the Motion.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss First Amended Complaint Filed October 18, 2023 (ECF 250), which Dr. Garrett filed on November 1, 2023, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as all of Spriestersbach's claims against Dr. Garrett are DISMISSED. The Motion is DENIED insofar as the dismissal is WITHOUT PREJUDICE. Spriestersbach is GRANTED leave to file a second amended complaint to cure the defects identified in this Order. Spriestersbach shall file his second amended complaint by **March 29, 2024.** If Spriestersbach chooses not to file a second amended complaint, this case shall proceed as to the remaining claims in his First Amended Complaint, filed October 18, 2023.

Spriestersbach is CAUTIONED that he may not add any additional parties in the second amended complaint, nor may he add any additional claims or theories of liability against Dr. Garrett. Spriestersbach is also CAUTIONED that the deadline to file his second amended complaint will not be affected by the filing of any motion for reconsideration of this Order. If a motion for reconsideration is filed and granted after the filing of his second amended complaint, Spriestersbach will be granted leave to file a third amended complaint.

IT IS SO ORDERED.

31

DATED AT HONOLULU, HAWAII, March 15, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

JOSHUA SPRIESTERBACH VS. STATE OF HAWAII, ET AL; CV 21-00456
LEK-RT; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT
ALLISON GARRETT, M.D.'S MOTION TO DISMISS FIRST AMENDED
COMPLAINT FILED OCTOBER 18, 2023 (ECF 250)