UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JOSHUA SPRIESTERSBACH,<br><br>                    Plaintiff,<br><br>     vs.<br><br>STATE OF HAWAII, CITY AND COUNTY OF HONOLULU, OFFICER ABRAHAM K. BRUHN, DEPARTMENT OF PUBLIC SAFETY, OFFICE OF THE PUBLIC DEFENDER, NIETZSCHE LYNN TOLAN, MICHELLE MURAOKA, LESLIE MALOIAN, JACQUELINE ESSER, JASON BAKER, MERLINDA GARMA, SETH PATEK, DR. JOHN COMPTON, DR. MELISSA VARGO, DR. SHARON TISZA, HAWAII STATE HOSPITAL, DR. ALLISON GARRETT, JOHN/JANE DOES 1-20,<br><br>                    Defendants. | CIV. NO. 21-00456 LEK-RT |

**ORDER GRANTING IN PART AND DENYING IN PART THE PD DEFENDANTS' MOTION TO DISMISS PLAINTIFF JOSHUA SPRIESTERSBACH'S *FIRST AMENDED COMPLAINT* FILED ON OCTOBER 18, 2023**

On November 1, 2023, Defendants Office of the Public Defender ("OPD"), Nietzsche Lynn Tolan, Michele Muraoka, Lesley Maloian, Jason Baker, and Seth Patek (collectively "PD Defendants") filed their Motion to Dismiss Plaintiff Joshua Spriestersbach's *First Amended Complaint* Filed on October 18, 2023, and on November 14, 2023 they filed an errata to the

motion.[1] [Dkt. nos. 261, 267.] Plaintiff Joshua Spriestersbach ("Spriestersbach") filed his memorandum in opposition on December 29, 2023, and the PD Defendants filed their reply on January 12, 2024. [Dkt. nos. 297, 307.]

This matter came on for hearing on February 12, 2024.[2] The PD Defendants' Motion is hereby granted in part and denied in part for the reasons set forth below. The Motion is granted insofar as all of Spriestersbach's claims against the PD Defendants are dismissed, and the Motion is denied insofar as the dismissal is without prejudice, except for Spriestersbach's legal malpractice claim against OPD. That claim is dismissed with prejudice in the instant case, but the dismissal is without prejudice to the filing of the claim in state court.

## BACKGROUND

Spriestersbach filed his original Complaint on November 21, 2021. [Dkt. no. 1.] The operative pleading is his October 18, 2023 First Amended Complaint ("Amended Complaint"). [Dkt. no. 250.] This Court previously issued an order addressing some of Spriestersbach's claims in the original Complaint. See Order: Granting in Part and Denying in Part Defendant City and

---

[1] The PD Defendants' motion, as amended by their errata, will be referred to as the "Motion."

[2] The PD Defendants' Motion was heard with three other motions, which will be addressed in separate orders.

County of Honolulu's Motion for Judgment on the Pleadings;

Granting Defendant Dr. Sharon Tisza's Motion to Dismiss

Complaint; and Granting Defendants Dr. John Compton and

Dr. Melissa Vargo's Substantive Joinder in Defendant Dr. Sharon

Tisza's Motion to Dismiss Complaint, filed 8/18/22 (dkt.

no. 151) ("8/18/22 Order").[3]

The case arises from Spriestersbach's May 11, 2017

arrest and prosecution for crimes committed by Thomas R.

Castleberry and Spriestersbach's subsequent detention and civil

commitment related to that arrest until January 17, 2020. See

Complaint, filed 11/21/21 (dkt. no. 1), at ¶¶ 2, 4. Relevant to

the instant Motion, the claims in the Amended Complaint are:[4]

-a disability discrimination claim against Defendant City and
    County of Honolulu ("the City") and OPD, based upon
    violations of the Americans with Disabilities Act ("ADA"),
    Title 42 United States Code Section 12101, et seq.
    ("Count III");

-an intentional infliction of emotional distress ("IIED") claim
    against Defendants Nietzsche Lynn Tolan, Michele Muraoka,
    Lesley Maloian, Jason Baker, and Seth Patek (collectively
    "Individual PD Defendants"), the City, Defendant Allison
    Garrett, M.D. ("Dr. Garrett"), and Doe Defendants 11-15
    ("Count XI");

---

[3] The 8/18/22 Order is also available at 622 F. Supp. 3d 948.

[4] The claims that are not alleged against the PD Defendants, including Spriestersbach's claims against Doe Defendants 1-10 and Doe Defendants 16-20, are not relevant to his claims against the PD Defendants and will not be addressed in this Order. Doe Defendants 11-15 are unknown public defenders. See Amended Complaint at ¶ 152.

3

-a negligent infliction of emotional distress ("NIED") claim
  against the City, the Individual PD Defendants,
  Dr. Garrett, and Doe Defendants 11-15 ("Count XII"); and

-a legal malpractice claim against the PD Defendants and Doe
  Defendants 11-15 ("Count XIII").

Only the factual allegations relevant to Spriestersbach's claims against the PD Defendants will be addressed in this Order.

On May 11, 2017, Honolulu Police Department ("HPD") officers arrested Spriestersbach based upon a bench warrant issued for Thomas R. Castleberry and transported him to HPD's Central Police Station. [Amended Complaint at ¶ 79.] The arrest report listed "Joshua Spriestersbach" as the defendant and included his state identification number, birth date, and social security number. The arrest report also listed "Thomas R. Castleberry" as an alias, with Thomas Castleberry's social security number. [Id. at ¶¶ 99-100.] On May 12, 2017, Spriestersbach was transported to the State of Hawai`i First Circuit Court ("state court") and later to Defendant Department of Public Safety's Oahu Community Correctional Center ("OCCC"). [Id. at ¶ 142.]

Defendant Nietzsche Lynn Tolan, a Deputy Prosecuting Attorney ("Tolan"), was appointed to represent Spriestersbach.[5]

---

[5] The case was State of Hawai`i v. Thomas R. Castleberry, Case No. 1PC-06-1-001421 ("Castleberry Criminal Case").

Before his first court hearing, Spriestersbach told Tolan that
he was not Thomas Castleberry and that he was not on O`ahu when
Castleberry's crimes were committed. Spriestersbach also
provided his personal identifying information to Tolan.
According to Spriestersbach, Tolan did not attempt to verify his
statements, and instead requested an evaluation by a three-
doctor panel to determine whether Spriestersbach was fit to
proceed ("competency evaluation"). The state court granted the
request and appointed a panel.[6] [Id. at ¶¶ 146-49.]

Spriestersbach was held at Defendant Hawai`i State
Hospital's facility ("HSH") under the name Thomas R. Castleberry
while the competency evaluation and related hearings were
pending. During that time, Spriestersbach was represented by six
other deputy public defenders, including Defendants Michelle
Muraoka ("Muraoka"), Lesley Maloian ("Maloian"), Jason Baker
("Baker"), Seth Patek ("Patek"), and Doe Defendants 11-15. None
of the deputy public defenders who represented Spriestersbach
verified the information that he gave them when he attempted to

---

[6] The three doctors appointed to the panel were Dr. John
Compton, Dr. Melissa Vargo, and Dr. Sharon Tisza (collectively
"the Examiner Defendants"). [Amended Complaint at ¶¶ 16, 148.]
The Amended Complaint refers to them as the "Medical
Defendants," [id. at pg. 2 n.1,] and as the "Individual
Psychiatric and Psychological Defendants," [id. at ¶ 16].
Spriestersbach's claims against the Examiner Defendants were
dismissed with prejudice. See 8/18/22 Order, 622 F. Supp. 3d at
971.

show that he was not Thomas Castleberry. [Id. at ¶ 149.] The Individual PD Defendants used Spriestersbach's protests that he was not Thomas Castleberry as evidence that he was incompetent. Spriestersbach provided them with his real name, birth date, and social security number. Even though they had access to his records and files, until 2020, no one attempted to confirm his claim that he was not Thomas Castleberry. [Id. at ¶¶ 152-53.]

According to the Amended Complaint, on January 20, 2020, after Spriestersbach had been released from HSH, Patek and Doe Defendants 11-15 met with "representatives of the attorney general, and the prosecutor all met in court in an off the record session, without notice to [Spriestersbach] and without him being present. These representatives discussed [Spriestersbach]'s release from the hospital, and they worked collectively to cover up [Spriestersbach]'s false imprisonment and unwanted medical treatment." [Id. at ¶ 160.]

Spriestersbach argues generally that:

> At all times relevant to this case the Defendants acted recklessly, willfully and with deliberate indifference to the rights and health of [Spriestersbach]. Defendants, individually and collectively, owed a duty to [Spriestersbach] and breached their duty to [Spriestersbach] by failing to investigate and confirm his identity so that he would not be unlawfully held in custody for someone else's crimes.

[Id. at ¶ 164.]

6

In the instant Motion, the PD Defendants ask this

Court to take judicial notice of the following:

-docket number 54 in the Castleberry Criminal Case, which is the
     "Bench Warrant/Return of Service for Bench Warrant, a true
     and correct copy, Bates-stamped OPD 000001," with the
     handwritten notation of Spriestersbach's name ("Castleberry
     Warrant"); see Motion, Mem. in Supp. at 4 (emphasis
     omitted); see also Motion, Declaration of Justine Hura
     ("Hura Decl."), Exh. A (Castleberry Warrant);

-the docket sheet in the Castleberry Criminal Case, Bates-
     stamped OPD 000003-19; Motion, Mem. in Supp. at 4-5; see
     also Hura Decl., Exh. B;

-the May 12, 2017 Order Pertaining to Bail in the Castleberry
     Criminal Case, Bates-stamped OPD 000002; Motion, Mem. in
     Supp. at 5; see also Hura Decl., Exh. C;

-the Notice of Setting filed as docket number 173 in the
     Castleberry Criminal Case; Motion, Mem. in Supp. at 5; see
     also Hura Decl., Exh. D; and

-docket entry 175 in the Castleberry Criminal Case, the
     January 22, 2020 minutes of a status conference in
     chambers, [Motion, Mem. in Supp. at 5].

The PD Defendants argue Spriestersbach's claims

against them should be dismissed because he fails to state a

claim upon which relief can be granted. [Id. at 25.] The PD

Defendants assert: Spriestersbach's state law claims against OPD

are precluded because of sovereign immunity; [id. at 24;] the

factual allegations of the Amended Complaint do not support any

plausible claims against the PD Defendants; [id. at 9-18;]

Count III fails to state a plausible ADA claim against OPD; [id.

at 19-24;] and the Individual PD Defendants are entitled to the

7

conditional privilege as to Spriestersbach's state law claims,
[id. at 18-19].

**DISCUSSION**

**I.   Judicial Notice**

The PD Defendants ask this Court to take judicial
notice of the docket and certain filings in the Castleberry
Criminal Case. [Id. at 4-5.]

> Generally, district courts may not consider
> material outside the pleadings when assessing the
> sufficiency of a complaint under Rule 12(b)(6) of
> the Federal Rules of Civil Procedure. Lee v. City
> of Los Angeles, 250 F.3d 668, 688 (9th Cir.
> 2001).[7] When "matters outside the pleading are
> presented to and not excluded by the court," the
> 12(b)(6) motion converts into a motion for
> summary judgment under Rule 56. Fed. R. Civ.
> P. 12(d). Then, both parties must have the
> opportunity "to present all the material that is
> pertinent to the motion." Id.

Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th

Cir. 2018). Judicial notice under Federal Rule of Evidence 201

is one of the exceptions to this general rule. Id.

> Judicial notice under Rule 201 permits a
> court to notice an adjudicative fact if it is
> "not subject to reasonable dispute." Fed. R.
> Evid. 201(b). A fact is "not subject to
> reasonable dispute" if it is "generally known,"

---

[7] Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125-26
(9th Cir. 2002), overruled Lee on grounds not relevant to the
issues presented in the instant Motion. See, e.g., Cortez v.
Klique Car Club, Inc., Case No. 2:23-cv-07210-MEMF-MAA, 2024 WL
988374, at *1 (C.D. Cal. Mar. 6, 2024). Galbraith was abrogated
on other grounds by Bell Atlantic Corp. v. Twombly, 550 U.S. 544
(2007). See, e.g., Higa v. Kobayashi, CIV. NO. 19-00664 LEK-WRP,
2020 WL 2027290, at *4 (D. Hawai`i Apr. 27, 2020).

> or "can be accurately and readily determined from
> sources whose accuracy cannot reasonably be
> questioned." Fed. R. Evid. 201(b)(1)–(2).
>
> Accordingly, "[a] court may take judicial
> notice of matters of public record without
> converting a motion to dismiss into a motion for
> summary judgment." Lee, 250 F.3d at 689
> (quotation marks and citation omitted). But a
> court cannot take judicial notice of disputed
> facts contained in such public records. Id.

Id. at 999 (some alterations in Khoja). Public records that a

district court can take judicial notice of include "documents

filed with courts, 'both within and without the federal judicial

system, if those proceedings have a direct relation to the

matters at issue.'" Bartolotti v. Maui Mem'l Med. Ctr., Civil

No. 14-00549 SOM/KSC, 2015 WL 4545818, at *3 (D. Hawai`i

July 28, 2015) (quoting United States v. Borneo, Inc., 971 F.2d

244, 248 (9th Cir. 1992)). This Court therefore grants the

PD Defendants' request and takes judicial notice of the docket

in the Castleberry Criminal Case and the specific filings

identified in the Motion, but this Court does not take judicial

notice of the disputed facts within those filings.

## II.  <u>Eleventh Amendment Immunity</u>

This Court turns first to the PD Defendants' Eleventh

Amended immunity argument. "The ultimate guarantee of the

Eleventh Amendment is that nonconsenting States may not be sued

by private individuals in federal court." Bd. of Trs. of Univ.

of Ala. v. Garrett, 531 U.S. 356, 363 (2001) (citation omitted);

see also U.S. Const., amend. XI. "It is well established that
agencies of the state are immune under the Eleventh Amendment
from private damages or suits for injunctive relief brought in
federal court." Sato v. Orange Cnty. Dep't of Educ., 861 F.3d
923, 928 (9th Cir. 2017) (citation and quotation marks omitted);
see also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,
506 U.S. 139, 144 (1993) ("Absent waiver, neither a State nor
agencies acting under its control may be subject to suit in
federal court." (citations and internal quotation marks
omitted)). As such, "[s]tates, their agencies, and their
officials in their official capacities are immune from damage
suits under state or federal law by private parties in federal
court unless there is a valid abrogation of that immunity or an
unequivocal express waiver by the state."[8] Monet v. Hawai`i, Civ.
No. 11-00211 SOM/RLP, 2011 WL 2446310, at *4 (D. Hawai`i
June 14, 2011) (some citations omitted) (citing Sossamon v.
Tex., 131 S. Ct. 1651, 1658 (2011)).

        OPD is a state agency for purposes of the Eleventh
Amendment. See Daniels v. Novant Health, Inc., Case No. 22-cv-
00295-DKW-WRP, 2023 WL 3434933, at *3 (D. Hawai`i May 12, 2023)
("the State of Hawai`i itself, the Department of Public Safety,
the Department of Transportation, [and] the Office of the Public

------

        [8] The Individual PD Defendants are only being sued in their
individual capacity. See Amended Complaint at ¶ 15.

Defender . . . each qualifies as 'a state, an arm of the state, its instrumentalities, or its agencies'" (some internal quotation marks omitted) (quoting Franceschi v. Schwartz, 57 F.3d 828, 831 (9th Cir. 1995))); see also Haw. Rev. Stat. § 802-8 ("An office of state public defender is hereby created within the department of budget and finance for administrative purposes.").

In the ADA, Congress abrogated the states' Eleventh Amendment immunity "insofar as Title II creates a private cause of action for damages against the States for conduct that **actually** violates the Fourteenth Amendment." United States v. Georgia, 546 U.S. 151, 159 (2006) (emphasis in original). The PD Defendants appear to acknowledge this, and they seek only the dismissal of Spriestersbach's state law claims against OPD based on sovereign immunity. See Motion, Mem. in Supp. at 24. The only state law claim that Spriestersbach asserts against OPD is Count XIII, his legal malpractice claim. See Amended Complaint at pg. 62. This Court concludes that Spriestersbach's claim against OPD in Count XIII is barred by OPD's Eleventh Amendment immunity and must be dismissed because Spriestersbach fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint

11

could not be saved by amendment." <u>Hoang v. Bank of Am., N.A.</u>, 910 F.3d 1096, 1102 (9th Cir. 2018) (citation and quotation marks omitted)). Because it is clear that Spriestersbach cannot cure the defect in his legal malpractice claim against OPD by amendment, the dismissal of Spriestersbach's claim against OPD in Count XIII is with prejudice. However, the dismissal is without prejudice to an attempt to assert the claim in state court.[9]

## III. **<u>ADA Claim</u>**

> Title II of the ADA
>
> prohibits a public entity from discriminating against any "qualified individual with a disability." <u>Sheehan v. City and Cnty. of San Francisco</u>, (<u>Sheehan I</u>), 743 F.3d 1211, 1231 (9th Cir.) *cert. granted sub nom.*, 574 U.S. 1021 (2014), *and rev'd in part, cert. dismissed in part sub nom.* <u>City and Cnty. of San Francisco, Calif.</u>, (<u>Sheehan II</u>), 575 U.S. 600, 617 (2015).
>
> Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act, which provides:
>
>> No otherwise qualified individual with a disability shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
>
> 29 U.S.C. ¶ [sic] 794.

---

[9] This Court makes no findings or conclusions regarding the merits of Spriestersbach's legal malpractice claim against OPD.

> To state a claim pursuant to Title II of the ADA, a plaintiff must show:
>
> (1) she is an individual with a disability;
>
> (2) she was excluded from participation in or otherwise discriminated against with regard to the public entity's services, programs, or activities; and,
>
> (3) such exclusion or discrimination was by reason of her disability.
>
> Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

Taylor v. City & Cnty. of Honolulu, 666 F. Supp. 3d 1098, 1127 (D. Hawai`i 2023), *appeal filed* (9th Cir. Apr. 6, 2023).

### A.    **Public Entity**

The PD Defendants first argue that Spriestersbach's ADA claim against OPD should be dismissed because OPD is not a "public entity" for purposes of Title II of the ADA. [Motion, Mem. in Supp. at 22 (citing Walker v. City of New York, 2022 WL 4539514 (E.D.N.Y. 2002)).] The ADA provides that, for purposes of Title II:

> The term "public entity" means--
>
> (A) any State or local government;
>
> (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and
>
> (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49).

42 U.S.C. § 12131. As previously stated, OPD is an agency of the State of Hawai`i. Thus, a plain language reading of Section 12131 suggests that OPD is a public entity for purposes of ADA Title II. This Court is not aware of any binding legal authority addressing the issue of whether a state or local public defender's office is a public entity for purposes of ADA Title II, nor have the parties identified any binding authority addressing that issue.

The PD Defendants rely primarily on <u>Walker</u> as persuasive authority. This Court has considered the ADA Title II analysis in <u>Walker</u> and concludes that it is not persuasive. The plaintiff, Michael Walker ("Walker"), brought claims under Title 42 United States Code Section 1983, ADA claims, and other claims against the City of New York, alleging the city

> violated his rights under the ADA . . . and failed to protect his constitutional rights by (i) failing to train and supervise the Brooklyn Defender Services ("BDS") attorney who represented Plaintiff in his criminal case, (ii) failing to accommodate Plaintiff's visual impairments, and (iii) creating a policy or custom that resulted in the deprivation of Plaintiff's rights. In particular, Plaintiff alleges that the BDS counsel who represented Plaintiff in his criminal proceeding failed to accommodate Plaintiff's visual impairment when she visited him in prison and during his criminal proceeding.

<u>Walker v. City of New York</u>, 20-CV-5240(PKC)(TAM), 2022 WL 4539514, at *1 (E.D.N.Y. Sept. 28, 2022) (citations omitted).

In ruling that Walker's ADA claim failed, the district court cited its Section 1983 analysis and concluded that the City of New York was not liable for the actions of Walker's BDS counsel. Id. at *5 (citing Browdy v. Karpe, 131 F. App'x 751, 753–54 (2d Cir. 2005) (summary order) ("[Plaintiff's] ADA claims also were properly dismissed because he has sued his [public defenders], not [a] public entity[.]")). The plaintiff in Browdy attempted to sue a Connecticut public defender and Connecticut's chief public defender, who were "employees of the Connecticut Public Defender Services, a state agency." 131 F. App'x at 752-53. There is no indication in the Second Circuit's opinion that the agency itself was named a defendant. The Second Circuit's holding was essentially that the individual public defenders could not be sued under Title II of the ADA. See id. at 754 ("Browdy's ADA claims . . . were properly dismissed because he has sued his lawyers, not the public entity that provides competency hearings. Moreover, Title II of that statute does not provide for individual capacity suits against state officials." (citing Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001))). In Walker, the district court's reliance on Browdy is misplaced because the conclusion that individual public defenders could not be public entities does not require a conclusion that the government agency that employs the public defenders cannot be public entity.

15

This Court also disagrees with the ADA analysis in
Walker because the district court relied on its analysis of
Walker's Section 1983 claims. The district court stated,

> public defenders do "not act under color of state
> law when performing a lawyer's traditional
> functions as counsel to a defendant in a criminal
> proceeding." Polk Cty. v. Dodson, 454 U.S. 312,
> 325 (1981). In other words, public defenders are
> not state actors, Georgia v. McCollum, 505 U.S.
> 42, 53 n.9 (1992), and their actions therefore
> cannot be "the moving force of the constitutional
> violation [that can] establish the liability of a
> government body under § 1983," Polk Cnty, [sic]
> 454 U.S. at 326 (citation and internal quotation
> marks omitted). This is true even if "the state
> pays for the services [public defenders]
> provide." Milan v. Wertheimer, 808 F.3d 961, 964
> (2d Cir. 2015)

Walker, 2022 WL 4539514, at *4 (some alterations in Walker)
(footnote omitted). However, the statement in Polk County that
"a public defender does not act under color of state law when
performing a lawyer's traditional functions as counsel to a
defendant in a criminal proceeding" was made in the analysis of
the plaintiff's Section 1983 claims against the individual
public defender. See Polk Cnty., 454 U.S. at 314, 325. Moreover,
the Section 12131 definition of a public entity does not contain
"color of law" language such as in Section 1983. See 42 U.S.C.
§ 1983 ("Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State or
Territory or the District of Columbia, subjects, or causes to be
subjected, any citizen of the United States or other person

16

within the jurisdiction thereof to the deprivation of any

rights, privileges, or immunities secured by the Constitution

and laws, shall be liable to the party injured in an action at

law, suit in equity, or other proper proceeding for

redress . . . .").

For all of these reasons, this Court declines to

follow Walker. Based on the plain language reading of

Section 12131, this Court concludes that OPD is a public entity

for purposes of Title II of the ADA.

**B.    Sufficiency of the Allegations**

Spriestersbach states that he

suffers from a "disability" within the meaning
and scope of 42 U.S.C. § 12102.[10] In particular,
Joshua's disability and the perception of him by
those in authority makes it difficult for his
statements of fact about his identity to be
trusted; makes his statements regarding his

---

[10] Title 42 United States Code Section 12102(1) states, in
relevant part:

The term "disability" means, with respect to an
individual—

(A)  a physical or mental impairment that
substantially limits one or more major life
activities of such individual;

(B)  a record of such an impairment; or

(C)  being regarded as having such an
impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1). The definitions in Section 12102 apply
Title 42, Chapter 126, which consists of the four titles of the
ADA.

> understanding of legal proceedings to be
> discounted; and causes him to be confused, all
> resulting in difficulty in locating and staying
> in touch with his mother and sister and other
> family, difficulty in expressing his mental
> health treatment needs, and otherwise meeting his
> daily medical, shelter, food, and mental health
> needs. Thus his disability substantially
> interferes with his ability to work, secure food,
> secure housing, navigate interactions with police
> and persons in authority, and remain safe without
> reasonable accommodation.

Amended Complaint at ¶ 189; see also id. at ¶ 49 (alleging that, on April 14, 2011, one of Spriestersbach's sisters made a missing person report with the City and stated that Spriestersbach "had been diagnosed with, inter alia schizophrenia and bipolar disorder"). For purposes of the instant Motion, this Court assumes that the factual allegations in the Amended Complaint are true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true" (citation omitted)). This Court therefor concludes that the Amended Complaint's factual allegations, if proven, would establish that Spriestersbach is an individual with a disability for purposes of the ADA.

The service that OPD provides is legal representation for indigent persons under certain circumstances.

> Any indigent person who is:

>> (1)  Arrested for, charged with, or
>> convicted of an offense or offenses

18

> punishable by confinement in jail or prison
> or for which the person may be or is subject
> to the provisions of chapter 571;
>
> (2)  Threatened by confinement, against the
> indigent person's will, in any psychiatric
> or other mental institution or facility;
>
> (3)  The subject of a petition for assisted
> community treatment under chapter 334; or
>
> (4)  The subject of a petition for
> involuntary medical treatment under
> chapter 353,
>
> shall be entitled to be represented by a public
> defender. . . .

Haw. Rev. Stat. § 802-1(a). Spriestersbach alleges OPD denied

him its services – *i.e.*, reasonable legal representation -

because OPD "is vicariously liable for the acts of" the

Individual PD Defendants and because OPD "fail[ed] to provide

reasonable accommodations for [Spriestersbach], including

through its failure to provide reasonable training and policies

accommodating or interacting with the mentally ill." See Amended

Complaint at ¶ 197.

Vicarious liability applies in ADA Title II claims.

See Reed v. Fox, No. 2:19-cv-0275 AC P, 2023 WL 6930802, at *8

(E.D. Cal. Oct. 19, 2023) ("When a plaintiff brings suit under

. . . Title II of the ADA against a public entity, that entity

is vicariously liable for the acts of its employees." (citing

Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1141 (9th Cir.

2001))). However, because Spriestersbach seeks damages as to all

19

claims, see Amended Complaint at pg. 64, he will ultimately be required to prove intentional discrimination in connection with his ADA claim against OPD. See Duvall, 260 F.3d at 1138. Spriestersbach has not pled factual allegations that are sufficient to support a reasonable inference that the Individual PD Defendants intentionally discriminated against him. See Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citations and internal quotation marks omitted)).

        Spriestersbach relies upon Tolan's decision to request a competency evaluation instead of investigating Spriestersbach's assertion that he was not Thomas Castleberry. See Amended Complaint at ¶¶ 146-48. Spriestersbach also alleges the other Individual PD Defendants also failed to verify his assertion that he was not Thomas Castleberry. [Id. at ¶ 149.] However, Spriestersbach does not include any specific factual allegations regarding the representation provided by Muraoka, Maloian, Baker, and Patek while Spriestersbach was being held at HSH. Spriestersbach alleges Patek participated in the January 20, 2020 meeting during which a cover-up of

Spriestersbach's wrongful imprisonment was allegedly discussed.
[Id. at ¶ 160.] This allegation is arguably relevant to the
issue of Patek's intent, but it does not address how Patek
allegedly discriminated against Spriestersbach when Patek
represented Spriestersbach while Spriestersbach was being held
at HSH. Spriestersbach has failed to allege sufficient factual
allegations to support his position that OPD is vicariously
liable for intentional disability discrimination by Muraoka,
Maloian, Baker, and Patek while they represented Spriestersbach.

    As to Tolan, Spriestersbach alleges she discriminated
against him based on his disability when she chose to request a
competency evaluation instead of investigating his assertion of
mistaken identity. Hawai`i Revised Statutes Section 704-404
states, in pertinent part: "Whenever there is reason to doubt
the defendant's fitness to proceed, the court may immediately
suspend all further proceedings in the prosecution . . . ." The
Hawai`i Supreme Court has held that a state court abused its
discretion by failing to *sua sponte* order a fitness examination
because "the record was clear that there was 'reason to doubt'
[the defendant's] fitness during the sentencing proceedings"
where the defendant "seemed delusional when speaking with the
court" and made "bizarre statements at sentencing." State v.
Harter, 134 Hawai`i 308, 331–32, 340 P.3d 440, 463–64 (2014).
Based on the factual allegations of the Amended Complaint and

the legal standards applicable to requests for a competency evaluation, the fact that Tolan chose to request an evaluation instead of investigating Spriestersbach's assertion of mistaken identity by itself is insufficient to support a reasonable inference that she intentionally discriminated against him based on his disability. The portion of Spriestersbach's ADA Title II claim alleging that ODC is vicariously liable for the Individual PD Defendants' actions and omissions fails to state a plausible claim for relief.

The portion of Spriestersbach's ADA Title II claim based on failure to train and failure to implement policies regarding interacting with mentally ill clients also fails to state a plausible claim for relief. Spriestersbach merely makes conclusory allegations, unsupported by any specific factual allegations, that OPD's training and policies are inadequate.

Spriestersbach's ADA Title II claim against OPD must be dismissed. However, it may be possible for Spriestersbach to cure the defects in this claim by amendment. In fact, at the hearing on the Motion, Spriestersbach's counsel represented that they have obtained additional information regarding the PD Defendants in discovery and that additional factual allegations could be pled based on that discovery. The dismissal of Spriestersbach's ADA Title II claim against OPD is therefore without prejudice.

22

III. __Qualified/Conditional Privilege__

          The PD Defendants argue Spriestersbach's state law
claims against the Individual PD Defendants must be dismissed
because they have a qualified or conditional privilege.

          Hawaii law provides that a nonjudicial
          government official has a qualified or
          conditional privilege with respect to his or her
          tortious actions taken in the performance of his
          or her public duty. Towse v. State of Hawaii, 647
          P.2d 696, 702 (Haw. 1982); Runnels v. Okamoto,
          525 P.2d 1125, 1128 (Haw. 1974). This privilege
          shields all but the most guilty nonjudicial
          officials from liability, but not from the
          imposition of a suit itself. Towse, 647 P.2d at
          702. The privilege is the result of the Hawaii
          Supreme Court's balancing of competing interests.
          It protects the innocent public servant's
          pocketbook, yet it allows an injured party to be
          heard. See Medeiros v. Kondo, 522 P.2d 1269, 1272
          (Haw. 1974).

          For a tort action to lie against a
          nonjudicial government official, the injured
          party must allege and demonstrate by clear
          and convincing proof that the official was
          motivated by malice and not by an otherwise
          proper purpose. Towse, 647 P.2d at 702–03;
          Medeiros, 522 P.2d at 1272. When a public
          official is motivated by malice, and not by
          an otherwise proper purpose, Hawaii law
          provides that the cloak of immunity is lost
          and the official must defend the suit the
          same as any other defendant. Marshall v.
          Univ. of Haw., 821 P.2d 937, 946 (Haw. Ct.
          App. 1991), *abrogated on other grounds by*
          Hac v. Univ. of Haw., 73 P.3d 46 (Haw.
          2003).

          The existence or absence of malice is
          generally a question for the jury. Runnels,
          525 P.2d at 1129. However, when the
          existence or absence of malice is
          demonstrated to the court via uncontroverted

> > affidavits or depositions, the court may
> > rule on the existence or absence of malice
> > as a matter of law. See id.
>
> Edenfield v. Estate of Willets, Civ. No. 05-00418 SOM-
> BMK, 2006 WL 1041724, at *11-12 (D. Haw. Apr. 14,
> 2006) (parallel citations omitted).

Begley v. Cnty. of Kauai, CIVIL 16-00350 LEK-KJM, 2018 WL

3638083, at *6 (D. Hawai`i July 31, 2018) (some citations

omitted). "Except in claims for defamation, an actual malice

standard applies as to all tort claims." Id. (citation and

internal quotation marks omitted). The qualified or conditional

privilege under Hawai`i law will be referred to in this Order as

the "conditional privilege."

    First, Spriestersbach argues conditional privilege is

not available to the Individual PD Defendants. See Mem. in Opp.

at 7 ("Case law has long established that the work of a public

defender is **not** governmental work of the sort deserving

immunity." (emphasis in original)). He contends public defenders

perform a private function that is traditionally performed by

retained counsel. [Id. (quoting Cox v. Hellerstein, 685 F.2d

1098, 1099 (9th Cir. 1982)).] Cox, however, addressed a civil

rights action brought pursuant to Bivens v. Six Unknown Named

Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Cox,

685 F.2d at 1099. The Ninth Circuit affirmed the dismissal of

the Bivens action, relying on the Section 1983 analysis in Polk

County, 454 U.S. 312. Cox, 685 F.2d at 1098-99. The "under color

of state law" analysis in Polk County that the Ninth Circuit
relied upon in Cox is distinguishable from the conditional
privilege analysis, which asks whether the state officials were
"acting in the performance of their public duty." See Towse, 64
Haw. at 631, 647 P.2d at 702.

Spriestersbach also argues the conditional privilege
does not apply to state officials who are subject to
professional codes of conduct, such as physicians and attorneys.
[Mem. in Opp. at 7 (citing Slingluff v. State Dep't of Pub.
Safety, 131 Hawai`i 239, 249 (Ct. App. 2013)).] In Slingluff,
the Hawai`i Intermediate Court of Appeals ("ICA") stated that

> the primary purpose of [conditional privilege] is
> to ensure that public officers and employees are
> not unduly hampered, deterred and intimidated in
> the discharge of their duties by the threat of
> lawsuits. It seeks to avoid making public
> officials unduly fearful in their exercise of
> authority and to avoid discouraging them from
> taking prompt and decisive action.

131 Hawai`i at 246, 317 P.3d at 690 (brackets, citations, and
internal quotation marks omitted). However, the ICA ultimately
held that "the exercise of purely medical judgment is not
entitled to the shield of [the conditional privilege]." Id. at
247, 317 P.3d at 691. The circuit court had concluded that:

> the defendant physicians were negligent in:
> (1) failing to promptly treat Slingluff in order
> to apply [an incision and drainage] treatment to
> the abscess, and that the delay in treatment fell
> below the standard of care; (2) prescribing the
> wrong dosage of antibiotic; and (3) failing to

prescribe a different antibiotic when it became
apparent that the original antibiotic was not
working.

Id. at 249-50, 317 P.3d at 693-94. On appeal, the ICA held that

the physician defendants were not entitled to the conditional

privilege as to these matters because they "all pertain to the

exercise of purely **medical** discretion because they involved

strictly medical diagnosis and treatment. The decisions made did

not involve policy making or any other type of governmental

discretion." Id. at 250, 317 P.3d at 694. Thus, Slingluff does

not stand for the proposition that the conditional privilege is

never available to government physicians, attorneys, or other

similar professionals. The ICA merely held that the conditional

privilege does not protect such professionals when they fail to

perform their usual duties in a reasonable and competent manner.

See, e.g., id. at 249, 317 P.3d at 693 ("Providing immunity for

medical malpractice of prison physicians effectively denies

prisoners reasonable, competent medical care." (citation and

internal quotation marks omitted)). This Court therefore

concludes that the conditional privilege may, under appropriate

circumstances, apply to public defenders.

        In the instant case, the only decision clearly at

issue is Tolan's decision to request a competency evaluation

instead of investigating Spriestersbach's assertion that he was

not Thomas Castleberry. As to Muraoka, Maloian, Baker, and

Patek, there are insufficient factual allegations about their
representation of Spriestersbach for this Court to determine
whether the conditional privilege applies to them.

Tolan's decision to request a competency evaluation
was not an exercise of her legal discretion, such as a choice
between two strategic options. Her decision to request a
competency evaluation and not to undertake an investigation into
his identity was an exercise of government discretion because,
in additional to legal considerations, it involved medical
considerations and because the investigation would have required
Tolan to question, *inter alia*, HPD's and OCCC's records
identifying Spriestersbach as Thomas Castleberry. This Court
therefore concludes that Tolan's decision is protected by the
conditional privilege.[11]

Spriestersbach next argues that, even if the
conditional privilege would otherwise apply, Tolan is not
entitled to the protection of the privilege because she acted in
reckless disregard of his rights. [Mem. in Opp. at 8 (some
citations omitted) (citing Blair v. Ing, 95 Haw. 247, 259
(2001)).] The Amended Complaint does not contain a specific

---

[11] This Court also notes that a ruling that Tolan is
protected by the conditional privilege does not leave
Spriestersbach without recourse. For example, he can pursue his
legal malpractice claim against OPD in state court. See *supra*
Discussion Section II.

27

allegation that Tolan acted with malice or in reckless disregard of his rights when she decided to request a competency evaluation instead of investigating his report of mistaken identification. Spriestersbach makes only general allegations applicable to several defendants. See, e.g., Amended Complaint at ¶ 22 (alleging "wrongful acts and/or omissions by any individual defendant was done intentionally, maliciously, or with reckless disregard for the rights of Joshua"). Such conclusory assertions of malice and reckless disregard, which are not supported by other factual allegations, are insufficient for Spriestersbach's state law claims to survive dismissal. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)).

As previously noted, ultimately, to defeat Tolan's assertion of conditional privilege, Spriestersbach will have to "demonstrate by clear and convincing proof that [Tolan] was motivated by malice and not by an otherwise proper purpose." See Edenfield, 2006 WL 1041724 at *12 (citing Towse, 647 P.2d at 702-03; Medeiros, 522 P.2d at 1272). Spriestersbach has not pled factual allegations that, if proven to be true, would establish by clear and convincing evidence that Tolan "was motivated by malice and not by an otherwise proper purpose." This Court therefore concludes that Tolan is entitled to the protection of

the conditional privilege. All of Spriestersbach's state law claims against her must be dismissed because he has failed to state a claim upon which relief can be granted.

The dismissal of Spriestersbach's state law claims against Tolan is without prejudice because it may be possible for Spriestersbach to amend his allegations to render the conditional privilege inapplicable, at least for purposes of a motion to dismiss.

## IV.  Sufficiency of the State Law Claims

Having dismissed all of Spriestersbach's claims against OPD and Tolan, this Court turns to the PD Defendants' argument that Spriestersbach's claims against Muraoka, Maloian, Baker, and Patek are insufficiently pled. Counts XI, XII, and XII are the only claims alleged against Muraoka, Maloian, Baker, and Patek.

The Hawai`i Supreme Court has stated:

> [T]he tort of IIED consists of four elements: "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." Hac [v. Univ. of Hawai`i], 102 Hawai`i [102,] 106-07, 73 P.3d [46,] 60-61 [(2003)]. "The term 'outrageous' has been construed to mean without just cause or excuse and beyond all bounds of decency." Enoka v. AIG Hawai`i Ins. Co., Inc., 109 Hawai`i 537, 559 128 P.3d 850, 872 (2006) (citations and some internal quotation marks omitted). "The question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable

29

people may differ on that question it should be
left to the jury." <u>Takaki v. Allied Machinery
Corp.</u>, 87 Hawai`i 57, 68, 951 P.2d 507, 518 (App.
1998) (quotations and quotation marks omitted).

<u>Young v. Allstate Ins. Co.</u>, 119 Hawai`i 403, 429, 198 P.3d 666,

692 (2008) (footnote omitted).

This district court has stated the elements of a NIED

claim are:

> (1) that the defendant engaged in negligent
> conduct;
>
> (2) that the plaintiff suffered serious
> emotional distress; and,
>
> (3) that such negligent conduct by the
> defendant was a legal cause of the serious
> emotional distress.

> <u>Kauhako v. State of Hawaii Bd. Of [sic] Ed.</u>, Civ.
> No. 13-00567 DKW-BMK, 2015 WL 5312359, *11 (D.
> Haw. Sept. 9, 2015).

> An NIED claim is merely a negligence claim
> alleging a wholly psychic injury. Duty and breach
> of duty are essential elements of an NIED claim
> and are analyzed utilizing ordinary negligence
> principles. <u>Kahoohanohano v. Dep't of Human
> Servs.</u>, 178 P.3d 538, 582 (Haw. 2008).

<u>Ricks v. Matayoshi</u>, CIV. NO. 16-00044 HG-KSC, 2017 WL 1025170,

at *11 (D. Hawai`i Mar. 16, 2017), <i>aff'd sub nom.</i> <u>Ricks v. Dep't

of Educ.</u>, 752 F. App'x 518 (9th Cir. 2019). Further, under

Hawai`i law, as part of the plaintiff's requirement to prove

actual injury, he must prove "that someone was physically

injured by the defendant's conduct, be it the plaintiff himself

or herself or someone else." <u>Doe Parents No. 1 v. State, Dep't

of Educ., 100 Hawai`i 34, 69–70, 58 P.3d 545, 580–81 (2002) (citation omitted).

Finally, there are four elements of a legal malpractice claim under Hawai`i law: "(1) the parties had an attorney-client relationship, (2) the defendant committed a negligent act or omission constituting breach of that duty, (3) there is a causal connection between the breach and the plaintiff's injury, and (4) the plaintiff suffered actual loss or damages." Thomas v. Kidani, 126 Hawai`i 125, 129, 267 P.3d 1230, 1234 (2011) (citations omitted).

The Amended Complaint contains insufficient factual allegations regarding Muraoka, Maloian, Baker, and Patek to state plausible IIED, NIED, and legal malpractice claims against them. Spriestersbach alleges they represented him while he was being held at HSH and they failed to "verif[y] the identity of their client [Spriestersbach], his presence on Oahu in 2006, or otherwise acted on the information [Spriestersbach] provided to establish that he was not Thomas R. Castleberry." [Amended Complaint at ¶ 149.] The minimal and conclusory allegations regarding Muraoka, Maloian, Baker, and Patek are insufficient to allege a plausible basis to find that each of them was aware that Spriestersbach asserted he was not Thomas Castleberry and that each of them made an intentional and/or negligent decision not to act upon Spriestersbach's assertion of mistaken identity.

31

Spriestersbach also pleads the additional allegation that Patek participated in the January 20, 2020 meeting where a cover-up was allegedly discussed. See Amended Complaint at ¶ 160. Even accepting that Patek participated in such a meeting, Spriestersbach does not allege that he suffered an injury or emotional distress caused by Patek's participation in the meeting.

This Court therefore concludes that the portions of Counts XI, XII, and XIII alleging claims against Muraoka, Maloian, Baker, and Patek must be dismissed. The dismissal is without prejudice because it may be possible for Spriestersbach to add further factual allegations that would cure the defects in these claims.

This Court has already dismissed all of Spriestersbach's claims against Tolan without prejudice, based on conditional privilege. If Spriestersbach chooses to file a second amended complaint, the new factual allegations that he includes in an attempt to address the issue of whether Tolan is protected by the conditional privilege are likely to affect the other defects that the PD Defendants allege exist in the Amended Complaint's claims against Tolan. This Court therefore declines to address the other arguments raised in the Motion regarding Spriestersbach's claims against Tolan.

32

**CONCLUSION**

For the foregoing reasons, the PD Defendants'
November 1, 2023 Motion to Dismiss Plaintiff Joshua
Spriestersbach's First Amended Complaint Filed on October 18,
2023 is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is
GRANTED insofar as:

-the portion of Count XIII asserting a legal malpractice claim
    against OPD is DISMISSED WITH PREJUDICE in the instant
    case, but the dismissal is without prejudice to any attempt
    to pursue that claim in state court; and

-all of Spriestersbach's other claims against the PD Defendants
    are DISMISSED.

The Motion is DENIED insofar as the dismissal of
Spriestersbach's claims against the PD Defendants, with the
exception of the legal malpractice claim against OPD, is WITHOUT
PREJUDICE.

Spriestersbach is GRANTED leave to file a second
amended complaint to cure the defects identified in this Order.
Spriestersbach shall file his second amended complaint by
**March 29, 2024.** If Spriestersbach chooses not to file a second
amended complaint, this case shall proceed as to the remaining
claims in his First Amended Complaint, filed October 18, 2023.

Spriestersbach is CAUTIONED that he may not add any
additional parties in the second amended complaint, nor may he

add any additional claims or theories of liability against the
PD Defendants. Spriestersbach is also CAUTIONED that the
deadline to file his second amended complaint will not be
affected by the filing of any motion for reconsideration of this
Order. If a motion for reconsideration is filed and granted
after the filing of his second amended complaint, Spriestersbach
will be granted leave to file a third amended complaint.

        IT IS SO ORDERED.

        DATED AT HONOLULU, HAWAII, March 15, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JOSHUA SPRIESTERSBACK VS. STATE OF HAWAII, ET AL; CV 21-00456
LEK-RT; ORDER GRANTING IN PART AND DENYING IN PART THE PD
DEFFENDANTS' MOTION TO DISMISS PLAINTIFF JOSHUA SPRIESTERSBACH'S
FIRST AMENDED COMPLAINT FILED ON OCTOBER 18, 2023**