# Captain Carlene Lau

January 08, 2024

JOSHUA SPRIESTERSBACH

v.

STATE OF HAWAII, et al.

Case No. 1:21-cv-00456-LEK-RT



513-233-3000

depo@elitereportingagency.com

www.elitereportingagency.com

```
 1                UNITED STATES DISTRICT COURT

 2                    DISTRICT OF HAWAII

 3

 4

 5   _____
                                 )
 6   JOSHUA SPRIESTERSBACH,      )
                                 )
 7        Plaintiff,             )
                                 )   Case No.
 8              vs.              )   1:21-cv-00456-LEK-RT
                                 )
 9   STATE OF HAWAII, et al.,    )
                                 )
10        Defendants.            )
     _____)
11

12

13

14

15         Deposition of:  Captain Carlene Lau
                              (via videoconference)
16         Pursuant to:    Notice

17         Date and Time:  Monday, January 8, 2024
                           2:05 P.M. EST
18         Place:          530 South King Street
                           Suite 110
19                         Honolulu, Hawaii  96813
           Reporter:       Kathy S. Simpson, RPR
20                            (via videoconference)
                           Notary Public - State of Ohio
21

22

23

24

25
```

```
 1         Q.   And do you know whether that's the
 2   mugshot from May 11, 2017?
 3         A.   I do not know if that is the same
 4   mugshot from May 11, 2017.  But -- that's
 5   something I would have to check on.
 6         Q.   Do you have a way of checking?
 7         A.   Do I have a way of checking?  Yes, I
 8   have a way of checking.
 9         Q.   How would you do that?
10         A.   I would have to go into his arrest
11   record.
12         Q.   From May 11?
13         A.   From May 11, yes.  But it's not
14   supposed to be there because it was expunged.
15         Q.   Is it put into a sealed file or made
16   inaccessible but still exists?
17         A.   What does that mean?  Like, what is
18   the definition of a sealed file?
19         Q.   Well, when a record like this is
20   expunged, is it just put into a place where
21   people aren't supposed to access it without a
22   court order, or is it literally destroyed?
23         A.   When it's expunged, it's literally
24   destroyed.
25         Q.   Okay.  Now, we talked earlier about
```

 1    sure.
 2         Q.    So I was asking about the mugshot
 3    transmission, but, as part of your answer, you
 4    mentioned that the computer was provided by the
 5    Attorney General's Office for use with AFIS.
 6               Is it the same computer that's used
 7    for the mugshot and for AFIS?
 8         A.    I would have to check on that.
 9         Q.    And do you know whether the metadata
10    still exists for the transmission of the
11    fingerprint data to AFIS?
12         A.    That, I'm also not sure of.  The
13    same with the mugshot.
14               MR. GERHARDSTEIN:  This will be
15         Exhibit 35, a letter to corporation
16         counsel.
17               (Plaintiff's Exhibit 35 was marked for
18               identification.)
19    BY MR. GERHARDSTEIN:
20         Q.    I'm going to show you what's been
21    marked as Exhibit 35.  It's a letter dated
22    November 20, 2021, to Dana Viola and Krishna
23    Jayaram, Department of Corporation Counsel, and
24    it's two pages.
25               And the last paragraph of the second

```
 1   page says, There is also a request that you
 2   preserve all evidence related to this incident,
 3   including, but not limited to, the arrest
 4   reports, body cam, notes from the May 17 -- or
 5   2017 arrest, which would be May 11, and any
 6   records from OCCC, et cetera.
 7             Did you see this letter before you
 8   acted on the instruction regarding expungement?
 9        A.   Can I see the letter, please?
10        Q.   My question really goes to the last
11   paragraph.
12             MR. AOKI:  Al, are you going to
13        share that?  We don't have it.
14             MR. GERHARDSTEIN:  It should have
15        been on the link.  Amy sent a Dropbox
16        link.
17             MS. HURA:  Mr. Gerhardstein, the
18        witness asked to see the record.  So we
19        are waiting for you, just FYI.
20             MR. GERHARDSTEIN:  Oh, you mean I'm
21        not sharing the screen?
22             MR. AOKI:  No.
23             MR. GERHARDSTEIN:  Oh, I'm sorry.  I
24        didn't know what you meant.
25   BY MR. GERHARDSTEIN:
```

```
 1      Q.   Now do you have it?
 2      A.   Yes.
 3      Q.   All right.  I'm talking about this
 4   last paragraph of the letter.
 5           I did not realize that I hadn't
 6   shared the screen.  I apologize.
 7           My question is simply whether you
 8   have seen this letter.
 9      A.   Can you scroll all the way to the
10   top, please?
11           And then scroll all the way to the
12   bottom, please.
13           I have not seen this letter.
14      Q.   Were you ever told prior to acting
15   on the expungement that there was a
16   preservation of evidence requirement in this
17   case?
18      A.   I'm sorry.  What was the question?
19   If I had --
20      Q.   Were you told that there was a
21   preservation of evidence requirement in this
22   case before you acted on the expungement?
23      A.   No.
24           MR. GERHARDSTEIN:  And this will be
25   Exhibit 36.
```

82

```
 1            (Plaintiff's Exhibit 36 was marked for
 2            identification.)
 3   BY MR. GERHARDSTEIN:
 4       Q.   I assume that you were not told of
 5   this email, which is simply a reminder of the
 6   preservation of evidence requirement.
 7            Had you seen this email prior to
 8   acting on the expungement?  Do you have -- do I
 9   have it up there where you can see it?
10       A.   Yes.
11       Q.   Okay.
12       A.   Is it one page or --
13       Q.   Yeah, that's it.  It's the first
14   paragraph.
15       A.   Oh, okay.
16            Okay.  No, I've not seen this email.
17       Q.   So just generally, I also asked and
18   you were designated as a witness to tell us
19   about Honolulu Police Department's trainings,
20   policies, practices, and customs concerning
21   verifying a person's identity or identifiers by
22   any means.
23            Are there tools for verifying
24   identities of a person that we haven't talked
25   about yet?
```

```
 1        Q.   Do you know if in association with
 2   the May 11, 2017 arrest of the body now known
 3   to you as Joshua Spriestersbach through this
 4   complaint, was ever -- if the fingerprints --
 5   if that person's fingerprints were ever
 6   analyzed by a HPD fingerprint comparison
 7   expert, you know, within a month of May 17 -- I
 8   mean, May 11 -- pardon me -- 2017?
 9        A.   Yes.
10        Q.   And what was the result of that?
11        A.   The result is -- the result of the
12   comparison of Spriestersbach's prints with the
13   AFIS prints on file would have been that it
14   matched to Spriestersbach.
15        Q.   Okay.  And the HPD fingerprint
16   examiner's results, did it match?
17        A.   Just Spriestersbach.
18        Q.   Okay.  And is it your understanding
19   that the reason that Josh Spriestersbach AKA
20   Thomas Castleberry has a notation that -- of
21   stating verified by prints is because the print
22   comparison was done from the body that was
23   arrested on May 11, 2017, and compared to
24   Joshua Spriestersbach's known prints?
25        A.   That was a long question.
```

1      Q.   I know.  I'll tell you what my
2   general question is.  And basically, it says,
3   Verified by prints.
4            Let me rephrase.  It says, Verified
5   by prints, on this exhibit -- this page 2 of
6   Exhibit 2.  Is it your understanding that it
7   states, Verified by prints, because the body on
8   May 11, 2017's prints matched those of known
9   prior -- previously taken prints of Joshua
10  Spriestersbach?
11     A.   Yes.
12          MS. HURA:  Thank you.  Those are my
13     questions.
14          MR. GERHARDSTEIN:  Anybody else?
15          MR. MOSER:  None for me.
16          MR. GERHARDSTEIN:  I have one more
17     question.
18                FURTHER EXAMINATION
19  BY MR. GERHARDSTEIN:
20     Q.   You had said in response to several
21  questions from Ms. Hura that one technique for
22  identifying a suspect is to compare with the
23  photo provided with the warrant.  And I'm just
24  wondering, do you know whether there was a
25  photo provided with the warrant for Thomas