UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JOSHUA SPRIESTERSBACH,<br><br>        Plaintiff,<br><br>  vs.<br><br>STATE OF HAWAII,  CITY AND COUNTY OF HONOLULU, OFFICER ABRAHAM K. BRUHN,  DEPARTMENT OF PUBLIC SAFETY,  OFFICE OF THE PUBLIC DEFENDER, NIETZSCHE LYNN TOLAN, MICHELLE MURAOKA, LESLIE MALOIAN, JACQUELINE ESSER, JASON BAKER, MERLINDA GARMA, SETH PATEK, DR. JOHN COMPTON, DR. MELISSA VARGO, DR. SHARON TISZA, HAWAII STATE HOSPITAL, DR. ALLISON GARRETT,  JOHN/JANE DOES 1-20,<br><br>        Defendants. | CIV. NO. 21-00456 LEK-RT |

**ORDER GRANTING IN PART AND DENYING IN PART
THE STATE DEFENDANT'S MOTION TO DISMISS OR
IN THE ALTERNATIVE FOR JUDGMENT ON THE PLEADINGS**

      On May 28, 2024, Defendants State of Hawai`i ("the State"), Department of Public Safety ("DPS"), and Hawaii State Hospital ("HSH" and collectively "State Defendants") filed their Motion to Dismiss or in the Alternative for Judgment on the Pleadings ("Motion"). [Dkt. no. 447.] On June 24, 2024, Plaintiff Joshua Spriestersbach ("Spriestersbach") filed his response to the State Defendants' Motion ("Memorandum in Opposition"), and the State Defendants filed their reply on

July 1, 2024 ("Reply"). [Dkt. nos. 483, 495.] Defendants Office of the Public Defender ("OPD"), Nietzsche Lynn Tolan, Michele Muraoka, Lesley Maloian, Jason Baker, and Seth Patek (all collectively "PD Defendants") and Defendant City and County of Honolulu ("the City") filed their respective statements of no position on June 21, 2024. [Dkt. nos. 478, 481.] This matter came on for hearing on July 15, 2024. The State Defendants' Motion is hereby granted in part and denied for the reasons set forth below. Judgment on the pleadings is granted in favor of the State Defendants as to all of Spriestersbach's claims against them. However, Spriestersbach is granted leave to amend his claim against HSH based upon vicarious liability under Title II of the Americans with Disabilities Act ("ADA"), Title 42 United States Code Section 12101, *et seq.*

<u>**BACKGROUND**</u>

The operative pleading is the Second Amended Complaint, [filed 3/29/24 (dkt. no. 362)]. The case arises from Spriestersbach's May 11, 2017 arrest and prosecution for crimes committed by Thomas R. Castleberry and Spriestersbach's subsequent detention at the Oahu Community Correctional Center ("OCCC") and civil commitment related to that arrest until January 17, 2020 at HSH. <u>See</u> Second Amended Complaint at ¶¶ 1-2. DPS operates OCCC. [<u>Id.</u> at ¶ 13.] At all relevant times, Defendant Allison Garrett, M.D. ("Dr. Garrett") was employed by

the State as a doctor at HSH, and she was the head of Spriestersbach's treatment team at HSH from the fall of 2017 until his release. [Id. at ¶¶ 18, 153.] Spriestersbach alleges Dr. Garrett and other HSH staff failed to verify his identity in a timely manner after he was transferred from OCCC to HSH. See id. at ¶ 151. According to Spriestersbach, "Dr. Garrett took no action until 2020 to investigate or address the fact that [Spriestersbach] was not Thomas Castleberry, the person for whose probation violation [Spriestersbach] was being detained, though she had the same information in 2020 as she had earlier, and the same medical records which established [Spriestersbach] could not be Thomas Castleberry as early as June of 2018." [Id. at ¶ 162.] In January 2020, Dr. Garrett verified Spriestersbach's identity and that he was not Thomas Castleberry, which lead to Spriestersbach's release on January 17, 2020. See id. at ¶¶ 170-71.

Relevant to the instant Motion, the claims in the Second Amended Complaint are:

-a Title 42 United States Code Section 1983 claim against the City, DPS, and Dr. Garrett, alleging violations of Spriestersbach's rights under the Fourth Amendment ("Count I");

-an ADA Title II claim against the City, the State Defendants, and OPD, alleging disability discrimination and failure to accommodate ("Count III");

-a false imprisonment claim against DPS and the State ("Count VI");

3

-a negligence claim against DPS and the State ("Count VII");

-a false imprisonment claim against Dr. Garrett, HSH, and the State ("Count VIII");

-a negligence claim against Dr. Garrett, HSH, and the State ("Count IX");

-a medical malpractice claim against Dr. Garrett, HSH, and the State ("Count X");

-an intentional infliction of emotional distress ("IIED") claim against Defendants Nietzsche Lynn Tolan, Michele Muraoka, Lesley Maloian, Jason Baker, and Seth Patek (collectively "Individual PD Defendants"), Dr. Garrett, the City, and the State Defendants ("Count XI"); and

-a negligent infliction of emotional distress ("NIED") claim against the Individual PD Defendants, Dr. Garrett, the City, and the State Defendants ("Count XII").

The State Defendants filed their Answer to Second Amended Complaint on April 12, 2024 ("Answer"). [Dkt. no. 376.]

In the instant Motion, the State Defendants argue Spriestersbach's Section 1983 claim against DPS in Count I and his state law claims in Counts VI through XII must be dismissed because they are barred by the Eleventh Amendment.[1] [Motion, Mem. in Supp. at 6-7; id. at 11 & nn.1-5.] They argue that Spriestersbach's claim against them in Count III should be dismissed because Spriestersbach has not pled sufficient

---

[1] The State Defendants do not assert Eleventh Amendment immunity as to Spriestersbach's ADA Title II claim. In ADA Title II, Congress abrogated the states' sovereign immunity as to "conduct that **actually** violates the Fourteenth Amendment." See United States v. Georgia, 546 U.S. 151, 159 (2006) (emphasis in original).

allegations to support a reasonable inference that any of the State Defendants are directly liable or vicariously liable for any violation of ADA Title II. [<u>Id.</u> at 8-19.] If the claims are not dismissed, the State Defendants argue judgment on the pleadings should be granted in their favor as to all of Spriestersbach's claims against them. [<u>Id.</u> at 3.]

**STANDARD**

The State Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). Rule 12(b) allows certain defenses to be asserted by motion, but Rule 12(b) also states: "A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." In light of the State Defendants' filing of the Answer, this Court will analyze their Motion under the Federal Rule of Civil Procedure 12(c) judgment on the pleadings standard.

> FRCP 12(c) permits a motion for judgment on the pleadings. "[J]udgment on the pleadings is properly granted when, 'taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.'" <u>Gregg v. Haw., Dep't of Pub. Safety</u>, 870 F.3d 883, 887 (9th Cir. 2017) (quoting <u>Nelson v. City of Irvine</u>, 143 F.3d 1196, 1200 (9th Cir. 1998)). . . .

<u>Lerette v. City & Cnty. of Hawai`i</u>, CIV. NO. 20-00202 JAO-RT, 2023 WL 4084923, at *5 (D. Hawai`i June 20, 2023) (some alterations in <u>Lerette</u>). A "motion for judgment on the pleadings is functionally equivalent to an [Rule] 12(b)(6) motion to

5

dismiss, so courts apply the same standards of review for both." Id. (citing Gregg, 870 F.3d at 887).

## DISCUSSION

### I.   Eleventh Amendment

"The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001) (citation omitted); see also U.S. Const., amend. XI. "It is well established that agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court." Sato v. Orange Cnty. Dep't of Educ., 861 F.3d 923, 928 (9th Cir. 2017) (citation and quotation marks omitted); see also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court." (citations and internal quotation marks omitted)). As such, "[s]tates, their agencies, and their officials in their official capacities are immune from damage suits under state or federal law by private parties in federal court unless there is a valid abrogation of that immunity or an unequivocal express waiver by the state." Monet v. Hawai`i, Civ. No. 11-00211 SOM/RLP, 2011 WL 2446310, at *4 (D. Hawai`i June 14, 2011) (some citations omitted) (citing Sossamon v. Tex., 131 S. Ct. 1651, 1658 (2011)). "A state

generally waives its immunity when it voluntarily invokes [federal] jurisdiction or . . . makes a 'clear declaration' that it intends to submit itself to [federal] jurisdiction." In re Bliemeister, 296 F.3d 858, 861 (9th Cir. 2002) (alterations in Bliemeister) (citation and internal quotation marks omitted).

Spriestersbach does not dispute that DPS and HSH are state agencies. The State has not waived its sovereign immunity from Section 1983 claims generally, and Congress did not abrogate state sovereign immunity when it enacted Section 1983. See, e.g., Sheikh v. Hawai`i Dep't of Hum. Servs., Civil No. 12-00701 DKW-BMK, 2014 WL 1322496, at *2 (D. Hawai`i Mar. 31, 2014) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 65–66 (1989)). Further, "[a]lthough Hawaii has waived its sovereign immunity as to some state tort and statutory claims, it has done so solely with respect to state court actions." See Beckmann v. Ito, 430 F. Supp. 3d 655, 678 (D. Hawai`i 2020) (citations omitted); see also Haw. Rev. Stat. §§ 661-1, 661-2, 661-3. The State has not waived its immunity in this case and asserted Eleventh Amendment immunity as one of their defenses to the Second Amended Complaint. [Answer at pg. 5.]

Because there has been neither a valid abrogation of the State's Eleventh Amendment immunity nor a waiver by the State, Spriestersbach's Section 1983 claim and all of his state law claims against the State Defendants are barred by the

7

State's Eleventh Amendment immunity. Spriestersbach therefore fails to state a plausible claim for relief against the State Defendants in Count I and in Counts VI through XII. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)). Judgment on the pleadings is granted in favor of the State Defendants as to Count I and Counts VI through XII.

## II.  <u>ADA Title II Claim</u>

At the outset, this Court notes that, although Spriestersbach asserts Count III against the State, DPS, and HSH, [Second Amended Complaint at ¶¶ 281, 287-90,] his Memorandum in Opposition only addresses his ADA Title II claim against HSH. See Mem. in Opp. at 2-11. This Court construes Spriestersbach's failure to present any argument in opposition to the request for judgment on the pleadings as to his ADA Title II claim against DPS and the State as evidence that he no longer intends to pursue those claims.[2] Judgment on the pleadings

---

[2] Spriestersbach's ADA Title II claim against the State regarding the period when he was held at HSH appears to be duplicative of his ADA Title II claim against HSH. <u>Compare</u> Second Amended Complaint at ¶ 290 (alleging the State "is vicariously liable for the acts of the state employees and directly liable for its own failures to provide reasonable accommodations for [Spriestersbach], including through its

(. . . continued)

is therefore granted in favor of the State and DPS as to Count III.

Spriestersbach's ADA Title II claim alleges both intentional discrimination based on his disability and failure to accommodate. <u>See</u> Second Amended Complaint at ¶ 275. This Court has previously noted that ADA Title II

> prohibits a public entity from discriminating against any "qualified individual with a disability." <u>Sheehan v. City and Cnty. of San Francisco</u>, (<u>Sheehan I</u>), 743 F.3d 1211, 1231 (9th Cir.) *cert. granted sub nom.*, 574 U.S. 1021 (2014), *and rev'd in part, cert. dismissed in part sub nom.* <u>City and Cnty. of San Francisco, Calif.</u>, (<u>Sheehan II</u>), 575 U.S. 600, 617 (2015).

> Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act, which provides:

> > No otherwise qualified individual with a disability shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

> 29 U.S.C. ¶ [sic] 794.

> To state a claim pursuant to Title II of the ADA, a plaintiff must show:

> > (1)  she is an individual with a disability;

---

failure to provide reasonable training and policies at . . . and H.S.H."), <u>with</u> <u>id.</u> at ¶ 287 (alleging HSH "is vicariously liable for the acts of Dr. Garrett, hospital staff, and Does 16-20, and is directly liable for its own failures to provide reasonable accommodations for [Spriestersbach], including through its failure to provide reasonable training and policies").

> (2)  she was excluded from participation in
> or otherwise discriminated against with
> regard to the public entity's services,
> programs, or activities; and,
>
> (3)  such exclusion or discrimination was by
> reason of her disability.
>
> Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir.
> 2002).

[Order Granting in Part and Denying in Part the PD Defendants'
Motion to Dismiss Plaintiff Joshua Spriestersbach's First
Amended Complaint Filed on October 18, 2023, filed 3/15/24 (dkt.
no. 351) ("3/15/24 PD Defendants Order"), at 12-13 (alteration
in original) (citation omitted).[3]]

Relevant to Spriestersbach's failure-to-accommodate
claim, the Ninth Circuit has stated:

> A public entity must "make reasonable
> modifications in policies, practices, or
> procedures when the modifications are necessary
> to avoid discrimination on the basis of
> disability." Zukle [v. Regents of the Univ. of
> Cal.], 166 F.3d [1041,] 1046 [(9th Cir. 1999)]
> (quoting 28 C.F.R. § 35.130(b)(7)). The [ADA
> does] not require an [entity] "to make
> fundamental or substantial modifications to its
> programs or standards," however. Id. Because the
> issue of reasonableness depends on the individual
> circumstances of each case, this determination
> requires a fact-specific, individualized analysis
> of the disabled individual's circumstances and
> the accommodations that might allow him to meet
> the program's standards. See Crowder v. Kitagawa,
> 81 F.3d 1480, 1486 (9th Cir. 1996). As we have
> observed in the employment context, "mere[]

---

[3] The 3/15/24 PD Defendants Order is also available at 2024
WL 1142830.

speculat[ion] that a suggested accommodation is not feasible" falls short of the "reasonable accommodation" requirement; the [ADA] creates "a duty to 'gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are necessary to enable [the individual to meet the standards in question].'" Buckingham v. United States, 998 F.2d 735, 740 (9th Cir. 1993) (quoting Mantolete v. Bolger, 767 F.2d 1416, 1423 (9th Cir. 1985)).

Wong v. Regents of Univ. of Cal., 192 F.3d 807, 818 (9th Cir. 1999), *as amended* (Nov. 19, 1999) (some alterations in Wong) (some citations omitted).

## A.  **Public Entity**

For purposes of ADA Title II:

The term "public entity" means--

(A)  any State or local government;

(B)  any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

(C)  the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49).

42 U.S.C. § 12131. As previously noted, it is undisputed  that HSH is a state agency. See, e.g., Lawrence v. Kaneohe State Hosp., Civil No. 11-00020 SOM-KSC, 2011 WL 280958, at *2 (D. Hawai`i Jan. 25, 2011) ("The Hawaii State Hospital, like any other governmental agency, is not a 'person' that can be sued under 42 U.S.C. § 1983."). Thus, under the plain language of the statute, HSH is a public entity for purposes of ADA Title II.

11

B.   __Individual with a Disability__

For purposes of the ADA:

The term "disability" means, with respect to an individual—

(A)  a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B)  a record of such an impairment; or

(C)  being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1). The definitions in Section 12102 apply to Title 42, Chapter 126, which consists of the four titles of the ADA.

In the Second Amended Complaint, Spriestersbach states that he

suffers from a "disability" within the meaning and scope of 42 U.S.C. § 12102. In particular, [Spriestersbach's] disability and the perception of him by those in authority makes it difficult for his statements of fact about his identity to be trusted; makes his statements regarding his understanding of legal proceedings to be discounted; and causes him to be confused, all resulting in difficulty in locating and staying in touch with his mother and sister and other family, difficulty in expressing his mental health treatment needs, and otherwise meeting his daily medical, shelter, food, and mental health needs. Thus his disability substantially interferes with his ability to work, secure food, secure housing, navigate interactions with police and persons in authority, and remain safe without reasonable accommodation.

Second Amended Complaint at ¶ 274; see also id. at ¶ 50
(alleging that, on April 14, 2011, one of Spriestersbach's
sisters made a missing person report with the City and stated
that Spriestersbach "had been diagnosed with, inter alia,
schizophrenia and bipolar disorder"). Based on identical
allegations in the First Amended Complaint, [filed 10/18/23
(dkt. no. 250),] this Court concluded that Spriestersbach's
factual allegations, if proven, would establish that he is an
individual with a disability for purposes of the ADA. See
3/15/24 PD Defendants Order, 2024 WL 1142830, at *7. The
allegations of the Second Amended Complaint are therefore
sufficient to allege Spriestersbach is an individual with a
disability for purposes of the ADA.

> C.   **Discrimination in the Denial of Services**

After his May 11, 2007 arrest on a bench warrant
issued for Thomas Castleberry's, Spriestersbach was ordered to
appear in a state court for Thomas Castleberry's failure to
comply with the terms of his probation. [Second Amended
Complaint at ¶¶ 191-92.] The state court ordered that
Spriestersbach be examined by a three-doctor panel to evaluate
his fitness to proceed. [Id. at ¶ 196.] The state court found
Spriestersbach unfit to proceed and committed him to placement
at HSH. [Id. at ¶ 199.] Based upon the determination that
Spriestersbach was unfit to proceed, the state court was

13

required to "commit [him] to the custody of the director of
health to be placed in an appropriate institution for detention,
assessment, care, and treatment." Haw. Rev. Stat. § 704-406(1).
Relevant to Spriestersbach's ADA Title II claim, the service
that HSH provides is detention, assessment, care, and treatment
of a defendant who has been determined unfit to proceed in a
criminal case.[4] Spriestersbach alleges HSH denied him its
services – *i.e.*, it detained him with a valid basis and it
failed to provide reasonable assessment, care, and treatment –
because HSH detained and treated him as Thomas Castleberry.

     As previously noted, Spriestersbach asserts both
intentional discrimination and failure to accommodate claims.
However, Spriestersbach's two theories are related because he
alleges HSH discriminated against him by failing to credit his
statements of wrongful identification, and he alleges HSH should
have accommodated him by believing his statements regarding
wrongful identification and by attempting to verify those

---

[4] At the hearing on the Motion, Spriestersbach also argued
HSH's identification of him was a service provided by HSH for
purposes of ADA Title II. This argument is without merit. While
a defendant's identity and history are undoubtedly necessary to
HSH's detention, assessment, treatment, and care of a defendant
who has been found unfit to proceed, the identification is
merely incidental to the service HSH provides. Spriestersbach
was sent to HSH to be detained, assessed, treated, and cared
for; he was not sent to HSH to be identified. Accord 3/15/24 PD
Defendants Order, 2024 WL 1142830, at *8 ("The service that OPD
provides is legal representation for indigent persons under
certain circumstances.").

statements. Because both Spriestersbach's intentional discrimination claim and his failure to accommodate claim are based upon his allegation that HSH should have believed his statements regarding wrongful identification, the same analysis applies to both claims.

This Court turns first to the portion of Count III alleging HSH is liable under ADA Title II based on HSH's vicarious liability for the actions and omissions of its employees, including Dr. Garrett.

### 1. Vicarious Liability

> Vicarious liability applies in ADA Title II claims. See Reed v. Fox, No. 2:19-cv-0275 AC P, 2023 WL 6930802, at *8 (E.D. Cal. Oct. 19, 2023) ("When a plaintiff brings suit under . . . Title II of the ADA against a public entity, that entity is vicariously liable for the acts of its employees." (citing Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1141 (9th Cir. 2001))). . . .

3/15/24 PD Defendants Order, 2024 WL 1142830, at *8 (some alterations in the 3/15/24 PD Defendants Order).

Because Spriestersbach seeks monetary damages as to all of his claims in this case, see Second Amended Complaint at pg. 90, ¶ A, to ultimately prevail on his ADA Title II discrimination claims, Spriestersbach will be required to prove intentional discrimination in the exclusion from or denial of HSH's services. See Updike v. Multnomah Cnty., 870 F.3d 939, 950 (9th Cir. 2017). "To show intentional discrimination, this

circuit requires that the plaintiff show that a defendant acted with 'deliberate indifference,' which requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 950-51 (alteration, citation, and internal quotation marks omitted). Thus, to survive the Motion, Spriestersbach's factual allegations must be sufficient to allow this Court to draw the reasonable inference that Dr. Garrett and/or other HSH staff acted with deliberate indifference in failing to discover that Spriestersbach was not Thomas Castleberry.

Spriestersbach argues there is an actionable ADA claim where stereo-typing of the plaintiff's mental illness caused the plaintiff's statements to be discounted and resulted in the plaintiff's involuntary commitment. [Mem. in Opp. at 6 (citing Bolmer v. Oliveira, 594 F.3d 134, 149 (2d Cir. 2010)).] However, Bolmer was subsequently clarified by the Second Circuit in McGugan v. Aldana-Bernier, 752 F.3d 224 (2d Cir. 2014), which held that

> a plaintiff pleads an actionable claim of
> discrimination in the medical treatment context
> under the ADA or the Rehabilitation Act if she
> alleges that the defendants made treatment
> decisions based on factors that are "unrelated
> to, and thus improper to consideration of" the
> inquiry in question. This reading accords Bolmer
> with [United States v.] University Hospital[, 729
> F.2d 144 (2d Cir. 1984),] and prevents an
> interpretation of the Rehabilitation Act that

would federalize many (if not most) claims for
medical malpractice.[5]

McGugan, 752 F.3d at 234. The Second Circuit rejected the
plaintiff's argument that Bolmer supported "the proposition that
doctors discriminate under the ADA whenever they forcibly
hospitalize a patient on the basis of stereotypes about that
patient's mental illness, even if the stereotypes pertain to
matters appropriately considered in deciding whether to
involuntarily hospitalize a patient." Id. at 233.

This Court has not found any controlling case law that
is factually on point,[6] and it finds the analysis in McGugan to
be persuasive. Applying the Second Circuit's holding in McGugan,
this Court concludes that Spriestersbach has not plausibly

---

[5] "There is no significant difference in analysis of the
rights and obligations created by the ADA and the Rehabilitation
Act." Zukle, 166 F.3d at 1045 n.11 (citations omitted); see also
McGugan, 752 F.3d at 233 n.4 ("While there are subtle
differences between the standards adopted by Title II of the ADA
for State and local government services and those required under
section 504 of federally assisted programs and activities,
unless one of those subtle distinctions is pertinent to a
particular case, we treat claims under the two statutes
identically." (alterations, citation, and internal quotation
marks omitted)).

[6] This Court finds that the Ninth Circuit cases cited by
Spriestersbach addressing failure to accommodate in the arrest
context are not applicable to his ADA Title II claim against
HSH. See Mem. in Opp. at 7 (citing cases). The services and/or
programs that HSH provides are so distinct from those provided
by the police departments discussed in those cases that the
analysis of accommodations are not relevant here.

17

alleged that HSH forcibly continued to hospitalize him based on considerations that were "unrelated to" or "improper to consideration of" his schizophrenia and mental health disability. Because he has fails to make such allegations, he has not stated a claim of discrimination under the ADA Title II against HSH based on vicarious liability. Judgment on the pleadings is therefore granted in favor of HSH as to that portion of Count III.

### 2.   Direct Liability

Spriestersbach also alleges HSH is directly liable under ADA Title II because it "fail[ed] to provide reasonable training and policies accommodating or interacting with the people with mentally disabilities." [Second Amended Complaint at ¶ 287.[7]] This portion of Spriestersbach's ADA Title II fails to state a plausible claim for relief because Spriestersbach merely makes conclusory allegations, unsupported by any specific factual allegations, that HSH's training and policies are

---

[7] Spriestersbach also alleges HSH "is directly liable for its own failures to provide [him with] reasonable accommodations." [Second Amended Complaint at ¶ 287.] However, the factual allegations of the Second Amended Complaint only describe alleged failures to accommodate by individual HSH staff members; there are no allegations of an institutional failure to accommodate. This Court therefore does not construe Count III as alleging a direct liability claim against HSH based on failure to accommodate. The references to failure to accommodate relate to HSH's alleged failure to develop sufficient policies and provide sufficient training regarding accommodation.

inadequate. <u>Accord</u> 3/15/24 PD Defendants' Order, 2024 WL
1142830, at *9 (dismissing that portion of Spriestersbach's ADA
Title II claim against OPD in the First Amendment Complaint for
the same reasons). Judgment on the pleadings is therefore
granted in favor of HSH as to this portion of Count III.

## III. <u>Summary and Leave to Amend</u>

Judgment on the pleadings has been granted in favor of
the State Defendants as to all of Spriestersbach's claims
against them in the Second Amended Complaint. In considering a
motion for judgment on the pleadings, this Court has the
discretion to grant leave to amend. <u>See</u> <u>Lieblong v. Abella</u>, 503
F. Supp. 3d 1011, 1021 (D. Hawai`i 2020) (citing <u>Curry v. Baca</u>,
497 F. Supp. 2d 1128, 1138 (C.D. Cal. 2007)). Leave to amend can
be granted where it may be possible for the plaintiff to cure
the defects in his claims by amendment. <u>See, e.g.</u>, <u>Handa v.</u>
<u>Honda Aircraft Co.</u>, CIV. NO. 21-00141 LEK-WRP, 2022 WL 1212923,
at *6 (D. Hawai`i Apr. 25, 2022) (granting judgment on the
pleadings to the defendant as to the plaintiff's fraudulent
inducement claim but granting the plaintiff leave to amend
because the claim "could be saved by amendment").

In the instant case, leave to amend is not warranted
as to Count I nor as to Counts VI through XII because it is not
possible for Spriestersbach to amend these claims to avoid the
State Defendants' Eleventh Amendment immunity. Because

Spriestersbach has indicated that he no longer intends to pursue his ADA Title II claim against the State and DPS, leave to amend is not warranted as to those portions of Count III.

As to Spriestersbach's ADA Title II claim against HSH, the State Defendants argue Spriestersbach had multiple opportunities to amend his complaint, and they argue the existence of defects after multiple amendments indicates that Spriestersbach has no additional facts to allege. Cf. Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ("The fact that Zucco failed to correct these deficiencies in its Second Amended Complaint is a strong indication that the plaintiffs have no additional facts to plead." (citation and internal quotation marks omitted)). This Court has addressed the sufficiency of Spriestersbach's ADA claim in other orders. See Order: Granting in Part and Denying in Part Defendant City and County of Honolulu's Motion for Judgment on the Pleadings; etc., filed 8/18/22 (dkt. no. 151) ("8/18/22 Order"), at 24-29 (granting judgment on the pleadings in favor of the City as to Spriestersbach's ADA claim in the original complaint, but granting leave to amend);[8] 3/15/24 PD Defendants Order, 2024 WL 1142830, at *5-9 (dismissing Spriestersbach's ADA Title II claim against OPD in the First

---

[8] The 8/18/22 Order is also available at 622 F. Supp. 3d 948.

Amended Complaint without prejudice). However, the instant Motion is the first time that the State Defendants have filed a Rule 12 motion challenging the sufficiency of Spriestersbach's claims against them. Because Spriestersbach's ADA Title II claims against the City and OPD are based upon different factual allegations than the corresponding claim against HSH, the identification of defects in Spriestersbach's prior versions of his ADA claim against the City and OPD did not necessarily put him on notice of the defects in his ADA claim against HSH. Therefore, the fact that Spriestersbach had prior opportunities to amend his ADA Title II claim is not dispositive of the question whether leave to amend should be granted here.

Based on Spriestersbach's arguments in his Memorandum in Opposition and at the hearing on the Motion, this Court finds that Spriestersbach may be able to amend the portions of his ADA Title II claim against HSH that are based upon vicarious liability. Spriestersbach may be able to add plausible factual allegations that, if proven, would support a finding that Dr. Garrett intentionally discriminated against him by making the treatment decision to continue to hospitalize him for reasons unrelated to his schizophrenia and mental health disability. This Court therefore grants leave to amend as to that portion of Count III.

21

However, in his Memorandum in Opposition and during the hearing on the Motion, Spriestersbach did not identify any specific HSH policy or any specific training by HSH that is deficient. This Court therefore concludes that it is not possible for Spriestersbach to cure the defect in the portions of his ADA Title II claim against HSH that are based upon direct liability. Leave to amend is denied as to that portion of Count III.

Spriestersbach is granted leave to file a third amended complaint that pleads additional allegations in support of his ADA Title II claims against HSH that are based upon vicarious liability. Spriestersbach is not permitted to add allegations in support of any other portion of his ADA Title II claim nor any other claim. Spriestersbach shall file his third amended complaint by **August 19, 2024.**

In addition to requesting the opportunity to cure the defects in the Second Amended Complaint's claims against the existing defendants, Spriestersbach seeks leave to name additional defendants, some of whom were referred to as Doe Defendants in the Second Amended Complaint. See Mem. in Opp. at 11. An opposition to a motion to dismiss or for judgment on the pleadings cannot include an affirmative motion, and Spriestersbach's request is denied on that basis. See, e.g., Quinones v. UnitedHealth Grp. Inc., CIVIL NO. 14-00497 LEK-RLP,

2015 WL 6159116, at *4 (D. Hawai`i Oct. 19, 2015) ("To the extent that Plaintiff's memorandum in opposition requests leave to amend to name additional defendants, the request is improper." (citation omitted)). If Spriestersbach seeks leave to amend other than permitted by this Court as to the portion of Count III based vicarious liability under ADA Title II, then he must file a motion seeking an amendment of the scheduling order to reopen the deadline to add parties and amend pleadings and seeking leave to file a **fourth amended complaint** ("Motion to Amend"). The Motion to Amend must include a draft of the proposed fourth amended complaint in compliance with the Local Rule 10.4, and it must be filed by no later than **July 29, 2024**.[9] In light of the advanced stage of the litigation, the Motion to Amend will be decided by this Court and not the magistrate judge.

---

[9] At the hearing on the Motion, Spriestersbach's counsel represented that there is a pending motion to amend in this case. There is not. On April 12, 2024, Spriestersbach filed a Motion by Plaintiff to Amend Scheduling Order, Reconsider Minute Order Dkt. 352 and for Leave to File Third Amended Complaint (TAC). [Dkt. no. 375.] The magistrate judge denied that motion at a May 16, 2024 hearing. [Minutes, filed 5/16/24 (dkt. no. 436), at PageID.7880.] Thus, that motion is no longer pending. It appears that a written order denying the motion was never filed and that Spriestersbach believes he is unable to appeal the magistrate judge's ruling until the written order is filed. If the magistrate judge's written order is filed prior to July 29, 2024, Spriestersbach may file an appeal of the magistrate judge's order in lieu of the Motion to Amend described in this Order.

This Court emphasizes that Spriestersbach's deadline to file his third amended complaint is independent of his deadline to file the Motion to Amend. In other words, Spriestersbach must still file the third amended complaint, even if he has already filed the Motion to Amend.

**CONCLUSION**

For the foregoing reasons, the State Defendants' Motion to Dismiss or in the Alternative for Judgment on the Pleadings, filed May 28, 2024, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as judgment on the pleadings is GRANTED in favor of the State Defendants as to all of Spriestersbach's claims against them. The Motion is DENIED insofar as Spriestersbach is granted leave to amend the portion of Count III alleging an ADA Title II claim against HSH based on vicarious liability. Leave to amend is denied as to all other claims at issue in the Motion. Spriestersbach is DIRECTED to file a third amended complaint by **August 19, 2024.**

Spriestersbach's request to name new defendants is DENIED as procedurally improper. However, Spriestersbach is permitted to file a motion seeking an amendment of the scheduling order and seeking leave to file a fourth amended complaint. That Motion to Amend must be filed by **July 29, 2024.**

In light of the leave to amend, the trial date and all unexpired deadlines are VACATED. A new scheduling order will be issued after the Motion to Amend is ruled upon.

Further, there being no claims remaining against the State and DPS, the Clerk's Office is DIRECTED to terminate them as parties on **August 5, 2024.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, July 19, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

JOSHUA SPRIESTERBACH VS. STATE OF HAWAII, ET AL; CV 21-00456 LEK-RT; ORDER GRANTING IN PART AND DENYING IN PART THE STATE DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR JUDGMENT ON THE PLEADINGS