UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JOSHUA SPRIESTERSBACH,<br><br>               Plaintiff,<br><br>   vs.<br><br>STATE OF HAWAII, CITY AND COUNTY OF HONOLULU, OFFICER ABRAHAM K. BRUHN, DEPARTMENT OF PUBLIC SAFETY, OFFICE OF THE PUBLIC DEFENDER, NIETZSCHE LYNN TOLAN, MICHELLE MURAOKA, LESLIE MALOIAN, JACQUELINE ESSER, JASON BAKER, MERLINDA GARMA, SETH PATEK, DR. JOHN COMPTON, DR. MELISSA VARGO, DR. SHARON TISZA, HAWAII STATE HOSPITAL, DR. ALLISON GARRETT, JOHN/JANE DOES 1-20,<br><br>               Defendants. | CIV. NO. 21-00456 LEK-RT |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT ALLISON GARRETT, M.D.'S MOTION FOR SUMMARY JUDGMENT**

On May 29, 2024, Defendant Allison Garrett, M.D. ("Dr. Garrett") filed her Motion for Summary Judgment ("Motion"). [Dkt. no. 459.] On June 24, 2024, Plaintiff Joshua Spriestersbach ("Spriestersbach" or "Plaintiff") filed his opposition to Dr. Garrett's Motion ("Memorandum in Opposition"), and Dr. Garrett filed a reply in support of her Motion ("Reply") on July 1, 2024. [Dkt. nos. 487, 497.] Defendants Office of the Public Defender ("OPD"), Nietzsche Lynn Tolan, Michele Muraoka, Lesley Maloian, Jason Baker, and Seth Patek (collectively

"PD Defendants") and Defendant City and County of Honolulu's ("the City") filed their respective statements of no position on June 21, 2024. [Dkt. nos. 479, 480.] This matter came on for hearing on July 15, 2024.

Dr. Garrett's Motion is granted in part and denied in part for the reasons set forth below. Dr. Garrett's Motion is denied as to Spriestersbach's medical malpractice claim, his negligent infliction of emotional distress claim, and his request for punitive damages as to those claims. The Motion is denied as moot as to Spriestersbach's negligence claim because that claim is stricken as redundant of the medical malpractice claim. The Motion is granted as to all of Spriestersbach's other claims against Dr. Garrett.

## BACKGROUND

The operative pleading is the Second Amended Complaint, [filed 3/29/24 (dkt. no. 362)]. The case arises from Spriestersbach's May 11, 2017 arrest and prosecution for crimes committed by Thomas R. Castleberry and Spriestersbach's subsequent detention at the Oahu Community Correctional Center ("OCCC") and civil commitment related to that arrest until January 17, 2020 at Hawai`i State Hospital ("HSH"). See Second Amended Complaint at ¶¶ 1-2.

Relevant to the instant Motion, the claims in the Second Amended Complaint are:

-a Title 42 United States Code Section 1983 claim against
    Dr. Garrett alleging violations of Spriestersbach's rights
    under the Fourth Amendment to the United States
    Constitution ("Count I");

-a Section 1983 claim against Dr. Garrett alleging violations of
    Spriestersbach's due process rights under the Fourteenth
    Amendment ("Count II");

-a false imprisonment claim against Dr. Garrett ("Count VIII");

-a negligence claim against Dr. Garrett ("Count IX");

-a medical malpractice claim against Dr. Garrett ("Count X");

-an intentional infliction of emotional distress ("IIED") claim
    against Dr. Garrett ("Count XI"); and

-a negligent infliction of emotional distress ("NIED") claim
    against Dr. Garrett ("Count XII").

        In the instant Motion, Dr. Garrett argues she is

entitled to summary judgment as to all of Spriestersbach's

claims against her, [Motion at 2,] and as to Spriestersbach's

request for punitive damages, [id., Mem. in Supp. at 25].

Dr. Garrett and Spriestersbach agree upon the following relevant

facts.

-Spriestersbach "was first diagnosed with schizophrenia in the
    late 1990s." [Concise Statement in Support of Defendant
    Allison Garrett, M.D.'s Motion for Summary Judgment
    ("Garrett CSOF"), filed 5/29/24 (dkt. no. 460), at ¶ 9;
    Plaintiff's Response to Defendant Garrett's Concise
    Statement ("Spriestersbach's Responsive CSOF"), filed
    6/24/24 (dkt. no. 489), at ¶ 9 (stating Dr. Garrett's ¶ 9
    is undisputed).]

-"Schizophrenia and Schizoaffective Disorder are complex
    illnesses and sometimes statements made by a patient are
    not based in reality." [Garrett CSOF at ¶ 1;
    Spriestersbach's Responsive CSOF at ¶ 1.]

3

-"For more than a decade, Plaintiff was homeless in Hawaii,
    never contacting his family after his mother and sister
    unsuccessfully moved for guardianship over him." [Garrett
    CSOF at ¶ 10; Spriestersbach's Responsive CSOF at ¶ 10.]

-Spriestersbach has used the last name "Castleberry" in the
    past. [Garrett CSOF at ¶ 11; Spriestersbach's Responsive
    CSOF at ¶ 11 (stating that portion of Dr. Garrett's ¶ 11 is
    not disputed).]

-Upon his arrest in 2017, Spriestersbach was treated as
    Thomas R. Castleberry. [Garrett CSOF at ¶ 15;
    Spriestersbach's Responsive CSOF at ¶ 15 (stating that
    portion of Dr. Garrett's ¶ 15 is not disputed).]

-"In 2017, a three-physician panel evaluated and determined that
    Plaintiff was not mentally fit to proceed, and he was
    court-ordered to HSH." [Garrett CSOF at ¶ 16;
    Spriestersbach's Responsive CSOF at ¶ 16.]

-The state court ordered Spriestersbach to HSH on September 8,
    2017, and he was initially treated by Anne Virnig, M.D. and
    subsequently transferred to the unit where Dr. Garrett
    worked. [Garrett CSOF at ¶ 18; Spriestersbach's Responsive
    CSOF at ¶ 18 (stating Dr. Garrett's ¶ 18 is "[g]enerally
    undisputed" but disputing the timing of Spriestersbach's
    transfer to Dr. Garrett's care).]

-Dr. Garrett was on leave from April 12, 2019 to June 10, 2019
    and from September 12, 2019 to November 11, 2019. See
    Garrett CSOF at ¶ 5; Spriestersbach's Responsive CSOF at
    ¶ 5 (admitting that Dr. Garrett was on leave, but arguing
    there is no evidence she could not be reached or that she
    was unaware of the status of her patients).

-"When Garrett began treating Plaintiff, she reviewed his
    records to learn the history of his prior medications and
    responses[,]" and she did not order treatment against
    Spriestersbach's will when he refused treatment. [Garrett
    CSOF at ¶ 19; Spriestersbach's Responsive CSOF at ¶ 19
    (stating those portions of Dr. Garrett's ¶ 19 are
    undisputed).]

-Spriestersbach was also found unfit to proceed at other times
    after the initial determination. See Garrett CSOF at ¶ 21;
    Spriestersbach's Responsive CSOF at ¶ 21.

-Dr. Garrett "was aware that Plaintiff was restrained when he
    left the premises to get a State ID." [Garrett CSOF at
    ¶ 27; Spriestersbach's Responsive CSOF at ¶ 27.]

-Spriestersbach refused medication at certain points while at
    HSH, and a court order to treat ("OTT") was obtained. See
    Garrett CSOF at ¶ 30; Spriestersbach's Responsive CSOF at
    ¶ 30 (stating that portion of Dr. Garrett's ¶ 30 is
    undisputed).

-"Dr. Garrett never petitioned to have Plaintiff admitted,
    committed, or recommitted to HSH." [Garrett CSOF at ¶ 31;
    Spriestersbach's Responsive CSOF at ¶ 31.]

        In addition, Dr. Garrett points out that she has never

served as the HSH forensic coordinator, nor was she working as a

forensic psychiatrist from 2017 to 2020. See Emails from

Dr. Garrett's counsel transmitting exhibits, filed 7/8/24 (dkt.

no. 501) ("Exhibit Emails"), Exh. A (excerpts of trans. of

1/18/24 videoconference depo. of Dr. Garrett ("Garrett Depo."))

at 30, 35.[1] When patients are referred to HSH by a court to

restore them to competency for purposes of their legal

proceedings, restoring the patient to competency is part of

Dr. Garrett's job duties. [Id. at 35-36.] For such a patient,

Dr. Garrett's primary role is to treat the patient's mental

illness, and it is "not necessarily part of the treatment of

mental illness to know the charges [the patient is] facing."

[Id. at 43-44.] Further, it is not part of Dr. Garrett's role to

_____

        [1] Exhibit A is authenticated in the Garrett CSOF. See
Garrett CSOF, Declaration of Counsel ("Roeca Decl.") at ¶ 3.

determine whether the patient has a good knowledge of the legal system. [Id. at 85.] The panel evaluating the patient's fitness to proceed does that. [Id. at 87.]

Dr. Garrett was not aware of any incident at HSH, prior to 2017, where a patient was mistakenly identified as another person and treated as the other person. However, she had heard of an incident where someone was brought to HSH under another name, but the staff realized the misidentification and the person was released without being treated. [Id. at 145-46.]

Dr. Garrett testified that she saw a document from OCCC that listed Thomas Castleberry as an alias, and two of the letters from the panel examiners referred to both names.[2] [Id. at 134-37.] She also testified that Spriestersbach told her Thomas Castleberry was a nickname given to him by the police. [Id. at 311-12.] Dr. Garrett submits various Honolulu Police Department ("HPD") records, including:

---

[2] John Compton, Ph.D., Melissa Vargo, Psy.D., and Sharon Tisza, M.D. (collectively "Panel Examiners") were appointed by the state court to evaluate Spriestersbach. See Second Amended Complaint at ¶ 16. Spriestersbach previously named them as defendants in this case, but his claims against the Panel Examiners were dismissed with prejudice. See Order: Granting in Part and Denying in Part Defendant City and County of Honolulu's Motion for Judgment on the Pleadings; Granting Defendant Dr. Sharon Tisza's Motion to Dismiss Complaint; and Granting Defendants Dr. John Compton and Dr. Melissa Vargo's Substantive Joinder in Defendant Dr. Sharon Tisza's Motion to Dismiss Complaint, filed 8/18/22 (dkt. no. 151) ("8/18/22 Order"), at 1-3 & n.2. The 8/18/22 Order is also available at 622 F. Supp. 3d 948.

-various records for the July 26, 2010 arrest of Joshua C.
    Spriestersbach; [Roeca Decl., Exh. C (HPD records, dkt.
    no. 460-5) at PageID.8903-08;]

-an Incident Report, dated April 14, 2011, when Spriestersbach's
    sister reported him missing ("Missing Person Report"); [id.
    at PageID.8909-14;] and

-an Incident Report, dated April 15, 2011, reflecting that
    Spriestersbach was found, [id. at PageID.8915-17].

See also Garrett CSOF at ¶ 11 (citing other parts of Exhibit C).

        According to the HPD Incident Report for the July 26,
2010 arrest, the arrestee verbally identified himself as William
Castleberry, and officers initially identified him as Thomas
Castleberry, but subsequent fingerprint analysis resulted in a
match for Joshua Spriestersbach. [Roeca Decl., Exh. C (HPD
records, dkt. no. 460-5) at PageID.8905-06.] The arrestee signed
a Statement of Receipt of Detainee's Property as William Charles
Castleberry. [Id. at PageID.8907.] The Missing Person Report
stated: "Spriestersbach is also known by the names: Joshua
Spriestersbach, Joshua Dumas and Thomas Castleberry. He also
went by Sergeant Castleberry at the state hospital when he was
there." [Id. at PageID.8912.] The April 15, 2011 Incident Report
stated Spriestersbach was also known as "Castleberry,
William/Thomas" and noted that "he has identified himself
previously as Thomas Castleberry." [Id. at PageID.8916-17
(emphasis omitted).]

7

Dr. Garrett also submits documentation from OCCC noting that the patient, Thomas Castleberry, "has numerous AKAs, including: Joshua Spriestersbach, Thomas Castleberry, Wolfgang Castleberry." [Exhibit Emails, Exh. J (Spriestersbach's psychiatric records produced by Defendant Department of Public Safety ("DPS"), dkt. no. 501-3) at PageID.9930 (Chart Review, dated 5/12/17).[3]]

Dr. Garrett points to the following relevant testimony during Spriestersbach's deposition:

-Spriestersbach started using the name Castleberry in 2009 "as an actor," and he used the first names Wolfgang and William as an actor. [Roeca Decl., Exh. O (excerpts of trans. of 12/4/23 Videotaped Deposition of Joshua Spriestersbach, vol. I, and 12/5/23 Videotaped Deposition of Joshua Spriestersbach, vol. II (collectively "Spriestersbach Depo."), dkt. no. 460-17) at 19-20.] But, he denied using the first name Thomas, [id. at 21,] and he denied ever giving the name Thomas Castleberry, [id. at 70].

-Spriestersbach acknowledged giving law enforcement or police the names Wolfgang, Anakin, Dumas, and William, specifically William Castleberry. [Id. at 24-25, 69, 202-04.]

-Spriestersbach acknowledged giving the name Wolfgang and William Castleberry to courts on Oʻahu. [Id. at 25-26.]

-Spriestersbach did not recall identifying himself as Joshua Charles Spriestersbach to law enforcement/police or to any court. [Id. at 24, 26.]

-In 2017, when a police officer asked him about the name Joshua Spriestersbach, Spriestersbach invoked his right to remain silent and refused to tell the officers his name. [Id. at

---

[3] Exhibit J is authenticated in paragraph 12 of the Roeca Declaration.

> 31.] However, he testified: "Right to remain silent until
> banded.[4] Thomas Castleberry. And then I gave my name,
> birth date, and Social Security number." [Id. at 70.]

-Initially, after his 2017 arrest, Spriestersbach thought
"Thomas R. Castleberry" "was just some John Doe thing that
[the HPD officers] had given [him]," but he later
understood Thomas Castleberry was a real person, and
Spriestersbach said that was not him. [Id. at 405-06.]

-Spriestersbach signed grievances at HSH using the name "Elvenar
Foed" and "Max the Fist." [Id. at 393-95.]

Spriestersbach also testified that that he never answered to the
name Thomas Castleberry either to the police, to the personnel
at any correctional facility, to any attorney, or to anyone at
HSH. [Id. at 70-71.] Although he did not recall doing so,
Spriestersbach said it was possible that he answered to
"Mr. Castleberry" in court and with his attorney. [Id. at 71-72,
372-73.] Spriestersbach's sister, Vedanta Griffith ("Griffith")
testified that Spriestersbach's grandfather's last name was
Castleberry. Griffith thought Spriestersbach's grandfather's
first name was William, based on what Spriestersbach told her.
[Roeca Decl., Exh. P (excerpts of trans. of 5/22/24 Depo. of
Vedanta Griffith ("Griffith Depo."), dkt. no. 460-18) at 35-36,
114.]

---

[4] "Banded" appears to refer to the placement of a band on
Spriestersbach that said "Thomas Castleberry" on it. See Roeca
Decl., Exh. O (Spriestersbach Depo., dkt. no. 460-17) at 158.

HSH records from 2017 show that Spriestersbach was identified as Thomas R. Castleberry, also known as William C. Castleberry, also known as Joshua Spriestersbach. See, e.g. Exhibit Emails, Exh. G (HSH records, dkt. no. 501-2) at PageID.9908 (page 1 of Master Recovery Plan and Review, dated 10/9/17 ("10/9/17 RPR")).[5] Dr. Garrett's position is that it was not until January 2020 that Spriestersbach had made enough improvement (after the OTT was in effect) to articulate to her the reasons why he could not be Thomas Castleberry, which gave her sufficient information to follow up on his claims. [Garrett CSOF at ¶ 32 (citing Exhibit Emails, Exh. A (Garrett Depo., dkt. no. 501-1) at 226-28, 231, 244-45, 247, 252-54, 260-61, 281-82 & Exh. 58).[6]] Dr. Garrett argues that, prior to that point, Spriestersbach's statements about his identity were unclear. For example, in a January 19, 2018 note, Dr. Garrett reported that Spriestersbach stated he was never on probation, but when Dr. Garrett tried to discuss the 2006 charges against Thomas Castleberry, Spriestersbach did not answer. See id. at ¶ 25 (some citations omitted) (citing Exhibit Emails, Exh. A (Garrett Depo., dkt. no. 501-1), Exh. 40 at PageID.9790).]

---

[5] Exhibit G is authenticated in paragraph 9 of the Roeca Declaration.

[6] Exhibit 58 to the Garrett Deposition is Dr. Garrett's Weekly Psychiatric Progress Note for January 3, 2020. [Dkt. no. 501-1 at PageID.9888.]

Dr. Garrett asserts she met the standard of care in all aspects of her treatment of Spriestersbach. [Id. at ¶ 23.] As support for this proposition, she cites: her Weekly Psychiatric Progress Notes; see Exhibit Emails, Exh. A (Garrett Depo., dkt. no. 501-1), Exh. 40; portions of the May 6, 2024 Forensic Psychiatric Report by Neil S. Kaye, M.D., DLFAPA ("Kaye Report"); and Appendix B to the Kaye Report. However, because Dr. Garrett's motion to seal the Kaye Report and other exhibits was denied, this Court has not considered the Kaye Report in ruling on Dr. Garrett's Motion. See Order: Granting Defendant City and County of Honolulu's Motions to Seal, as Amended by the City's June 5, 2024 Submissions; Denying Defendant Allison Garrett, M.D.'s Motion to Seal Confidential Exhibits; and Denying Plaintiff's Joinder, filed 6/24/24 (dkt. no. 484), at 15.[7]

Spriestersbach emphasizes the following facts. Dr. Garrett was the team leader for Spriestersbach's treatment.

_____

[7] The June 24, 2024 order is also available at 2024 WL 3164698. Dr. Garrett was subsequently granted leave to supplement the record with some of the exhibits that were at issue in her motion to seal. See Minute Order - Court Order Granting in Part and Denying in Part Defendant Allison Garrett, M.D.'s Motion to Supplement Record, or Alternatively, to Reconsider Portion of Order Denying Allison Garrett, M.D.'s Motion to Seal Confidential Exhibits (ECF 484), filed 7/1/24 (dkt. no. 496). The exhibits that Dr. Garrett was permitted to file are attached to the Exhibit Emails.

[Plaintiff's Concise Statement, filed 6/24/24 (dkt. no. 488) ("Spriestersbach CSOF"), at ¶ 5; Reply Concise Statement ("Reply CSOF"), filed 7/1/24 (dkt. no. 498), at ¶ 5 (disputing Spriestersbach's ¶ 5 only to state that Dr. Garrett was not leader when she was on leave).] Spriestersbach argues he does not look like Thomas Castleberry, and they have different personal identifying information, including social security numbers and state identification numbers. He therefore argues it should have been easy for Dr. Garrett and others to determine that he was not Thomas Castleberry. See Spriestersbach CSOF at ¶ 2; Spriestersbach CSOF, Declaration of John Washington ("Washington Decl."), Exh. 4 (redacted HSH records, dkt. no. 488-5) at PageID.11627-28 (pages 1-2 of Social Services – Continuity of Care/Discharge Summary dated 1/21/20); id., Exh. 9 (Bench Warrant for Thomas R. Castleberry, issued 12/18/07, and HPD Incident Report, dated 7/1/06, regarding Thomas R. Castleberry, dkt. no. 488-12); id., Exh. 10 (Spriestersbach's birth certificate, Social Security card, and State of Hawai`i Identification Card, dkt. no. 488-13).

Spriestersbach testified at his deposition that, in 2017, "right at the beginning of it when [he] had the meeting with Garrett and the complaint about Thomas R. Castleberry driving the truck in Oahu. [Spriestersbach] told her [he] was

not in Oahu in 2006."[8] <u>See</u> Washington Decl., Exh. 2
(Spriestersbach Depo., dkt. no. 488-3) at 186-87; <u>see also</u> <u>id.</u>
at 258-29 (stating that he told Dr. Garrett during their first
meeting that he was not the driver of the vehicle on O`ahu in
2006); <u>id.</u> at 267-68 (describing a document Dr. Garrett had at
their first meeting that stated the offense Thomas Castleberry
was originally charged with). According to Spriestersbach,
Dr. Garrett "kept holding as [the] bar for fitness to stand
trial was that [he] had to agree that [he] was in Oahu driving a
truck as Thomas Castleberry." [<u>Id.</u> at 259.] She also listed him
as catatonic. [<u>Id.</u>] Because he "found her appalling" and she
refused to listen to him, Spriestersbach "refused to talk to her
after that." [<u>Id.</u>]

    According to Spriestersbach, he told Dr. Garrett the
first time he met her that he could not be Thomas Castleberry
because: he was not on O`ahu at the time of Castleberry's
offenses; Castleberry's offenses involved driving a truck, and
Spriestersbach never drove a truck on O`ahu; and Spriestersbach
had never been on probation. <u>See</u> Washington Decl., Exh. 2

---

[8] The Bench Warrant for Thomas R. Castleberry, issued on
December 18, 2007 for failure to comply with the terms and
conditions of HOPE probation ("Castleberry Warrant"), states
that the original charges against Thomas Castleberry were:
unauthorized control of a propelled vehicle, promoting a
dangerous drug in the third degree, and unlawful use of drug
paraphernalia. <u>See</u> Washington Decl., Exh. 9 (dkt. no. 488-12) at
PageID.11968 (Castleberry Warrant).

(Spriestersbach Depo., dkt. no. 488-3) at 265. Spriestersbach
presents evidence indicating that he made statements similar to
those that he made during his first meeting with Dr. Garrett,
and he identified himself as Spriestersbach, repeatedly
throughout his commitment at HSH. See Washington Decl., Exh. 6
(selection of Dr. Garrett's Weekly Psychiatric Progress Notes
regarding Spriestersbach, dkt. no. 488-9) at PageID.11936 (note
dated 11/3/17), PageID.11937 (note dated 2/9/18), PageID.11939
(note dated 12/6/19), PageID.11940 (note dated 12/23/19); id.,
Exh. 4 (redacted HSH records, dkt. no. 488-5) at PageID.11736
(Nursing Admission Assessment – Part 2 of 2),[9] PageID.11725
(Progress Notes, Admission Note dated 9/8/17), PageID.11719
(10/9/17 RPR), PageID.11673 (HSH Progress Notes, note dated
5/1/19); id., Exh. 12 (letters to the state court from the Panel
Examiners ("Panel Examiners' Letters"), dkt. no. 488-16) at
PageID.12005 (page 4 of Dr. Tisza's 8/31/17 letter),
PageID.12015 (page 2 of Dr. Compton's 12/10/18 letter); id.,
Exh. 13 (Dr. Vargo's 11/20/19 letter to the state court, dkt.
no. 488-17) at 1.

Dr. Garrett's position is that she and HSH were aware
of the names Thomas Castleberry and Joshua Spriestersbach, but

---

[9] The Admission Assessment was initiated and completed on
September 8, 2017. See Washington Decl., Exh. 4 (redacted HSH
records, dkt. no. 488-5) at PageID.11742.

they initially had the reasonable belief the two names referred to the same person. Cf. Spriestersbach CSOF at ¶ 32 ("Garret confirmed documentation established Plaintiff's name was Joshua Spriestersbach by November 11, 2017."); Reply CSOF at ¶ 32 (stating Spriestersbach's ¶ 32 is undisputed).

Spriestersbach argues the Panel Examiners' letters contained similar statements to those that he made to Dr. Garrett, including denying that he was the person named in the court orders about Thomas Castleberry and stating that he was not on O`ahu during the time of Thomas Castleberry's offenses. [Spriestersbach CSOF at ¶ 17 (some citations omitted) (citing Washington Decl., Exh. 12 (Panel Examiners' Letters, dkt. no. 488-16) at PageID.12005 (page 4 of Dr. Tisza's 8/31/17 letter), PageID.11999 (page 5 of Dr. Vargo's 8/30/17 letter).]

According to Spriestersbach, Dr. Garrett knew that he repeatedly denied prior drug use and denied being in the HOPE probation program. [Id. at ¶ 18 (some citations omitted) (citing Washington Decl., Exh. 4 (redacted HSH records, dkt. no. 488-5) at PageID.11649 (Dr. Garrett's Weekly Psychiatric Progress Notes, dated 12/6/19), PageID.11650 & PageID.11651 (pages 1 & 3 of 12/4/19 RPR), PageID.11664 (page 1 of 8/5/19 RPR), PageID.11675 (page 1 of 11/5/18 RPR), PageID.11695 (page 1 of 1/10/18 RPR), PageID.11707 (page 3 of 11/9/17 RPR), PageID.11725 (HSH Progress Notes, Admission Note dated 9/8/17); Washington

15

Decl., Exh. 12 (Panel Examiners' Letters, dkt. no. 488-16) at
PageID.12004 (page 3 of Dr. Tisza's 8/31/17 letter)).]

Spriestersbach also argues his HSH records from prior
admissions there in 2009 and 2012 showed no indication of
cocaine use, nor any other substance use or disorder. [Id. at
¶ 19 (some citations omitted) (citing Washington Decl., Exh. 4
(redacted HSH records, dkt. no. 488-5) at PageID.11756 (Urine
Drug Screen and Report, dated 5/13/09), PageID.11755 (page 3 of
Discharge Summary, dated 7/20/09)).]

Spriestersbach argues that, during the period in
question, Dr. Garrett diagnosed him with cocaine use disorder
based on the 2006 charges against Thomas Castleberry, and
Dr. Garrett's team prescribed interventions based on that
diagnosis. [Id. at ¶ 20 (some citations omitted) (citing
Washington Decl., Exh. 4 (redacted HSH records, dkt. no. 488-5)
at PageID.11634 (page 1 of 1/2/20 RPR), PageID.11724 (page 1 of
9/15/17 RPR), PageID.11718 (page 5 of 10/9/17 RPR), PageID.11697
(page 5 of 12/13/17 RPR)).]

Spriestersbach argues that, as early as his admission
on September 11, 2017 and Dr. Garrett's initial assessment on
November 3, 2017, his statements about his misidentification
were clearly expressed and should have been credited. [Id. at
¶¶ 22-23 (some citations omitted) (citing Washington Decl.,
Exh. 4 (redacted HSH records, dkt. no. 488-5) at PageID.11734

16

(page 2 of Psychological Admission Assessment, dated 9/12/17,
noting: "Mr. Castleberry's thought processes appeared logical
throughout the interview."; "He denied a history of alcohol or
substance abuse in the past."; "Mr. Castleberry's strengths are
that he has been able to become calm and cooperative while in
the hospital and has been compliant with medication. He has been
able to express himself adequately." (emphasis omitted)),
PageID.11713 (Dr. Garrett's Weekly Psychiatric Progress Note,
dated 11/3/17, noting he "interacts appropriately when engaged"
and noting "his report that he was never on probation or
parole"), PageID.11716 (page 1 of the 10/9/17 RPR, noting
Mr. Castleberry "has been able to express himself adequately"
and "appears to be of above average intelligence")).]

    Spriestersbach acknowledges that, during the relevant
period, he made "imaginative statements," but he argues that the
distinction between his imaginative statements and his factual
statements would have been clear, even to a lay person.
[Spriestersbach CSOF at ¶ 25 (citing Washington Decl., Exh. 7
(dkt. no. 488-10) at PageID.11952-53 (pages 8-9 of Paul S.
Appelbaum, M.D.'s report dated 2/12/24 ("Appelbaum Report"))).[10]]

_____

    [10] Dr. Appelbaum has been retained by Spriestersbach as an
expert witness in this case. See Washington Decl., Exh. 7 (dkt.
no. 488-10 at PageID.11943-44) (Declaration of Paul S.
Appelbaum, M.D.) at ¶ 1.

Spriestersbach points out that, in 2018, Dr. Garrett reviewed Spriestersbach's records from Puna Medical Center. [Id. at ¶ 29 (citing Washington Decl., Exh. 1 (Garrett Depo., dkt. no. 488-2) at 110-11).] Spriestersbach argues the Puna records show that he was being treated in Hilo at the time that Thomas Castleberry committed his offenses on Oʻahu. [Id. at ¶ 29 (some citations omitted) (citing Washington Decl., Exh. 1 (Garrett Depo., dkt. no. 488-2) at 113-14).] Spriestersbach also argues HSH's medical records confirm he was being treated on the Island of Hawaiʻi from 2004 to 2007. [Id. at ¶ 30 (citing Washington Decl., Exh. 4 (redacted HSH records, dkt. no. 488-5) at PageID.11757 (page 1 of Psychological Intake Evaluation, dated 4/22/09), PageID.11758 (page 1 of Social Services Admission Assessment, dated 4/23/09)).]

Spriestersbach argues that, before 2020, Dr. Garrett did not ask him about the reasons he gave to explain why he could not be Thomas Castleberry, and she did not try to confirm Spriestersbach's identity. [Id. at ¶ 37 (citing Washington Decl., Exh. 1 (Garrett Depo., dkt. no. 488-2) at 177-78, 250-51, 274); id. at ¶ 38 (citing Washington Decl., Exh. 1 (Garrett Depo., dkt. no. 488-2) at 242-43).]

Dr. Garrett's Discharge Summary stated:

> At his treatment team meeting on 1-2-20 when reviewing fitness concepts and the outcome his previous court hearing he reported that he was

not Thomas Castleberry and therefor he did not
have his probation. He reported that he didn't
know why there were drug charges associated with
him as he never used drugs and while he knew
something about an issue with a car, he'd never
had issues with a truck. He then reported that he
wasn't even living on Oahu in 2006 so it couldn't
be him in regards to the charges. **While he had
denied being Thomas Castleberry before and had
denied having probation, this was the first time
he actually denied that the charges had anything
to do with him and provided information that he
wasn't on Oahu at the time of the original
charge.** He reported being hospitalized in
California at that time. He provided consent to
obtain information from the hospital in question
in Angwin California. This writer was able to
locate Crestwood Behavioral Health in Angwin,
California and while they destroyed full records
after 7 years, they did have an admission
documented for the patient in 2003 but no
admission in 2006. He also provided consent for
this writer to talk to his public defender as he
described being very frustrated with not being
able to talk to his lawyer before hearings and
feeling the lawyer didn't answer questions but
only told him what was going to happen. This
writer left a message with his public defender
that day regarding the patient's desire to speak
to him and his report that he could not have
committed the crime in question as he did not
live on Oahu at the time. This writer did not
receive a call back.

[Exhibits Email, Exh. A (Garrett Depo., dkt. no. 501-1), Exh. 40

at PageID.9849-50 (pgs. 2-3 of Discharge Summary, dated 1/17/20)

(emphasis added).] Spriestersbach argues Dr. Garrett's

statements that January 2, 2020 was the first time he denied

that Thomas Castleberry's charges were related to him and it was

the first time he denied he was on Oʻahu at the time of the

crimes was false. [Spriestersbach CSOF at ¶ 39 (citing

19

Washington Decl., Exh. 4 (redacted HSH records, dkt. no. 488-5)
at PageID.11631 (page 3 of Discharge Summary, dated 1/17/20)).]

        Spriestersbach points out that Dr. Garrett was aware
of an incident in 2016 when law enforcement brought a patient to
HSH based upon a mistaken identification. [Id. at ¶ 41 (citing
Washington Decl., Exh. 1 (Garrett Depo., dkt. no. 488-2) at 145-
48).]

        Spriestersbach emphasizes the following opinions
provided by Dr. Appelbaum:

- "[a] treating psychiatrist has an obligation to act in the best
    interests of her patient," [Washington Decl., Exh. 7 (dkt.
    no. 488-10) at PageID.11953 (page 9 of Appelbaum Report),]
    which includes correcting misidentification of the patient,
    see Washington Decl., Exh. 8 at 5 (dkt. no. 488-11 at
    PageID.11965)];[11]

- "confirming the identity of a patient is a key aspect of
    medical treatment"; [id.;] and

- Dr. Garrett should have taken the actions that she took in 2020
    in 2017, and her failure to address the misidentification
    in a timely manner caused Spriestersbach to deteriorate and
    constituted a breach of the standard of care, see
    Washington Decl., Exh. 7 (dkt. no. 488-10) at PageID.11953-
    54 (pages 9-10 of Appelbaum Report).

Spriestersbach argues it is undisputed that he was wrongfully
detained for almost three years for Thomas Castleberry's crimes,
and Spriestersbach asserts he has presented substantial evidence

---

[11] Exhibit 8 consists of: the Declaration of Paul S.
Appelbaum, M.D., dated June 21, 2024; [dkt. no. 488-11 at
PageID.11961-62;] and Paul S. Appelbaum, M.D.'s report dated
May 23, 2024 ("Appelbaum Rebuttal Report"), [id. at
PageID.11963-66].

that Dr. Garret, the primary doctor responsible for his care at HSH, showed reckless disregard for his rights. Spriestersbach therefore asserts there are genuine issues of material fact for trial as to all of his claims against Dr. Garrett. See Mem. in Opp. at 1.

**DISCUSSION**

I.  **Qualified Immunity**

Dr. Garrett first argues she is entitled to qualified immunity as to Spriestersbach's Section 1983 claims because those claims arise from her role as an HSH staff physician, acting within the course and scope of her employment. Further, her actions did not violate any clearly established law, and she was complying with court orders. [Motion, Mem. in Supp. at 11-12.]

> Qualified immunity shields government actors from civil liability pursuant to § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1151 (9th Cir. 2021). "In determining whether an officer is entitled to qualified immunity, [courts] consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." Lal v. California, 746 F.3d 1112, 1116 (9th Cir. 2014). . . .

Rieman v. Vazquez, 96 F.4th 1085, 1092 (9th Cir. 2024) (some alterations in Rieman).

> Courts have discretion to decide which of the two
> prongs "should be addressed first in light of the
> circumstances in the particular case at hand."
> Pearson v. Callahan, 555 U.S. 223, 236, 129 S.
> Ct. 808, 172 L. Ed. 2d 565 (2009). "Addressing
> the second prong before the first is especially
> appropriate where 'a court will rather quickly
> and easily decide that there was no violation of
> clearly established law.'" Jessop [v. City of
> Fresno], 936 F.3d [937,] 940 [(9th Cir. 2019)]
> (quoting Pearson, 555 U.S. at 239, 129 S. Ct.
> 808).

Saved Mag. v. Spokane Police Dep't, 19 F.4th 1193, 1198 (9th

Cir. 2021).

This Court, in its discretion, elects to decide the

clearly established right prong first.

> A clearly established constitutional right "must
> be particularized to the facts of the case."
> Davis v. United States, 854 F.3d 594, 599 (2017)
> (cleaned up). "Because the focus is on whether
> the officer had fair notice that her conduct was
> unlawful, reasonableness is judged against the
> backdrop of the law at the time of the conduct."
> Kisela v. Hughes, 584 U.S. 100, 138 S. Ct. 1148,
> 1152, 200 L. Ed. 2d 449 (2018).

Rieman, 96 F.4th at 1092. In evaluating Dr. Garrett's assertion

of qualified immunity, this Court must determine whether "the

right asserted by [Spriestersbach was] so clearly established

that a reasonable [state official in Dr. Garrett's position]

would have known that his conduct violated that right?" See

Saved Mag., 19 F.4th at 1199 (citation and internal quotation

marks omitted); see also Rieman, 96 F.4th at 1094 ("The salient

question is whether the state of the law at the time of their

misconduct gave the [the defendants] fair warning that their misconduct was unconstitutional." (alterations, citation, and internal quotation marks omitted)).

Spriestersbach argues that, based on clearly established law, a reasonable state official in Dr. Garrett's position would have known that "failing to take readily available steps to correct [Spriestersbach's] misidentification" violated his constitutional rights. See Mem. in Opp. at 14 (citing Lee v. City of Los Angeles, 250 F.3d 668, 683 (9th Cir. 2001); Fairley v. Luman, 281 F.3d 913, 918 (9th Cir. 2002); Alvarado v. Bratton, 299 F. App'x 740, 743 (9th Cir. 2008)).[12] At the hearing on the Motion, Spriestersbach's counsel acknowledged that the cases Spriestersbach relies upon do not address psychiatrist defendants, but counsel argued cases addressing wrongful detention and mistaken identification are sufficient to constitute clearly established law.

---

[12] Spriestersbach also cites Rivera v. Corrections Corp. of America, 999 F.3d 647, 655 (9th Cir. 2021), [Mem. in Opp. at 14,] but this Court has previously ruled that, because Rivera was decided after the events at issue in this case, it cannot be considered part of the clearly established law for purposes of the qualified immunity analysis. See Order Granting in Part and Denying in Part Defendant Allison Garrett, M.D.'s Motion to Dismiss First Amended Complaint Filed October 18, 2023 (ECF 250), filed 3/15/24 (dkt. no. 350) ("3/15/24 Garrett Order"), at 20, available at 2024 WL 1142198; accord Rieman, 96 F.4th at 1092 ("reasonableness is judged against the backdrop of the law at the time of the conduct" (quotation marks and citation omitted)).

The Ninth Circuit has stated that

general statements of the law are not inherently
incapable of giving fair and clear warning, and
in some instances a general constitutional rule
already identified in the decisional law may
apply with obvious clarity to the specific
conduct in question, even though the very action
in question has not previously been held
unlawful.

Rieman, 96 F.4th at 1094 (quotation marks and citation omitted).

In that case, two of the defendants, Mirta Johnson ("Johnson")

and Gloria Vazquez ("Vazquez"), social workers, obtained a

temporary detention warrant to remove a child, K.B., from the

plaintiff's, Sydney Rieman's, home. Vazquez and law enforcement

made four unsuccessful attempts to serve the warrant on Reiman.

After those attempts, Vazquez prepared a juvenile dependency

petition and detention report. Vazquez and Johnson both signed

the report, which stated that Reiman was not served with notice

of the detention hearing because her whereabouts were unknown,

and the report listed a different telephone number for Reiman.

The juvenile court held the detention hearing without Reiman

present, and it ordered K.B. to be detained and removed from

Reiman's custody. K.B. was not returned to Reiman's custody for

almost two months. Reiman and K.B. filed Section 1983 claims

against Vazquez and Johnson, among others. Reiman, 96 F.4th at

1088-89. The district court ruled that Vazquez and Johnson were

not entitled to qualified immunity, and the Ninth Circuit affirmed that ruling. Id. at 1090, 1095.

Relevant to Spriestersbach's qualified immunity arguments, Vazquez and Johnson emphasized on appeal that "they did their best to give Ms. Rieman notice of the detention hearing through their attempts to serve the temporary detention warrant," and they argued that, "because no court has decided these exact set of circumstances regarding notice, the law is not clearly established, and thus qualified immunity applies to their failure to give actual notice of the detention hearing." Id. at 1092. The Ninth Circuit rejected this argument because, at the time of the events at issue in the case, "'it was clear that a parent . . . could not be summarily deprived of th[e care and] custody [of his children] without notice and a hearing, except when the children were in imminent danger.'" Id. at 1093 (alterations in Rieman) (quoting Ram v. Rubin, 118 F.3d 1306, 1310 (9th Cir. 1997)). Further, there was California law specifically addressing a social worker's duty to give notice to the parents when a dependency petition is filed. Id. (citing Cal. Welf. & Inst. Code § 290.1(c), (e)). There is no comparable state statute here, and the cited case law regarding arrestee plaintiffs and law enforcement defendants does not present sufficiently similar circumstances to the instant case to constitute clearly established law as to Dr. Garrett.

25

In addition, the Ninth Circuit rejected Vazquez and Johnson's argument that there was no clearly established law indicating that it would violate Rieman's due process rights if they claimed, based on the facts known to them, that Rieman's whereabouts were unknown. See id. at 1094. The Ninth Circuit noted that, at the time of the events in question,

> it was clear that "[t]here are no circumstances in a dependency proceeding that would permit government officials to bear false witness against a parent." [Hardwick v. Cnty. of Orange, 844 F.3d 1112,] 1119 [(9th Cir. 2017)]; see also Scanlon [v. Cnty. of Los Angeles], 92 F.4th [781,] 805 [(9th Cir. 2024)] (observing that "[t]he right to be free from judicial deception" in child custody matters "was clearly established prior to 2016"). That the Riemans have failed to identify a case that specifically evaluates "the very action in question" does not change the analysis. Hardwick, 844 F.3d at 1117. It is obvious that the prohibition against bearing false witness applies to representations that a social worker makes about a parent's whereabouts . . . .

Id. (some alterations in Rieman). In Rieman, the general legal principle prohibiting government officials from bearing false witness against a parent in a dependency proceeding was clearly implicated because there was evidence in the summary judgment record that Vazquez and Johnson made a materially false statements in the detention report that was submitted to the juvenile court. See Rieman, 96 F.4th at 1089; id. at 1094 & n.4.

In the instant case, Spriestersbach points to "the Ninth Circuit's jurisprudence protecting innocent, misidentified

26

prisoners," and he argues that "[n]o one in Dr. Garrett's
position could believe they could ignore a patient's protests of
innocence and misidentification without legal consequence simply
because they are a doctor." Mem. in Opp. at 16; see also id. at
13 ("Any reasonable person would know that you do not allow an
innocent person to be detained for another person's crimes.").
However, unlike in Rieman, there is no evidence that Dr. Garrett
knew Spriestersbach had been misidentified as Thomas
Castleberry, nor is there any evidence that Dr. Garrett
knowingly made false statements in an attempt to conceal the
violation of Spriestersbach's rights.

It is undisputed that Spriestersbach was arrested and
went through state court proceedings as Thomas R. Castleberry.
After evaluation by a three-physician panel, he was determined
unfit to proceed and court-ordered to HSH. See Garrett CSOF at
¶¶ 15-16; Spriestersbach's Responsive CSOF at ¶¶ 15-16. It is
also undisputed that Spriestersbach has been diagnosed with
schizophrenia, and persons with schizophrenia or schizoaffective
disorder sometimes make statements that are not based in
reality. See Garrett CSOF at ¶¶ 1, 9; Spriestersbach's
Responsive CSOF at ¶¶ 1, 9. The record reflects that Dr. Garrett
had documentation from OCCC and the Panel Examiners indicating
that Thomas Castleberry was one of Spriestersbach's aliases. See
Exhibit Emails, Exh. A (Garrett Depo., dkt. no. 501-1) at 134-

27

37; see also Exhibits Emails, Exh. J (OCCC records, dkt.
no. 501-3) at PageID.9930 (Chart Review, dated 5/12/17, stating:
"Of note, the patient has numerous AKAs, including: Joshua
Spriestersbach, Thomas Castleberry, Wolfgang Castleberry.");
Washington Decl., Exh. 12 (Panel Examiners' Letters, dkt.
no. 488-16) at PageID.12002 (page 1 of Dr. Tisza's 8/31/17
letter, referring to the case as "State of Hawaii vs. Thomas
Castleberry (aka Joshua Charles Spriestersbach)"); id. at
PageID.12005 (page 4 of Dr. Tisza's 8/31/17 letter, stating:
"Mr. Castleberry stated that he had no idea what this whole
thing was about because 'I had a hearing in July. I don't think
that's me on that order. My name is Joshua Spriestersbach.'
. . . He stated that he had no idea that he was on probation and
that he was not even on Oahu in 2006 so there is no way that
this charge is related to him. He stated, 'I was in Hilo or
California.' He declared, 'I have heard of none of these
charges.'").

        Viewing the record in the light most favorable to
Spriestersbach,[13] this Court assumes Spriestersbach told
Dr. Garrett the first time he met her that he was not Thomas
Castleberry, and that he could not have committed the crimes

---

[13] In considering Dr. Garrett's Motion, this Court must view
the record in the light most favorable to Spriestersbach as the
nonmoving party. See Harris v. Cnty. of Orange, 17 F.4th 849,
855 (9th Cir. 2021).

Thomas Castleberry was charged with because he was not on O`ahu in 2006. This is the same information that at least one of the Panel Examiners had during Spriestersbach's fitness evaluation. Thus, the state court, during proceedings in which Spriestersbach was represented by counsel, found that Spriestersbach (as Thomas Castleberry) was not fit to proceed, and the state court did not require an investigation of Spriestersbach's identity. Under the circumstances of this case, which include the nature of Spriestersbach's condition, Dr. Garrett's decision not to act upon Spriestersbach's assertions of mistaken identity at the outset of her treatment of him was not a violation of any clearly established law. Case law regarding the general proposition that it is unconstitutional to hold an innocent person in custody is not sufficiently particularized to the facts of this case. Further, there is no evidence that, at any subsequent point in her treatment of Spriestersbach, the circumstances fell within any clearly established law showing that Dr. Garrett's decision not to investigate Spriestersbach's assertions of mistaken identity was a violation of his constitutional rights.

This Court finds that there are no genuine issues of material fact, and Dr. Garrett is entitled to qualified immunity as a matter of law. See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). Summary judgment is granted in favor of Dr. Garrett as to Spriestersbach's Section 1983 claims against her, *i.e.* Counts I and II of the Second Amended Complaint.

## II.  **Supplemental Jurisdiction**

Dr. Garrett argues that, because this Court has granted summary judgment in her favor as to Spriestersbach's Section 1983 claims, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims. [Motion, Mem. in Supp. at 25-26.]

> Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over state law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). In undertaking this evaluation, the Court "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Although the Court's decision is discretionary, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. at 350 n.7.

London v. Heh, Case No. 22-cv-00491-DKW-KJM, 2024 WL 1331949, at *8 (D. Hawai`i Mar. 27, 2024) (alteration in London).

First, there are federal claims remaining against other defendants in this case. Spriestersbach was granted leave to file a third amended complaint against HSH based upon vicarious liability under Title II of the Americans with Disabilities Act, Title 42 United States Code Section 12101, *et seq.* See Order Granting in Part and Denying in Part the State Defendant's Motion to Dismiss or in the Alternative for Judgment on the Pleadings, filed 7/19/24 (dkt. no. 518) ("7/19/24 Order"), at 24.[14] Spriestersbach filed his original Third Amended Complaint on August 19, 2024, and he filed a revised version on October 11, 2024. [Dkt. nos. 551, 577.]

Moreover, the instant case has been pending for almost three years, and this Court has made substantive rulings regarding Spriestersbach's state law claims against Dr. Garrett. See 3/15/24 Garrett Order, 2024 WL 1142198, at *9-12 (conditional privilege analysis of Spriestersbach's state law claims against Dr. Garrett in the First Amended Complaint). Under the circumstances of this case, this Court, in the exercise of its discretion, will continue to exercise supplemental jurisdiction over Spriestersbach's state law claims against Dr. Garrett.

---

[14] The 7/19/24 Order is also available at 2024 WL 3488365.

Dr. Garrett's Motion is denied as to her supplemental jurisdiction argument. This Court therefore turns to the merits of Spriestersbach's state law claims

## III. **Conditional Privilege**

Dr. Garrett argues that she is entitled to summary judgment as to all of Spriestersbach's state law claims against her because she is protected by the conditional privilege, and there is no evidence to prove the malice that is required to overcome the privilege. [Motion, Mem. in Supp. at 17.]

Hawaii law provides that a nonjudicial government official has a qualified or conditional privilege with respect to his or her tortious actions taken in the performance of his or her public duty. Towse v. State of Hawaii, 647 P.2d 696, 702 (Haw. 1982); Runnels v. Okamoto, 525 P.2d 1125, 1128 (Haw. 1974). This privilege shields all but the most guilty nonjudicial officials from liability, but not from the imposition of a suit itself. Towse, 647 P.2d at 702. The privilege is the result of the Hawaii Supreme Court's balancing of competing interests. It protects the innocent public servant's pocketbook, yet it allows an injured party to be heard. See Medeiros v. Kondo, 522 P.2d 1269, 1272 (Haw. 1974).

For a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose. Towse, 647 P.2d at 702–03; Medeiros, 522 P.2d at 1272. When a public official is motivated by malice, and not by an otherwise proper purpose, Hawaii law provides that the cloak of immunity is lost and the official must defend the suit the same as any other defendant. Marshall v.

> Univ. of Haw., 821 P.2d 937, 946 (Haw. Ct.
> App. 1991), *abrogated on other grounds by*
> Hac v. Univ. of Haw., 73 P.3d 46 (Haw.
> 2003).
>
> The existence or absence of malice is
> generally a question for the jury. Runnels,
> 525 P.2d at 1129. However, when the
> existence or absence of malice is
> demonstrated to the court via uncontroverted
> affidavits or depositions, the court may
> rule on the existence or absence of malice
> as a matter of law. See id.
>
> Edenfield v. Estate of Willets, Civ. No. 05-00418 SOM-
> BMK, 2006 WL 1041724, at *11-12 (D. Haw. Apr. 14,
> 2006) (parallel citations omitted).

Begley v. Cnty. of Kauai, CIVIL 16-00350 LEK-KJM, 2018 WL

3638083, at *6 (D. Hawai`i July 31, 2018) (some citations

omitted). "Except in claims for defamation, an actual malice

standard applies as to all tort claims." Id. (citation and

internal quotation marks omitted). The qualified or conditional

privilege under Hawai`i law will be referred to in this Order as

the "conditional privilege."[15]

In the 3/15/24 Garrett Order, this Court dismissed

Spriestersbach's state law claims against Dr. Garrett in the

First Amended Complaint based on the conditional privilege

because:

---

[15] The qualified or conditional privilege is sometimes
referred to as "qualified immunity." See, e.g., Slingluff v.
Hawai`i, 131 Hawai`i 239, 244, 317 P.3d 683, 688 (Ct. App.
2013). Because this order also discusses qualified immunity
under federal law, the term "conditional privilege" is used in
this Order to distinguish between the two.

> In the instant case, the decision at issue
> is Dr. Garrett's decision not to undertake
> independent investigation when she initially
> heard her patient's statement, or statements,
> that he was Spriestersbach and not Thomas
> Castleberry. That was not a medical diagnosis of
> her patient's condition nor was it a decision
> regarding the appropriate medical treatment for
> her patient. Her decision not to undertake an
> investigation into his identity was an exercise
> of government discretion because the
> investigation would have required her to
> question, inter alia, HPD's, OCCC's, and the
> state court's records identifying her patient as
> Thomas Castleberry. This Court therefore
> concludes that Dr. Garrett's decision is
> protected by the conditional privilege.

3/15/24 Garrett Order, 2024 WL 1142198, at *11.

On summary judgment, however, Spriestersbach has presented evidence that Dr. Garrett breached the medical standard of care for psychiatrists by failing to verify Spriestersbach's identity after his denials, beginning in August 2017, that he was not Thomas Castleberry. See Washington Decl., Exh. 7 at PageID.11946 (page 2 of the Appelbaum Report). Dr. Appelbaum opined:

> The statements by Joshua Spriestersbach beginning
> in August 2017 in which he denied that he was
> Thomas Castleberry and denied that he committed
> Thomas Castleberry's crimes had sufficient
> indications of reliability to require Dr. Allison
> Garrett, as a reasonable psychiatrist treating
> Mr. Spriestersbach for restoration to competence,
> to take action to verify Mr. Spriestersbach's
> identity beginning in the fall of 2017. By
> delaying such action until January 2020,
> Dr. Garrett breached the standard of care for
> psychiatrists and acted without regard to the
> obvious risk that Mr. Spriestersbach was indeed

34

> not Thomas Castleberry and was therefore
> wrongfully detained.

Id.; see also id. at PageID.11953-54 (pages 9-10 of the
Appelbaum Report) (explanation of Dr. Appelbaum's opinion).
Because Dr. Garrett's motion to seal the Kaye Report was denied,
the Kaye Report is not part of the record before this Court, and
there is no evidence to contradict Dr. Appelbaum's opinion.
Based on the Appelbaum Report, this Court finds, for purposes of
the instant Motion, that Dr. Garrett's decision not to
investigate Spriestersbach's identity was an exercise of medical
diagnosis and treatment because the issue of identity is part of
the applicable standard of care. Therefore, this Court
concludes, for purposes of the instant Motion, that Dr. Garrett
is not entitled to the conditional privilege as to her decision
not to investigate Spriestersbach's identity. See Slingluff v.
State Dep't of Pub. Safety, 131 Hawai`i 239, 250, 317 P.3d 683,
694 (Ct. App. 2013) (holding that the physician defendants were
not entitled to the conditional privilege as to decisions that
"pertain[ed] to the exercise of purely **medical** discretion
because they involved strictly medical diagnosis and treatment"
(emphasis in original)). Dr. Garrett's Motion is denied as to
her request for summary judgment as to Spriestersbach's state
law claims based on the conditional privilege.

## IV.  Merits of Spriestersbach's State Law Claims

In the alternative, Dr. Garrett argues she is entitled to summary judgment as to Spriestersbach's state claims because she cannot establish the elements of each claim. See Motion, Mem. in Supp. at 19-23.

### A.  Count VIII – False Imprisonment

Count VIII alleges Dr. Garrett "intentionally confined [Spriestersbach] without lawful privilege and against his consent, . . . causing physical and emotional injury to him." [Second Amended Complaint at ¶ 313.]

> Because "'a person who is falsely arrested is at the same time falsely imprisoned,' false arrest and false imprisonment as tort claims are 'distinguishable only in terminology.'" Meyer v. City and County of Honolulu, 6 Haw. App. 505, 508, 729 P.2d 388, 391, aff'd in part and rev'd in part on different grounds, 69 Haw. 8, 731 P.2d 149 (1986) (citation omitted). "For both false arrest and false imprisonment, the essential elements are '(1) the detention or restraint of one against his [or her] will, and (2) the unlawfulness of such detention or restraint.'" Id. at 508-09, 729 P.2d at 392 (quoting 32 Am. Jur. 2d False Imprisonment, § 2, at 59 (1982)). . . .

> The determination of probable cause is a defense to the common law claims of false arrest[ and] false imprisonment. . . . House v. Ane, 56 Haw. 383, 390-91, 538 P.2d 320, 325-26 (1975); Towse v. State, 64 Haw. 624, 635, 647 P.2d 696, 704 (1982). . . .

Eng v. Dep't of Pub. Safety, CIV. NO. 18-00282 LEK-KJM, 2022 WL 960463, at *5 (D. Hawai`i Mar. 30, 2022) (some alterations in

36

Eng) (quoting Reed v. City & Cnty. of Honolulu, 76 Hawai`i 219, 230, 873 P.2d 98, 109 (1994)).

It is undisputed that Dr. Garrett did not initiate Spriestersbach's commitment to HSH. See Garrett CSOF at ¶ 31; Spriestersbach's Responsive CSOF at ¶ 31. To the extent that Dr. Garrett could be liable for false imprisonment because her actions and omissions contributed to Spriestersbach's continued confinement, she is entitled to a probable cause defense. For purposes of a false imprisonment or false arrest claim,

> "[p]robable cause exists when the facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed. This requires more than a mere suspicion but less than a certainty." State v. Maganis, 123 P.3d 679, 681 (Haw. 2005) (quotation and emphasis omitted); see also Fayer [v. Vaughn], 649 F.3d [1061,] 1064 [(9th Cir. 2011)].

Abordo v. Dep't of Pub. Safety, Case No. 19-cv-00130-DKW-RT, 2019 WL 1560871, at *2 (D. Hawai`i Apr. 10, 2019). Even viewing the record in the light most favorable to Spriestersbach, Dr. Garrett had reasonably trustworthy information from the state court and OCCC, discussed in the qualified immunity analysis supra, that was sufficient to cause a reasonable person to believe that Joshua Spriestersbach and Thomas Castleberry were the same person. Thus, Dr. Garrett had probable cause to support the actions that contributed to Spriestersbach's

37

continued confinement. Spriestersbach has failed to raise a
genuine issue of material fact for trial as to his false
imprisonment claim against Dr. Garrett, and Dr. Garrett is
entitled to judgment as a matter of law. Summary judgment is
therefore granted in favor of Dr. Garrett as to Count VIII.

    **B.**    **Negligence-Based Claims**

        Count IX, Spriestersbach's negligence claim, and
Count X, Spriestersbach's medical malpractice claim present
identical allegations. Compare Second Amended Complaint at
¶¶ 314-23, with id. at ¶¶ 324-33. This Court has stated:

> To make a claim for negligence/medical
> malpractice, Plaintiffs must show (1) the duty
> and standard of care, (2) negligent breach of the
> standard of care, and (3) injuries proximately
> caused by the negligence. See, e.g., Birmingham
> v. Fodor's Travel Publications[,] 73 Haw. 359,
> 833 P.2d 70, 74 (1992) (noting the elements of a
> negligence action); Bernard v. Char, 79 Hawai`i
> 371, 903 P.2d 676 (1996) ("Bernard I") aff'd 79
> Hawai`i 362, 903 P.2d 667 (1996) ("Bernard II").

Feindt v. United States, CIV. NO. 22-00397 LEK-KJM, 2024 WL
126882, at *8 (D. Hawai`i Jan. 11, 2024). Because Count IX and
Count X are based on identical allegations and the claims
asserted in those counts have the same elements, this Court
strikes Count IX as redundant of Count X. See Fed. R. Civ.
P. 12(f)(1) (stating a court may, "on its own," "strike from a
pleading . . . any redundant . . . matter"). To the extent that

Dr. Garrett's Motion seeks summary judgment as to Count IX, the
Motion is denied as moot.

Relevant to Spriestersbach's medical malpractice
claim, the Hawai`i Supreme Court has stated:

> It is well settled that in medical
> malpractice actions, the question of negligence
> must be decided by reference to relevant medical
> standards of care for which the plaintiff carries
> the burden of proving through expert medical
> testimony. Nishi v. Hartwell, 52 Haw. 188, 195,
> 473 P.2d 116, 121 (1970) (citations omitted).[16]
> The standard of care to which a doctor has failed
> to adhere must be established by expert testimony
> because "a jury generally lacks the 'requisite
> special knowledge, technical training, and
> background to be able to determine the applicable
> standard without the assistance of an expert.'"
> Rosenberg v. Cahill, 99 N.J. 318, 325, 492 A.2d
> 371, 374 (1985) (citations omitted). There are,
> however, exceptions to the rule.
>
> The "common knowledge" exception, which is
> similar to the doctrine of res ipsa loquitur,
> provides that certain medical situations present
> routine or non-complex matters wherein a lay
> person is capable of supplanting the applicable
> standard of care from his or her "common
> knowledge" or ordinary experience. See id.; see
> also Medina v. Figuered, 3 Haw. App. 186, 188,
> 647 P.2d 292, 294 (1982).

Craft v. Peebles, 78 Hawai`i 287, 298, 893 P.2d 138, 149 (1995)
(footnote omitted).

Spriestersbach has presented expert medical testimony
from Dr. Appelbaum that Dr. Garrett breached the standard of

---

[16] Nishi was overruled in part on other grounds by Carr v.
Strode, 79 Hawai`i 475, 904 P.2d 489 (1995). See, e.g., O'Neal
v. Hammer, 87 Hawai`i 183, 187, 953 P.2d 561, 565 (1998).

care. As previously noted, Dr. Garrett has not presented any
expert testimony regarding the applicable standard of care.
Further, even if Dr. Garrett had presented expert testimony that
disputes Dr. Appelbaum's testimony, in ruling on Dr. Garrett's
Motion, this Court cannot determine which expert witness's
testimony is more credible or should be given more weight. and
this Court cannot make such determinations in ruling on the
Supplier Defendants' Motion. See Estate of Lopez ex rel. Lopez
v. Gelhaus, 871 F.3d 998, 1009 n.10 (9th Cir. 2017) ("At the
summary judgment stage, '[c]redibility determinations, the
weighing of the evidence, and the drawing of legitimate
inferences from the facts are jury functions, not those of a
judge.'" (alteration in Lopez) (quoting Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d
202 (1986))). Therefore, this Court finds that there are genuine
issues of material fact as to Spriestersbach's medical
malpractice claim that preclude summary judgment. Dr. Garrett's
Motion is denied as to Count X.

        Because Dr. Garrett is not entitled to summary
judgment as to Spriestersbach's medical malpractice claim, she
is not also not entitled to summary judgment as to
Spriestersbach's NIED claim because the NIED claim is based on
the same allegedly negligent conduct that is the basis of the
medical malpractice claim.

This district court has stated the elements of an NIED claim are:

(1)  that the defendant engaged in negligent conduct;

(2)  that the plaintiff suffered serious emotional distress; and,

(3)  that such negligent conduct by the defendant was a legal cause of the serious emotional distress.

Kauhako v. State of Hawaii Bd. Of [sic] Ed., Civ. No. 13-00567 DKW-BMK, 2015 WL 5312359, *11 (D. Haw. Sept. 9, 2015).

**An NIED claim is merely a negligence claim alleging a wholly psychic injury.** Duty and breach of duty are essential elements of an NIED claim and are analyzed utilizing ordinary negligence principles. Kahoohanohano v. Dep't of Human Servs., 178 P.3d 538, 582 (Haw. 2008).

Ricks v. Matayoshi, CIV. NO. 16-00044 HG-KSC, 2017 WL 1025170, at *11 (D. Hawai`i Mar. 16, 2017), *aff'd sub nom.* Ricks v. Dep't of Educ., 752 F. App'x 518 (9th Cir. 2019). Further, under Hawai`i law, as part of the plaintiff's requirement to prove actual injury, he must prove "that someone was physically injured by the defendant's conduct, be it the plaintiff himself or herself or someone else." Doe Parents No. 1 v. State, Dep't of Educ., 100 Hawai`i 34, 69–70, 58 P.3d 545, 580–81 (2002) (citation omitted).

[Order Granting in Part and Denying in Part Defendant City and County of Honolulu's Motions Filed on November 1, 2024, [Dkt.

Nos. 257, 258], filed 4/19/24 (dkt. no. 386) ("4/19/24 City

Order"),[17] at 50-51 (emphasis added).]

    The genuine issues of material fact that preclude

summary judgment as to Spriestersbach's medical malpractice

claim against Dr. Garrett also preclude summary judgment as to

Spriestersbach's NIED claim. Dr. Garrett's Motion is therefore

denied as to Count XII.

   **C.   Count XI – IIED**

    [T]he tort of IIED consists of four elements:
    "1) that the act allegedly causing the harm was
    intentional or reckless, 2) that the act was
    outrageous, and 3) that the act caused 4) extreme
    emotional distress to another." Hac [v. Univ. of
    Hawai`i], 102 Hawai`i [102,] 106-07, 73 P.3d
    [46,] 60-61 [(2003)]. "The term 'outrageous' has
    been construed to mean without just cause or
    excuse and beyond all bounds of decency." Enoka
    v. AIG Hawai`i Ins. Co., Inc., 109 Hawai`i 537,
    559 128 P.3d 850, 872 (2006) (citations and some
    internal quotation marks omitted). "The question
    whether the actions of the alleged tortfeasor are
    unreasonable or outrageous is for the court in
    the first instance, although where reasonable
    people may differ on that question it should be
    left to the jury." Takaki v. Allied Machinery
    Corp., 87 Hawai`i 57, 68, 951 P.2d 507, 518 (App.
    1998) (quotations and quotation marks omitted).

Young v. Allstate Ins. Co., 119 Hawai`i 403, 429, 198 P.3d 666,

692 (2008). Even viewing the record in the light most favorable

to Spriestersbach, there is no evidence that raises a genuine

issue of material fact as to whether Dr. Garrett acted

---

    [17] The 4/19/24 City Order is also available at 2024 WL
1703114.

intentionally or recklessly to illegally confine Spriestersbach.
As discussed *supra*, Dr. Garrett relied on, *inter alia*, records
from the state court and OCCC that indicated Joshua
Spriestersbach and Thomas Castleberry were two names used for
the same person. Further, the parties acknowledge that patients
with schizophrenia or schizoaffective disorder sometimes make
statements that are not based in reality. See Garrett CSOF at
¶ 1; Spriestersbach's Responsive CSOF at ¶ 1. For example, in a
grievance that he signed on March 26, 2018, Spriestersbach
argued the HSH Grievance Form should be changed to add an option
titled "DUEL" along with the existing "RIGHTS VIOLATION",
"PERSONAL CONCERN," AND "UNIT CONCERN."[18] See Exhibit Emails,
Exh. A (Garrett Depo., dkt. no. 501-1) at PageID.9852.
Spriestersbach's grievance also stated, among other things, "I'm
of the opinion that dueling with my .337 should become a more
common event in my life . . . there is no political solution."
[Id. (ellipsis in original).] Further, Spriestersbach admitted
during his deposition that, because he believed Dr. Garrett
refused to listen to him, he refused to talk to her. See

---

[18] Dr. Garrett was aware of Spriestersbach's HSH grievances
because, for example, he attempted to present a grievance to her
instead of following the confidential filing process. See
Exhibit Emails, Exh. A (Garrett Depo., dkt. no. 501-1) at
PageID.9795 (Dr. Garrett's Weekly Psychiatric Progress Note,
dated 3/2/18, stating: "He wrote a grievance and subsequently
handed it to this writer . . . .").

Washington Decl., Exh. 2 (Spriestersbach Depo., dkt. no. 488-3) at 259; see also, e.g., Exhibit Emails, Exh. A (Garrett Depo., dkt. no. 501-1), Exh.40 at PageID.9796-800 (Dr. Garrett's Weekly Psychiatric Progress Notes, dated 3/9/18, 3/16/18, 3/23/18, 3/29/18, and 4/6/18, stating Spriestersbach refused to meet with her).

Thus, Spriestersbach has failed to present evidence that raises a genuine issue of fact as to whether Dr. Garrett acted intentionally or recklessly to illegally confine him. Because Spriestersbach has failed to raise a triable issue of fact as to this element of his IIED claim against Dr. Garrett, she is entitled to judgment as a matter of law. Dr. Garrett's Motion is therefore granted as to Count XII.

## V.    **Punitive Damages**

Dr. Garrett's final argument is that she is entitled to a ruling that Spriestersbach cannot recover punitive damages in his remaining claims against her. See Motion, Mem. in Supp. at 23-25. The only remaining claims against Dr. Garrett are state law claims, and the Hawai`i Supreme Court has stated:

> Where clear and convincing evidence exists, one circumstance in Hawai`i that warrants an award of punitive damages is when "there has been some wilful misconduct or that entire want of care which would raise presumption of a conscious indifference to consequences." Masaki v. General Motors Corp., 71 Haw. 1, 11, 780 P.2d 566, 572, *reconsideration denied*, 71 Haw. 664, 833 P.2d 899 (1989) (citation omitted). "Award or denial of

44

> punitive damages is within the sound discretion
> of the trier of fact." <u>Amfac, Inc. v. Waikiki
> Beachcomber Inv. Co.</u>, 74 Haw. 85, 138, 839 P.2d
> 10, 36, *reconsideration denied*, 74 Haw. 650, 843
> P.2d 144 (1992). . . .

<u>Ditto v. McCurdy</u>, 86 Hawai`i 84, 91, 947 P.2d 952, 959 (1997).

Punitive damages may be awarded based on gross negligence. <u>See,

e.g.,</u> <u>S&G Labs Hawaii, LLC v. Graves</u>, CIVIL 19-00310 LEK-WRP,

2023 WL 3006902, at *4 (D. Hawai`i Apr. 19, 2023).

> The proper measurement of punitive damages should
> be the degree of malice, oppression, or gross
> negligence which forms the basis for the award
> and the amount of money required to punish the
> defendant." <u>Kang v. Harrington</u>, 59 Haw. 652, 663,
> 587 P.2d 285, 293 (1978) (citation, internal
> quotation marks, and alterations omitted); <u>see
> also</u> <u>Ditto v McCurdy</u>, 86 Haw. 84, 92, 947 P.2d
> 952, 960 (1997) ("the jury needed only to find
> **either** willful misconduct **or** entire want of care,
> to wit, gross negligence, in order to properly
> award punitive damages") (emphasis in original)).

<u>Id.</u> (some citations omitted).

The genuine issues of material fact that preclude

summary judgment as to Spriestersbach's medical malpractice and

NIED claims also raise genuine issues of material fact as to

Spriestersbach's request for punitive damages. To the extent

that Dr. Garrett's Motion seeks a ruling that Spriestersbach

cannot recover punitive damages if he prevails on the remaining

claims at trial, the Motion is denied.

## CONCLUSION

For the foregoing reasons, Dr. Garrett's Motion for Summary Judgment, filed May 29, 2024, is HEREBY GRANTED IN PART AND DENIED IN PART. Dr. Garrett's Motion is DENIED as to her request for summary judgment as to Counts X and XII and as to her argument that Spriestersbach cannot recover punitive damages as to those claims. In addition, this Court *sua sponte* STRIKES Spriestersbach's claim against Dr. Garrett in Count IX because that claim is redundant of his claim against Dr. Garrett in Count X. In light of the striking of Count IX, Dr. Garrett's Motion is DENIED AS MOOT as to Count IX. Dr. Garrett's Motion is GRANTED insofar as summary judgment is granted in Dr. Garrett's favor as to all of Spriestersbach's other claims against her.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 18, 2024.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

JOSHUA SPRIESTERSBACH VS. STATE OF HAWAII, ET AL; CV 21-00456 LEK-RT; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ALLISON GARRETT, M.D.'S MOTION FOR SUMMARY JUDGMENT