JENNIFER L. BROWN #10885
Hawai'i Civil Rights Project
P.O. Box 8415
Honolulu, HI 96830
Phone: 808-554-5576
Email: hawaiicivilrightsproject@gmail.com

Alphonse A. Gerhardstein #0032053 (OH)
Jacqueline Greene # 0092733 (OH)
Friedman, Gilbert, + Gerhardstein
441 Vine Street, Suite 3400
Cincinnati, Ohio 45202
PH: 513.572.4200
FAX: 216.621.0427
Email: al@fggfirm.com;jacqueline@fggfirm.com

Paul Hoffman #71244
John Washington #315991
Schonbrun, Seplow, Harris, Hoffman & Zeldes
200 Pier Ave. Ste. 226
Hermosa Beach, California 90254
Phone: 310-717-7373
Emails: hoffpaul@aol.com; jwashington@sshhzlaw.com

Attorneys for Plaintiff
JOSHUA SPRIESTERSBACH

## UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| JOSHUA SPRIESTERSBACH,<br><br>               Plaintiff,<br><br>vs.<br><br>STATE OF HAWAI'I, CITY AND COUNTY OF HONOLULU, OFFICER ABRAHAM K. BRUHN, DEPARTMENT OF PUBLIC | Case No. 1:21-cv-00456-LEK-RT<br><br>**RESPONSE BY PLAINTIFF TO DEFENDANTS' STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY, AND HAWAII STATE HOSPITAL MOTION TO DISMISS THIRD** |

SAFETY, OFFICE OF THE PUBLIC
DEFENDER, NIETZSCHE LYNN TOLAN,
MICHELE MURAOKA, LESLIE MALOIAN,
JASON BAKER, SETH PATEK, DR. JOHN
COMPTON, DR. MELISSA VARGO, DR.
SHARON TISZA, HAWAIʻI STATE
HOSPITAL, DR. ALLISON GARRETT, and
JOHN/JANE DOES 1-20,

Defendants.

**AMENDED COMPLAINT
(DKT. 556)**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

FACTUAL BACKGROUND .............................................................................2

PROCEDURAL HISTORY................................................................................6

LEGAL STANDARD.........................................................................................6

ARGUMENT ......................................................................................................7

  I.   Plaintiff States a Plausible Claim for Relief Under the Second Circuit's
Standard. ..........................................................................................................7

    A.   Plaintiff's ADA Claim Is Not Limited to the "Medical Treatment" at
Issue in *McGugan*. Even if it Were, Discriminatory Medical Treatment
is Actionable in the Ninth Circuit. ...........................................................8

    B.   Even *if* McGugan Applied, an ADA Claim is Not Barred Because
Plaintiff Alleges a Decision for which Schizophrenia is an "Unrelated"
and "Improper" Consideration. ...............................................................11

    C.   Plaintiff Also States a Claim for Denial of a Service, Program, or
Activity of a Public Entity, to which *McGugan* does not Apply.............14

CONCLUSION .................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Barden v. City of Sacramento,*
    292 F.3d 1073, 1076 (9th Cir. 2002)…………………………………………14

*Bax v. Doctors Med. Ctr. of Modesto, Inc.,*
    48 F.4th 1008, 1015 (9th Cir. 2022)…………………………………………..10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 555, 570 (2007)…………………………………………………6,7

*Bell v. Williams,*
    108 F.4th 809, 826 (9th Cir. 2024)………………………………… 15,16,17

*Bolmer v. Oliveira,*
    594 F.3d 134 (2d Cir. 2010)…………………………………………………..13

*Broam v. Bogan,*
    320 F.3d 1023, 1028 (9th Cir. 2003)………………………………………...7

*Duvall v. Cty. of Kitsap,*
    260 F.3d 1124, 1139 (9th Cir. 2001)………………………………………18

*Lewis v. Mossbrooks,*
    788 F. App'x 455, 458 (9th Cir. 2019)……………………………………..17

*Lovell v. Chandler,*
    303 F.3d 1039, 1056 (9th Cir. 2002)………………………………………18

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.,*
    922 F.3d 946, 951 (9th Cir. 2019)…………………………………………...7

*McGary v. City of Portland,*
    386 F.3d 1259, 1269 (9th Cir. 2004)………………………………………15,16

*McGugan v. Aldana-Bernier,*
    752 F.3d 223, 224, 227, 231, 232, 233, 234 (2d Cir. 2014)…………*passim*

*Sheehan v. City & Cty. of S.F.,*
    743 F.3d 1211, 1232, 1233 (9th Cir. 2014)……………………………14,17

*Thompson v. Davis,*
    295 F.3d 890, 898, 899 (9th Cir. 2002)…………………………..10,11,16

*Updike v. Multnomah Cty.,*
    870 F.3d 939, 951 (9th Cir. 2017)………………………………………18

*Vos v. City of Newport Beach,*
    892 F.3d 1024, 1036 (9th Cir. 2018)…………………………………….14

*Williams v. Gerber Prod. Co.,*
    552 F.3d 934, 937 (9th Cir. 2008)……………………………………...7

*Wong v. Regents of University of California,*
    192 F.3d 807, 818 (9th Cir. 1999)………………………………………18

# INTRODUCTION

The Court previously dismissed Plaintiff's claims with leave to amend to add "allegations in support of his ADA Title II claims against HSH that are based upon vicarious liability." Dkt. 518 at 22. In Plaintiff's Third Amended complaint, he has alleged in detail that an HSH employee, Dr. Garrett, ignored a patient's repeated, credible pleas that he was misidentified and refused to take readily available steps to confirm the misidentification or do anything about them (such as looking at the records or making sure his public defender took action) because she determined that a schizophrenic person's statements were not worthy of belief. The central issue in this motion is whether these allegations constitute discrimination based on disability such that the ADA is violated.

This Court cited the Second Circuit's decision in *McGugan Aldana-Bernier*, 752 F.3d 224 (2d Cir. 2014) as barring this claim. In *McGugan,* the Second Circuit held that a claim under the Rehabilitation Act could not be maintained as to "medical treatment" decisions based on medical training, and even medical treatment decisions could be the basis for Rehabilitation Act claims where the individual's disability was an improper consideration for the treatment decision. *McGugan*, 752 F.3d at 234. *McGugan* does not bar Plaintiff's Third Amended Complaint for several reasons.

1

*First*, because Plaintiff's claims are not limited to "medical treatment" decisions, as this Court held, the Second Circuit's decision in *McGugan* does not apply on its own terms.  Apart from this, the United States has made clear and the Ninth Circuit has held that even medical treatment decisions based on bias about a person's disability *do* state a claim.  *Second*, even if the decision not to correct Plaintiff's false identification was medical treatment, and *McGugan* applied, the fact that Plaintiff had schizophrenia is not valid basis to ignore his claims of misidentification – at least minimal verification was appropriate whether he had schizophrenia *or not*, and schizophrenia is not a valid basis to ignore a person 's medical condition, as even Dr. Garrett was aware.  *Third*, McGugan does not even purport to address Plaintiff's ADA claim based on a denial of a benefit, service, or program, and Plaintiff states such a claim.

## FACTUAL BACKGROUND[1]

On July 16, 2006, Thomas R. Castleberry ("Castleberry") was arrested by Honolulu Police Department (HPD) officers for crimes committed in Honolulu in 2006, mainly relating to drug use. Third Amended Complaint, Dkt. 577 ("TAC")

---

[1] Plaintiff has previously summarized factual evidence that supports HSH's vicarious liability for Dr. Garrett's actions in his concise statement and evidence addressing Dr. Garrett's actions.  Dkt. 488. Plaintiff notes that were it necessary, he could reallege these facts known to the parties and presented in the statement of facts.

¶¶ 32, 27. [2]  Castleberry eventually pleaded guilty and received HOPE probation in 2007. [3] At that point, Thomas Castleberry was in custody on Oahu from July 3, 2006, to June 28, 2007.  TAC ¶ 192. A warrant was ultimately issued for Castleberry's arrest for failing to comply with the terms of his HOPE probation. TAC ¶¶ 36, 190-91.

Plaintiff Joshua Spriestersbach's identifiers were mixed up with this warrant, under which he would ultimately be arrested. TAC ¶ 114.  The records of the same police department that arrested Plaintiff confirmed he had been misidentified, was Joshua Spriestersbach, and accordingly had been released.  *E.g.,* TAC ¶¶ 44, 123.

Joshua was arrested in connection with the Thomas Castleberry warrant in 2017. TAC ¶ 80.  Joshua was found unfit to undergo proceedings relating to Thomas Castleberry's probation violation. TAC ¶¶ 149-50.  Joshua's examiners mentioned that his unfitness was based on his protestations that he was not the person sought by the warrant, that he was Joshua Spriestersbach, and had never been on probation. TAC ¶ 156.

---

[2] The Court issued an OSC which was clear that in amending the complaint Plaintiff was to delete claims against other Defendants.  Plaintiff sought leave to refile the complaint, and did so in Dkt. 577, in a complaint which is otherwise identical to Dkt. 551, prior to a paragraph numbering error in DKT 551 beginning at paragraph 187.

[3] "HOPE probation" is a program involving probation based on random drug testing with a probation officer.  TAC ¶¶ 191-193.

Joshua was taken to Hawai`i State Hospital ("HSH"), where he was treated by an HSH employee, Dr. Garrett.  TAC ¶ 18.  Dr. Garrett, the head of Joshua's treatment team, was tasked with restoring Joshua to competency to undergo proceedings for Thomas Castleberry's probation violation. TAC ¶ 153.[4]  Dr. Garrett communicated with the Court in the Castleberry proceedings. TAC ¶¶ 205, 210, 212, 213; *see also* Dkt. 488 at 2 # 11.

Joshua told Dr. Garrett that he was not Thomas R. Castleberry, was never on probation, did not have a drug case, and was not in Oahu in 2006.  TAC ¶ 154. Joshua's medical records verified this, and Dr. Garrett could have confirmed his statements by looking at his medical records, which she possessed. TAC ¶¶ 157, 161.  Many of the examiner reports she had also confirmed that Joshua was hospitalized in Hilo, at the same time Castleberry was in jail in Oahu and weeks before Castleberry was released in 2006.   TAC ¶¶ 192, 203, 208, 215, 224. Moreover, Thomas Castleberry and Plaintiff have visibly different physical appearances, fingerprints, and identifiers.  *E.g.,* TAC ¶¶ 108, 44, 123.  As Dr. Garrett was aware, Joshua had similarly insisted to his examiners that it was not him on the order, that he was not on Oahu in 2006, and that he was Joshua Spriestersbach.  *E.g.* TAC ¶¶ 202, 208.  Dr. Garrett's team ultimately obtained

---

[4] This included assessing Plaintiff's capacity to demonstrate knowledge of the charges against him.  Dkt. 488 at 1 # 4.

Joshua's birth certificate, social security number, and state ID, confirming he was

Joshua Spriestersbach. TAC ¶¶ 211, 158. Moreover, it made little sense for

Plaintiff to deny any connection to the crimes because the real Thomas Castleberry

had pled guilty to the crimes, which was easily verifiable. TAC ¶¶ 162.

Joshua's statements were credible. Even Dr. Garrett recognized he appeared

to be, in fact, coherent and had a good factual understanding of the legal system.

TAC ¶ 164. Joshua had also been examined and found to exhibit clear thinking.

TAC ¶¶ 165-66. Joshua has schizophrenia, but as such even where he exhibited

symptoms, imaginative and factual statements were easily distinguishable. TAC ¶

166. The fact that Plaintiff's statements about his identity appeared accurate,

rather than imaginative, would have been readily apparent to a layperson, let alone

a medical professional. TAC ¶ 166.

Nevertheless, Dr. Garrett did nothing to investigate Joshua's statements to

her regarding the fact that he was misidentified. TAC ¶ 162. Dr. Garrett was well

aware that schizophrenic people could tell the truth—as such whether he was

schizophrenic *or not*, his statements should been followed up on and it would have

been improper not to do so. TAC ¶ 161. There was no reason why Dr. Garrett

could not have verified his statements. *Id.* However, she discounted Joshua's

repeated assertions and the apparent misidentification and did nothing to address

them because they came from a schizophrenic person. TAC ¶¶ 162-163. Though

there was no basis for it – and Plaintiff repeatedly denied it – Dr. Garrett also

determined Plaintiff had "cocaine use disorder" and treated him for it at HSH.

TAC ¶ 159; *see also* Dkt. 488 at 3 #20.

As a result, Plaintiff was detained for over two years until Dr. Garrett finally

checked the records, which confirmed the misidentification, after which Plaintiff

was promptly released. TAC ¶¶ 161, 175-76.

## PROCEDURAL HISTORY

The parties previously briefed the viability of Plaintiff's ADA claim.  The

Court found that direct liability claims against HSH could not be maintained and

denied leave to amend to allege them but granted leave "to file a third amended

complaint that pleads additional allegations in support of his ADA Title II claims

against HSH that are based on vicarious liability."  Dkt. 518 at 22.  Plaintiff filed a

third amended complaint.  Dkt. 551, 572-1, 577.

## LEGAL STANDARD

To overcome a motion to dismiss under Rule 12(b)(6), a complaint need

only contain "a short and plain statement of the claim showing that the pleader is

entitled to relief in order to give the defendant fair notice of what the claim is and

the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (internal quotation marks omitted).  The court must accept as true all of the

factual allegations set out in a plaintiff's complaint, draw inferences from those

6

allegations in the light most favorable to plaintiff, and construe the complaint liberally. *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019); *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 937 (9th Cir. 2008).

The complaint need not contain detailed factual allegations; the standard requires "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The standard at the motion to dismiss stage favors the nonmoving party: "Asking for plausible grounds does not impose a probability requirement at the pleading stage . . [a]nd, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556. If any deficiency is found on a motion to dismiss, leave to amend should be granted except in "extraordinary" cases. *Broam v. Bogan, 3*20 F.3d 1023, 1028 (9th Cir. 2003).

## ARGUMENT

## I.    Plaintiff States a Plausible Claim for Relief Under the Second Circuit's Standard.

Defendant HSH moves to dismiss the claim on the grounds that an ADA claim against HSH based on vicarious liability is not viable pursuant to *McGugan v. Aldana-Bernier*, 752 F.3d 224 (2d Cir. 2014). This argument fails for several reasons, which are addressed in turn. First, *McGugan* was limited to decisions

7

about "medical treatment," and Plaintiff's complaint is not limited to such a claim. *McGugan* also does not control in this Circuit. Second, even if *McGugan* applied, it does not here because Plaintiff alleges a decision by an HSH employee for which schizophrenia is an unrelated and improper consideration. Third, Plaintiff also alleges vicarious liability for the denial of a service, program, or activity to which *McGugan* does not apply.

      A.    **Plaintiff's ADA Claim Is Not Limited to the "Medical Treatment" at Issue in *McGugan*. Even if it Were, Discriminatory Medical Treatment is Actionable in the Ninth Circuit.**

In *McGugan*, the plaintiff attacked the doctor's decision making in forcibly medicating her and reaching the medical conclusion that she should be hospitalized. These treatment decisions were based on evidence that police arrested the plaintiff upon landing from a flight due to complaints from flight personnel; that the plaintiff did not know who she was dating; had violently attacked and injured her ex-boyfriend, who she seemingly believed to be her present boyfriend; and could not or would not answer any questions during her evaluation. *McGugan v. Aldana-Bernier*, 752 F.3d 224, 227, 232 (2d Cir. 2014). The plaintiff alleged that part of the doctors' decision was also informed by their incorrect beliefs about mentally ill people, which led them to make the decision to hospitalize and medicate her wrongly.

*McGugan* was animated by concerns about establishing physician liability under the Rehabilitation Act or ADA through "an unfettered ability to reframe claims of medical malpractice into federal claims of discrimination on the basis of disability." *McGugan*, 752 F.3d at 234.  Under *McGugan,* a Section 504 or ADA claim should be denied when the implicated decision regards the appropriateness of a "medical treatment."  *Id.* at 231, 234.  This does not require dismissal here. Plaintiff's claims go beyond medical treatment.  This includes failing to identify Plaintiff when it was obviously appropriate to do so.  Indeed, the Court has held Dr. Garrett was *not* making decisions about medical treatment, extending her the conditional privilege on this basis. Dkt. 350 at 28 ("This was not a medical diagnosis of her patient's condition, *nor was it a decision regarding the appropriate medical treatment for her patient*." Her decision "was an exercise of government discretion. . . .").  *McGugan* does not apply here.

Even if the Court did view misidentification of a patient (or any other part of Plaintiff's ADA claim) as "medical treatment," *McGugan* would not bar a claim. The Second Circuit's view does not govern.  As the United States Government has made clear, the prohibition against discrimination applies to medical treatment for

9

a disabled person "*based on bias or stereotypes about a patient's disability*." 45

C.F.R. § 84.56(b)(1) (emphasis added).[5]

Moreover, the Ninth Circuit has also held that ADA claims *are* available

when a person makes a harmful decision based on bias about the effects of a

disability without engaging in an individualized assessment. *Thompson v. Davis*,

295 F.3d 890, 899 (9th Cir. 2002). It may well be that there are circumstances in

which courts are wary of opening up ADA liability to issues where disability is, in

fact, a relevant consideration, but "Congress specifically rejected an approach that

could have left room for exceptions to § 12132's prohibition on discrimination by

public entities." *Id*.  For example, a parole board "undeniably" has the right to

consider disabilities when making weighty decisions on parole. *Id.* at 894 n.4.

However, because there are no exceptions, the decision must be individualized and

---

[5]  *See also* Proposed Rule, 45 CFR Part 84 at 633403, 633404 *available at*
https://www.govinfo.gov/content/pkg/FR-2023-09-14/pdf/2023-19149.pdf (stating
the proposed rule clarifies the existing requirements under section 504 and
specifies in "§ 84.56(c)(1)(ii) that providers do not make legitimate medical
judgments when they base decisions on the criteria contained in § 84.56(b)(1)(i)–
(iii): [b]ias or stereotypes about a patient's disability… because the decision is
driven by the recipient's perception of disability rather than by consideration of
effectiveness of the treatment or other legitimate reasons"); *see also Bax v. Doctors
Med. Ctr. of Modesto, Inc.*, 48 F.4th 1008, 1015 (9th Cir. 2022) (determining
ADA's scope with respect to such regulations).

cannot be discriminatory nor based on categorical decisions about one's group. *Id.*[6] That is what Plaintiff alleges here.

The Court has said that not investigating Plaintiff's identity was not "medical treatment." But even if verification (and any part of Plaintiff's ADA claim) was in fact "medical treatment" in the meaning of *McGugan*, that case would not bar a claim. The ADA reflects the fact that a physician "may not deny or limit medical treatment" for a disabled person "based on bias or stereotypes about a patient's disability." Plaintiff alleges Dr. Garrett declined to investigate his identity because of her bias. That is the definition of discrimination, and *McGugan* offers no basis to dismiss Plaintiff's claims. The motion to dismiss should be denied for these reasons.

**B.    Even *if* McGugan Applied, an ADA Claim is Not Barred Because Plaintiff Alleges a Decision for which Schizophrenia is an "Unrelated" and "Improper" Consideration.**

*McGugan* held that there were two forms of discrimination with respect to medical treatment. In the benign form, "the doctor's medical training leads her to conclude that the treatment is medically appropriate (or inappropriate)," even if she was wrong. *McGugan*, 752 F.3d at 231. This is not actionable discrimination in

---

[6] Dr. Garrett could not discriminate against Plaintiff by making a harmful "medical treatment" decision because she was biased against persons of his race. This would be discrimination. A person can no more do so based on his disability. *Thompson v. Davis*, 295 F.3d 890, 898 & n.4 (9th Cir. 2002)

11

the Second Circuit.  *Id.* On the other hand, the Second Circuit recognized that a

doctor who "inflicts or withholds a type of medical treatment" for reasons

"dictated by bias rather than medical knowledge," violates the Rehabilitation Act.

That is what Plaintiff alleges here.  There is no dispute that schizophrenic persons

and Plaintiff clearly *could* be telling the truth about being wrongfully detained.

TAC ¶161. Dr. Garett knew this.  *Id.*  On top of that, as Plaintiff's Third Amended

Complaint states, his statements also appeared accurate, and there was no medical

basis for discounting them.  TAC ¶¶ 165-66.  The decision Dr. Garrett reached

would not be based on the "doctor's medical training." *Id.*

Furthermore, *McGugan* underscores that a plaintiff states an ADA claim in

medical treatment decisions based on an individual's disability "where the

individual's handicap is unrelated to, and thus improper consideration of" the

decision at issue.  *McGugan*, 752 F.3d at 233-34.  That is what happened here.

Whether Joshua was schizophrenic *or not*, his statements should have been

followed up on – including glancing at his medical records – and it would have

been improper not to do so. TAC ¶ 161. Indeed, the failure to verify Joshua's

information violated HSH policy, and Plaintiff is unaware of an exemption to it for

schizophrenic persons. TAC ¶159.[7]  Defendant HSH cannot reasonably argue that

---

[7] Even apart from this, the information in front of Dr. Garrett indicated he
*was* wrongfully detained, and her own team deemed his situation confusing.  Dkt.
488 at 7 # 40.

it is medically advisable treatment to do nothing to address a patient's repeated, seemingly accurate, and easily verifiable protestations if the person is schizophrenic. As such, Plaintiff's schizophrenia was unrelated to and improper consideration of the decision to do nothing to verify his statements, including glancing at his medical records. Plaintiff's allegations state a claim, even in the Second Circuit.

In the Second Circuit's jurisprudence, this case is also more like *Bolmer v. Oliveira*, 594 F.3d 134 (2d Cir. 2010) than *McGugan*. In *Bolmer*, the defendants decided that the plaintiff had erotomania and to temporarily commit the plaintiff, in part, because of this. *Id.* at 138. The defendants made that decision based on stereotyping persons with bipolar disorder as unable to have relationships with their case managers. *Id.* at 138-139, 149. In reality, the plaintiff's disorder was not medically relevant to whether he had a sexual relationship with his case worker, and the defendants reached their decision based on categorical views of the disability. *Id.* at 149; *McGugan*, 752 F.3d at 223. As a result, the plaintiff stated an ADA claim. *Id.* The same is true here. Plaintiff's schizophrenia is even less relevant to whether Dr. Garrett should have made basic minimal efforts to investigate his claims of misidentification and did not because of categorical views of people with schizophrenia.

---

13

    **C.**    **Plaintiff Also States a Claim for Denial of a Service,
Program, or Activity of a Public Entity, to which *McGugan*
does not Apply.**

Even in the Second Circuit, *McGugan* further would not require dismissal of

Plaintiff's claim because it does not purport to address Plaintiff's claims of denial

of service, program, or activity and failure to reasonably accommodate.  In

*McGugan*, the Second Circuit noted there were three forms of actionable conduct:

"(1) exclusion from participation in a federally funded program or activity, (2)

denial of benefits of a federally funded program or activity, and (3) subjection to

discrimination under a federally funded program or activity." *Id.* at 231.  The

court's opinion only addressed the third kind.  *Id.*

The ADA is construed "broadly in favor of expansive coverage, to the

maximum extent permitted by the terms of the ADA."  28 C.F.R. § 335.108(a)(2).

The ADA applies to "anything a public entity [or its employee] does."  *Barden v.

City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002); *Sheehan v. City & Cty.

of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014).[8]  The Ninth Circuit has consistently

"declined to make 'hair-splitting' distinctions in determining which government

functions fall within the 'services, programs, or activities' covered by the ADA . . .

---

[8] Although the Supreme Court granted certiorari in the case, it declined to review
the ADA matter and *Sheehan* thus controls as to its decision concerning the ADA.
*Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018).

." *Bell v. Williams*, 108 F.4th 809, 826 (9th Cir. 2024); *see also McGary v. City of Portland*, 386 F.3d 1259, 1269 (9th Cir. 2004) ("Our case law interpreting the ADA strongly counsels against carving out 'spheres in which public entities may discriminate on the basis of an individual's disability.'").

The parties previously briefed a reasonable accommodation and denial of service claim. However, the Court found that identifying or correcting seemingly false identifications at HSH was not within a service it provided and merely incidental because while identification is "no doubt necessary to" HSH's detention, assessment, treatment, and care – essentially everything that HSH does – Joshua was not sent to HSH "to be identified." Dkt. 518 at 14 n .4   This is not the standard. As Plaintiff's amended complaint shows, everyone at HSH, and particularly Dr. Garrett, is required to perform this function and to do so by formal policy. TAC ¶ 159.   Keeping accurate records is essential to the work that HSH does in treating a patient and assessing whether they are competent to undergo proceedings for charges. Plaintiff's own case reveals several reasons why. For example, Plaintiff's initial detention was based on Dr. Garrett's failure to acknowledge his factual statements and explanations of why he was not Thomas Castleberry. TAC ¶ 159. Furthermore, Dr. Garrett treated Joshua as having a

15

history of "cocaine use disorder," which had no basis in fact but obviously

informed his treatment. TAC ¶ 159.[9]

All normal functions of a government entity are covered within the ADA.

*Bell*, 108 F.4th at 826.  For example, people are not sent to jail "to be transported"

between cells, but it is a normal function of what jails and public entities operating

them do – and it falls within the ADA's scope as does the undoubtedly necessary

action here.  *Id.*;[10] 42 U.S.C.S. § 2000d-4a  (program means "*all of the operations*

*of*" an instrumentality of a state or local government).[11]  Congress has "rejected an

approach that could have left room for exceptions to § 12132's prohibition on

discrimination by public entities." *Thompson v. Davis*, 295 F.3d 890, 899 (9th Cir.

2002)

Plaintiff alleges that verifying his identity was a service or activity that he

was denied by reason of his disability.  Properly identifying a person and

correcting a manifest misidentification is necessary and part of what HSH does.

---

[9] Dr. Garrett's team prescribed repeated interventions to address his cocaine use
disorder.  Dkt.  488 at 3 #20.  Further underscoring the need for identification
where a patient demonstrably appeared to have been misidentified, Dr. Garrett was
aware that a patient had been brought to HSH and misidentified the year before
Joshua's detention.  *Id.* at 5 #41.
[10] The Court has also elsewhere found that Dr. Garrett's actions served a
governmental function, not medical one.  Dkt. 350 at 24-28.
[11] Nor do people call (or interact with) police officers "to be abused," but such
actions would violate the ADA. 28 C.F.R. Pt. 35, App. A, Subpart B; *McGary v.
City of Portland*, 386 F.3d 1259, 1269 (9th Cir. 2004) (citing same).

Indeed, it has policies expressly requiring this.   TAC ¶159.  Plaintiff alleges that because of his disability – and specifically stereotypes about it – he was denied the benefit of appropriate identification, a program, service, or activity that HSH provided.  That states an ADA claim here, as it did for the *Bell* plaintiff, who was denied the "appropriate means" of a transfer between cells, a service the jail provided. *Bell*, 108 F.4th at 826.

Moreover, in addition to the sort of discrimination the Second Circuit addressed in *McGugan*, this Court recognizes claims based in failure to *reasonably accommodate* a person.  *Sheehan,* 743 F.3d at 1233.  Defendants have indicated that taking no steps to identify Plaintiff was reasonably related to a medical decision because Plaintiff had schizophrenia, and Dr. Garrett's medical judgment was that his statements could be ignored.  Dkt. 460 at CSF 24-25.  Even if a jury believed that, then a reasonable accommodation existed.  Dr. Garrett could have made an effort to gather clearer information from Plaintiff, such as investigating his statements further, requesting sufficient clarification, or even raising Plaintiff's concerns with others who might know more or have additional information.

Additionally, by stating that he was not Thomas R. Castleberry, explaining why he could not be this person, and providing his identifying information to Dr. Garrett, Joshua effectively requested an accommodation -  that they not ignore him but take his concern seriously.  *See*, *e.g.*, *Lewis v. Mossbrooks*, 788 F. App'x 455,

17

458 (9th Cir. 2019). Defendants have an affirmative obligation to investigate what reasonable accommodations are necessary. *E.g. Wong v. Regents of University of California* 192 F.3d 807, 818 (9th Cir. 1999). In any event, a Plaintiff need not formally request that he be accommodated where, as here, the need or accommodation was obvious or required. *Updike v. Multnomah Cty.*, 870 F.3d 939, 951 (9th Cir. 2017) (citing *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). If there were any ambiguity because the Plaintiff was schizophrenic, Dr. Garrett could have clarified it and avoided his wrongful detention.

In the Ninth Circuit, deliberate indifference for an ADA complaint requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood. *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002). Dr. Garrett's actions satisfy the elements of a deliberate indifference claim under the ADA because she was on notice that Plaintiff required an accommodation and yet did not investigate what accommodations were reasonable; in fact, she proffered no accommodation at all.

In short, Plaintiff states a claim even if *McGugan* applied. Dismissal is not otherwise warranted. As this Court has explained, vicarious liability applies in ADA Title II claims and insofar as a claim seeks money damages, deliberate indifference is required. See Dkt. 351, PageID4214; Dkt. 518 at 15-16, 22.

18

Defendant has not moved to dismiss on either ground, and the facts as set forth

above establish each.  Dkt. 556-1.

## CONCLUSION

For the reasons set forth above, Defendant HSH's motion to dismiss should

be denied.

Pursuant to Local Rule 7.4 I certify
the word count of this reply is 4,921
s/A. Gerhardstein


DATED:   November 22, 2024                 Respectfully submitted,


                                    By:   /s/ Alphonse A. Gerhardstein
                                          Jennifer L. Brown
                                          Alphonse A. Gerhardstein
                                          Jacqueline Greene
                                          Paul Hoffman
                                          John Washington

                                          Attorneys for Plaintiff
                                          JOSHUA SPRIESTERSBACH

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2024 a copy of the foregoing pleading was filed electronically. Notice of the filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>s/ Alphonse A. Gerhardstein</u>
Attorney for Plaintiff