UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JOSHUA SPRIESTERSBACH,<br><br>              Plaintiff,<br><br>   vs.<br><br>STATE OF HAWAII, CITY AND COUNTY OF HONOLULU, OFFICER ABRAHAM K. BRUHN, DEPARTMENT OF PUBLIC SAFETY, OFFICE OF THE PUBLIC DEFENDER, NIETZSCHE LYNN TOLAN, MICHELLE MURAOKA, LESLIE MALOIAN, JACQUELINE ESSER, JASON BAKER, MERLINDA GARMA, SETH PATEK, DR. JOHN COMPTON, DR. MELISSA VARGO, DR. SHARON TISZA, HAWAII STATE HOSPITAL, DR. ALLISON GARRETT, JOHN/JANE DOES 1-20,<br><br>              Defendants. | CIV. NO. 21-00456 LEK-RT |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT
CITY AND COUNTY OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant City and County of Honolulu's Motion for Summary Judgment ("Motion"), filed on May 28, 2024. [Dkt. no. 452.] Plaintiff Joshua Spriestersbach ("Spriestersbach" or "Plaintiff") filed his memorandum in opposition on July 17, 2024, and the City filed its reply on July 24, 2024. [Dkt. nos. 510, 528.] On July 1, 2024, Defendants Office of the Public Defender ("OPD"), Nietzsche Lynn Tolan, Michele Muraoka, Lesley Maloian, Jason Baker, and Seth Patek (all collectively "PD Defendants") filed a statement of no

position on the Motion. [Dkt. no. 494.] This matter came on for hearing on August 7, 2024.

The City's Motion is hereby granted in part and denied in part for the reasons set forth below. The City's Motion is granted as to Spriestersbach's claims brought pursuant to Title 42 United States Code Section 1983 and as to the portions of Spriestersbach's intentional infliction of emotional distress ("IIED") claim and negligent infliction of emotional distress ("NIED") claim based on the actions and omissions of Abraham Bruhn. The City's Motion is denied without prejudice as to the portions of Spriestersbach's IIED and NIED claims based on the actions and omissions of Darryl Kon. In addition, the Motion is denied as to the City's supplemental jurisdiction argument.

## BACKGROUND

The operative pleading for purposes of the City's Motion is the Second Amended Complaint, [filed 3/29/24 (dkt. no. 362)]. The case arises from Spriestersbach's May 11, 2017 arrest and prosecution for crimes committed by Thomas R. Castleberry and Spriestersbach's subsequent detention at the Oahu Community Correctional Center ("OCCC") and civil commitment related to that arrest until January 17, 2020 at Hawai`i State Hospital ("HSH"). See Second Amended Complaint at ¶¶ 1-2.

Relevant to the instant Motion, the claims in the Second Amended Complaint are:

2

-a Section 1983 claim against the City alleging violations of
     Spriestersbach's rights under the Fourth Amendment to the
     United States Constitution ("Count I");

-a Section 1983 claim against the City alleging violations of
     Spriestersbach's due process rights under the Fourteenth
     Amendment ("Count II");

-an IIED claim against the City ("Count XI"); and

-an NIED claim against the City ("Count XII").

Spriestersbach's claims against the City in Counts I and II are

limited to claims based upon City customs, practices, and

policies – including the alleged failure to provide adequate

training and supervision - related to the use of the digital

notebook, particularly the failure to correct known errors in

the digital notebook. The other portions of Spriestersbach's

claims against the City in Counts I and II were dismissed with

prejudice. See Order Granting in Part and Denying in Part

Defendant City and County of Honolulu's Motions Filed on

November 1, 2024, [Dkt. Nos. 257, 258], filed 4/19/24 (dkt.

no. 386) ("4/19/24 City Order"), at 39-40, 53-54.[1] Count III,

Spriestersbach's claim against the City under Title II of the

Americans with Disabilities Act ("ADA"), Title 42 United States

Code Section 12101, *et seq.*, and Count IV, Spriestersbach's

Section 1983 abuse of process claim against the City, were also

_____

[1] The 4/19/24 City Order is also available at 2024 WL
1703114.

3

dismissed with prejudice. 4/19/24 City Order, 2024 WL 1703114, at *20.

The City and Spriestersbach agree upon the following relevant facts.

The Honolulu Police Department's ("HPD") digital notebook was created in 2014. [City's Concise Statement of Facts (LR 56.1) ("City CSOF"), filed 5/28/24 (dkt. no. 453), at ¶ 57; Mem. in Opp., Plaintiff's Facts in Response to Defendant City Concise Statement of Facts (Dkt. 453) ("Response to City CSOF") at ¶ 57 (stating the City's ¶ 57 is agreed to).] The digital notebook is similar to the brown paper notebooks that are still used by some HPD officers to write information, but information on the digital notebook can be shared with other officers. [City CSOF at ¶ 1; Response to City CSOF at ¶ 1.] It is available in HPD vehicles through the HPD communications system. [City CSOF at ¶ 7; Response to City CSOF at ¶ 7.]

On May 11, 2017, HPD Officer Abraham Bruhn ("Bruhn") first checked HPD's internal website for warrant information. Bruhn had previously seen Spriestersbach's picture in connection with a warrant. During his May 11, 2017 patrol, Bruhn recognized Spriestersbach from the picture. [City CSOF at ¶¶ 14-16; Response to City CSOF at ¶¶ 14-16 (agreeing with those statements of fact, but arguing each is incomplete).] Spriestersbach did not have any physical identification. [City

4

CSOF at ¶ 27; Response to City CSOF at ¶ 27.] Bruhn checked the
State of Hawai`i Criminal Justice Inquiry System ("CJIS") for
the social security number that Spriestersbach verbally provided
to him, and CJIS showed a record for Joshua Spriestersbach, with
Thomas Castleberry listed as an alias. [City CSOF at ¶ 25;
Response to City CSOF at ¶ 25 (agreeing with the City's ¶ 25,
but arguing it is incomplete).] "HPD has reports that list
[Thomas Castleberry] as an alias of [Joshua Spriestersbach], and
[HPD's Case Report System ('CRS')] pulls information from those
reports." [City CSOF at ¶ 35; Response to City CSOF at ¶ 35
(agreeing with the City's ¶ 35, but arguing it is incomplete).]
HPD's Information Technology Division ("ITD") is in charge of
the CRS. [City CSOF at ¶ 32; Response to City CSOF at ¶ 32.]

        At his deposition, Bruhn testified that he reviewed
the page for Thomas R. Castleberry in the digital notebook
before arresting Spriestersbach on May 11, 2017. [Plaintiff's
Material Facts Opposing City MSJ (Dkt 452) ("Spriestersbach
CSOF"), filed 7/17/24 (dkt. no. 511), at ¶ 5; Defendant City and
County of Honolulu's Concise Statement of Facts in Opposition;
Defendant City and County of Honolulu's Opposition to
Plaintiff's Separate Concise Statement of Facts, filed 7/24/24
(dkt. no. 529), at PageID.10984-92 ("City Reply CSOF"), at ¶ 5
(admitting that Bruhn gave that testimony).] Bruhn also
testified that, when he saw Spriestersbach on the street, he

recognized Spriestersbach as Thomas Castleberry based on the
photograph he had seen for years in the digital notebook.
[Spriestersbach CSOF at ¶ 11; City Reply CSOF at ¶ 11 (admitting
Bruhn gave that testimony).]

In making Spriestersbach's arrest, Bruhn relied upon
the CJIS and the CRS. [City CSOF at ¶ 31; Response to City CSOF
at ¶ 31 (agreeing with the City's ¶ 31, but arguing it is
incomplete).] Before making an arrest on a warrant, an HPD
officer must contact HPD dispatch to confirm the warrant. [City
CSOF at ¶ 36; Response to City CSOF at ¶ 36.] At his deposition,
Bruhn testified that, when he researched Spriestersbach in the
CJIS on May 11, 2017, he saw a picture of Spriestersbach in a
green jumpsuit that differed from the picture of Thomas
Castleberry in the digital notebook. [Spriestersbach CSOF at
¶ 13; City Reply CSOF at ¶ 13 (admitting that Bruhn gave that
testimony).]

After the arrest, Bruhn transported Spriestersbach to
the HPD Central Receiving Division ("CRD"), and Bruhn "met with
the CRD officer (desk lieutenant), who is the one who determines
whether the arrest is good or not." [City CSOF at ¶¶ 39-40;
Response to City CSOF at ¶¶ 39-40.] The CRD receives and
approves arrests. [City CSOF at ¶ 47; Response to City CSOF at
¶ 47.] "CRD lieutenants are trained to decide whether to approve
an arrest based on all available information, including physical

forms of identification, information provided by arrestees such
as name/date of birth/SSN, the mugshot and fingerprints of the
arrestee, CJIS records, and CRS records that include prior
arrest reports." [City CSOF at ¶ 48; Response to City CSOF at
¶ 48 (agreeing with the City's ¶ 48, but arguing it is
incomplete).] CRD lieutenants are not trained to use the digital
notebook. [City CSOF at ¶ 49; Response to City CSOF at ¶ 49.]

HPD Lieutenant Darryl Kon ("Kon") was the CRD desk
officer when Spriestersbach was brought in on May 11, 2017.[2]
[City CSOF at ¶ 41; Response to City CSOF at ¶ 41 (admitting the
City's ¶ 41 to that extent).] Spriestersbach does not admit that
HPD Lieutenant Glen Nakama ("Nakama") was also one of the CRD
desk officers on May 11, 2017. See City CSOF at ¶ 41; Response
to City CSOF at ¶ 41 (only admitting the portion of the City's
¶ 41, cited above). However, it appears that Spriestersbach only
argues Nakama was not involved in Spriestersbach's receiving.
See City CSOF at ¶ 42; Response to City CSOF at ¶ 42
(disagreeing with the City's ¶ 42 on the ground that Nakama was
not involved). Nakama was not familiar with the digital notebook
and has never used it. [City CSOF at ¶ 46; Response to City CSOF
at ¶ 46.]

---

[2] This position is what was referred to as the "Receiving
Officer-in-Charge" in the 4/19/24 City Order. See, e.g., 2024 WL
1703114, at *6.

There is no record in Bruhn's personnel file of any disciplinary action against him, nor is any record of disciplinary action in HPD Officer Douglas Korenic's ("Korenic") file.[3] [City CSOF at ¶ 51; Response to City CSOF at ¶ 51.] Bruhn and Korenic have never been disciplined, and Spriestersbach acknowledges that Bruhn and Korenic are the only HPD officers he alleges used the digital notebook. [City CSOF at ¶ 60; Response to City CSOF at ¶ 60.] Further, "[a]ll of the HPD officers named in the Second Amended Complaint's allegations successfully completed their initial recruit training and annual recall training, including on Policy 7.01 § VIII." [City CSOF at ¶ 59; Response to City CSOF at ¶ 59 (agreeing with the City's ¶ 59, but arguing it is incomplete).]

HPD Policy Number 7.01, Section VIII ("Policy 7.01, VIII") addresses booking, and the relevant provisions include: Subsection A, which addresses the "Officer in Charge of the Receiving Desk"; Subsection B, which addresses "Booking Procedure"; and Subsection C, which addresses "Fingerprinting and Photographing of Arrestees." and <u>See generally</u> City CSOF, Declaration of Manuel Hernandez ("Hernandez Decl."), Exh. C

---

[3] The Second Amended Complaint alleges Bruhn and Korenic were both involved in Spriestersbach's May 11, 2017 arrest. [Second Amended Complaint at ¶ 88.]

(dkt. no. 453-9) at PageID.8205-15 (excerpts of HPD Policy
Number 7.01, titled Arrests and Arrested Persons).[4]

I.   **Motion**

The City seeks summary judgment in its favor as to all
of Spriestersbach's remaining claims against it because the City
argues the digital notebook did not cause Spriestersbach to be
arrested on May 11, 2017. [Motion at 2; id., Mem. in Supp. at
1.]

A.   **Additional Evidence**

1.   **The Digital Notebook**

The digital notebook was created to allow HPD officers
to share information they gather while they are on patrol. It
also allows offers to add and edit information. [City CSOF,
Declaration of Alexander Waseleski IV ("Waseleski Decl.") at
¶ 7.[5]] "The digital notebook is similar to Wikipedia in the sense
that it is a user-edited patrol tool patrol officers use rather
than a comprehensive database of HPD records." [Id. at ¶ 6.] It

---

[4] Major Manuel Hernandez ("Hernandez") is currently assigned
to the HPD Training Division, but from January 2018 to September
2022 he was assigned to the CRD. He had various ranks during
that period. [Hernandez Decl. at ¶¶ 2-3.]

[5] Detective Alexander Waseleski IV has been assigned to the
HPD ITD since 2015. Prior to that, he was a patrol officer.
[Waseleski Decl. at ¶¶ 2-3.] In his current position, Waseleski
manages the CRS. He has personal knowledge of, and is familiar
with, both the CRS and the digital notebook. [Id. at ¶ 10.]

is optional for HPD officers to use the digital notebook. [City
CSOF, Declaration of Abraham Bruhn ("Bruhn Decl.") at ¶ 7.]

     The computer server where the digital notebook is
stored is not connected to the HPD mainframe, nor is it
connected to CJIS. The digital notebook does not import
information from any HPD database. [Waseleski Decl. at ¶ 6.] The
digital notebook is not a warrant system, and it was not
intended to be used when officers find and arrest people for
outstanding warrants. Even if the digital notebook indicates
that a person has an outstanding warrant, the information must
be verified through dispatch. [Id. at ¶ 9.] The digital notebook
has a warrants field, but according to Hernandez, "it is not
used much." [Id. at ¶ 11.] To verify a warrant noted in the
digital notebook, an officer usually asks dispatch to run a
warrants check, and the officer provides dispatch with the
suspect's name, birth date, and social security number, which
are usually obtained from the suspect. Dispatch then contacts
the HPD warrants section. [Id.]

     The top of the digital notebook has "a banner warning"
stating: "'For Information only, not PC for an arrest. Please
verify this Information before using." [Id. at ¶ 12.] The City
provided a copy of the banner warning with its Reply. See Reply,
Declaration of Alexander Waseleski IV ("Waseleski Reply Decl."),
Exh. N1 (dkt. no. 529-3). Waseleski states all officers see the

warning when they open the digital notebook. When an officer runs a search, the search results are displayed on the main page, and the banner warning still appears. However, when a specific person's profile page is opened, the page does not have the banner warning. [Waseleski Reply Decl. at ¶¶ 5-7.]

The HPD ITD operates and maintains a searchable database of warrants in the HPD mainframe. The database has identifying information, but it does not include photographs. CJIS can be used to determine if a suspect matches a recent photograph, and CRS contains some prior arrest photographs. [Waseleski Decl. at ¶ 13.] The information in the HPD warrants database is the same information that appears on a warrant issued by a court. [Id. at ¶ 14.] "Recently, the primary source for active warrants is the eBench warrant system maintained by the State of Hawaii's judiciary. CRS has a connection whereby it can search data in the eBench warrants system." [Id.]

There are HPD reports that include William Castleberry and Thomas Castleberry among Spriestersbach's aliases. Because the CRS pulls information from those reports, and because a police report is not altered once an investigation is closed, the CRS system cannot dissociate Spriestersbach's name from those aliases. A supplemental report would need to be made to explain any error, and the data from the supplemental report would be uploaded. [Id. at ¶ 15.]

11

2.    **Training**

As previously noted, Spriestersbach agrees "[a]ll of
the HPD officers named in the Second Amended Complaint's
allegations successfully completed their initial recruit
training and annual recall training, including on Policy 7.01
§ VIII." [City CSOF at ¶ 59; Response to City CSOF at ¶ 59
(agreeing with the City's ¶ 59, but arguing it is incomplete).]
According to the City, this refers to Bruhn, Korenic, Kon, and
Nakama. See Hernandez Decl. at ¶ 7; see also id., Exhs. D-G
(dkt. nos. 453-10 to 453-13, training records for Bruhn,
Korenic, Kon, and Nakama).

3.    **The May 11, 2017 Arrest**

Bruhn states that, prior to May 11, 2017, he had never
encountered either Spriestersbach or Thomas Castleberry. When
Bruhn saw a male who he recognized as someone with an active
warrant, Bruhn approached the male and informed the male about
the warrant. Bruhn asked the male for his last name, and the
male gave the name Castleberry, which matched the name on the
warrant. After checking the information on the computer in his
patrol car, Bruhn asked the male for his first name. [Bruhn
Decl. at ¶¶ 10-15.] The male gave the name Joshua and said he
would not answer any more questions. Bruhn's search under the
name Joshua Castleberry did not yield the result that Bruhn was
looking for, so he approached the male again. This time, the

12

male gave Spriestersbach's social security number. The CJIS
search of the social security number showed Joshua
Spriestersbach, with Thomas Castleberry as an alias. [Id. at
¶¶ 17-20.] According to Bruhn, "Spriestersbach was calm during
the arrest and didn't say much, but he said politely that he
wasn't going to answer any more questions." [Id. at ¶ 31.]

        As previously noted, Spriestersbach did not have
identification when he was arrested. When encountering a person
without identification, an officer may have to rely on the
person's representations. [Id. at ¶¶ 22-23.] It was the
information that Spriestersbach provided Bruhn that led Bruhn to
believe that Spriestersbach was Thomas Castleberry. [Id. at
¶ 24.] According to Bruhn, CJIS is a better system than CRS for
aliases. See id. at ¶ 27. Bruhn has not discovered, nor has he
been made aware of, any mistake in the CJIS. [Id. at ¶ 28.]
Bruhn asserts he had enough information at the time of the
arrest to conclude that Spriestersbach was Thomas Castleberry.
[Id. at ¶ 30.] After transporting Spriestersbach to the CRD and
meeting with the desk lieutenant, and after the CRD accepted the
arrest, Bruhn had no further involvement in the arrest. [Id. at
¶¶ 32-35.]

## II.  **Memorandum in Opposition**

        Spriestersbach summarizes the Second Amended
Complaint's factual allegations that this Court relied upon in

13

the 4/19/24 City Order when it ruled that Spriestersbach pled plausible claims against the City, and he argues all of those allegations "are now well anchored in admissible facts," and therefore there are triable issues of fact, and the City's Motion must be denied. [Mem. in Opp. at 1-2 (citing Second Amended Complaint at pgs. 28-40).]

Spriestersbach points out that he has been attempting to add the officer in charge of the receiving desk as an individual defendant. [Id. at 3 n.1.] After the briefing on the City's Motion was complete, this Court gave Spriestersbach until July 29, 2024 to file a motion seeking an amendment of the scheduling order and seeking leave to file a fourth amended complaint. See Order Granting in Part and Denying in Part the State Defendant's Motion to Dismiss or in the Alternative for Judgment on the Pleadings, filed 7/19/24 (dkt. no. 518) ("7/19/24 State Defendants Order"), at 23 & n.9.[6] On July 29, 2024, Spriestersbach filed the Motion by Plaintiff to Amend Scheduling Order and for Leave to File Fourth Amended Complaint (FthAC) ("Motion to Amend"). [Dkt. no. 531.] The Motion to Amend will be ruled upon after all of the motions for summary judgment have been ruled upon.

---

[6] The 7/19/24 State Defendants Order is also available at 2024 WL 3488365.

14

A.    **Additional Evidence**

During his deposition, Bruhn testified that, on May 11, 2017, he and his partner had a copy of the warrant for Thomas Castleberry. [Mem. in Opp., Declaration of Attorney Alphonse Gerhardstein ("Gerhardstein Decl."), dkt. no. 510-10 (trans. excerpts of Deposition of: Abraham K. Bruhn, Jun 17, 2022 ("Bruhn Depo.")) at 21;[7] Gerhardstein Decl., Exh. 3 (dkt. no. 510-21, Bench Warrant for State of Hawai`i v. Thomas R. Castleberry, Cr. No. 06-1-1421, issued 7/24/09, for "Failure to comply with the terms and conditions of probation (HOPE)" ("Castleberry Warrant")).] Bruhn did not refer to it as "the digital notebook page," but Spriestersbach has submitted a copy of the digital notebook page for Thomas Castleberry, and the City has effectively admitted that Bruhn considered it during Spriestersbach's arrest. See Gerhardstein Decl., Exh. 30 (dkt. no. 510-28) at PageID.10895 (digital notebook page for Thomas Castleberry ("Castleberry Digital Notebook Page")).[8] The City

---

[7] Many of Spriestersbach's exhibits, including the Bruhn Deposition, are not numbered. Those exhibits will be referred to by their docket number. For example, the Bruhn Deposition will be referred to as "Exhibit 510-22."

[8] Exhibit 30 is Plaintiff's Requests for Admission to Defendant City and County of Honolulu, dated October 23, 2023 ("RFA to the City"). [Dkt. nos. 510-28 (redacted version), 510-14 (unredacted version filed under seal).] Exhibit 31 is the City's response, dated November 23, 2023 ("City RFA Response"). [Gerhardstein Decl., Exh. 31 (dkt. nos. 510-15 (redacted
(. . . continued)

admits that the name and personal identification on the
Castleberry Digital Notebook Page is Thomas Castleberry's, but
the photograph is Spriestersbach. [Gerhardstein Decl., Exh. 31
(dkt. no. 510-15, redacted) at RFA 6 Response (admitting the
request, subject to the objection that "'lists' and 'personal
information belonging' are vague and ambiguous"); id., Exh. 510-
10 (Bruhn Depo.) at 29 (identifying photograph as matching what
Spriestersbach looked like on May 11, 2017)]. Spriestersbach
argues it was the digital notebook that caused Bruhn to believe
that Thomas Castleberry looked like Spriestersbach. [Mem. in
Opp. at 6.]

        Spriestersbach argues HPD officers can enter
information in the digital notebook from any source they wish,
including state records, prior HPD reports, and their own
observations. The accuracy of the data in the digital notebook
is dependent upon the individual officers who enter information.
[Id. at 6-7 (citing Spriestersbach CSOF at ¶ 9).] However,
paragraph 9 of the Spriestersbach CSOF cites deposition

_____

version)); id., Exh. 510-29 (unredacted version filed under
seal)).] Unless expressly stated in this Order, all citations
will be to the redacted version of any filing that is also
availed in a sealed unredacted version. The City admitted that
the screenshot attached to the RFA to the City was the
Castleberry Digital Notebook Page, and it admitted that Bruhn
reviewed it before arresting Spriestersbach. See Gerhardstein
Decl., Exh. 31 (dkt. no. 510-15, City RFA Response, redacted) at
Response to RFA 5 (admitting request but objecting that
"'reviewed before' is vague and ambiguous").

testimony that Spriestersbach did not submit. See Spriestersbach
CSOF at ¶ 9 (citing Gerhardstein Decl., Exh. 510-26 (trans.
excerpts of Detective Alexander Waseleski January 11, 2024
deposition ("Waseleski Depo.")) at 24-26, 35-3648; City CSOF,
Hernandez Decl. at ¶ 6). However, Spriestersbach's arguments in
paragraph 9 regarding the nature of the digital notebook is
consistent with the evidence that is before this Court.

Spriestersbach argues the data in the digital notebook
"was shared with and relied upon by other officers since the
digital notebook was available on department computers and in
the mobile data terminals used in the squad cars." [Mem. in Opp.
at 7 (citing Spriestersbach CSOF at ¶ 7).] However, paragraph 7
of the Spriestersbach CSOF only addresses Bruhn's use of and
reliance upon the Castleberry Digital Notebook Page. It does not
address any other officer's use of the digital notebook. See
Spriestersbach CSOF at ¶ 7.

Spriestersbach argues HPD officers and supervisors are
not trained in the use of the digital notebook, and there are no
manuals or instructions for the digital notebook.
[Spriestersbach CSOF at ¶ 12.] The City argues no more training
is required for the digital notebook than is required for the
physical brown notebooks, particularly because the digital
notebook includes the banner warning. [City Reply CSOF at ¶ 12.]
Spriestersbach argues "[t]he custom was for supervisors not to

17

check the digital notebook data for accuracy," however, the only evidence he cites to support this is the evidence showing that Kon and Nakama were unfamiliar with the digital notebook. [Mem. in Opp. at 7 (citing City CSOF at ¶¶ 45-46).]

Spriestersbach acknowledges that Bruhn attempted to verify Spriestersbach's information through the CRS and the CJIS, but Spriestersbach argues the police reports in those systems from Spriestersbach's prior interactions with HPD, including prior arrests on the Castleberry Warrant, had inconsistencies that were apparent on the face of the reports. The reports comingled Spriestersbach's and Thomas Castleberry's personal identifying information. [Id. at 8.] Spriestersbach alleges "[t]he practice and custom was for errors in those reports and related databases (including the digital notebook) not to be corrected and that practice triggered episodes when Plaintiff was at least temporarily misidentified." [Id.]

The City admits that its records indicate:

-Spriestersbach and Thomas Castleberry were both born in 1971, but they were born in different months and on different days;

-Spriestersbach and Thomas Castleberry have different state ID numbers; and

-Spriestersbach and Thomas Castleberry have different social security numbers, and the last four digits of the two social security numbers are different.

See Gerhardstein Decl., Exh. 31 (dkt. no. 510-29, City RFA
Response, sealed) at RFA Nos. 20, 21, 22.

Spriestersbach presents an HPD Arrest Report form for
a July 26, 2010, arrest ("7/26/10 Arrest Report"). [Id., Exh. 30
(dkt. no. 510-28, RFA to City, redacted) at PageID.10900
(7/26/20 Arrest Report).] It lists Thomas R. Castleberry as the
defendant and Williams R. Castleberry as an alias. The defendant
was arrested on a bench warrant for revocation/modification of
probation. The state ID number in the form is Spriestersbach's.
See id. But the birth date and social security number (although
with a typographic error in one of the digits) are Thomas
Castleberry's. See Gerhardstein Decl., Exh. 30 (dkt. no. 510-14,
RFA to City, sealed) at PageID.10158. There is a note on the
report stating: "AFFIS/FINGERPRINTS REAL IDENTITY IS
SPRIESTERBETH,JOSHUA . . . ." [Id., Exh. 30 (dkt. no. 510-28,
RFA to City, redacted) at PageID.10900 (7/26/20 Arrest Report)
(emphasis in original).] Spriestersbach argues that, even though
HPD knew that Spriestersbach and Thomas Castleberry were two
different people, the erroneous comingling of their personal
identifying information in the 7/26/10 Arrest Report was never
corrected. [Mem. in Opp. at 8.]

Spriestersbach also presents an HPD Arrest Report for
an October 14, 2011 arrest ("10/14/11 Warrant Arrest Report").
[Gerhardstein Decl., Exh. 30 (dkt. no. 510-28, RFA to City,

19

redacted) at PageID.10901-03 (10/14/11 Warrant Arrest Report).]
It states William C. Castleberry was arrested on a bench warrant
for revocation/modification of probation. Thomas Castleberry is
listed as an alias. [Id. at PageID.10901.] The birth date,
social security number, and state ID number on the 10/14/11
Warrant Arrest Report are Spriestersbach's. See Gerhardstein
Decl., Exh. 30 (dkt. no. 510-14, RFA to City, sealed) at
PageID.10159-60. The arrestee was released without being charged
because it was "CONFIRMED VIA AFIS, REVO/MOD PROB HRS 706-625
DOES NOT MATCH ARRESTEE'S INFO." [Id., Exh. 30 (dkt. no. 510-28,
RFA to City, redacted) at PageID.10902-03).] Similarly, the HPD
Arrest Report for the October 14, 2011 arrest of William C.
Castleberry for criminal trespass ("10/14/11 Trespass Arrest
Report") contains the same inconsistent personal identifying
information, except that it contains both Spriestersbach's and
Thomas Castleberry's state ID numbers. See id. at PageID.10904-
05 (pages 2 and 3 of the 10/14/11 Trespass Arrest Report);
Gerhardstein Decl., Exh. 31 (dkt. no. 510-14, RFA to City,
sealed) at PageID.10163-64. Spriestersbach argues the erroneous
comingling of personal identifying information in the two
October 14, 2011 reports was never corrected. [Mem. in Opp. at
8-9.]

        Spriestersbach also submits an HPD Arrest Report for
the February 27, 2012 arrest of William C. Castleberry for

criminal trespass ("2/27/12 Arrest Report"). [Gerhardstein
Decl., Exh. 30 (dkt. no. 510-28, RFA to City, redacted) at
PageID.10907 (2/27/12 Arrest Report).] The 2/27/12 Arrest Report
has Thomas Castleberry's state ID number, but Spriestersbach's
birth date and social security number. See id., Exh. 30 (dkt.
no. 510-14, RFA to City, sealed) at PageID.10165. The erroneous
comingling of personal identifying information in the 2/27/12
Arrest Report was never corrected. [Mem. in Opp. at 9.]

An HPD Arrest Report for the January 17, 2015 arrest
of Joshua Spriestersbach for violating park rules and
regulations ("1/17/15 Arrest Report") lists Thomas Castleberry's
state ID number but Spriestersbach's social security number. See
Gerhardstein Decl. Exh. 33 (dkt. no. 510-5, 1/17/15 Arrest
Report). This Court cannot determine whose birth date is listed
because Exhibit 33 is redacted, and Spriestersbach and Thomas
Castleberry are both born in 1971. The 1/17/15 Arrest Report
states:

> WARRANT CHECKS MADE UNDER SPRIESTERSBACH, JOSHUA
> AND ALIAS: CASTLEBERRY, THOMAS/CASTLEBERRY,
> WILLIAM.
>
> POSSIBLE WARRANT UNDER CASTLEBERRY, THOMAS
> A#1077743. CHECKS VIA ID (DAISEY) PER ID PRINTS
> UNDER A#1077743 CASTLEBERRY, THOMAS DO NOT MATCH
> SPRIETERSBACH.
>
> NCIC: NEGATIVE FOR BOTH SPRIETERSBACH,
> JOSHUA/CASTLEBERRY,WILLIAM/CASTLEBERRY, THOMAS

[Id. (emphasis in original).] Spriestersbach points out that, although the 1/17/15 Arrest Report notes that HPD confirmed Spriestersbach's fingerprints did not match the fingerprints associated with the Castleberry Warrant, the confirmation did not prompt HPD to correct its previous records. [Mem in Opp. Motion at 9.]

Spriestersbach argues these records were not corrected at any point prior to 2017. When HPD realized it had erroneously arrested Spriestersbach on the Castleberry Warrant, HPD released him without taking any steps to avoid the likelihood that Spriestersbach would be arrested again on the Castleberry Warrant. [Id. at 10.] Spriestersbach argues Form HPD-510 ("Form 510") is used to correct errors in HPD records. [Id. (some citations omitted) (citing Spriestersbach CSOF at ¶ 25 (citing Gerhardstein Decl., Exh. 38)).[9]] At his deposition, Bruhn testified that he had never used or received a Form 510 in connection with any arrest he made, and he could not remember if he received training regarding when to refer a matter to the HPD Identification Unit. [Gerhardstein Decl., Exh. 510-22 (Bruhn Depo.) at 111.] Kon testified during his deposition that, until

---

[9] Form 510 is a memorandum directed to Division Commander/Prosecutor/Administrator, from Honolulu Police Department, Identification Unit, with the subject line Correction of an Arrested Person's Identification. [Gerhardstein Decl., Exh. 38 (dkt. no. 510-10).]

the deposition, he had never seen a Form 510 before. He also
testified that he had not received training regarding the
correction of errors in personal identifying information. [Id.,
Exh. 510-27 (trans. excerpts of Deposition of: Darryl T. Kon,
February 1, 2024 ("Kon Depo.")) at 57-58.]

Spriestersbach relies on these incidents, without
citing any similar incidents involving other arrestees, to argue
the City's "custom was 'Catch and Release,' - comingle personal
identifiers on police reports, let those errors spread to
databases, including the digital notebook, let the errors lead
to the 'catch', release the suspect, but never correct the
errors in the reports or the databases. Then repeat." [Mem. in
Opp. at 10.] He argues this custom allowed Spriestersbach's
photograph to erroneously appear in the Castleberry Digital
Notebook Page, and it allowed the error to remain there until
the time of Spriestersbach's May 11, 2017 arrest. [Id.] However,
the 2010, 2011, and 2012 arrests occurred before the digital
notebook existed, and Spriestersbach does not cite any evidence
that the 1/17/15 Arrest Report was entered into the digital
notebook.

Based on the evidence discussed above, Spriestersbach
argues that, when Bruhn consulted them on May 11, 2017, HPD's
CRS, HPD's digital notebook, and the State's CJIS "were riddled
with errors uploaded or transferred from police reports that had

23

never been corrected." [Id. at 11.] At his deposition, Bruhn
testified that, after he turned Spriestersbach over to the CRD
officers, he met with the CRD desk lieutenant. According to
Bruhn, HPD procedure required an arresting officer to review the
facts and circumstances of the arrest with the CRD desk
lieutenant. The desk lieutenant would determine whether or not
the arrest was valid by doing a more thorough information
search. [Gerhardstein Decl., Exh. 510-22 (Bruhn Depo.) at 49.]
In Bruhn's presence, the desk lieutenant "basically did the same
searches that [Bruhn] did out in the field with CJIS" and
determined the arrest was valid. [Id. at 52.] Bruhn discussed
with the desk lieutenant the fact that there were two different
social security numbers associated with Spriestersbach's picture
in the databases that they were looking at, and the desk
lieutenant agreed with Bruhn that Spriestersbach "possibly gave
a name that's not affixed to a warrant just trying to not get
arrested for it." [Id.] Bruhn understood that the desk
lieutenant who he discussed Spriestersbach's arrest with was
serving as the officer in charge. [Id. at 102.] Spriestersbach
did not submit the pages of the transcript where Bruhn
identified the desk lieutenant who he spoke to. See generally
id. (omitting pages 50 and 51). However, the City has admitted
that Kon was serving as the officer in charge of the receiving
desk and reviewed Spriestersbach's May 11, 2017 arrest. See

Gerhardstein Decl., Exh. 31 (dkt. no. 510-15, City RFA Response, redacted) at RFA 12.

Bruhn signed a copy of the warrant that was the basis for the arrest, and he wrote Spriestersbach's name on it because he believed that Spriestersbach was Thomas Castleberry.[10] Bruhn intended to indicate for the courts that Joshua Spriestersbach may be an alias that Thomas Castleberry uses. Bruhn did not discuss writing Spriestersbach's name on the warrant with anyone else. Bruhn also admitted having done this at least five times before. [Id. at 55-56.] It is not clear whether it was five times before Spriestersbach's May 11, 2017 arrest or whether it was five times before the deposition. Bruhn testified that, in the other instances when he wrote a suspect's alias on a warrant, even though the warrant was not made out in the alias name, he was never disciplined or retrained, nor did anyone ever tell him that was inappropriate. Further, he never discussed with any supervisor or colleague the propriety of writing another name on an original warrant. [Id. at 57-58.]

Spriestersbach testified during his deposition that, at some point at the police station, a band with the name Thomas R. Castleberry was put on him. Spriestersbach testified

---

[10] Spriestersbach presents a copy of the bench warrant that Bruhn signed and wrote Spriestersbach's name on. See Gerhardstein Decl., Exh. 3 (dkt. no. 510-21, Castleberry Warrant).

that he objected right away that he was not Thomas Castleberry,
and he gave his own name, birth date, and social security
number. [Gerhardstein Decl., Exh. 510-24 (trans. excerpts of
Videotaped Deposition of Joshua Spriestersbach, taken 12/4/23
("Spriestersbach Depo.")) at 72-73, 156-57.]

Spriestersbach argues Bruhn was acting pursuant to
City custom and practice when he used the digital notebook.
[Mem. in Opp. at 11.] However, the only evidence he points to is
the fact that Bruhn and Kon were never disciplined for their
actions in connection with Spriestersbach's arrest. See id.
(citing City CSOF at ¶¶ 51, 60); see also Response to City CSOF
at ¶¶ 51, 60 (agreeing with the City's ¶¶ 51, 60). However,
paragraph 60 of the City CSOF addresses Bruhn and Korenic, not
Kon.

Spriestersbach argues the customs and practices at
issue in this case continued long after his arrest. [Mem. in
Opp. at 12.] He cites an August 6, 2021 search and a June 17,
2022 search in eCrim, which allows the public to search the CJIS
database. [Gerhardstein Decl., Exh. 510-17 (eCrim Certified
Record generated 8/6/21); id., Exh. 510-18 (eCrim Certified
Record generated 6/17/22).] Both indicate that a search for the
name Thomas Castleberry returns "a record belonging to:
SPRIESTERSBACH, JOHSUA C" with a picture of Spriestersbach, and
listing "CASTLEBERRY, JOSHUA," and variations of William

26

Castleberry among Thomas Castleberry's aliases. [Id., Exhs. 510-17, 510-18.]

Spriestersbach asserts he is entitled to a jury trial as to all of his claims against the City and urges this Court to deny the City's Motion. [Mem. in Opp. at 2.]

## **DISCUSSION**

### I. **Spoliation of Evidence**

At the outset, this Court must address Spriestersbach's argument that the City destroyed relevant evidence, and this Court should therefore make adverse inferences against the City in ruling on the Motion. See Mem. in Opp. at 23-24. Spriestersbach asserts that "all records of Spriestersbach's mugshot and fingerprinting on May 11, 2017, **and the record of Thomas R. Castleberry from the Digital Notebook** have been destroyed by the City in direct violation of two notices to preserve evidence." [Id. at 23 (emphasis in original).]

> The party seeking sanctions for spoliation of evidence has the burden of demonstrating that the other party "destroyed documents and had 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" Ryan [v. Editions Ltd.], 786 F.3d [759,] 766 [(9th Cir. 2015)]. If that burden is met and the non-spoliating party is prejudiced by the loss of information, Federal Rule of Civil Procedure 37(e)(1) provides the district court with the discretion to "order measures no greater than necessary to cure the prejudice."

Broadous v. Target Corp., No. 22-55071, 2023 WL 417900, at *2
(9th Cir. Jan. 26, 2023).

On January 14, 2022, Spriestersbach filed his Motion
for Preliminary Injunction. [Dkt. no. 27.] He sought a "Court
order [requiring] the City and County of Honolulu to correct the
H.P.D.'s database and warrant by removing Plaintiff's name as an
alias for Thomas Castleberry, and removing any other information
indicating Plaintiff is responsible for Thomas Castleberry's
crimes . . . ." [Id. at 11.] The motion was denied. See Order
Denying Plaintiff's Motion for Preliminary Injunction, filed
3/24/22 (dkt. no. 93) ("3/24/22 Order").[11] However, the parties'
counsel were ordered to appear before the magistrate judge for a
settlement conference to discuss "voluntary measures that can be
taken to achieve the correction of records associating
Spriestersbach with Thomas R. Castleberry." 3/24/22 Order, 2022
WL 875697, at *5.

Counsel met with the magistrate judge and discussed
that issue on various occasions, including, but not limited to,
April 1, 2022, May 2, 2022, June 15, 2022, July 13, 2022, and
October 11, 2022. See Minutes – EP: Telephonic Status
Conference, filed 4/1/22 (dkt. no. 98), at PageID.890; Minutes –
EP: Telephone Conference, filed 5/2/22 (dkt. no. 115), at

---

[11] The 3/24/22 Order is also available at 2022 WL 875697.

PageID.1179; Minutes – EP: Telephone Conference, filed 6/15/22
(dkt. no. 137), at PageID.1287; Minutes, filed 7/13/22 (dkt.
no. 146); Minutes, filed 10/11/22 (dkt. no. 175). The City
presents evidence that HPD expunged the arrest records at
Spriestersbach's request. See City Reply CSOF, Exh. S (dkt.
no. 529-8, trans. excerpts of Deposition of: Captain Carlene
Lau, January 8, 2024 ("Lau Depo.")) at 17. The City argues no
records were **destroyed**; the records were **expunged** at the request
of Spriestersbach's counsel in course of the parties'
discussions with the magistrate judge. [Reply at 14.]
Spriestersbach has not identified any evidence that relevant
records were destroyed. Further, based on the evidence that has
been presented to this Court in connection with the City's
Motion, this Court finds that Spriestersbach has not been
prejudiced by the lack of access to the original digital
notebook record itself.

Spriestersbach also claims that "[t]he destruction of
the fingerprint evidence denied to Plaintiff the details of the
test including who took the prints, when the results were
obtained, and exactly what test was conducted." [Mem. in Opp. at
23.] Spriestersbach has presented evidence that, following his
May 11, 2017 arrest, Spriestersbach's fingerprints were matched
to fingerprints previously taken from Spriestersbach. See
Gerhardstein Decl., Exh. 510-25 (Lau Depo.) at 97-98. In other

29

words, Spriestersbach's fingerprints were not compared to fingerprints that HPD had on file for Thomas Castleberry. The details of the fingerprinting process are irrelevant to Spriestersbach's claims against the City arising from his misidentification by HPD officers. Thus, Spriestersbach's lack of access to the original fingerprint evidence has not prejudiced him in the litigation of his case.

Spriestersbach has failed to establish any support for his spoliation argument. This Court therefore denies his request for adverse inferences in connection with the City's Motion.

## II.  **Section 1983**

The parties do not dispute that this Court's Section 1983 analysis in prior orders apply here. This Court has previously stated:

> 42 U.S.C. § 1983 states, in pertinent part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .
>
> Section 1983 liability cannot be based on respondeat superior. Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009).

> A municipality may be held liable as a "person" under 42 U.S.C. § 1983 when it maintains a policy or custom that causes the deprivation of a plaintiff's federally protected rights. Monell [v. Dep't of Soc. Servs. of N.Y.C.], 436 U.S. [658,] 694, 98 S. Ct. 2018 [(1978)]. To state such a claim, a plaintiff must allege either that (1) "a particular municipal action **itself** violates federal law, or directs an employee to do so"; or (2) the municipality, through inaction, failed to implement adequate policies or procedures to safeguard its community members' federally protected rights. Board of Commissioners of Bryan County v. Brown, 520 U.S. 397, 404, 407–08, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); see also Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1143 (9th Cir. 2012). When, as here, a plaintiff pursues liability based on a failure to act, she must allege that the municipality exhibited deliberate indifference to the violation of her federally protected rights. Tsao, 698 F.3d at 1143.
>
> Park v. City & Cnty. of Honolulu, 952 F.3d 1136, 1141 (9th Cir. 2020) (emphasis in Park).

[Order: Granting in Part and Denying in Part Defendant City and County of Honolulu's Motion for Judgment on the Pleadings etc., filed 8/18/22 (dkt. no. 151) ("8/18/22 Order"), at 17-18.[12]]

Similar to other versions of Spriestersbach's complaint, the Section 1983 claims against the City in the Second Amended Complaint are based upon the City's alleged

---

[12] The 8/18/22 Order is also available at 622 F. Supp. 3d 948.

inaction and failure to implement adequate policies and

training.

> When . . . a plaintiff pursues liability based on
> a failure to act, she must allege that the
> municipality exhibited deliberate indifference to
> the violation of her federally protected rights.
> Tsao, 698 F.3d at 1143. . . .
>
> Deliberate indifference is "a stringent
> standard of fault, requiring proof that a
> municipal actor disregarded a known or obvious
> consequence of his action." Brown, 520 U.S. at
> 410, 117 S. Ct. 1382. Deliberate indifference
> exists when the need "for more or different"
> action "is so obvious, and the inadequacy [of
> existing practice] so likely to result in the
> violation of constitutional rights, that the
> policymakers of the city can reasonably be said
> to have been deliberately indifferent to the
> need." City of Canton v. Harris, 489 U.S. 378,
> 390 & n.10, 109 S. Ct. 1197, 103 L. Ed. 2d 412
> (1989). A plaintiff can meet this standard in one
> of two ways. In some circumstances, the policy
> may be so facially deficient that any reasonable
> policymaker would recognize the need to take
> action. Brown, 520 U.S. at 409, 117 S. Ct. 1382.
> When that is the case, a plaintiff need point
> only to the policy itself to establish that the
> municipality's policymakers were on notice that
> the plaintiff's federally protected rights would
> likely be violated if they failed to act. See id.
> Alternatively, if the policy is not obviously,
> facially deficient, a plaintiff must ordinarily
> point to a pattern of prior, similar violations
> of federally protected rights, of which the
> relevant policymakers had actual or constructive
> notice. Connick v. Thompson, 563 U.S. 51, 62, 131
> S. Ct. 1350, 179 L. Ed. 2d 417 (2011); Clouthier
> v. County of Contra Costa, 591 F.3d 1232, 1253
> (9th Cir. 2010), *overruled on other grounds by*
> Castro [v. Cnty. of Los Angeles], 833 F.3d
> [1060,] 1070 [(9th Cir. 2016)].

8/18/22 Order, 622 F. Supp. 2d at 959-60 (quoting Park, 952 F.3d at 1141-42 (alteration in Park)).

As previously noted, Spriestersbach's Section 1983 claims against the City are limited to the customs, practices, and policies related to the use of the digital notebook, particularly the failure to correct known errors in the digital notebook. See 4/19/24 Order, 2024 WL 1703114, at *15. Because the claims are limited to the digital notebook, Spriestersbach's allegation that his prior arrests establish a custom and practice or a policy of "catch and release" cannot be considered. His 2010, 2011, and 2012 encounters with HPD occurred before the digital notebook was created. See City CSOF at ¶ 57 (stating the digital notebook was created in 2014); Response to City CSOF at ¶ 57 (stating the City's ¶ 57 is agreed to). Spriestersbach has not presented any evidence that HPD's reports associated with those encounters were entered into the digital notebook after it was created. The digital notebook was in existence at the time of Spriestersbach's January 17, 2015 arrest, but there is no evidence suggesting that the digital notebook was used during the events leading up to the arrest, nor is there any evidence that the 1/17/15 Arrest Report was entered into the digital notebook.

Spriestersbach has not presented any evidence of HPD officers' use of the digital notebook other than Bruhn's and

Korenic's use of digital notebook in connection with his May 11,
2017 arrest. See City CSOF at ¶ 60 (stating Bruhn and Korenic
are "the only two officers alleged to have used the [digital
notebook"); Response to City CSOF at ¶ 60. Further,
Spriestersbach has not presented any evidence suggesting that
the errors in the Castleberry Digital Notebook Page were known
before Spriestersbach's arrest on May 11, 2017. Spriestersbach
has not identified any evidence which suggests that there is a
genuine issue of fact as to whether City policy regarding the
digital notebook was "so facially deficient that any reasonable
policymaker would recognize the need to take action." See Park,
952 F.3d at 1141 (citation omitted). Neither has Spriestersbach
identified any evidence which suggests that there is a genuine
issue of fact as to whether the use of the digital notebook in
connection with his May 11, 2017 arrest was part of "a pattern
of prior, similar violations of federally protected rights, of
which the relevant policymakers had actual or constructive
notice." See id. at 1142 (citations omitted).

Even viewing the record in the light most favorable to
Spriestersbach as the non-moving party,[13] he has not identified
sufficient evidence to raise a triable issue of fact as to the

---

[13] In considering the City's Motion, this Court must view
the record in the light most favorable to Spriestersbach as the
nonmoving party. See Harris v. Cnty. of Orange, 17 F.4th 849,
855 (9th Cir. 2021).

issue of whether the City was deliberately indifferent in HPD's
use of the digital notebook at the time of Spriestersbach's
May 11, 2017 arrest. This Court finds that there are no genuine
issues of material fact, and the City is entitled to judgment as
a matter of law as to Spriestersbach's Section 1983 claims
against the City. See Fed. R. Civ. P. 56(a) ("The court shall
grant summary judgment if the movant shows that there is no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."). The Motion is
therefore granted as to Counts I and II of the Second Amended
Complaint.

## III. **Supplemental Jurisdiction**

The City argues that, if the Section 1983 claims are
disposed of, and the state law claims are not, this Court should
decline to exercise supplemental jurisdiction over the state law
claims and dismiss them without prejudice to Spriestersbach
refiling them in state court. [Motion, Mem. in Supp. at 22.] If
this Court intended to decline supplemental jurisdiction, it
would do so before addressing whether the City is entitled to
summary judgment as to Spriestersbach's state law claims.

> Pursuant to 28 U.S.C. § 1367(c)(3), the
> Court may decline to exercise supplemental
> jurisdiction over state law claims if it "has
> dismissed all claims over which it has original
> jurisdiction." 28 U.S.C. § 1367(c)(3); see also
> United Mine Workers v. Gibbs, 383 U.S. 715, 726
> (1966). In undertaking this evaluation, the Court

> "should consider and weigh in each case, and at
> every stage of the litigation, the values of
> judicial economy, convenience, fairness, and
> comity." <u>Carnegie-Mellon Univ. v. Cohill</u>, 484
> U.S. 343, 350 (1988). Although the Court's
> decision is discretionary, "in the usual case in
> which all federal-law claims are eliminated
> before trial, the balance of factors . . . will
> point toward declining to exercise jurisdiction
> over the remaining state-law claims." <u>Id.</u> at 350
> n.7.

<u>London v. Heh</u>, Case No. 22-cv-00491-DKW-KJM, 2024 WL 1331949, at

*8 (D. Hawai`i Mar. 27, 2024) (alteration in <u>London</u>).

First, there are federal claims remaining against

other defendants in this case. Spriestersbach was granted leave

to file a third amended complaint against HSH based upon

vicarious liability under ADA Title II. <u>See</u> 7/19/24 State

Defendants Order, 2024 WL 3488365, at*9. Spriestersbach filed

his original Third Amended Complaint on August 19, 2024, and he

filed a revised version on October 11, 2024. [Dkt. nos. 551,

577.]

Moreover, the instant case has been pending for over

three years, and this Court has made substantive rulings

regarding Spriestersbach's state law claims against the City.

<u>See</u> 8/18/22 Order, 622 F. Supp. 3d at 965 (granting judgment on

the pleadings in favor of the City as to Spriestersbach's IIED

and NIED claims, but granting Spriestersbach leave to amend);

4/19/24 City Order, 2024 WL 1703114, at *19 (denying the City's

motion to dismiss Spriestersbach's IIED and NIED claims). Under

36

the circumstances of this case, this Court, in the exercise of
its discretion, will continue to exercise supplemental
jurisdiction over Spriestersbach's state law claims against the
City.

The City's Motion is denied as to its supplemental
jurisdiction argument. This Court therefore turns to the merits
of Spriestersbach's state law claims.

## IV.  <u>State Law Claims</u>

Spriestersbach's IIED claim and NIED claim against the
City are based on a respondeat superior theory. <u>See</u> Second
Amended Complaint at ¶¶ 336, 343. This Court has stated:

> "Under Hawaii law, a municipality can have
> respondeat superior liability for torts
> maliciously committed by an employee acting
> within the scope of his authority."
> <u>McCormack v. City & Cty. of Honolulu</u>, 762 F.
> Supp. 2d 1246, 1253 (D. Haw. 2011). The
> employee must be motivated by malice in his
> commission of the tort, and the plaintiff is
> required to allege malice in the complaint.
> <u>Alexander v. City & Cty. of Honolulu</u>, 545 F.
> Supp. 2d 1122, 1136 (D. Haw. 2008).
>
> <u>Hollandsworth [v. City & Cty. of Honolulu</u>, Civ.
> No. 19-00587 ACK-WRP], 2020 WL 913216, at *11
> [(D. Hawai`i Feb. 25, 2020)]. Hawai`i courts use
> the Restatement (Second) of Agency § 228 analysis
> to determine whether the employee's tortious
> actions were within the scope of his employment.
> <u>See Hollandsworth</u>, 2020 WL 913216, at *12
> (quoting <u>State v. Hoshijo ex rel. White</u>, 102
> Hawai`i 307, 320, 76 P.3d 550, 563 (2003)).
> Section 228 states:
>
> > (1)  Conduct of a servant is within the
> > scope of employment if, but only if:

> (a)  it is of the kind he is employed
> to perform;
>
> (b)  it occurs substantially within the
> authorized time and space limits;
>
> (c)  it is actuated, at least in part,
> by a purpose to serve the master, and
>
> (d)  if force is intentionally used by
> the servant against another, the use of
> force is not unexpectable by the
> master.
>
> (2)  Conduct of a servant is not within the
> scope of employment if it is different in
> kind from that authorized, far beyond the
> authorized time or space limits, or too
> little actuated by a purpose to serve the
> master.

8/18/22 Order, 622 F. Supp. 3d at 964 (quoting Vargas v. City &
Cnty. of Honolulu, CIV. NO. 19-00116 LEK-WRP, 2020 WL 3547941,
at *18-19 (D. Hawai`i June 30, 2020)). To prevail on his IIED
and NIED claims against the City, Spriestersbach must establish
that Bruhn and/or Kon "acted maliciously when they misidentified
and arrested Spriestersbach as Thomas Castleberry." See id. at
965.

### A.   Claims Based on Bruhn's Actions and Omissions

As to Bruhn, Spriestersbach argues there is a triable
issue of fact as to whether Bruhn acted with malice because he
arrested Spriestersbach in spite of the discrepancies between
the photographs and personal identifiers in the records
regarding Thomas Castleberry that were available to Bruhn. See

38

Mem. in Opp. at 20; see also *supra* Background Section
(describing the information that Bruhn considered).

Further, "Bruhn, without any court order, directive
from a supervisor, or instruction in a policy, simply wrote
Joshua Spriestersbach's name on the Castleberry warrant which
misled the state court and the other agencies that took custody
of the Plaintiff afterwards." See Mem. in Opp. at 23; see also
Gerhardstein, Exh. 3 (dkt. no. 510-21, Castleberry Warrant with
handwritten notation "(AKA: SPRIESTERSBACH, JOSHUA C)" under the
defendant's name "THOMAS R. CASTLEBERRY"); id., Exh. 510-22
(Bruhn Depo.) at 55 (acknowledging that he wrote
Spriestersbach's name on the Castleberry Warrant). Bruhn
testified that he wrote Spriestersbach's name on the Castleberry
Warrant because he believed Spriestersbach and Thomas
Castleberry were the same person and to indicate to the courts
that Spriestersbach may be Thomas Castleberry's alias.
[Gerhardstein Decl., Exh. 510-10 (Bruhn Depo.) at 55.] Bruhn
testified that he had written an alias on the face of a warrant
at least five times. [Id. at 56.] He has never been disciplined
for that practice, nor has he been told that it was
inappropriate to do so. [Id. at 58.]

In the context of the conditional privilege analysis,
this Court has noted that the issue of whether malice exists is
generally for the jury to decide, but the issue can be decided

by a court as a matter of law where it is established by

uncontroverted evidence. <u>See</u> Order Granting in Part and Denying

in Part Defendant Allison Garrett, M.D.'s Motion for Summary

Judgment, filed 11/18/24 (dkt. no. 579) ("11/18/24 Garrett

Order"), at 33.[14]

> The Supreme Court of Hawai'i has held that
> "the phrase 'malicious or improper purpose'
> should be defined in its ordinary and usual
> sense." <u>Awakuni v. Awana</u>, 165 P.3d 1027, 1042
> (Haw. 2007). In <u>Awakuni</u>, the Supreme Court relied
> on *Black's Law Dictionary*, which defines
> "malicious" as "'[s]ubstantially certain to cause
> injury' and '[w]ithout just cause or excuse'";
> and defines "malice" as "'[t]he intent, without
> justification or excuse, to commit a wrongful
> act[,]' 'reckless disregard of the law or of a
> person's legal rights[,]' and '[i]ll will;
> wickedness of heart.'" <u>Id.</u> (quoting <u>Black's Law
> Dictionary</u> 976-77 (8th ed. 2004)).

<u>Vargas</u>, 2020 WL 3547941, at *9 (alterations in <u>Vargas</u>) (some

citations omitted).

Although there were inconsistencies in the information

available to Bruhn, he believed that the person he encountered

on May 11, 2017 was Thomas Castleberry and that Joshua

Spriestersbach was an alias. Spriestersbach has not presented

any evidence suggesting that Bruhn intentionally misidentified

Spriestersbach or that Bruhn otherwise acted with ill will or

improper intent towards Spriestersbach. Further, although Bruhn

---

[14] The 11/18/24 Garrett Order is also available at 2024 WL
4818507.

was mistaken when he identified and arrested Spriestersbach as
Thomas Castleberry, Spriestersbach has not presented evidence
that Bruhn knew or should have known about the errors in the
records he reviewed before making the arrest, and the undisputed
evidence shows that Bruhn was not responsible for the ultimate
approval of the arrest. Even viewing the record in the light
most favorable to Spriestersbach as the nonmoving party,
Spriestersbach has failed to raise a genuine issue of fact for
trial as to the issue of whether Bruhn acted with malice.
Compare Vargas, 2020 WL 3547941, at *3, *9 (finding genuine
issues of fact regarding whether the defendant police officer
acted with reckless disregard for the plaintiff's rights where
he went to his vehicle and left another defendant police officer
alone with the female plaintiff who was "highly intoxicated and
agitated," and the second officer subsequently had sexual
relations with the plaintiff);[15] Begley v. Cnty. of Kauai,
CIVIL 16-00350 LEK-RLP, 2019 WL 1590568, at *14 (D. Hawai`i
Apr. 11, 2019) (ruling that malice and conditional privilege
issues could not be decided on summary judgment where there was
evidence that Defendant Darryl Perry made "continued efforts to

---

[15] The plaintiff testified during her deposition that the
second officer raped her, and the officers' position was that
the sexual encounter was consensual. See Vargas, 2020 WL
3547941, at *3.

41

remove Plaintiff from the E911 Board and to challenge
Plaintiff's workers' compensation claim even after Perry's
efforts were rejected or he was warned repeatedly that his
actions were inappropriate").[16]

Because there are no genuine issues of fact as to the
issue of whether Bruhn acted with malice, the portions of
Spriestersbach's IIED and NIED claims against the City based
upon Bruhn's actions and omissions fail as a matter of law. The
City is entitled to summary judgment as to those portions of
Count XI and Count XII.

**B.    Claims Based on Kon's Actions and Omissions**

The City also argues it is entitled to summary
judgment as to the portions of Spriestersbach's IIED and NIED
claims against the City based upon Kon's actions and omissions
because there is no evidence of malice. See Motion, Mem. in
Supp. at 22. Spriestersbach's Motion to Amend seeks, among other
things, to add Kon as a defendant. See Motion to Amend at 5.
Spriestersbach would assert the following claims against Kon:
the Section 1983 claims in Counts I and II; see Proposed Fourth
Amended Complaint (Revised), filed 10/11/24 (dkt. no. 578), at

---

[16] An interlocutory appeal was taken from another portion of
Begley, 2019 WL 1590568. The appeal was dismissed in part for
lack of jurisdiction, and this Court's denial of summary
judgment based on qualified immunity grounds as to the federal
claim was affirmed. Begley v. Cnty. of Kauai, No. 19-15988, 2020
WL 2315248 (9th Cir. Jan. 24, 2020).

pgs. 89, 92; a Section 1983 abuse of process claim ("Count IV");
a malicious prosecution claim ("Count V"); see id. at pgs. 101-
03; and the IIED and NIED claims in Counts XI and XII, see id.
at pgs. 108-10.

　　　　If Spriestersbach is permitted to assert these claims
against Kon and to conduct discovery regarding those claims, the
additional evidence that Spriestersbach obtains may be relevant
to the portions of his IIED and NIED claims against the City
based upon Kon's actions and omissions. Therefore, under the
circumstances of this case, the City's request for summary
judgment as to the portions of Spriestersbach's IIED and NIED
claims against the City based upon Kon's actions and omissions
is premature. That portion of the Motion is denied without
prejudice to the refiling of that portion of the Motion if the
Motion to Amend is denied or to the filing of a new motion for
summary judgment at the appropriate time if the Motion to Amend
is granted.

## CONCLUSION

　　　　For the foregoing reasons, the City's Motion for
Summary Judgment, filed on May 28, 2024, is HEREBY GRANTED IN
PART AND DENIED IN PART. The City's Motion is GRANTED insofar as
summary judgment is granted in favor of the City as to
Spriestersbach's Section 1983 claims (Counts I and II) and as to
the portion of Spriestersbach's IIED and NIED claims (Counts XI

and XII) based on Bruhn's actions and omissions. The Motion is
DENIED WITHOUT PREJUDICE as to the portion of Counts XI and XII
based on Kon's actions and omissions. The Motion is also DENIED
as to the City's supplemental jurisdiction argument.

      IT IS SO ORDERED.

      DATED AT HONOLULU, HAWAII, November 29, 2024.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

**JOSHUA SPRIESTERSBACH VS. STATE OF HAWAII, ET AL; CV 21-00456
LEK-RT; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT
CITY AND COUNTY OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT**