UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JOSHUA SPRIESTERSBACH, | CIV. NO. 21-00456 LEK-RT |
| Plaintiff, | |
| vs. | |
| STATE OF HAWAII, CITY AND COUNTY OF HONOLULU, OFFICER ABRAHAM K. BRUHN, DEPARTMENT OF PUBLIC SAFETY, OFFICE OF THE PUBLIC DEFENDER, NIETZSCHE LYNN TOLAN, MICHELLE MURAOKA, LESLIE MALOIAN, JACQUELINE ESSER, JASON BAKER, MERLINDA GARMA, SETH PATEK, DR. JOHN COMPTON, DR. MELISSA VARGO, DR. SHARON TISZA, HAWAII STATE HOSPITAL, DR. ALLISON GARRETT, JOHN/JANE DOES 1-20, | |
| Defendants. | |

**AMENDED ORDER GRANTING IN PART AND DENYING IN PART
THE PD DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS,
OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

On May 28, 2024, Defendants Office of the Public Defender ("OPD"), Nietzsche Lynn Tolan, Michele Muraoka, Lesley Maloian, Jason Baker, and Seth Patek (all collectively "PD Defendants") filed their Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment ("Motion"). [Dkt. no. 455.] Plaintiff Joshua Spriestersbach ("Spriestersbach" or "Plaintiff") filed his memorandum in opposition on July 17, 2024, and the PD Defendants filed their reply on July 24, 2024.

[Dkt. nos. 512, 530.] On June 21, 2024, Defendant City and County of Honolulu ("the City") filed a statement of no position on the PD Defendants' Motion. [Dkt. no. 482.] This matter came on for hearing on August 7, 2024.

The PD Defendants' Motion is granted in part and denied in part for the reasons set forth below. The Motion is granted insofar as: 1) this Court grants the Motion's request for judicial notice; 2) summary judgment is granted in favor of Defendants Nietzsche Lynn Tolan, Michele Muraoka, Lesley Maloian, Jason Baker, and Seth Patek (collectively "Individual PD Defendants") as to Spriestersbach's intentional infliction of emotional distress claim; and 3) summary judgment is granted in favor of OPD as to Spriestersbach's claim under the Americans with Disabilities Act. The Motion is denied in all other respects.

## BACKGROUND

The operative pleading for purposes of the PD Defendants' Motion is the Second Amended Complaint, [filed 3/29/24 (dkt. no. 362)]. The case arises from Spriestersbach's May 11, 2017 arrest and prosecution for crimes committed by Thomas R. Castleberry and Spriestersbach's subsequent detention at the Oahu Community Correctional Center ("OCCC") and civil commitment related to that arrest until January 17, 2020 at

Hawai`i State Hospital ("HSH"). <u>See</u> Second Amended Complaint at ¶¶ 1-2.

　　　　Relevant to the instant Motion, the claims in the Second Amended Complaint are:

-a claim against OPD alleging violations of the Americans with Disabilities Act ("ADA"), Title 42 United States Code Section 12101, *et seq.* ("Count III");

-an intentional infliction of emotional distress ("IIED") claim against the Individual PD Defendants ("Count XI");

-a negligent infliction of emotional distress ("NIED") claim against the Individual PD Defendants ("Count XII"); and

-a legal malpractice claim against the Individual PD Defendants ("Count XIII").

**I.    <u>The Motion and the Undisputed Facts</u>**

　　　　The PD Defendants seek judgment on the pleadings or, in the alternative, summary judgment in their favor as to all of Spriestersbach's claims against them. [PD Defs.' Motion at 2; <u>id.</u>, Mem. in Supp. at 1.] The PD Defendants and Spriestersbach agree upon the following relevant facts.

　　　　In interactions with the Honolulu Police Department ("HPD") in 2009, 2010, 2011, 2012, 2015, and 2017, Spriestersbach identified himself as "William Castleberry" and "William Charles Castleberry." [PD Defendants' Concise Statement of Material Facts ("PD Defs.' CSOF"), filed 5/28/24 (dkt. no. 456), at ¶ 1; Plaintiff's Response to OPD Defendants' Concise Statement, filed 7/17/24 (dkt. no. 514) ("Responsive

CSOF"), at ¶ 1 (stating that portion of the PD Defs.' ¶ 1 is undisputed).] On May 11, 2017, Spriestersbach was arrested on a bench warrant for Thomas R. Castleberry. See PD Defs.' CSOF at ¶ 2; Responsive CSOF at ¶ 2 (stating that portion of the PD Defs.' ¶ 2 is undisputed); see also PD Defs.' CSOF, Declaration of Justine Hura ("Hura Decl."), Exh. A (dkt. no. 456-11, Bench Warrant in State of Hawai`i vs. Thomas R. Castleberry, Cr. No. 06-1-1421 in the State of Hawai`i First Circuit Court ("Castleberry Warrant," "Castleberry Criminal Case," and "the state court")).[1]

     The Castleberry Criminal Case was filed on July 17, 2006 regarding crimes allegedly committed on June 30, 2006 in Honolulu, Hawai`i. [Plaintiff's Concise Statement of Facts in Support of Plaintiff's Opposition to OPD Defendants' Motion for Summary Judgment ("Spriestersbach CSOF"), filed 7/17/24 (dkt.

---

     [1] The version of the Castleberry Warrant that is the PD Defendants' Exhibit A has a handwritten notation – "(AKA: SPRIESTERSBACH, JOSHUA C)" under Thomas Castleberry's name in the box for the case name. [Dkt. no. 456-11.] Spriestersbach argues this version was not necessarily the version that "OPD accessed – the OPD Defendants had one without the AKA." [Responsive CSOF at ¶ 2 (citing Defendants' Ex. B (Case Docket for "Thomas R. Castleberry"); Ex. 7, OPD 162)).] However, the docket for the Castleberry Criminal Case does not support that proposition. See generally Hura Decl., Exh. B (dkt. no. 456-12, Castleberry Criminal Case Docket). Further, Spriestersbach's Exhibit 7, which consists of OPD's production of various documents in this case does not include a page with Bates stamp OPD 162. See Spriestersbach CSOF, Declaration of John Washington ("Washington Decl."), Exh. 7 (dkt. no. 513-8).

no. 513), at ¶ 1; PD Defendants' Further Reply to Plaintiff's
Concise Statement of Material Facts ("Reply CSOF"), filed
7/24/24 (dkt. no. 530), at ¶ 1 (stating there is "no dispute" as
to Spriestersbach's ¶ 1).] The Castleberry Warrant was for
probation violations in the Castleberry Criminal Case. See
Spriestersbach CSOF at ¶ 11; Reply CSOF at ¶ 11.[2] The Castleberry
Warrant stated it was for felony HOPE probation.[3] See PD Defs.'
CSOF at ¶ 3; Responsive CSOF at ¶ 3 (disputing other portions of
the PD Defs.' ¶ 3); see also Hura Decl., Exh. A (dkt. no. 456-
11, Castleberry Warrant).

After the May 11, 2017 arrest, Spriestersbach was
required to appear in the Castleberry Criminal Case for the
alleged probation violation, and he faced the risk of a sentence
of five years of imprisonment. [PD Defs.' CSOF at ¶ 3;
Responsive CSOF at ¶ 3 (stating that portion of the PD Defs.'

---

[2] The PD Defendants also state Spriestersbach's paragraph 11
is "[i]nartful." [Reply CSOF at ¶ 11.] As to other statements,
they argue Spriestersbach provided an "[i]ncorrect citation."
[Id. at ¶ 18.] Such responses are not construed as disputes of
Spriestersbach's statement of fact.

[3] The PD Defendants describe Hawaii Opportunity Probation
with Enforcement ("HOPE") probation as "a 'high-intensity,
collaborative probation strategy to effect behavioral change in
higher-risk, higher-need felony probationers.'" [Motion, Mem. in
Supp. at 3 & n.3 (quoting S.B. No. 223, S.D. 1, 32nd Leg., Reg.
Sess. (2023), available at
https://www.capitol.hawaii.gov/sessions/session2023/bills/SB223_
SD1_.HTM) (citing State v. Cardenas, 150 Hawai`i 307, 313, 500
P.3d 492, 497 (Haw. App. 2021)).]

¶ 3 is undisputed).] On June 14, 2017, Defendant Nietzsche Lynn
Tolan ("Tolan") requested an examination of Spriestersbach under
Hawai`i Revised Statutes Chapter 704. [PD Defs.' CSOF at ¶ 8;
Responsive CSOF at ¶ 8 (stating that portion of the PD Defs.'
¶ 8 is undisputed).] As Spriestersbach's first counsel, Tolan
would have spoken to Spriestersbach in making that request.
[Spriestersbach CSOF at ¶ 13; Reply CSOF at ¶ 13.]

On September 5, 2017, Defendant Michelle Muraoka
("Muraoka") stipulated to the examiners' letters, and Muraoka
did not investigate Spriestersbach's identity. [PD Defs.' CSOF
at ¶ 9; Responsive CSOF at ¶ 9 (stating the stipulation is
undisputed, and disputing a different portion of the PD Defs.'
¶ 9, implying it is undisputed that Muraoka did not
investigate).]

On November 7, 2017, Defendant Leslie Maloian
("Maloian") took no position regarding the reevaluation of
Spriestersbach's fitness, and Maloian did not investigate
Spriestersbach's identity. [PD Defs.' CSOF at ¶ 10; Responsive
CSOF at ¶ 10 (similar response to ¶ 9 described *supra*).] At the
November 7, 2017 hearing, the state court ordered a single
examiner reassessment of Spriestersbach's fitness to proceed.
[Spriestersbach CSOF at ¶ 18; Reply CSOF at ¶ 18.]

On January 28 and February 6, 2019, Defendant Jason
Baker ("Baker") represented Spriestersbach with regard to with

the examiners' letters, and Baker did not investigate
Spriestersbach's identity. On June 4, 2019, Baker contested the
involuntary medication of Spriestersbach, and did not
investigate Spriestersbach's identity. [PD Defs.' CSOF at ¶¶ 11-
12; Responsive CSOF at ¶¶ 11-12 (similar response to ¶ 9
described *supra*).] The state court granted the motion to allow
HSH to administer involuntary medication to Spriestersbach, over
OPD's objection. [PD Defs.' CSOF at ¶ 13; Responsive CSOF at
¶ 13.]

On August 12, 2019, Deputy Public Defender Merlinda
Garma ("Garma") stipulated to the examiners' letters, and Garma
did not investigate Spriestersbach's identity. [PD Defs.' CSOF
at ¶ 14 (citing Hura Decl., Exhibit B at docket number 148);
Responsive CSOF at ¶ 14 (similar response to ¶ 9 described
*supra*).] Exhibit B is the eCourt Kokua – Case/Docket Search for
the Castleberry Criminal Case ("Castleberry Criminal Case
Docket"). Docket number 148 is the Minutes entry for the
August 12, 2019 determination of fitness proceeding. [Hura
Decl., Exh. B (Castleberry Criminal Case Docket) at
PageID.8434.] It states that Garma appeared for Seth Patek.
[Id.]

On October 29, 2019, Defendant Seth Patek ("Patek")
did not object to the appointment of a three-examiner panel, and
Patek did not investigate Spriestersbach's identity. On

December 30, 2019, Patek stipulated to the three-examiner panel, and Patek did not investigate Spriestersbach's identity. [PD Defs.' CSOF at ¶¶ 15-16; Responsive CSOF at ¶¶ 15-16 (similar response to ¶ 9 described *supra*).]

From 2017 until he was released from HSH, Spriestersbach was found unfit to proceed in the Castleberry Criminal Case. [PD Defs.' CSOF at ¶¶ 4-5; Responsive CSOF at ¶¶ 4-5 (stating those portions of the PD Defs.' ¶¶ 4 and 5 are undisputed).] During that period, the proceedings in the Castleberry Criminal Case were suspended. [PD Defs.' CSOF at ¶ 6; Responsive CSOF at ¶ 6.] "Each Court document and letter of a Court-appointed examiner that was filed for a specific hearing date served as notice to the Deputy Public Defender handling that hearing as to the hearing or opinion of the Chapter 704, [Hawai`i Revised Statutes], examiner, and the bases for it." [PD Defs.' CSOF at ¶ 7; Responsive CSOF at ¶ 7 (stating it is undisputed that the documents and letters provided notice, but pointing out that the Individual PD Defendants' knowledge about the Castleberry Criminal Case should not have been limited to those documents and letters).] The PD Defendants were not informed that Spriestersbach would be released from HSH before his release occurred. [PD Defs.' CSOF at ¶ 17; Responsive CSOF at ¶ 17.]

Each of the Chapter 704 examiners relied on more than one fact to support the opinion that Spriestersbach was unfit to proceed, and none of their opinions were based solely upon Spriestersbach's denial that he was Thomas Castleberry or solely on his denial that he was on probation. [PD Defs.' CSOF at ¶¶ 20-21, 23; Responsive CSOF at ¶¶ 20-21, 23 (stating those portions of the PD Defs.' ¶¶ 20, 21, and 23 are undisputed).]

## II.  Evidence Regarding the Individual PD Defendants

### A.  Tolan

According to the allegations of the Second Amended Complaint, the first time Spriestersbach met Tolan was on June 14, 2017,[4] and he told Tolan he was not Thomas Castleberry, but he was suffering from an obvious mental disability at that time. [Motion, Mem. in Supp. at 12 (citing Second Amended Complaint at ¶¶ 148, 196, 277).] The PD Defendants argue the Chapter 704 requirements were triggered under those circumstances, and Tolan's request for a Chapter 704 examination was lawful, leading to a suspension of the Castleberry Criminal Case. [Id. at 12-13.]

Tolan does not have an independent recollection of the representation of Spriestersbach, but Tolan has reviewed the

---

[4] The reference to June 15, 2017 in the memorandum in support of the Motion appears to be a typographic error that should state June 14, 2017.

docket and documents, in the Castleberry Criminal Case. [PD
Defs.' CSOF, Declaration of Nietzsche Lynn Tolan ("Tolan Decl.")
at ¶¶ 35-37.] Based on Tolan's "habit and practice, as well as
training and experience as a [Deputy Public Defender ('DPD')] in
the HOPE program," Tolan would have gone to court on June 14,
2017 without prior knowledge of who was being brought in for
HOPE probation violations. She would go to the cellblock to meet
with defendants who had been transported for proceedings on HOPE
probation violations. She would not have reviewed those
defendants' underlying case files because she did not know their
identity until she arrived at the state court. [Id. at ¶¶ 39-
41.]

Tolan would review the documents provided by the state
court and would attempt to meet with each defendant at the
cellblock. If no one came when the sheriffs called the defendant
who was required, Tolan would ask the state court for a
continuance because of the lack of the defendant's cooperation.
[Id. at ¶¶ 42-45.] Tolan's review would have included the motion
to revoke Thomas Castleberry's probation that was filed in 2009,
and the return of service on the Castleberry Warrant. [Id. at
¶¶ 58-59.]

On June 14, 2017, Tolan would not have requested a
fitness examination of Spriestersbach unless she had reason to
doubt his fitness when she met with him at the cellblock. [Id.

10

at ¶ 53.] Tolan is "certain" Spriestersbach "was unable to communicate with [her] to such an extent that [she] had reason to doubt his fitness to proceed." [Id. at ¶ 60.] Thus, she requested the Chapter 704 fitness evaluation. [Id. at ¶¶ 61-62.]

Tolan states: "If the person who responded to the name called by the sheriff articulated to me that he was wrongfully arrested, according to my habit and practice, as well as training and experience as a DPD, I would at the appropriate time raise an alibi defense." [Id. at ¶ 51.] There is no indication in the record that Tolan made another appearance in the Castleberry Criminal Case as Spriestersbach's counsel after the June 14, 2017 hearing.

Tolan states that at no time from 2017 until January 22, 2020 was she aware that the person brought to court for the Castleberry Criminal Case was not Thomas Castleberry. [Id. at ¶ 9.] Tolan also states that she did not intentionally or with deliberate indifference exclude Spriestersbach from OPD's services, programs, or activities because of his disability. Further, she did not intentionally or with deliberate indifference discriminate against him because of his disability, [id. at ¶¶ 7-8,] nor did she act with malice toward him, [id. at ¶¶ 5-6].

Spriestersbach emphasizes that Tolan previously represented him. See Washington Decl., Exh. 12 at

11

Spriestersbach_Thomas Castleberry Records_000036 to
Spriestersbach_Thomas Castleberry Records_000040 (dkt. no. 513-
10 at PageID.10586-90) (state court docket sheet reflecting that
Tolan represented Joshua Spriestersbach in State v. William C.
Castleberry, 1P1120002232). Spriestersbach argues that, in spite
of the prior representation, Tolan did not investigate his
identity, did not ask him follow-up questions, and did not
compare Spriestersbach's and Thomas Castleberry's identifying
information. [Mem. in Opp. at 3.]

Spriestersbach also points out that the initial
evaluation letters by the court-appointed doctors who examined
him noted his statements that: he was Joshua Spriestersbach, not
Thomas Castleberry; he was not on probation; and he had not been
on O`ahu in 2006 when offenses underlying the Castleberry
Warrant occurred. See Washington Decl., Exh. 9 at
Spriestersbach_PleadingsPD_000004 to
Spriestersbach_PleadingsPD_000020 (dkt. no. 513-24 at
PageID.11461-77 (8/30/17 letter to the state court from John M.
Compton, Ph.D.; 8/30/17 letter to the state court from Melissa
Vargo, Psy.D.; 8/31/17 letter to the state court from Sharon M.
Tisza, M.D. (collectively "the Panel Examiners' August 2017
Letters")).[5] Dr. Vargo's August 30, 2017 evaluation letter noted

---

[5] Dr. Compton, Dr. Vargo, and Dr. Tisza will be referred to
collectively as "the Panel Examiners."

that Spriestersbach was hospitalized at the Hilo Medical Center
on June 6, 2007 and that he requested to be released on June 8,
2007. [Id. at Spriestersbach_PleadingsPD_000010 (dkt. no. 513-24
at PageID.11469) (page 4 of Dr. Vargo's 8/30/17 letter).]
Spriestersbach argues Thomas Castleberry was in custody on O`ahu
at that time. See Mem. in Opp. at 4; see also Washington Decl.,
Exh. 8 at OPD_TC_000074 (dkt. no. 513-22 at PageID.11415)
(Certificate of Presentence Detention for Thomas Castleberry,
6/29/07 sentencing, noting detention from July 2006).]

    **B.**   **Muraoka**

      The Second Amended Complaint alleges Muraoka made her
first appearance for Spriestersbach on September 5, 2017.
[Second Amended Complaint at ¶ 199.] Muraoka sates that, on that
date, she was assigned to OPD's HOPE probation rotation. [PD
Defs.' CSOF, Declaration of Michel Muraoka ("Muraoka Decl.") at
¶ 28.] According to the Castleberry Criminal Case Docket, the
September 5, 2017 proceeding was for the consideration of the
court-ordered evaluations of Spriestersbach's fitness to
proceed. See Hura Decl., Exh. B (dkt. no. 456-12, Castleberry
Criminal Case Docket) at entry 79; see also id., Exh. F (dkt.
no. 456-16, Exhibits A-C (Panel Examiners' August 2017
Letters)). Muraoka does not have a specific recollection of the
events in her representation of Spriestersbach in the
Castleberry Criminal Case. However, Muraoka has reviewed the

docket sheet in in the Castleberry Criminal Case, a video of her
appearance in the state court on September 5, 2017, and the
documents from the docket that would have been relevant to her
appearance. [Muraoka Decl. at ¶¶ 33-36.]

According to the Castleberry Criminal Case Docket,
Muraoka and the prosecuting attorney stipulated to the Panel
Examiner's opinions regarding fitness to proceed. See Hura
Decl., Exh. B (dkt. no. 456-12, Castleberry Criminal Case
Docket) at entry 79. After considering the Panel Examiners'
August 2017 Letters, the state court found that the defendant,
i.e. Spriestersbach, was not fit to proceed. The proceedings in
the Castleberry Criminal Case were suspended until further order
by the state court. See id., Exh. E (dkt. no. 456-15, Judicial
Determination of Unfitness to Proceed, Suspension of Proceedings
and Order of Commitment to the Custody of the Director of the
Department of Health, filed on 9/5/17 in the Castleberry
Criminal Case). In particular, Dr. Compton's letter noted that
"'Mr. Castleberry reported to me he is also Joshua
Spriestersbach, a named which was listed in prior records as an
additional name.'" [Id., Exh. F (dkt. no. 456-16, Panel
Examiners' August 2017 Letters) at
Spriestersbach_PleadingsPD_000039.]

Based on "habit and practice, as well as training and
experience as a DPD in the HOPE program, as the assigned HOPE

14

probation DPD," Muraoka would have read through the documents provided for the hearing and would have gone to the cellblock before the hearing to speak to an in-custody HOPE probation client. [Muraoka Decl. at ¶¶ 49-51.] Based on the fact that she did not request a contested hearing, Muraoka knows that, during her discussion with him, Spriestersbach did not tell her he disagreed with or contested the Panel Examiners' findings and conclusions. See id. at ¶ 46. There is no indication in the record that Muraoka made another appearance in the Castleberry Criminal Case as Spriestersbach's counsel after the September 5, 2017 hearing.

Muraoka states that, at no time from 2017 until January 22, 2020 was she aware that the person brought to court for the Castleberry Criminal Case was not Thomas Castleberry. [Id. at ¶ 9.] Muraoka also states that did not intentionally or with deliberate indifference exclude Spriestersbach from OPD's services, programs, or activities because of his disability. Further, she did not intentionally or with deliberate indifference discriminate against him because of his disability, [id. at ¶¶ 7-8,] nor did Muraoka act with malice toward him, [id. at ¶¶ 5-6].

Spriestersbach emphasizes that Muraoka reviewed the Panel Examiners' August 2017 Letters and other documents, including the Castleberry Warrant, all of which had Thomas

15

Castleberry's personal identifiers. Spriestersbach points out
that Muraoka represented Thomas Castleberry before. See
Washington Decl., Exh. 7 at OPD 000281 (dkt. no. 513-8 at
PageID.10538) (state court docket sheet, entry 39, reflecting
that Muraoka appeared on behalf of Thomas Castleberry on
10/30/07 in the Castleberry Criminal Case); id. at OPD 000322
(dkt. no. 513-8 at PageID.10581) (state court docket sheet,
entries 3 and 8, reflecting that Muraoka appeared on behalf of
Thomas Castleberry on 7/21/06 and 9/1/06 in 1P1060010796).
Spriestersbach also argues Muraoka is one of the public
defenders to whom he made coherent and lucid statements that he
was not Thomas Castleberry. [Mem. in Opp. at 4.]

> C. **Maloian**

On November 7, 2017, Maloian was at the state court
for another client's case when Maloian was asked to stand-in for
the HOPE public defender. [PD Defs.' CSOF, Declaration of Lesley
Maloian ("Maloian Decl.") at ¶¶ 29-30; Hura Decl., Exh. B (dkt.
no. 456-12, Castleberry Criminal Case Docket) at entry 82
(minutes of 11/7/17 proceeding).] Maloian was asked
"spontaneously and without pre-scheduling." [Maloian Decl. at
¶ 30.] The proceeding addressed a letter from Defendant Allison
Garrett, M.D. ("Dr. Garrett") of HSH requesting a reevaluation

of Spriestersbach's fitness,[6] and Spriestersbach appeared

remotely from HSH. [Hura Decl., Exh. B (dkt. no. 456-12,

Castleberry Criminal Case Docket) at entry 82; id., Exh. G (dkt.

no. 456-17, letter dated 11/3/17 the state court from

Dr. Garrett).]

        Maloian does not have an independent recollection of

the representation of Spriestersbach as stand-in counsel on

November 7, 2017, but Maloian has reviewed the docket,

documents, and video recording of the appearance. [Maloian Decl.

at ¶¶ 31-34.] Based on the circumstances at the time, "habit and

practice, and training and experience," Maloian would have

reviewed Dr. Garrett's letter, which the state court would have

provided to Maloian. [Id. at ¶¶ 36-37.] Based on the

circumstances of Spriestersbach's video teleconference

appearance, Maloian had a small, unclear, and indistinct view of

Spriestersbach's face and body. [Id. at ¶¶ 38-41.] None of the

parties took a position on Dr. Garrett's letter, and Maloian

argues that, pursuant to Chapter 704, there was no legal basis

to take a position. [Id. at ¶ 43.]

---

        [6] This Court has previously noted that Dr. Garrett was the
team leader for Spriestersbach's treatment at HSH. See Order
Granting in Part and Denying in Part Defendant Allison Garrett,
M.D.'s Motion for Summary Judgment, filed 11/18/24 (dkt.
no. 579), at 11 (citations omitted), also available at 2024 WL
4818507.

The state court considered Dr. Garrett's letter, left
the Castleberry Criminal Case suspended, and ordered a
reevaluation of Spriestersbach. See Hura Decl., Exh. H (dkt.
no. 456-18, order, filed 11/9/17 in the Castleberry Criminal
Case, noting the appointment of one examiner at the hearing to
reevaluate the defendant's fitness). There is no indication in
the record that Maloian made another appearance in the
Castleberry Criminal Case as Spriestersbach's counsel after the
November 7, 2017 proceeding.

Maloian states that, at no time from 2017 until
January 22, 2020 was she aware that the person brought to court
for the Castleberry Criminal Case was not Thomas Castleberry.
[Maloian Decl. at ¶ 10.] Maloian also states that she did not
intentionally or with deliberate indifference exclude
Spriestersbach from OPD's services, programs, or activities
because of his disability. Further, she did not intentionally or
with deliberate indifference discriminate against him because of
his disability, [id. at ¶¶ 7-8,] nor did she act with malice
toward Spriestersbach during that period, [id. at ¶¶ 6-7].

Spriestersbach points out that Maloian appeared
numerous times with Thomas Castleberry in the underlying
proceedings in the Castleberry Criminal Case. See, e.g.,
Washington Decl., Exh. 7 at OPD 000274 (dkt. no. 513-8 at
PageID.10531) (state court docket sheet, entries 29 and 30,

18

reflecting that Maloian appeared on behalf of Thomas Castleberry
on 9/5/06 and 9/20/06 in the Castleberry Criminal Case); id. at
OPD 000275 (dkt. no. 513-8 at PageID.10532) (entry 31,
reflecting that Maloian appeared on behalf of Thomas Castleberry
on 9/29/06). Maloian did not communicate directly with
Spriestersbach, but Spriestersbach argues Maloian would have
reviewed the Panel Examiners' August 2017 Letters, which
Spriestersbach argues show he consistently asserted that his
name was Joshua Spriestersbach and that he had not been on
probation. [Mem. in Opp. at 5.]

**D.    Baker**

Baker appeared on Spriestersbach's behalf at a
February 6, 2019 hearing for the determination of fitness to
proceed, and at a January 28, 2019 status conference prior to
that hearing. [Hura Decl., Exh. B (dkt. no. 456-12, Castleberry
Criminal Case Docket) at entry 114 (minutes of 1/28/19
conference), entry 119 (minutes of 2/6/19 hearing).] The defense
did not request a contested hearing, and the state court, having
reviewed the Panel Examiners' recent letters, found that
Spriestersbach was still unfit and left the proceedings in the

Castleberry Criminal Case suspended. [Id. at dkt. no. 119; Hura
Decl., Exh. K.[7]]

Baker does not have an independent recollection of the
events associated with his representation of Spriestersbach, but
Baker has reviewed the docket, documents, and video recordings
of the appearances, where available. [PD Defs.' CSOF,
Declaration of Jason Iokona Ali`i Baker ("Baker Decl.") at
¶¶ 32-35.] Based on his "habit and practice, and training and
experience," before Baker's appearance at the January 28, 2019
status conference as well as before his February 6, 2019
appearance, Baker would have reviewed the state court's minutes
from the prior proceeding – entry 113 in the Castleberry
Criminal Case Docket is the minutes of a December 19, 2018
hearing regarding Spriestersbach's fitness to proceed, during
which the state court set a contested hearing for February 6,
2019 - as well as the Panel Examiners' December 2018 Letters.

---

[7] Exhibit K is Judicial Determination of Unfitness to
Proceed, Suspension of Proceedings and Order of Commitment to
the Custody of the Director of the Department of Health, filed
on February 6, 2019 in the Castleberry Criminal Case, with
Exhibits A, B, and C. [Hura Decl., Exh. K (dkt. no. 456-21).]
Exhibit A is the December 17, 2018 letter to the state court
from Dr. Tisza. [Id. at Spriestersbach_PleadingsPD_000095-99.]
Exhibit B is the December 10, 2018 letter to the state court
from Dr. Compton. [Id. at Spriestersbach_PleadingsPD_000100-05.]
Exhibit C is the December 12, 2018 letter to the state court
from Dr. Vargo. [Id. at Spriestersbach_PleadingsPD_000106-12.]
These will be referred to collectively as "the Panel Examiners'
December 2018 Letters."

[Id. at ¶¶ 36-38.] In connection with his February 6, 2019 appearance, Baker would have also reviewed the state court's subsequent order determining unfitness and the Panel Examiners' December 2018 Letters, which were refiled as exhibits to the order. [Id. at ¶ 39.]

Baker also appeared on Spriestersbach's behalf at a June 4, 2019 hearing on a motion to treat Spriestersbach over his objection. See Hura Decl., Exh. B (dkt. no. 456-12, Castleberry Criminal Case Docket) at entry 130 (minutes of 6/4/19 hearing). To prepare for his June 4, 2019 appearance, Baker would have reviewed the May 24, 2019 motion seeking an order authorizing treatment over the patient's objection ("OTT Motion") and its exhibits. After the hearing, Baker would have reviewed the state court's order granting the OTT Motion. Id. at ¶¶ 40-41; see also Hura Decl., Exh. M (dkt. no. 456-34, OTT Motion), Exh. N (dkt. no. 456-24, order granting the OTT Motion, filed 6/4/19).

Baker states that, based on his habit and practice, he would have gone to the cellblock to discuss each of these hearings with his client beforehand. If no one responded when Baker had the sheriffs call for his client, Baker would have requested a continuance of the hearing. [Baker Decl. at ¶¶ 42-45.] If his client requested to be identified by a name other than what the state court was referring to him as, Baker would

21

have honored the request and would have made a representation to
the state court about the other name. According to Baker, the
fact that Baker did not make such a representation during his
appearances in the Castleberry Criminal Case means that his
client did not tell him his name was Joshua Spriestersbach or
that he preferred to be called by that name. Thus, Baker
understood Spriestersbach was the correct person at issue in the
proceedings. [Id. at ¶¶ 48-50.]

Further, based on his habit, practice, training, and
experience, before a return date for Chapter 704 examiners'
letters, Baker would have reviewed the letters with his client
and would not have stipulated to the letters unless the client
either agreed with them or was in such a condition that the
client could not answer. Otherwise, Baker would have requested a
contested hearing to challenge the examiners' conclusions. [Id.
at ¶¶ 52-53.] Baker would have followed these practices before
the February 6, 2019 hearing in the Castleberry Criminal Case,
and the fact that Baker did not request a contested hearing
indicates that Spriestersbach either agreed to the Panel
Examiners' December 2018 Letters, or Spriestersbach was unable
answer Baker's questions about the letters. [Id. at ¶¶ 54-55.]

As to the June 4, 2019 hearing on the OTT Motion,
Baker would have reviewed it with his client and discussed it
prior to the hearing. Baker requested a contested hearing

22

because it was clear that Spriestersbach objected to the OTT
Motion. [Id. at ¶¶ 59-60.] During the hearing, the state called
a psychiatrist from HSH to testify, and the psychiatrist stated
the defendant's name was Joshua Spriestersbach, and his aliases
were Thomas Castleberry and William Castleberry. [Id. at ¶¶ 61-
62.] Baker presented objections to the OTT Motion on
Spriestersbach's behalf, but the state court granted the motion
over Spriestersbach's objections. [Id. at ¶ 63.]

      The PD Defendants argue they could not have caused the
physical injuries that Spriestersbach suffered as a result of
the involuntary medication because they do not have authority to
arrest or detain anyone, and Spriestersbach had already been
arrested and detained when they came into contact with him.
Further, Baker opposed the OTT Motion. The PD Defendants argue
that, because a physical injury is required, Spriestersbach's
NIED and IIED claims against them fail. [Motion, Mem. in Supp.
at 15 & n.6 (citing Doe Parents No. 1 v. State, Dep't of Educ.,
100 Hawaii 34, 69-70, 58 P. 3d 545, 580-81 (2002)).]

      Baker states that, at no time from 2017 until
January 22, 2020 was he aware that the person brought to court
for the Castleberry Criminal Case was not Thomas Castleberry.
[Baker Decl. at ¶ 9.] Baker also states that he did not
intentionally or with deliberate indifference exclude
Spriestersbach from OPD's services, programs, or activities

23

because of his disability. Further, Baker did not intentionally or with deliberate indifference discriminate against Spriestersbach because of his disability, [id. at ¶¶ 7-8,] nor did Baker act with malice toward him during that period, [id. at ¶¶ 5-6].

Spriestersbach argues Baker's January 28, 2019 and February 6, 2019 appearances would have involved reviewing the Panel Examiners' letters, and they would have involved Baker speaking to Spriestersbach. Spriestersbach argues that, whenever he spoke to his attorneys, he explained why he could not be Thomas Castleberry. [Mem. in Opp. at 5-6.] Spriestersbach points out that Baker had represented Spriestersbach in other proceedings before the events giving rise to this case. See Washington Decl., Exh. 7 at OPD 0003412 (dkt. no. 513-8 at PageID.10583) (state court docket sheet, entry 1, reflecting that Baker appeared on behalf of Thomas Castleberry on 3/29/06 in 1P4060000389). Spriestersbach therefore argues Baker should have investigated Spriestersbach's identity or at least inquired further into Spriestersbach's claims of mistaken identification. [Mem. in Opp. at 6.]

### E. **Patek**

By July 15, 2019, Patek was representing Spriestersbach, and Patek asked Deputy Public Defender Reiko Bryant ("Bryant") to appear in the Castleberry Criminal Case on

24

that date. On May 8, 2019, the state court had ordered the Panel
Examiners to submit letters, but by the July 15, 2019 hearing,
only one letter had been received. The July 15, 2019 minutes
reflect that the hearing was continued. PD Defs.' CSOF,
Declaration of Seth Patek ("Patek Decl.") at ¶¶ 41-42; see also
Hura Decl., Exh. B (dkt. no. 456-12, Castleberry Criminal Case
Docket) at entry 139 (minutes of 7/15/19 hearing).

On August 12, 2019, Garma stood in for Patek at a
hearing to determine whether Spriestersbach was still unfit to
proceed. [Hura Decl., Exh. B (dkt. no. 456-12, Castleberry
Criminal Case Docket) at entry 148 (minutes for 8/23/19
hearing).] The state court considered the Panel Examiners'
letters, which Garma stipulated to, and the state court found
that Spriestersbach was still unfit to proceed, and left the
proceedings suspended. [Id.; Hura Decl., Exh. O.[8]]

---

[8] Exhibit O is Judicial Determination of Unfitness to
Proceed, Suspension of Proceedings and Order of Commitment to
the Custody of the Director of the Department of Health, filed
on August 12, 2019 in the Castleberry Criminal Case, with
Exhibits A, B, and C. [Hura Decl., Exh. O (dkt. no. 456-25).]
Exhibit A is the July 14, 2019 letter to the state court from
Dr. Tisza. [Id. at Spriestersbach_PleadingsPD_000176-79.]
Exhibit B is the August 11, 2019 letter to the state court from
Dr. Compton. [Id. at Spriestersbach_PleadingsPD_000180-87.]
Exhibit C is the July 22, 2019 letter to the state court from
Dr. Vargo. [Id. at Spriestersbach_PleadingsPD_000188-96.] These
will be referred to collectively as "the Panel Examiners' Summer
2019 Letters."

25

Patek, standing in for Deputy Public Defender Jason Kramberg ("Kramberg"), appeared on Spriestersbach's behalf at an October 29, 2019 fitness review hearing. [Hura Decl., Exh. B (dkt. no. 456-12, Castleberry Criminal Case Docket) at entry 157 (minutes for 10/29/19 hearing).] Spriestersbach appeared remotely, HSH staff requested reevaluation by the panel, Patek did not object the request, and the state court granted the request. [Id.; Hura Decl., Exh. P (dkt. no. 456-26, letter dated 10/24/19 to the state court from Ala-Eldin Taha, M.D., HSH Locum Tenens Psychiatrist).]

Patek, standing in for Kramberg, appeared at a December 30, 2019 hearing to consider the Panel Examiners' letters. The state court found that Spriestersbach remained unfit and left the proceedings suspended. Hura Decl., Exh. B (dkt. no. 456-12, Castleberry Criminal Case Docket) at entry 172 (minutes for 12/30/19 hearing); see also id., Exh. Q (dkt. no. 456-27).[9]

---

[9] Exhibit Q is Judicial Determination of Unfitness to Proceed, Suspension of Proceedings and Order of Commitment to the Custody of the Director of the Department of Health, filed on December 30, 2019 in the Castleberry Criminal Case, with Exhibits A, B, and C. [Dkt. no. 456-27.] Exhibit A is the December 29, 2019 letter to the state court from Dr. Tisza. [Dkt. no. 456-27 at Spriestersbach_PleadingsPD_000250-54.] Exhibit B is the December 16, 2019 letter to the state court from Dr. Compton. [Id. at Spriestersbach_PleadingsPD_000255-60.] Exhibit C is the November 20, 2019 letter to the state court from Dr. Vargo. [Id. at Spriestersbach_PleadingsPD_000261-69.]
(. . . continued)

Patek does not have an independent recollection of the events associated with his representation of Spriestersbach, but Patek has reviewed the docket, documents, and video recordings of the appearances, where available. [Patek Decl. at ¶¶ 34-37.] Based on his "habit and practice, and training and experience," Patek would have gone to the cellblock to meet with Spriestersbach before the December 30, 2019 hearing, Spriestersbach must have met with him, and Spriestersbach must have responded when being addressed as Thomas Castleberry or as Tom because Spriestersbach appeared with Patek and Patek did not request a continuance. [Id. at ¶¶ 44-51.] Thus, Patek understood that the person who appeared was the correct person named in the proceedings. [Id. at ¶ 52.] Further, based on the fact that Patek did not request a contested hearing, Spriestersbach must not have expressed to Patek a desire to contest the Panel Examiners' findings and conclusions. The parties stipulated to the Panel Examiners' Winter 2019 Letters, and the state court found that Spriestersbach was still unfit, but the state court set a review hearing for ninety days later. [Id. at ¶¶ 58-59.] Patek also states that he would not have stipulated to the Panel Examiners' findings and conclusions unless his client did not

---

These will be referred to collectively as "the Panel Examiners' Winter 2019 Letters."

27

want to dispute them and there was no specific reason to dispute

them. [Id. at ¶ 64.]

> According to Patek:

> 60. On December 30, 2019, the Court directly
>     addressed Plaintiff directly, stating "Ok
>     Mr. Castleberry, we do want you to proceed
>     with your case, but the doctors are saying -
>     - two of the three doctors, at least are
>     saying -- that you're not quite ready. But
>     the good news is that they do think that --
>     two of the three doctors think that you
>     could become ready, so I am going to ask
>     that you keep working with the hospital
>     staff and going to ask that you consider
>     taking your medication and attend especially
>     your legal restoration classes, ok?"

> 61. On December 30, 2019, Plaintiff responded to
>     the Court's question, above, by saying "Ok."

[Id. at pg. 14.] However, the PD Defendants have not provided a

transcript or recording of the December 30, 2019 state court

proceedings.

Dr. Garrett testified that, after obtaining

Spriestersbach's consent to speak to his public defender, she

called Kramberg on January 3, 2020 and left him a message to

inform him about Spriestersbach's statements that he was

hospitalized when Thomas Castleberry was sentenced for the

charges reflected on the Castleberry Warrant. Dr. Garrett never

received a return call from OPD. [Washington Decl., Exh. 4 (dkt.

no. 513-5, excerpts of trans. of 1/18/24 Deposition of: Allison

Garrett, MD ("Garrett Depo.")) at 227, 231; id., Exh. 10 at

Spriestersbach_Hawaii State Hospital_000039 (dkt. no. 513-25 at
PageID.11536) (pg. 3 of Spriestersbach's HSH Discharge Summary,
signed by Dr. Garrett on 1/29/20).]

On January 16, 2020, the state court filed a notice
setting a hearing on January 22, 2022. [Patek Decl. at ¶ 69;
Hura Decl., Exh. S (dkt. no. 456-29, notice).] On January 22,
2020, the state court, the prosecutor, and Patek met in the
judge's chambers for a conference. Before he arrived, Patek did
not know the reason for the hearing. Patek did not request or
suggest that the conference be held in chambers. During the
chambers conference, the state court informed Patek for the
first time that Spriestersbach has been released and that
Spriestersbach was not the person identified in the Castleberry
Warrant. The state court instructed Patek to inform his
supervisors, and Patek did so. See Patek Decl. at ¶¶ 69-76.

Patek denies attempting to cover up what occurred in
the Castleberry Criminal Case, and he denies that he entered
into an agreement with anyone to cover up what happened. See id.
at ¶¶ 77-78, 82-83. After Spriestersbach's release, Patek did
not have any contact information for Spriestersbach, and
Spriestersbach did not contact Patek. [Id. at ¶¶ 79-80.]

Patek also denies ever "receiv[ing] a voice mail from
a staff person and/or doctor and/or Allison Garrett and/or
Dr. Garrett, from Hawai`i State Hospital stating that a patient

29

and/or OPD client identified as Joshua Spriestersbach or Thomas
Castleberry was wrongfully being held, could not have committed
a crime, or otherwise had an alibi." [Id. at ¶ 84.]

Patek states that, at no time from 2017 until
January 22, 2020 was he aware that the person brought to court
for the Castleberry Criminal Case was not Thomas Castleberry.
[Id. at ¶ 9.] Patek also states that he did not intentionally or
with deliberate indifference exclude Spriestersbach from OPD's
services, programs, or activities because of his disability.
Further, Patek did not intentionally or with deliberate
indifference discriminate against Spriestersbach because of his
disability, [id. at ¶¶ 7-8,] nor did Patek act with malice
toward him during that period, [id. at ¶¶ 5-6].

Spriestersbach argues Patek appeared for
Spriestersbach four times, and Patek spoke with him at least
three times, and Spriestersbach would have told Patek each time
that he was not Thomas Castleberry and would have explained why.
Patek also would have reviewed the Panel Examiners' letters, and
would have known that Spriestersbach obtained a birth
certificate. [Mem. in Opp. at 6.] Spriestersbach argues that, by
October 24, 2019, his condition had improved such that he
understood the legal process. See Washington Decl., Exh. 9 at
Spriestersbach_PleadingsPD_000219 (dkt. no. 513-24 at
PageID.11525) (pg. 1 of 10/24/19 letter to the state court from

30

Dr. Taha).[10] Thus, Spriestersbach argues Patek should have
attempted to verify Spriestersbach's statements that he was not
Thomas Castleberry, but Patek took no action. [Mem. in Opp. at
6-7.]

## II.  **Other General Evidence**

Spriestersbach emphasizes that he and Thomas
Castleberry have different dates of birth, social security
numbers, state ID numbers, eye colors, and hair colors, and
Spriestersbach argues they "are visibly different people." Mem.
in Opp. at 3; see also Washington Decl., Exh. 8 at OPD_THOMAS
CASTLEBERRY_000207 (dkt. no. 513-22 at PageID.11416) (Honolulu
Police Department Inmate Data – Full Sheet with Photo, for
Thomas Castleberry, dated 7/1/06, noting height (6'4"), weight
(235 lbs.) and eye color (green)); id. at OPD_THOMAS
CASTLEBERRY_000208 (dkt. no. 513-22 at PageID.11417) (CJIS-
Hawaii Criminal Justice Inquiry – Full Rap Sheet for Thomas
Castleberry, noting height (6'3"), weight (233 lbs.), hair color
(blond), and eye color (hazel)); Washington Decl., Exh. 14 at
C000220 (dkt. no. 513-27 at PageID.11557) (Honolulu Police
Department Arrest Report for Spriestersbach's 5/11/17 arrest,
noting height (6'1"), weight (180 pounds), eye color (blue), and
hair color (blond)).

---

[10] Dr. Taha's letter is also the PD Defendants' Exhibit P.
[Dkt. no. 456-26.]

Spriestersbach also points out that OPD represented
both Spriestersbach and Thomas Castleberry prior to the events
in this case. See, e.g., Washington Decl., Exh. 7 at OPD 000316
to OPD 0000323, OPD 000341 to OPD 000342 (dkt. no. 513-8 at
PageID.10574-84) (state court docket sheets reflecting that OPD
represented Thomas Castleberry in 1P4060000810, 1P1060010795,
1P1060010793, 1P1060010796, 1P4060000389); id. at OPD 000310 to
OPD 000315 (dkt. no. 513-8 at PageID.10568-73) (state court
docket sheets reflecting that OPD represented the defendant in
State v. William C. Castleberry, 1P1110010376, and that OPD,
including Baker, represented the defendant in State v.
William C. Castleberry, 1P1120002232);[11] Washington Decl.,
Exh. 12 at Spriestersbach_Thomas Castleberry Records_000036 to
Spriestersbach_Thomas Castleberry Records_000040 (dkt. no. 513-
10 at PageID.10586-90) (state court docket sheet reflecting that
Tolan represented Joshua Spriestersbach in State v. William C.
Castleberry, 1P1120002232).

---

[11] Entry 44, the minutes of a November 23, 2012 proceeding,
refers to "DPD I Baker." [Washington Decl., Exh. 7 at OPD 000315
(dkt. no. 513-8 at PageID.10573).] This refers to Defendant
Baker. See id., Exh. 3 (dkt. no. 513-4, excerpts of trans. of
William Bento's 1/25/24 Rule 30(b)(6) videoconference
deposition, vol. I ("Bento Depo.")) at 223. William Bento
("Bento") has been a DPD with OPD since June 1987, and he has
been the Felony Supervising DPD since 2018. [Bento Decl. at
¶¶ 2-3.]

According to Spriestersbach, he told Tolan and every public defender that he could speak to that he was not Thomas Castleberry, he had never been on probation, his real name was Joshua Spriestersbach, and he was going to obtain a birth certificate to confirm his identity. [Washington Decl., Exh. 1 (dkt. no. 513-2, excerpts of trans. of 12/4/23 Videotaped Deposition of Joshua Spriestersbach ("Spriestersbach Depo.")) at 74-76, 78, 80-81, 83.] Spriestersbach argues he was coherent and lucid when he made those representations to the public defenders. [Mem. in Opp. at 3.] In particular, Spriestersbach points out that, during the November 7, 2017 appearance on his behalf, Maloian acknowledged reviewing Dr. Garrett's November 3, 2017 report. See Washington Decl., Exh. 20 (excerpt of trans. of 11/7/17 proceeding in the Castleberry Criminal Case) at 2 (dkt. no. 513-17 at PageID.10659); Plaintiff's Concise Statement of Facts in Support of His Opposition to Defendant Garrett's Motion for Summary Judgment, filed 6/24/24 (dkt. no. 488), Declaration of John Washington, Exh. 5 (redacted HSH records, dkt. no. 488-7) at PageID.11905 (letter dated 11/3/17 to the state court from Dr. Garrett stating Mr. Castleberry - *i.e.,* Spriestersbach - "has been clear and coherent").

HSH staff assisted Spriestersbach in obtaining government identification documents reflecting his name as Joshua Spriestersbach. He obtained a birth certificate issued on

33

November 1, 2017, a social security card issued on February 26, 2018, and a State of Hawai`i identification card ("State ID") issued on February 26, 2018. See PD Defs.' CSOF, Declaration of Teri Kashiwamura ("Kashiwamura Decl.") at ¶¶ 6-7, 10-12;[12] see also Washington Decl., Exh. 5 (dkt. no. 513-6, excerpts of trans. of 6/28/22 Deposition of: Teri J. Kashiwamura ("Kashiwamura Depo.")) at 19. Kashiwamura testified that, after Spriestersbach had these forms of identification, his HSH treatment team advised him to get in touch with his public defender or speak to the public defender the next time he went to court to discuss the discrepancy between Spriestersbach's name and the name that the court proceedings were under. [Washington Decl., Exh. 5 (dkt. no. 513-6, Kashiwamura Depo.) at 19.]

Kashiwamura also testified that there was one court hearing that she attended when she brought Spriestersbach's birth certificate, social security card, and State ID. Kashiwamura spoke to Spriestersbach's public defender to let him know that she had identification documents showing the defendant's name was Joshua Spriestersbach. [Id. at 20-21.]

_____

[12] Teri Kashiwamura ("Kashiwamura") is a licensed social worker who has been employed at HSH since May 2011. [Kashiwamura Decl. at ¶¶ 1-2.] Kashiwamura was assigned as Spriestersbach's social worker on October 6, 2017. [Id. at ¶ 4.]

However, she did not remember the date of the hearing or who Spriestersbach's public defender was on that date.[13] [Id. at 21-22.] According to Kashiwamura, she "probably [attended] the majority of [Spriestersbach's] hearings," [id. at 22,] but she did not attend any proceeding in which Spriestersbach appeared by video teleconference, and she did not attend any proceeding for which Spriestersbach was not transported to the state court, [Kashiwamura Decl. at ¶¶ 13-14].

Spriestersbach testified that he made numerous attempts to call his public defender, including Patek and Muraoka, but they never answered when he called, and he could not leave a message because the voicemail box was full.

---

[13] Kashiwamura reviewed the state court's video records for court proceedings that she may have attended when Spriestersbach appeared in the Castleberry Criminal Case to determine when she informed Spriestersbach's public defender about Spriestersbach's government identification. See Kashiwamura Decl. at ¶ 20. Of the hearings that occurred after Spriestersbach obtained his government identification, Kashiwamura was not physically present at the proceedings on April 3, 2018, July 10, 2018, October 9, 2018, January 28, 2019, May 7, 2019, October 29, 2019 or January 22, 2020. See id. at ¶¶ 25-27, 29, 31, 35, 37. Kashiwamura was physically present at the proceedings on December 19, 2018, July 15, 2019, August 12, 2019, December 30, 2019, but Kashiwamura does not believe she spoke to Spriestersbach's public defender on any of those dates. [Id. at ¶¶ 28, 33-34, 36.] Kashiwamura does not believe she was physically present at the proceedings on February 6, 2019 or June 4, 2019. [Id. at ¶¶ 30, 32.] Thus, she does not believe that she spoke to either Baker, Patek, or Kramberg. See id. at ¶¶ 41-42.

[Washington Decl., Exh. 1 (dkt. no. 513-2, Spriestersbach Depo.) at 77-78, 87-90.]

Spriestersbach argues OPD is aware of misidentified clients. See id., Exh. 3 (dkt. no. 513-4, Bento Depo.) at 103-05. Further, Spriestersbach emphasizes that Patek estimated he knew of ten cases during his career where the defendant was misidentified, most of which occurred before the events at issue in this case. See id., Exh. 6 (dkt. no. 513-7, excerpts of trans. of 12/6/23 Deposition of: Seth Patek ("Patek Depo.")) at 219-20; Spriestersbach CSOF, Exh. 22 (Gary Gibson's expert report ("Gibson Report")) at 20).] Spriestersbach's expert opines that OPD's lack of training is unreasonable and amounts to tolerance of the practice of ignoring the needs of the mentally ill, such as happened here. See Washington Decl., Exh. 22 (dkt. no. 513-29, Gary Gibson's expert report dated 2/16/24 ("Gibson Report")) at 22-23. Spriestersbach points out that, after the events at issue in this case, OPD did not change any policies or take any actions to prevent similar situations. See id., Exh. 3 (dkt. no. 513-4, Bento Depo.) at 236-38; id., Exh. 6 (dkt. no. 513-7, Patek Depo.) at 214-15.

## DISCUSSION

## I.  Procedural Issues

The PD Defendants seek judgment on the pleadings or, in the alternative, summary judgment. See Motion at 2. In light

36

of the procedural posture of Spriestersbach's claims against the PD Defendants and in light of the record before this Court in connection with the Motion, this Court elects to consider the Motion under the summary judgment standard. The PD Defendants' request for judgment on the pleadings is therefore denied.

Spriestersbach's memorandum in opposition points out that he has a pending motion to compel discovery from the PD Defendants. See Mem. in Opp. at 9 n.2; see also Plaintiff's Motion to Compel Responses from Public Defender Defendants, filed 5/6/24 (dkt. no. 419) ("Motion to Compel"). After the hearing on the instant Motion, the magistrate judge issued an order granting the Motion to Compel in part and denying it in part. [Order Granting in Part and Denying in Part Plaintiff's Motion to Compel Responses from Public Defender Defendants, filed 8/30/24 (dkt. no. 557) ("8/30/24 Order").] However, Spriestersbach did not seek leave to supplement the summary judgment record after the magistrate judge filed the 8/30/24 Order. Therefore, Spriestersbach has failed to establish that the discovery dispute addressed in the Motion to Compel prevented him from presenting facts essential to his opposition to the PD Defendants' Motion. To the extent that Spriestersbach's memorandum in opposition includes a request pursuant to Rule 56(d) of the Federal Rule of Civil Procedure, the request is denied. See Fed. R. Civ. P. 56(d) ("If a

37

nonmovant shows by affidavit or declaration that, for **specified reasons**, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." (emphasis added)).

## II.  <u>Request for Judicial Notice</u>

The PD Defendants ask this Court to take judicial notice of the return on the Castleberry Warrant (Exhibit A), the docket sheet in the Castleberry Criminal Case (Exhibit B), and various filings related to Spriestersbach in the Castleberry Criminal Case (Exhibits C through Q and Exhibit S). [Motion, Mem. in Supp. at 9.] This Court has previously taken judicial notice of such records in connection with the PD Defendants' motion to dismiss an earlier version of the complaint. <u>See</u> Order Granting in Part and Denying in Part the PD Defendants' Motion to Dismiss Plaintiff Joshua Spriestersbach's *First Amended Complaint* Filed on October 18, 2023, filed 3/15/24 (dkt. no. 351) ("3/15/24 PD Defendants Order"), at 8-9.[14] For the same reasons stated in the 3/15/24 PD Defendants Order, the request for judicial notice in the instant Motion is granted. This Court takes judicial notice of the PD Defendants' Exhibits A through Q

---

[14] The 3/15/24 PD Defendants Order is also available at 723 F. Supp. 3d 955.

and Exhibit S, but this Court does not take judicial notice of
the disputed facts within those filings.

## III. __Claims Against the Individual PD Defendants__

### A.    __Conditional Privilege__

This Court turns first to the PD Defendants' argument
that the Individual PD Defendants are entitled to the protection
of the conditional privilege from Spriestersbach's claims
against them, which are all state law tort claims. See Motion,
Mem. in Supp. at 11-12.

In the 3/15/24 PD Defendants Order, this Court noted
that "Hawaii law provides that a nonjudicial government official
has a qualified or conditional privilege with respect to his or
her tortious actions taken in the performance of his or her
public duty." 723 F. Supp. 3d at 969 (some citations omitted)
(citing Towse v. State of Hawaii, 647 P.2d 696, 702 (Haw.
1982)). This Court "conclude[d] that the conditional privilege
may, under appropriate circumstances, apply to public
defenders." Id. at 970. "[T]he conditional privilege does not
protect [government physicians, attorneys, or other similar]
professionals when they fail to perform their usual duties in a
reasonable and competent manner." Id. (citing Slingluff v. State
Dep't of Pub. Safety, 131 Hawai`i 239, 249, 317 P.3d 683, 693
(Ct. App. 2013)). In Slingluff, the Hawai`i Intermediate Court
of Appeals ("ICA") held that the government physician defendants

39

were not entitled to the conditional privilege as to decisions
that only involved medical diagnosis and treatment because those
were exercises of purely medical discretion, as opposed to
policy making or the exercise of other types of governmental
discretion. See id. (citing Slingluff, 131 Hawai`i at 250, 317
P.3d at 694).

Where the defendant is entitled to the conditional
privilege,

> the injured party must allege and demonstrate by
> clear and convincing proof that the official was
> motivated by malice and not by an otherwise
> proper purpose. Towse, 647 P.2d at 702-03;
> Medeiros [v. Kondo], 522 P.2d [1269,] 1272 [(Haw.
> 1974)]. When a public official is motivated by
> malice, and not by an otherwise proper purpose,
> Hawaii law provides that the cloak of immunity is
> lost and the official must defend the suit the
> same as any other defendant. Marshall v. Univ. of
> Haw., 821 P.2d 937, 946 (Haw. Ct. App. 1991),
> abrogated on other grounds by Hac v. Univ. of
> Haw., 73 P.3d 46 (Haw. 2003).
>
> The existence or absence of malice is
> generally a question for the jury. Runnels [v.
> Okamoto], 525 P.2d [1125,] 1129 [(Haw. 1974)].
> However, when the existence or absence of malice
> is demonstrated to the court via uncontroverted
> affidavits or depositions, the court may rule on
> the existence or absence of malice as a matter of
> law. See id.

Id. at 969 (some citations omitted).

### 1. **Tolan**

In the 3/15/24 PD Defendants Order, this Court ruled
that Tolan was entitled to the conditional privilege because her

decision to request a competency evaluation instead of

investigating Spriestersbach's assertion that he was not Thomas

Castleberry

> was not an exercise of her legal discretion, such
> as a choice between two strategic options. Her
> decision to request a competency evaluation and
> not to undertake an investigation into his
> identity was an exercise of government discretion
> because, in additional [sic] to legal
> considerations, it involved medical
> considerations and because the investigation
> would have required Tolan to question, *inter
> alia*, HPD's and OCCC's records identifying
> Spriestersbach as Thomas Castleberry.

Id. at 970. Spriestersbach's state law claims against Tolan in

the First Amended Complaint, [filed 10/18/23 (dkt. no. 250),]

were dismissed because he had "not pled factual allegations

that, if proven to be true, would establish by clear and

convincing evidence that Tolan was motivated by malice and not

by an otherwise proper purpose." 3/15/24 PD Defendants Order,

723 F. Supp. 3d at 971.

Similar to the factual allegations that this Court

considered in the 3/15/24 PD Defendants Order, the record before

this Court in the request for summary judgment as to

Spriestersbach's claims against Tolan shows that Tolan made only

one appearance as Spriestersbach's counsel in the Castleberry

Criminal Case. See Hura Decl., Exh. B (dkt. no. 456-12,

Castleberry Criminal Case Docket) at entry 57 (minutes of

6/14/17 proceeding). The focus of Spriestersbach's claims

41

against Tolan is Tolan's decision to request a Chapter 704
fitness to proceed examination. However, Tolan states she is
"certain that between 2017-2020, Joshua Spriestersbach never
articulated to [her] that he was not the defendant whom the
probation officer, the Court, the prosecutor, and/or police had
originally intended to hale to Court for the alleged probation
proceedings in" the Castleberry Criminal Case. [Tolan Decl. at
¶ 28.] Spriestersbach testified at his deposition that the first
time he told anyone from OPD that he was not Thomas Castleberry
was "right at the beginning," the first time he talked to his
public defender at the window before a court appearance.
[Washington Decl., Exh. 1 (dkt. no. 513-2, Spriestersbach Depo.)
at 74-75.] He also testified that "[a]ny other time" and
"[e]very time" he had the opportunity to speak to public
defender he told them he and Thomas Castleberry were not the
same person. [Id. at 83.] In ruling on the PD Defendants'
Motion, this Court cannot determine whether Tolan's testimony or
Spriestersbach's is more credible or which should be given more
weight. See Estate of Lopez ex rel. Lopez v. Gelhaus, 871 F.3d
998, 1009 n.10 (9th Cir. 2017) ("At the summary judgment stage,
'[c]redibility determinations, the weighing of the evidence, and
the drawing of legitimate inferences from the facts are jury
functions, not those of a judge.'" (alteration in Lopez)
(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106

42

S. Ct. 2505, 91 L. Ed. 2d 202 (1986))). This Court finds that
there are genuine issues of material fact as to whether
Spriestersbach told Tolan that he was not Thomas Castleberry.
This necessarily means that there are genuine issues of material
fact as to whether Tolan's decision to request a competency
evaluation was an exercise of judicial discretion. See 3/15/24
PD Defendants Order, 723 F. Supp. 3d at 970 ("Her decision to
request a competency evaluation and not to undertake an
investigation into his identity was an exercise of government
discretion because . . . it involved medical considerations and
because the investigation would have required Tolan to question,
inter alia, HPD's and OCCC's records identifying Spriestersbach
as Thomas Castleberry.").

      Further, Tolan does not specifically recall the events
of her representation of Spriestersbach in the Castleberry
Criminal Case, see Tolan Decl. at ¶ 35, and she relies upon on
her "habit and practice, as well as training and experience as a
DPD in the HOPE program" to determine what would have transpired
on June 14, 2017, see id. at ¶¶ 38-43, 45-46. She also notes her
"licensing, training, and experience as an attorney does **not**
provide [her] with the licensing, training and experience to
medically diagnose a person, including for any mental illness."
[Id. at ¶ 22 (emphasis in original).] These statements indicate
that Tolan did not exercise the type of government discretion

43

that was the basis of the conditional privilege analysis in the 3/15/24 PD Defendants Order, rather she was exercising legal discretion. See 3/15/24 PD Defendants Order, 723 F. Supp. 3d at 970. In that order, this Court noted that, in Slingluff, 131 Hawai`i at 249, 317 P.3d at 693, the ICA held that the conditional privilege does not protect government medical professionals when they fail to perform their usual duties in a reasonable and competent manner, and this Court extended the Slingluff analysis to government attorneys. 3/15/24 PD Defendants Order, 723 F. Supp. 3d at 970.

Based on the record currently before it, this Court cannot conclude that Tolan is entitled to the protection of the conditional privilege as a matter of law. Therefore, it is unnecessary to address whether Spriestersbach has raised a triable issue of fact as to whether Tolan lost the protection because she was motivated by malice. See id. at 969 ("When a public official is motivated by malice, and not by an otherwise proper purpose, Hawaii law provides that the cloak of immunity is lost and the official must defend the suit the same as any other defendant." (citations omitted)).

To the extent that the PD Defendants argue Tolan is entitled to summary judgment as to all of Spriestersbach's claims against her because she is protected by the conditional privilege, the Motion is denied.

44

## 2.   Other Individual PD Defendants

The testimony by the other Individual PD Defendants is similar to Tolan's:

-Spriestersbach did not tell them he was the person charged in the Castleberry Criminal Case; [Muraoka Decl. at ¶ 27; Maloian Decl. at ¶ 28; Baker Decl. at ¶ 25; Patek Decl. at ¶ 27;]

-they do not have licenses, training, or experience to make medical diagnoses; [Muraoka Decl. at ¶ 22; Maloian Decl. at ¶ 23; Baker Decl. at ¶ 20; Patek Decl. at ¶ 22;]

-they do not specifically recall the events associated with their representation of Spriestersbach in the Castleberry Criminal Case; [Muraoka Decl. at ¶ 33; Maloian Decl. at ¶ 31; Baker Decl. at ¶ 32; Patek Decl. at ¶ 34;] and

-they rely on their habit and practice, and their training and experience as DPDs to determine what they did during their representation of Spriestersbach, see, e.g., Muraoka Decl. at ¶ 37; Maloian Decl. at ¶ 35; Baker Decl. at ¶ 37; Patek Decl. at ¶ 38.

For the same reasons set forth *supra* as to Tolan, this Court finds that there are genuine issues of material fact that preclude summary judgment based on the conditional privilege as to the other Individual PD Defendants. To the extent that the PD Defendants argue Muraoka, Maloian, Baker, and Patek are each entitled to summary judgment as to all of Spriestersbach's claims against them because they are protected by the conditional privilege, the Motion is denied.

## B.   Negligence-Based Claims

There are four elements to Count XIII, Spriestersbach's legal malpractice claim: "(1) the parties had

an attorney-client relationship, (2) the defendant committed a
negligent act or omission constituting breach of that duty,
(3) there is a causal connection between the breach and the
plaintiff's injury, and (4) the plaintiff suffered actual loss
or damages." See Thomas v. Kidani, 126 Hawai`i 125, 129, 267
P.3d 1230, 1234 (2011) (citations omitted). Based on the
evidence presented in connection with the instant Motion, the
first element is not in dispute. Further, whether Spriestersbach
suffered loss and/or damages is not in dispute because it is
clear that Spriestersbach was wrongfully detained as Thomas
Castleberry in connection with the Castleberry Criminal Case.

As to the second element of an IIED claim, the Second
Amended Complaint alleges the Individual PD Defendants had:

- "a duty of care to diligently investigate the issue of identity
  in [Spriestersbach's] case"; [Second Amended Complaint at
  ¶ 348;]

- "a duty to confer with [Spriestersbach] on the objective of
  their representation"; [id. at ¶ 349;] and

- "a duty to read Thomas R. Castleberry's court file,
  [Spriestersbach]'s files, and [Spriestersbach]'s medical
  reports," [id. at ¶ 350].

Further, Spriestersbach alleges that, after his
misidentification and wrongful incarceration were uncovered in
January 2020, the Individual PD Defendants "had a duty to make a
record with the Court and also request that the criminal
database be corrected so that [Spriestersbach] would not be

46

unlawfully arrested and incarcerated as Thomas R. Castleberry in the future." [Id. at ¶ 351.]

Under Hawai`i law, expert testimony regarding the standard of care is not always required in a legal malpractice case. See Collins v. Greenstein, 61 Haw. 26, 40, 595 P.2d 275, 283 (1979) (stating that, "in some situations proof of negligence may be sufficiently clear . . . without the aid of experts" and, "in a case where expert testimony is not required, it is for the trial court to determine the reasonable standard of care, skill, and diligence which must be exercised by an attorney"). Spriestersbach submits the expert testimony of Gary Gibson, Esq. [Spriestersbach CSOF, Exh. 22 (dkt. no. 513-29 Gibson Report)).[15]]

This Court has found that there is a triable issue of fact as to whether Spriestersbach told each of the Individual PD Defendants that he was not the person named as the defendant in the Castleberry Criminal Case. Further, Mr. Gibson opines that, "[e]ven if Mr. Spriestersbach had not expressed concerns about his identity, or was unclear about the matter, his lawyers had a duty to do basic investigation of his identity in this case." [Id. at 21.] Mr. Gibson also opines that, "[t]he fact the

---

[15] Gary Gibson retired from the San Diego County Public Defender's Office in March 2016 after working there for twenty-five years. [Spriestersbach CSOF, Exh. 22 (dkt. no. 513-29, Gibson Report) at 5.]

proceedings here related to HOPE probation, or that HOPE
probation proceedings may have involved less extensive
representation than other cases, does not absolve lawyers . . .
from taking reasonable and available precautions to protect
their client." [Id. at 20.] Thus, Mr. Gibson opines that, "[i]n
failing to verify Mr. Spriestersbach's identity under the facts
here, the [I]ndividual [PD] Defendants' conduct was far below
that expected of lawyers and public defenders, and recklessly
exposed Mr. Spriestersbach to the long detention he
experienced." [Id. at 22.]

        Viewing the record, including the Gibson Report, in
the light most favorable to Spriestersbach,[16] there is a genuine
issue of material fact for trial as to whether each of the
Individual PD Defendants committed at least one negligent
omission - i.e., failing to verify Spriestersbach's identity –
that constituted a breach of the applicable standard of care.
Insofar as Spriestersbach was released once it was determined
that he was not Thomas Castleberry, it can be reasonably
inferred from the record that, if one or more of the PD
Defendants committed that breach of duty, there is a causal
connection between the breach and at least part of

----

[16] In considering the PD Defendants' Motion, this Court must
view the record in the light most favorable to Spriestersbach as
the nonmoving party. See Harris v. Cnty. of Orange, 17 F.4th
849, 855 (9th Cir. 2021).

Spriestersbach's injury. If one of the Individual PD Defendants had investigated Spriestersbach's identity and discovered he was not Thomas Castleberry, Spriestersbach would not have been wrongfully detained for as long as he was.

Because there are genuine issues of material fact for trial as to Spriestersbach's legal malpractice claim against each of the Individual PD Defendants, the Motion is denied as to Count XIII.

Similarly, the Individual PD Defendants are not entitled to summary judgment as to Spriestersbach's NIED claim because the NIED claim is based on the same allegedly negligent conduct that is the basis of the legal malpractice claim.

> This district court has stated the elements of an NIED claim are:
>
> > (1)  that the defendant engaged in negligent conduct;
> >
> > (2)  that the plaintiff suffered serious emotional distress; and,
> >
> > (3)  that such negligent conduct by the defendant was a legal cause of the serious emotional distress.
>
> Kauhako v. State of Hawaii Bd. Of [sic] Ed., Civ. No. 13-00567 DKW-BMK, 2015 WL 5312359, *11 (D. Haw. Sept. 9, 2015).
>
> **An NIED claim is merely a negligence claim alleging a wholly psychic injury.** Duty and breach of duty are essential elements of an NIED claim and are analyzed utilizing ordinary negligence principles.

> Kahoohanohano v. Dep't of Human Servs., 178
> P.3d 538, 582 (Haw. 2008).
>
> Ricks v. Matayoshi, CIV. NO. 16-00044 HG-KSC,
> 2017 WL 1025170, at *11 (D. Hawai`i Mar. 16,
> 2017), aff'd sub nom. Ricks v. Dep't of Educ.,
> 752 F. App'x 518 (9th Cir. 2019). Further, under
> Hawai`i law, as part of the plaintiff's
> requirement to prove actual injury, he must prove
> "that someone was physically injured by the
> defendant's conduct, be it the plaintiff himself
> or herself or someone else." Doe Parents No. 1 v.
> State, Dep't of Educ., 100 Hawai`i 34, 69-70, 58
> P.3d 545, 580-81 (2002) (citation omitted).

[Order Granting in Part and Denying in Part Defendant City and County of Honolulu's Motions Filed on November 1, 2024, [Dkt. Nos. 257, 258], filed 4/19/24 (dkt. no. 386) ("4/19/24 City Order"),[17] at 50-51 (emphasis added).]

The genuine issues of material fact that preclude summary judgment as to Spriestersbach's legal malpractice claim against the Individual PD Defendants also preclude summary judgment as to Spriestersbach's NIED claim. The Motion is therefore denied as to Count XII.

## C.    **Count XI - IIED Claim**

> [T]he tort of IIED consists of four elements:
> "1) that the act allegedly causing the harm was
> intentional or reckless, 2) that the act was
> outrageous, and 3) that the act caused 4) extreme
> emotional distress to another." Hac [v. Univ. of
> Hawai`i], 102 Hawai`i [102,] 106-07, 73 P.3d
> [46,] 60-61 [(2003)]. "The term 'outrageous' has
> been construed to mean without just cause or
> excuse and beyond all bounds of decency." Enoka

---

[17] The 4/19/24 City Order is also available at 2024 WL 1703114.

> v. AIG Hawai`i Ins. Co., Inc., 109 Hawai`i 537,
> 559 128 P.3d 850, 872 (2006) (citations and some
> internal quotation marks omitted). "The question
> whether the actions of the alleged tortfeasor are
> unreasonable or outrageous is for the court in
> the first instance, although where reasonable
> people may differ on that question it should be
> left to the jury." Takaki v. Allied Machinery
> Corp., 87 Hawai`i 57, 68, 951 P.2d 507, 518 (App.
> 1998) (quotations and quotation marks omitted).

Young v. Allstate Ins. Co., 119 Hawai`i 403, 429, 198 P.3d 666,

692 (2008). Even viewing the record in the light most favorable

to Spriestersbach, he has not identified any evidence that

raises a genuine issue of material fact as to whether any of the

Individual PD Defendants intentionally contributed to his

continued detention.

The elements of an IIED claim under Hawai`i law were

adopted from the Restatement (Second) of Torts. See Brooks v.

Dana Nance & Co., 113 Hawai`i 406, 415, 153 P.3d 1091, 1100

(2007) (citing Hac v. Univ. of Hawai`i, 102 Hawai`i 92, 95, 73

P.3d 46, 49 (2003) (adopting the elements of IIED prescribed by

the Restatement (Second) of Torts)). "'[I]ntent is used

throughout the Restatement . . . to denote that the actor

desires to cause [the] consequences of his act, or that he

believes that the consequences are substantially certain to

result from it.'" Id. at 95, 73 P.3d at 49(quoting Restatement

(Second), supra, § 8A). Spriestersbach has not presented any

evidence that any of the Individual PD Defendants desired to

cause Spriestersbach to be wrongfully detained or that any of
them believed it was substantially certain he would be
wrongfully detained as a result of their actions.

As to the establishment of an IIED claim based on
reckless conduct, this district court has stated:

> In Nelsen v. Research Corp. of the University,
> 805 F. Supp. 837, 851-52 (D. Haw. 1992), the
> court explained that as to the first prong,
> "[r]ecklessness requires that defendant must
> know, or have reason to know, the facts which
> create the risk." See also Nagata v. Quest
> Diagnostics Inc., 303 F. Supp. 2d 1121, 1126 (D.
> Haw. 2004) (observing that the first element of a
> claim for IIED had been broadened to include the
> definition of reckless as articulated in Nelsen);
> Ritchie v. Wahiawa Gen. Hosp., 597 F. Supp. 2d
> 1100, 1110 (D. Haw. 2009) ("To demonstrate the
> first element, a plaintiff must show that the
> defendant acted either with a 'desire to inflict
> severe emotional distress, . . . where he knows
> that such distress is certain, or substantially
> certain, to result from his conduct' or
> 'recklessly . . . in deliberate disregard of a
> high degree of probability that the emotional
> distress will follow.'") (quoting Restatement
> (Second) Torts Section 46, cmt. i (1965)).

Kauhako v. Hawai`i Bd. of Educ. Dep't of Educ., CIVIL NO. 13-
00567 DKW-BMK, 2015 WL 5312359, at *11 (D. Hawai`i Sept. 9,
2015) (alterations in Kauhako). Restatement (Second) of Torts
Section 46, comment i also states that "reckless" is defined as
stated in Restatement (Second) of Torts Section 500, which
states:

> The actor's conduct is in reckless disregard of
> the safety of another if he does an act or
> intentionally fails to do an act which it is his

> duty to the other to do, knowing or having reason
> to know of facts which would lead a reasonable
> man to realize, not only that his conduct creates
> an unreasonable risk of physical harm to another,
> but also that such risk is substantially greater
> than that which is necessary to make his conduct
> negligent.

As previously noted, there is a genuine issue of fact as to the
material issue of whether Spriestersbach told any of the
Individual PD Defendants that he was not Thomas Castleberry and
that he was not the person charged in the Castleberry Criminal
Case. Thus, there is genuine issue of fact as to whether they
intentionally failed to act upon such statements. Spriestersbach
has presented evidence that the Individual PD Defendant had a
duty to verify Spriestersbach's identity in light of his
statements and/or other evidence in the record of the
proceedings against Spriestersbach in the Castleberry Criminal
Case which indicated an issue with his identification.

> Bento testified:
>
> it would appear from the record that
> Mr. Spriestersbach had never raised the issue of
> identification in the form by which we could have
> helped him with our attorneys.
>
> In other words, stating I'm not the person
> that was placed on probation or I'm not the
> person that had this particular case. If that had
> occurred -- you asked about policies, procedures.
> **Those attorneys have all been made aware of these
> particular issues.** Some of them have experienced
> it themselves handling other cases, especially in
> our district court section where sometimes family
> members use each other's names and try to confuse
> the police, that sort of thing.

> And if that were the case, that we could
> have taken steps in order to try to see if the
> identification that was being assumed by the
> prosecutor was, in fact, correct. But I have
> every confidence that that was never expressed by
> Mr. Spriestersbach because our attorneys would
> have taken certain and particular action to try
> to resolve that issue.

[Washington Decl., Exh. 3 (dkt. no. 513-4, Bento Depo.) at 104-05 (emphasis added).] Bento believes Spriestersbach never told any of the Individual PD Defendants that he was not the person named in the Castleberry Criminal Case, nor did Spriestersbach make a similar statement, because, if Spriestersbach had made such statements, the Individual PD Defendants would have taken certain steps to verify his identity. It can be reasonably inferred from his testimony that, at the time they represented Spriestersbach, each of the Individual PD Defendants was aware of the possibility that misidentification issues may arise in a case. When Spriestersbach appeared in the Castleberry Criminal Case for Thomas Castleberry's alleged probation violation, Spriestersbach faced the risk of a five-year term of imprisonment. See PD Defs.' CSOF at ¶ 3; Responsive CSOF at ¶ 3. Thus, there is a genuine issue of material fact as to whether each of the Individual PD Defendants knew or had reason to know of facts indicating that his or her conduct created an unreasonable risk of harm to Spriestersbach.

54

However, the Individual PD Defendants must also have
known or had reason to know of facts indicating that the risk of
harm to Spriestersbach was **substantially greater** than that
which is necessary to make his [or her] conduct negligent." See
Restatement (Second) of Torts § 500 (emphasis added); see also
Dowkin v. City & Cnty. of Honolulu, Civil No. 10-00087 LEK-RLP,
2015 WL 4523490, at *4 (D. Hawai`i July 24, 2015)
("Recklessness, unlike negligence, involves more than
'inadvertence, incompetence, unskillfulness, or a failure to
take precautions' but instead rises to the level of a 'conscious
choice of a course of action . . . with knowledge of the serious
danger to others involved in it.'" (alteration in Dowkin) (some
citations omitted) (quoting Restatement (Second) Torts, § 500,
cmt. g)).

Viewing the record in the light most favorable to
Spriestersbach, the evidence before this Court raises a triable
issue of fact as to "inadvertence, incompetence, unskillfulness,
or a failure to take precautions," but it does not raise a
triable issue of fact as to a "substantially greater" risk of
harm than that the risk of harm associated with negligence.
Spriestersbach has failed to present evidence that raises
genuine issue of material fact as to his IIED claim against the
Individual PD Defendants, and they are entitled to judgment as a

matter of law as to that claim. The Motion is therefore granted
as to Count XI.

**IV.  <u>ADA Claim Against OPD</u>**

In the 3/15/24 PD Defendants Order, this Court noted
that, "[i]n the ADA, Congress abrogated the states' Eleventh
Amendment immunity 'insofar as Title II creates a private cause
of action for damages against the States for conduct that
**actually** violates the Fourteenth Amendment.'" 723 F. Supp. 3d
955, 964 (quoting <u>United States v. Georgia</u>, 546 U.S. 151, 159,
126 S. Ct. 877, 163 L. Ed. 2d 650 (2006) (emphasis in
original)).

The First Amended Complaint's ADA Title II claim
against OPD based on vicarious liability was dismissed without
prejudice because "the fact that Tolan chose to request an
evaluation instead of investigating Spriestersbach's assertion
of mistaken identity by itself is insufficient to support a
reasonable inference that she intentionally discriminated
against him based on his disability." 3/15/25 PD Defendants
Order, 723 F. Supp. 3d at 968. Further, the First Amended
Complaint "failed to allege sufficient factual allegations to
support his position that OPD is vicariously liable for
intentional disability discrimination by Muraoka, Maloian,
Baker, and Patek while they represented Spriestersbach." <u>Id.</u>
Spriestersbach's ADA Title II claim against OPD based on direct

liability was also dismissed without prejudice because
Spriestersbach "merely ma[de] conclusory allegations,
unsupported by any specific factual allegations, that OPD's
training and policies are inadequate." Id.

The elements of Spriestersbach's ADA Title II claim
are: "(1) [he] is an individual with a disability; (2) [he] was
excluded from participation in or otherwise discriminated
against with regard to the public entity's services, programs,
or activities; and, (3) such exclusion or discrimination was by
reason of [his] disability." See id. at 964. In the 3/15/24 PD
Defendants Order, this Court concluded that, as a matter of law,
OPD was a public entity for purposes of ADA Title II. See id. at
966. Thus, that ruling applies to the instant Motion. This Court
also concluded, based on the factual allegations in the First
Amended Complaint, that Spriestersbach is an individual with a
disability for purposes of the ADA. Id. at 967. The various
medical records before this Court on summary judgment also
support that conclusion. See, e.g., Washington Decl., Exh. 10 at
Spriestersbach_Hawaii State Hospital_000040 (dkt. no. 513-25 at
PageID.11537) (pg. 4 of Spriestersbach's HSH Discharge Summary,
signed by Dr. Garrett on 1/29/20, noting a discharge diagnosis
of schizophrenia). This Court therefore concludes that

Spriestersbach has established the first element of his prima

facie case.[18]

As with the First Amended Complaint, Spriestersbach's

ADA claim in the Second Amended Complaint alleges OPD

discriminated against him because of disability. He contends OPD

denied him its services – *i.e.*, reasonable legal representation

- because OPD "is vicariously liable for the acts of" the

Individual PD Defendants and because OPD is "directly liable for

its own failures to provide reasonable accommodations for

[Spriestersbach], including through its failure to provide

reasonable training and policies accommodating or interacting

with the mentally ill." See Second Amended Complaint at ¶ 282.

> A disability discrimination claim may be
> based on "one of three theories of liability:
> disparate treatment, disparate impact, or failure
> to make a reasonable accommodation." Davis v.
> Shah, 821 F.3d 231, 260 (2d Cir. 2016) (citation
> omitted); see also McGary [v. City of Portland],
> 386 F.3d [1259,] 1265–66 [(9th Cir. 2004)]. To
> assert a disparate impact claim, a plaintiff must
> allege that a facially neutral government policy
> or practice has the "effect of denying meaningful
> access to public services" to people with
> disabilities. K.M. [ex rel. Bright v. Tustin

---

[18] This Court rejects the PD Defendants' argument that
Spriestersbach has conceded his ADA claim because of that the PD
Defendants attempt to characterize as Spriestersbach's position
that his disability did not affect him when he encountered the
PD Defendants. See Reply at 2–3; see also id. at 3 n.1 ("It is
Plaintiff's burden to prove he has a disability. He is welcome
to forgo this claim."). Spriestersbach's position is merely that
he was able to make clear assertions of misidentification to the
PD Defendants. This is, by no means, a concession that he was
not disabled during the relevant period.

Unified Sch. Dist.], 725 F.3d [1008,] 1102 [(9th
Cir. 2013)] (citing Crowder [v. Kitagawa], 81
F.3d [1480,] 1484 [(9th Cir. 1996)]). "A
plaintiff need not allege either disparate
treatment or disparate impact in order to state a
reasonable accommodation claim." McGary, 386 F.3d
at 1266 (citations omitted).

Payan v. Los Angeles Cmty. Coll. Dist., 11 F.4th 729, 738 (9th

Cir. 2021). Further, this Court has previously noted that:

> Because Spriestersbach seeks monetary
> damages as to all of his claims in this case, see
> Second Amended Complaint at pg. 90, ¶ A, to
> ultimately prevail on his ADA Title II
> discrimination claims, Spriestersbach will be
> required to prove intentional discrimination in
> the exclusion from or denial of [the defendant's]
> services. See Updike v. Multnomah Cnty., 870 F.3d
> 939, 950 (9th Cir. 2017). "To show intentional
> discrimination, this circuit requires that the
> plaintiff show that a defendant acted with
> 'deliberate indifference,' which requires both
> knowledge that a harm to a federally protected
> right is substantially likely, and a failure to
> act upon that likelihood." Id. at 950-51
> (alteration, citation, and internal quotation
> marks omitted). . . .

[Order Granting in Part and Denying in Part the State

Defendant's Motion to Dismiss or in the Alternative for Judgment

on the Pleadings, filed 7/19/24 (dkt. no. 518) ("7/19/24

Order"), at 15-16.[19]]

> "When the plaintiff has alerted the public entity
> to his need for accommodation (or where the need
> for accommodation is obvious, or required by
> statute or regulation), the public entity is on
> notice that an accommodation is required, and the
> plaintiff has satisfied the first element of the
> deliberate indifference test." [Duvall v. City of

---

[19] The 7/19/24 Order is also available at 2024 WL 3488365.

> Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).] To
> meet the second prong, the entity's failure to
> act "must be a result of conduct that is more
> than negligent, and involves an element of
> deliberateness." Id.

Updike, 870 F.3d at 951-52.

## A.  **Vicarious Liability**

Spriestersbach has submitted additional evidence beyond the factual allegations in the First Amended Complaint, which was at issue in the 3/15/24 PD Defendants Order. However, even viewing the current record in the light most favorable to Spriestersbach, he has not presented any evidence that raises a genuine issue of material fact as to whether any of the Individual PD Defendants **intentionally** discriminated against Spriestersbach based on his disability. OPD is therefore entitled to judgment as a matter of law as to the portion of Spriestersbach's ADA Title II claim based on vicarious liability.

## B.  **Direct Liability**

As previously noted, Count III alleges OPD failed to provide Spriestersbach with reasonable accommodations. See Second Amended Complaint at ¶ 282. However, some of the evidence that Spriestersbach has presented in opposition to the PD Defendants' Motion suggests that his ADA claim against OPD is based on an alleged disparate impact. See, e.g., Washington Decl., Exh. 22 (dkt. no. 513-29, Gibson Report) at 23-24 ("The

systemic failure of organization, leadership and training at the
OPD ranks as the some of worst I have ever come across."); id.
at 23 ("It is significant that OPD has not changed any of its
policies because of what happened here nor disciplined
anyone."). The Ninth Circuit has stated:

> Although disparate impact and failure to
> accommodate are distinct theories of liability,
> they share some overlap. If a public entity's
> practices or procedures deny people with
> disabilities meaningful access to its programs or
> services, causing a disparate impact, then the
> public entity is required to make reasonable
> modifications to its practices or procedures.
> Crowder, 81 F.3d at 1485 (citing 28 C.F.R.
> § 35.130(b)(7)). Thus, although failure to make a
> reasonable accommodation and disparate impact are
> two different theories of a Title II claim, a
> public entity may be required to make reasonable
> modifications to its facially neutral policies
> which disparately impact people with
> disabilities. Id. at 1484-85.

> The important difference between these two
> theories is that a reasonable accommodation claim
> is focused on an accommodation based on an
> individualized request or need, while a
> reasonable modification in response to a
> disparate impact finding is focused on modifying
> a policy or practice to improve systemic
> accessibility. Compare McGary, 386 F.3d at 1265-
> 66 (considering reasonable accommodation claim
> against city over its failure to grant individual
> disabled plaintiff additional time to clean his
> yard before enforcing nuisance abatement code),
> and Updike v. Multnomah County, 870 F.3d 939,
> 949-53 (9th Cir. 2017) (considering reasonable
> accommodation claim against county over its
> denial of an ASL interpreter and auxiliary aids
> to individual deaf pretrial detainee), with
> Crowder, 81 F.3d at 1485-86 (considering
> reasonable modifications to Hawaii law requiring
> 120-day quarantine of all dogs entering the

> state, which was found to have a disparate impact
> on blind users of guide dogs), and Rodde [v.
> Bonta], 357 F.3d [988,] 995-98 [(9th Cir. 2004)]
> (considering disparate impact claim against
> county over proposal to close county hospital
> providing rehabilitation and medical services to
> people with chronic disabilities).

Payan, 11 F.4th at 738-39. Having reviewed Count III in the

context of the Second Amended Complaint as a whole, this Court

does not construe Count III as alleging a disparate impact claim

against OPD. See generally Second Amended Complaint at ¶¶ 282-

86. Thus, at this point, the critical issue is whether OPD was

deliberately indifferent to Spriestersbach's request or need for

a reasonable accommodation.

The Ninth Circuit has stated:

> A public entity must "make reasonable
> modifications in policies, practices, or
> procedures when the modifications are necessary
> to avoid discrimination on the basis of
> disability." Zukle [v. Regents of the Univ. of
> Cal.], 166 F.3d [1041,] 1046 [(9th Cir. 1999)]
> (quoting 28 C.F.R. § 35.130(b)(7)). The [ADA
> does] not require an [entity] "to make
> fundamental or substantial modifications to its
> programs or standards," however. Id. Because the
> issue of reasonableness depends on the individual
> circumstances of each case, this determination
> requires a fact-specific, individualized analysis
> of the disabled individual's circumstances and
> the accommodations that might allow him to meet
> the program's standards. See Crowder v. Kitagawa,
> 81 F.3d 1480, 1486 (9th Cir. 1996). As we have
> observed in the employment context, "mere[]
> speculat[ion] that a suggested accommodation is
> not feasible" falls short of the "reasonable
> accommodation" requirement; the [ADA] creates "a
> duty to 'gather sufficient information from the
> [disabled individual] and qualified experts as

62

> needed to determine what accommodations are
> necessary to enable [the individual to meet the
> standards in question].'" Buckingham v. United
> States, 998 F.2d 735, 740 (9th Cir. 1993)
> (quoting Mantolete v. Bolger, 767 F.2d 1416, 1423
> (9th Cir. 1985)).

Wong v. Regents of Univ. of Cal., 192 F.3d 807, 818 (9th Cir.

1999), *as amended* (Nov. 19, 1999) (some alterations in Wong)

(some citations omitted). Wong addressed an ADA Title II claim

in the education context and Buckingham arose in the employment

context, but they can be analogized to the instant case. In

Wong, the Ninth Circuit noted that

> the plaintiff "bears the 'initial burden of
> producing evidence' both that a reasonable
> accommodation exists and that this accommodation
> "would enable [him] to meet the educational
> institution's essential eligibility
> requirements." Zukle, 166 F.3d at 1047.
> Production of such evidence shifts the burden to
> the [defendant] to produce rebuttal evidence that
> either (1) the suggested accommodation is not
> reasonable (because it would substantially alter
> the academic program), or (2) that the student is
> not qualified (because even with the
> accommodation, the student could not meet the
> institution's academic standards). See id.

Id. at 816–17 (some alterations in Wong). Here, this Court must

similarly determine whether Spriestersbach has carried his

initial burden of producing evidence that a reasonable

accommodation exists.

In ADA Title II cases, "the reasonableness of an

accommodation is ordinarily a question of fact." Hyer v. City &

Cnty. of Honolulu, 118 F.4th 1044, 1066 (9th Cir. 2024)

(citation and quotation marks omitted). Spriestersbach, however, has not identified sufficient evidence to raise that triable issue of fact because he has failed to identify an accommodation in the first instance. According to Spriestersbach, OPD violated the ADA by "generally failing to accommodate his disability with policies that require more of PD Defendants." [Mem. in Opp. at 18.] Spriestersbach does not identify what specific policy OPD should have had that would have accommodated his disability.

Spriestersbach offers the testimony of his expert witness, Mr. Gibson, who opines that "OPD tolerates the seriously inadequate representation that occurred here . . . ." [Washington Decl., Exh. 22 (dkt. no. 513-29, Gibson Report) at 23.] Many of the policy issues that Mr. Gibson cites as support for this opinion address general issues of case management and record retention. See id. While such issues may be relevant to a malpractice claim against OPD, they are not relevant to the issues of whether an accommodation of Spriestersbach's disability exists and whether it is reasonable. Mr. Gibson also states:

> OPD also lacks reasonable training for OPD lawyers concerning mental illness. OPD's designee indicated that he was not aware of any training for OPD lawyers concerning mental disabilities other than situations where fitness to proceed proceedings may have to be instituted and how, and whether mental illness is a mitigating factor or guiding a client to seek mental health treatment. (Bento Dep. Tr. 203:16-207:7). Nor

64

> does OPD apparently have any specific training on
> identifying clients with mental disabilities in
> the first place.

Id. Mr. Gibson does not give any opinion about what a reasonable

accommodation for Spriestersbach's disability would have been;

he merely gives a general opinion that OPD did not have a policy

or training regarding the representation of clients with mental

illnesses. This is insufficient to satisfy the element of

Spriestersbach's prima facie case that a reasonable

accommodation existed.

Even assuming that Spriestersbach's contends the

accommodation was that OPD should have had policies and training

requiring DPDs to verify a client's identity after the client

makes an assertion of misidentification, see Mem. in Opp. at 19-

20, Spriestersbach has not presented any evidence suggesting

that OPD's failure to have such policies and training when it

represented him constituted deliberate indifference.

Spriestersbach has identified evidence that OPD had

some established practices to address client misidentification.

See Washington Decl., Exh. 3 (dkt. no. 513-4, Bento Depo.) at

190-91. Spriestersbach argues OPD does not have adequate

training or policies regarding the implementation of

misidentification practices in cases involve clients with mental

disabilities. Mr. Gibson emphasizes that:

> Mr. Bento is not aware of any training for
> OPD lawyers concerning mental disabilities other
> than situations how and when fitness to proceed
> proceedings may be instituted, and whether mental
> illness is a mitigating factor or guiding a
> client to seek mental health treatment. (Bento
> Dep. Tr. 203:16-207:7). OPD does not have any
> specific training on identifying clients with
> mental disabilities. (Bento Dep Tr. 207:8-208:25)

> Mr. Bento is not aware of any OPD training
> concerning persons with mental illness whom
> counsel might find difficult to understand or
> credit because of their illness. (Bento Dep.
> Tr. 209:12-210:16)

[Washington Decl., Exh. 22 (dkt. no. 513-29, Gibson Report) at 19.] Mr. Gibson opines that OPD's failure to train its DPDs about working with clients with mental disabilities is unreasonable. See id. at 23. However, Mr. Gibson does not identify any widely known and accepted ADA standards for public defender's offices requiring such training, nor could Mr. Gibson have done so because there is no indication that he has expertise regarding the ADA. The record indicates that, before the events of this case, OPD experienced some cases involving client misidentification, but there is no evidence that such cases involved clients with mental disabilities, let alone that the misidentification of a client with a mental disability would have been avoided or resolved sooner if OPD had policies and training regarding the representation of clients with mental disabilities. See Washington Decl., Exh. 3 (dkt. no. 513-4, Bento Depo.) at 104-05 (noting that some DPDs experienced

66

persons deliberately misidentifying themselves by a family member's name to try to confuse the police).

Even viewing the record in the light most favorable to Spriestersbach, there is insufficient evidence to raise a triable issue of fact as to whether OPD was deliberately indifferent because, at the time of its representation of Spriestersbach, it did not have policies and training regarding the representation of clients with mental disabilities. Arguably, Spriestersbach may have raised an issue of fact as to whether OPD was negligent, but that is insufficient to support an ADA claim. See Updike, 870 F.3d at 951-52 ("in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness" (citation omitted)).

### C. **Ruling**

There are no genuine issues of material fact as to either vicarious liability or direct liability, and OPD is entitled to judgment as a matter of law as to Spriestersbach's ADA Title II claim. The PD Defendants' Motion is therefore granted as to Count III.

## V. **Supplemental Jurisdiction**

This Court has granted summary judgment in favor of OPD as to Spriestersbach's ADA claim, and the only claims that

remain against the Individual PD Defendants are state law claims. This Court has the discretion to decline to exercise supplemental jurisdiction over the remaining state law claims against the PD Defendants. See 28 U.S.C. § 1367(c)(3).

This Court acknowledges that it has chosen to continue to exercise supplemental jurisdiction over the state law claims against Dr. Garrett after summary judgment was granted in her favor as to Spriestersbach's Section 1983 claims. See Order Granting in Part and Denying in Part Defendant Allison Garrett, M.D.'s Motion for Summary Judgment, filed 11/18/24 (dkt. no. 579), at 30-31.[20] However, this Court is inclined to conclude that there are significant differences between the exercise of supplemental jurisdiction over the state law claims against Dr. Garrett and the exercise of supplemental jurisdiction over the state law claims against the Individual PD Defendants. In particular, Spriestersbach has a pending legal malpractice action against OPD in state court. However, the record in this case is not sufficiently developed for this Court to make a ruling at this time. An entering order will be issued directing the parties to brief the supplemental jurisdiction issue.

---

[20] The November 18, 2024 order is also available at 2024 WL 4818507.

## CONCLUSION

For the foregoing reasons, the PD Defendants' Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment, filed May 28, 2024, is HEREBY GRANTED IN PART AND DENIED IN PART. Specifically,

-the PD Defendants' request for judicial notice is GRANTED;

-summary judgment is GRANTED in favor of the Individual PD Defendants as to Spriestersbach's IIED claim (Count XI); and

-summary judgment is granted in favor of OPD as to Spriestersbach's ADA Title II claim (Count III).

The PD Defendants' Motion is DENIED in all other respects.

The following claims remain against the Individual PD Defendants: Spriestersbach's legal malpractice claim (Count XIII); and Spriestersbach's and NIED claim (Count XII). There being no remaining claims against OPD, the Clerk's Office is DIRECTED to terminate OPD as a party on **January 3, 2025.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 19, 2024.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

**JOSHUA SPRIESTERSBACH VS. STATE OF HAWAII, ET AL; CV 21-00456 LEK-RT; AMENDED ORDER GRANTING IN PART AND DENYING IN PART THE PD DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**