UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JOSHUA SPRIESTERSBACH,<br><br>                    Plaintiff,<br><br>     vs.<br><br>STATE OF HAWAII, CITY AND COUNTY OF HONOLULU, OFFICER ABRAHAM K. BRUHN, DEPARTMENT OF PUBLIC SAFETY, OFFICE OF THE PUBLIC DEFENDER, NIETZSCHE LYNN TOLAN, MICHELLE MURAOKA, LESLIE MALOIAN, JACQUELINE ESSER, JASON BAKER, MERLINDA GARMA, SETH PATEK, DR. JOHN COMPTON, DR. MELISSA VARGO, DR. SHARON TISZA, HAWAII STATE HOSPITAL, DR. ALLISON GARRETT, JOHN/JANE DOES 1-20,<br><br>                    Defendants. | CIV. NO. 21-00456 LEK-RT |

**ORDER DENYING DEFENDANT HAWAII STATE HOSPITAL'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT AND DENYING
<u>DEFENDANT ALLISON GARRETT, M.D.'S JOINDER IN THE MOTION</u>**

Before the Court is Defendant Hawaii State Hospital's ("HSH") Motion to Dismiss Third Amended Complaint, filed on August 30, 2024 ("Motion"). [Dkt. no. 556.] On November 22, 2024, Plaintiff Joshua Spriestersbach ("Spriestersbach") filed his response to the Motion ("Memorandum in Opposition"), and HSH filed its reply on November 29, 2024 ("Reply"). [Dkt. nos. 581, 584.] Defendant Allison Garrett, M.D. ("Dr. Garrett") filed a joinder of simple agreement ("Joinder") on November 26, 2024.

[Dkt. no. 582.] On September 13, 2024, Defendant City and County of Honolulu ("the City") filed its statement of no position on the Motion, and Defendants Office of the Public Defender, Nietzsche Lynn Tolan, Michele Muraoka, Lesley Maloian, Jason Baker, and Seth Patek (collectively "PD Defendants") filed their statement of no position on November 22, 2024. [Dkt. nos. 567, 580.] The Motion came on for hearing on December 13, 2024. HSH's Motion and Dr. Garrett's Joinder are hereby denied for the reasons set forth below.

## BACKGROUND

The case arises from Spriestersbach's May 11, 2017 arrest and prosecution for crimes committed by Thomas R. Castleberry, as well as from Spriestersbach's subsequent detention at the Oahu Community Correctional Center ("OCCC") and civil commitment related to that arrest until January 17, 2020 at HSH. See Third Amended Complaint (Revised) ("Revised TAC"), filed 10/11/24 (dkt. no. 577), at ¶¶ 1-2.[1]

Spriestersbach filed his Second Amended Complaint on March 29, 2024. [Dkt. no. 362.] On May 28, 2024, Defendants

---

[1] Spriestersbach filed his original Third Amended Complaint on August 19, 2024. [Dkt. no. 551.] On October 1, 2024, Spriestersbach filed a Motion for Leave to File Revised Complaints in order to remove defendants and claims that were dismissed with prejudice. [Dkt. no. 572.] The magistrate judge granted the motion and permitted Spriestersbach to file the Revised TAC. See EO, filed 10/10/24 (dkt. no. 575). This Court construes the instant Motion as addressing the Revised TAC.

State of Hawai`i ("the State"), Department of Public Safety ("DPS"), and HSH (collectively "State Defendants") filed their Motion to Dismiss or in the Alternative for Judgment on the Pleadings ("State Defendants' Motion"). [Dkt. no. 447.] On July 19, 2024, this Court issued an order granting the State Defendants' Motion in part and denying it in part ("7/19/24 Order"). [Dkt. no. 518.[2]]

Judgment on the pleadings was granted in favor of the State Defendants as to all of Spriestersbach's claims against them. Spriestersbach was granted leave to amend as to his claim against HSH based upon vicarious liability under Title II of the Americans with Disabilities Act ("ADA"), Title 42 United States Code Section 12101, *et seq.* ("Count III").[3] Leave to amend was denied as to all other claims at issue in the State Defendants' Motion.[4] 7/19/24 Order, 2024 WL 3488365, at *9. This included the

---

[2] The 7/19/24 Order is also available at 2024 WL 3488365.

[3] Count III of the Revised TAC is Spriestersbach's current ADA claim. See Revised TAC at pgs. 73-81.

[4] Although the Second Amended Complaint alleged Spriestersbach's ADA Title II claim against all of the State Defendants, Spriestersbach's memorandum in opposition to the State Defendants' Motion did not address his ADA Title II claims against the State and DPS. This was construed as an indication that Spriestersbach was no longer pursuing those claims, and judgment on the pleadings was granted in favor of the State and DPS as to those portions of Spriestersbach's ADA claim. 7/19/24 Order, 2024 WL 3488365, at *3.

portion of Spriestersbach's ADA Title II claim against HSH based on direct liability. Id. at *7.

In considering the portion of Spriestersbach's ADA Title II claim against HSH based on vicarious liability, this Court was persuaded by the analysis in McGugan v. Aldana-Bernier, 752 F.3d 224 (2d Cir. 2014). See 7/19/24 Order, 2024 WL 3488365, at *6-7. Based on the McGugan analysis, this Court concluded that the portion of Spriestersbach's ADA Title II claim based on vicarious liability failed because he did not "plausibly allege[] that HSH forcibly continued to hospitalize him based on considerations that were 'unrelated to' or 'improper to consideration of' his schizophrenia and mental health disability." Id. at *7.

## I.   **The Revised TAC**

The Revised TAC includes the following allegations that differ from the allegations in the Second Amended Complaint:

-the initial letters addressing whether Spriestersbach was fit to proceed in State of Hawai`i vs. Thomas R. Castleberry, Cr. No. 06-1-1421 in the State of Hawai`i First Circuit Court ("the Castleberry Criminal Case" and "the state court") discussed Spriestersbach's assertions that he was not the person who Honolulu Police Department ("HPD") officers were looking for when they arrested him, his name was Joshua Spriestersbach, and he had never been ben on probation; [Revised TAC at ¶ 156;]

-Dr. Garrett discounted Spriestersbach's statements about misidentification and his protestations of innocence

4

"because she discounted him as a schizophrenic person";
[id. at ¶ 162;]

-Dr. Garrett did not investigate Spriestersbach's claims that he
had never been on probation because she believed either his
memory was impaired or the statements were attributable to
his mental illness; [id. at ¶ 163;]

-although she stated that, in 2020, she followed up on
Spriestersbach's statements about misidentification because
he was "more coherent," she observed that he was coherent
as early as November 3, 2017; [id. at ¶¶ 163-64;]

-the opinions of the neutral examiner in the instant case and
the opinions of Spriestersbach's expert witness in the
instant case support Spriestersbach's position that
Dr. Garrett failed to investigate clear indications that
Spriestersbach was being wrongfully detained; [id. at
¶¶ 165-66;]

-Spriestersbach's continued hospitalization "caused him
increasing anguish"; [id. at ¶ 168;]

-not only did Dr. Garrett fail to investigate Spriestersbach's
assertions of misidentification, she falsely reported that
2020 was the first time Spriestersbach provided information
that showed he was not on O`ahu at the time of the charges
against Thomas Castleberry in the Castleberry Criminal
Case; [id. at ¶ 167;]

-Count III alleges Dr. Garrett discriminated against
Spriestersbach by failing to act upon his assertions of
misidentification when she would have acted upon similar
assertions by a person who did not have a mental illness;
[id. at ¶ 293;]

-Count III alleges Dr. Garrett failed to reasonably accommodate
Spriestersbach by investigating his assertions of
misidentification; [id. at ¶ 294;] and

-Count III alleges "very basic and available" actions were
available to Dr. Garrett to investigate Spriestersbach's
assertions of misidentification, [id. at ¶ 295].

II.  **Motion**

          In the instant Motion, HSH argues Spriestersbach's ADA
Title II claim against HSH based on vicarious liability should
be dismissed because Spriestersbach still fails to plausibly
allege that HSH continued to hospitalize him for reasons that
were either unrelated to his mental health disability or were
improper to the consideration of his mental health disability.
[Motion, Mem. in Supp. at 2-3.] HSH argues that, even with the
new allegations in the Revised TAC, Spriestersbach does not
plausibly allege Dr. Garrett "made treatment decisions based on
considerations that were unrelated to" his schizophrenia and
mental health disability. [Id. at 6.] Thus, HSH urges this Court
to dismiss Spriestersbach's ADA Title II claim against HSH based
on vicarious liability because Dr. Garrett did not intentionally
discriminate against him. [Id.]

          At the hearing on the Motion, HSH's counsel emphasized
that this Court has granted summary judgment in favor of
Dr. Garrett as to some of Spriestersbach's claims. See Order
Granting in Part and Denying in Part Defendant Allison Garrett,
M.D.'s Motion for Summary Judgment, filed 11/18/24 (dkt.
no. 579) ("11/18/24 Order").[5] HSH emphasizes that, in granting

_____

          [5] The 11/18/24 Order is also available at 2024 WL 4818507.
The 11/18/24 Order ruled on Dr. Garrett's May 29, 2024 Motion
for Summary Judgment, [dkt. no. 459].

summary judgment in favor of Dr. Garrett as to Spriestersbach's intentional infliction of emotional distress ("IIED") claim, this Court found that, "[e]ven viewing the record in the light most favorable to Spriestersbach, there is no evidence that raises a genuine issue of material fact as to whether Dr. Garrett acted intentionally or recklessly to illegally confine Spriestersbach." 11/18/24 Order, 2024 WL 4818507, at *16. HSH argues that, based upon the evidence presented in connection with Dr. Garrett's Motion for Summary Judgment, Spriestersbach will not be able to prove the allegations in the Revised TAC.

## **DISCUSSION**

## I.   **Attempt to Seek Reconsideration of the 7/19/24 Order**

The majority of the arguments in Spriestersbach's memorandum in opposition to the instant Motion are essentially attempts to seek reconsideration of the 7/19/24 Order. Spriestersbach's characterization of those arguments as attacking how the McGugan analysis in the 7/19/24 Order applies to the ADA Title II claim in the Revised TAC is disingenuous. The nature of Spriestersbach's ADA Title II vicarious liability claim against HSH in the Revised TAC is the same as the nature of the corresponding claim in the Second Amended Complaint. The 7/19/24 Order only granted Spriestersbach leave to add further factual allegations to attempt to cure the defect in his ADA

7

claim against HSH. The only argument that does not attempt to
seek reconsideration of the 7/19/24 Order is Spriestersbach's
argument that that the Revised TAC states a plausible ADA
Title II claim against HSH because Spriestersbach now alleges
HSH staff made decisions based upon Spriestersbach's
schizophrenia when his schizophrenia was unrelated to the
decisions or an improper consideration in the decisions. Whether
the allegations of the Revised TAC are sufficient to state a
plausible ADA Title II claim under analysis in the 7/19/24 Order
is addressed *infra*.

Spriestersbach's allegation of legal errors in this
Court's <u>McGugan</u> analysis in the 7/19/24 Order is an untimely
attempt to seek reconsideration of the order. <u>See</u> Local
Rule LR60.1 (stating that motions for reconsideration based on
"[m]anifest error of law or fact" "must be filed and served
within fourteen (14) days after the court's order is issued").
Spriestersbach's arguments that should have been raised in a
timely motion for reconsideration of the 7/19/24 Order could be
rejected on that basis alone. Although this Court does not
condone Spriestersbach's disregard of the applicable rules and
deadlines, this Court will briefly address those arguments for
the sake of completeness.

A.   **Spriestersbach's Argument that**
     <u>**this Court Should Not Have Applied**</u> *McGugan*

Spriestersbach alleges Dr. Garrett's decision not to investigate his assertions of misidentification was based on stereotypes regarding persons with schizophrenia, and he argues this allegation of reliance on stereotypes is sufficient to support an ADA Title II claim under the ADA regulations and Ninth Circuit case law. [Mem. in Opp. at 9-10 (citing 45 C.F.R. § 84.56(b)(1); <u>Thompson v. Davis</u>, 295 F.3d 890, 894 n.4, 899 (9th Cir. 2002)).] He appears to argue that this Court erred in applying <u>McGugan</u> because that analysis is inconsistent with the ADA regulations and Ninth Circuit case law.

This argument is rejected because Section 84.56(b)(1) and <u>Thompson</u> are consistent with the <u>McGugan</u> analysis in the 7/19/24 Order. A decision based on a bias or stereotype about the patient's disability is a failure to make an individualized assessment of the patient, <u>see</u> 45 C.F.R. § 84.56(b)(1)(i); <u>Thompson</u>, 295 F.3d at 898 n.4,[6] and it also constitutes "considerations that were 'unrelated to' or 'improper to consideration of'" the patient's condition and whether it required continued hospitalization, <u>see</u> 7/19/24 Order, 2024 WL 3488365, at *7 (quoting <u>McGugan</u>, 752 F.3d at 234).

---

[6] <u>Thompson</u> was superseded on other grounds by the ADA Amendments Act of 2008, Pub. L. No. 110-325, §§ 4(a), 8, 122 Stat. 3555.

B.    <u>**Medical Treatment Decisions**</u>

Spriestersbach also argues <u>McGugan</u> only applies to medical treatment decisions and therefore it is inapplicable to his claims, which are not limited to medical treatment decisions. [Mem. in Opp. at 9.] The only factual basis for his claims that Spriestersbach identifies as going beyond medical treatment decisions is the decision not to act upon Spriestersbach's assertions of misidentification. <u>See</u> <u>id.</u>

In <u>McGugan</u>, the Second Circuit held that "a plaintiff pleads an actionable claim of discrimination in the medical treatment context under the ADA or the Rehabilitation Act if she alleges that the defendants made treatment decisions based on factors that are unrelated to, and thus improper to consideration of the inquiry in question." 752 F.3d at 234 (internal quotation marks omitted); <u>see also</u> 7/19/24 Order, 2024 WL 3488365, at *6-7 (quoting <u>McGugan</u>, finding the analysis persuasive, and applying it to this case). Based on the factual allegations in the Second Amended Complaint, which were assumed to be true in the 7/19/24 Order,[7] Dr. Garret's various decisions not to act upon Spriestersbach's statements of misidentification

---

[7] "[J]udgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." 7/19/24 Order, 2024 WL 3488365, at *2 (alteration in original) (citations and quotation marks omitted).

occurred in the context of his medical care and treatment, and
therefore the decisions were reasonably construed as medical
decisions. Thus, this Court rejects Spriestersbach's argument
that it should reconsider the ruling in the 7/19/24 Order that
the McGugan analysis applied to Spriestersbach's ADA Title II
discrimination claim against HSH.

### C. __Denial of a Public Service, Program, or Activity__

Spriestersbach next argues the Second Amended
Complaint asserted an ADA Title II claim based on both the
denial of a public service, program, or activity ADA claim and
the failure to accommodate his disability, and McGugan does not
apply to either type of claim. [Mem. in Opp. at 14-18.]
Spriestersbach argues he was denied a service, program, or
activity by HSH because HSH staff failed to verify his identity
when he asserted that he had been misidentified. Spriestersbach
acknowledges that the parties briefed this issue in connection
with the State Defendants' Motion, but he argues this Court
applied the wrong standards. [Id. at 14.] In the 7/19/24 Order,
this Court noted the service that HSH provides is detention,
assessment, care, and treatment of a defendant who has been
determined unfit to proceed in a criminal case, and this Court
rejected Spriestersbach's argument that patient identification
was a service provided by HSH for purposes of ADA Title II. 2024

WL 3488365, at *5 & n.4. Spriestersbach argues this was contrary
to Ninth Circuit case law and the ADA regulations.

Spriestersbach is correct that the Ninth Circuit has
"declined to make 'hair-splitting' distinctions in determining
which government functions fall within the 'services, programs,
or activities' covered by the ADA and Rehabilitation Act," and
the Ninth Circuit has "held that all normal functions of a
government entity are covered." Bell v. Williams, 108 F.4th 809,
826 (9th Cir. 2024) (quoting and citing Barden v. City of
Sacramento, 292 F.3d 1073, 1076 (9th Cir. 2002)). This Court
rejects Spriestersbach's argument that this Court should have
applied the holding in Bell that "transporting detainees to
safety cells" fell within the scope of the ADA because it was a
normal function of the city defendant. See id. The verification
of the identity of an HSH patient who had been previously
identified by other state and county agencies prior to being
transferred to HSH is much further removed from HSH's normal
functions than the transport of a detainee from one cell to
another type of cell within a city jail.

Also in support of his argument that verification of
his identity is an HSH service, program, or activity,
Spriestersbach cites Title 42 United States Code Section 2000d-
4a and Thompson v. Davis, 295 F.3d 890, 899 (9th Cir. 2002).
[Mem. in Opp. at 16.] Section 2000d-4a provides that "programs

12

or activities" in Title 42 United States Code Section 12131(2)
include all of a state agency's operations,[8] and in Thompson, 295
F.3d at 899, the Ninth Circuit held that the parole proceedings
at issue in that case were activities of the state. However, the
Ninth Circuit has also stated:

> A common understanding of the first clause
> [of Section 12131(2)] shows that it applies only
> to the "outputs" of a public agency, not to
> "inputs" such as employment. See Decker [v. Univ.
> of Houston], 970 F. Supp. [575,] 578 [(S.D. Tex.
> 1997)] ("The phrase 'services, programs, and
> activities,' . . . understood as a whole, focuses
> on a public entity's outputs rather than
> inputs.") (citation and internal quotation marks
> omitted). First, employment by a public entity is
> not commonly thought of as a "service, program,
> or activity of a public entity." Second, the
> "action" words in the sentence presuppose that
> the public entity provides an output that is
> generally available, and that an individual seeks
> to participate in or receive the benefit of such
> an output.
>
> Consider, for example, how a Parks
> Department would answer the question, "What are
> the services, programs, and activities of the
> Parks Department?" It might answer, "We operate a
> swimming pool; we lead nature walks; we maintain
> playgrounds." It would not answer, "We buy
> lawnmowers and hire people to operate them." The
> latter is a means to deliver the services,

---

[8] Section 12131(2) states:
The term "qualified individual with a disability"
means an individual with a disability who, with or
without reasonable modifications to rules, policies,
or practices, the removal of architectural,
communication, or transportation barriers, or the
provision of auxiliary aids and services, meets the
essential eligibility requirements for the receipt of
services or the participation in programs or
activities provided by a public entity.

> programs, and activities of the hypothetical
> Parks Department, but it is not itself a service,
> program, or activity of the Parks Department.

Zimmerman v. Or. Dep't of Just., 170 F.3d 1169, 1174 (9th Cir.

1999) (some alterations in Zimmerman). That analysis is

instructive in this case, where the provision of mental health

care is the service or program provided by HSH and the

verification of patient identification provided by other

government agencies that sent the patient to HSH is part of the

means by which HSH delivers the service or program. The 7/19/24

Order stated the same proposition in another way – "the

identification is merely incidental to the service HSH

provides." 2024 WL 3488365, at *5 n.4. This Court therefore

rejects Spriestersbach's argument that this Court should

reconsider the 7/19/24 Order's ruling that patient

identification is not a service, program, or activity provided

by HSH.

D.   **Failure to Accommodate**

The 7/19/24 Order considered Spriestersbach's

intentional discrimination theory and his failure to accommodate

theory together under the McGugan analysis. 2024 WL 3488365, at

*6. Spriestersbach argues it was error for this Court to do so,

and this Court should have applied Ninth Circuit failure to

accommodate case law to that portion of his ADA claim. [Mem. in

Opp. at 17-18 (citing Sheehan v. City & Cnty. of San Francisco,

743 F.3d 1211, 1233 (9th Cir. 2014); <u>Lewis v. Mossbrooks</u>, 788 F.
App'x 455, 458 (9th Cir. 2019); <u>Wong v. Regents of University of
California</u>, 192 F.3d 807, 818 (9th Cir. 1999); <u>Updike v.
Multnomah Cty.</u>, 870 F.3d 939, 951 (9th Cir. 2017)).] These cases
are distinguishable from the instant case because they did not
involve an intentional discrimination claim and a failure to
accommodate claim that were based on the same action or
omission. Spriestersbach has not shown that this Court committed
legal error in analyzing his intentional discrimination claim
and his failure to accommodate claim under the same analysis.

Even if Spriestersbach had raised the foregoing
arguments in a timely motion for reconsideration of the 7/19/24
Order, the motion for reconsideration would have been denied.
Similarly, these arguments do not constitute grounds to dismiss
the Revised TAC.

## II.  <u>The ADA Claim in the Revised TAC</u>

Spriestersbach argues that, with the new factual
allegations in the Revised TAC, he pleads a plausible ADA
Title II claim against HSH based on vicarious liability under
the analysis set forth in the 7/19/24 Order. In the 7/19/24
Order, this Court stated:

> To state a claim pursuant to Title II of the
> ADA, a plaintiff must show:
>
> (1)  she is an individual with a disability;

> (2)  she was excluded from participation in
> or otherwise discriminated against with
> regard to the public entity's services,
> programs, or activities; and,
>
> (3)  such exclusion or discrimination was by
> reason of her disability.

> Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir.
> 2002).

2024 WL 3488365, at *4 (some citations omitted). Further, this

Court noted:

> Because Spriestersbach seeks monetary
> damages as to all of his claims in this case, see
> Second Amended Complaint at pg. 90, ¶ A, to
> ultimately prevail on his ADA Title II
> discrimination claims, Spriestersbach will be
> required to prove intentional discrimination in
> the exclusion from or denial of HSH's services.
> See Updike v. Multnomah Cnty., 870 F.3d 939, 950
> (9th Cir. 2017). "To show intentional
> discrimination, this circuit requires that the
> plaintiff show that a defendant acted with
> 'deliberate indifference,' which requires both
> knowledge that a harm to a federally protected
> right is substantially likely, and a failure to
> act upon that likelihood." Id. at 950-51
> (alteration, citation, and internal quotation
> marks omitted). Thus, to survive the Motion,
> Spriestersbach's factual allegations must be
> sufficient to allow this Court to draw the
> reasonable inference that Dr. Garrett and/or
> other HSH staff acted with deliberate
> indifference in failing to discover that
> Spriestersbach was not Thomas Castleberry.

Id. at *6. Spriestersbach still seeks monetary damages as to all

of his claims. See Revised TAC at pg. 93, ¶ A. Thus, he must

plausibly allege deliberate indifference by Dr. Garrett and/or

other HSH staff.

In the 7/19/24 Order, this Court ruled, as a matter of law, that HSH is a public entity for purposes of ADA Title II. See 2024 WL 3488365, at *5. That ruling also applies in the consideration of the instant Motion. This Court also ruled that the allegations of the Second Amended Complaint were sufficient to allege that Spriestersbach was an individual with a disability for purposes of the ADA. Id. The same allegations regarding Spriestersbach's disability are pled in the Revised TAC. See Revised TAC at ¶¶ 50, 279.

Among the new allegations that Spriestersbach added in response to the 7/19/24 Order is the allegation that "Dr. Garrett ignored Plaintiff's protestations of innocence, because **she discounted him as a schizophrenic person** and as such treated his statements about his misidentification as not worth following up." [Id. at ¶ 162 (emphasis added).] Further, Spriestersbach added the allegation that "Dr. Garrett also testified that she did not investigate statements related to the fact that Plaintiff was not on probation because she took them to be attributable to impaired memory or recollection related to mental illness." [Id. at ¶ 163.] These are in addition to the preexisting allegation that "Dr. Garrett understood that schizophrenic persons can also tell the truth, and she understood that [Spriestersbach] may be telling the truth and was not Thomas Castleberry and was being wrongfully detained."

17

Id. at ¶ 161; see also Second Amended Complaint at ¶ 161 (same
allegation).

These allegations from paragraphs 161, 162, and 163 of
the Revised TAC are factual allegations that must be assumed to
be true for purposes of a motion to dismiss. See Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (stating that, "for the purposes
of a motion to dismiss we must take all of the factual
allegations in the complaint as true" (citation omitted)).
Assuming those allegations to be true, Dr. Garrett intentionally
chose not to investigate Spriestersbach's assertions of
misidentification until January 2020. Further, she chose not to
investigate based on a belief that such statements by a person
with schizophrenia did not warrant investigation, i.e., she
disregarded the fact that a person with schizophrenia is able to
tell the truth, and she assumed that no person with
schizophrenia who asserted misidentification would be telling
the truth. Accord McGugan, 752 F.3d at 233-34 (holding that
Bolmer v. Oliveira, 594 F.3d 134 (2d Cir. 2010), should be
interpreted as holding that the plaintiff stated an ADA
discrimination claim because the plaintiff alleged "the
defendants discriminated against the plaintiff because they
assumed, on the basis of stereotypes, that no case worker would
have had a sexual relationship with a person suffering from bi-
polar disorder, so that the plaintiff's claim of such a

18

relationship must have been the result of erotomaniac
delusions").

The stereotype about schizophrenia that Dr. Garrett
allegedly relied upon is unrelated to or improper to the
consideration of the decision whether to investigate his
assertions of misidentification. See 45 C.F.R. § 84.56(b)(1)(i);
7/19/24 Order, 2024 WL 3488365, at *7. Further, because
Dr. Garrett relied on a stereotype, she failed to perform an
individualized assessment of the issue of whether
Spriestersbach's statements should have been acted upon, i.e.,
she made a categorical assumption that a person with
schizophrenia who asserts he is being wrongfully detained
because of misidentification cannot be believed and therefore no
action needed to be taken upon such statements. See Thompson,
295 F.3d at 898 n.4.

HSH argues that, in light of the rulings made by this
Court in the 11/18/24 Order, Spriestersbach will not be able to
prove the intentional discrimination necessary to establish his
ADA Title II claim against HSH. In essence, HSH argues this
Court should dismiss Spriestersbach's claim against HSH because
it is futile. HSH's argument is misplaced.

> Generally, district courts may not consider
> material outside the pleadings when assessing the
> sufficiency of a complaint under Rule 12(b)(6) of
> the Federal Rules of Civil Procedure. Lee v. City
> of Los Angeles, 250 F.3d 668, 688 (9th Cir.

> 2001). When "matters outside the pleading are
> presented to and not excluded by the court," the
> 12(b)(6) motion converts into a motion for
> summary judgment under Rule 56. Fed. R. Civ.
> P. 12(d). Then, both parties must have the
> opportunity "to present all the material that is
> pertinent to the motion." Id.

[Order Granting in Part and Denying in Part the PD Defendants'

Motion to Dismiss Plaintiff Joshua Spriestersbach's First

Amended Complaint Filed on October 18, 2023, filed 3/15/24 (dkt.

no. 351), at 8 (footnote omitted) (quoting Khoja v. Orexigen

Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018)).[9]] In

ruling on HSH's Motion, this Court cannot consider the evidence

that was presented in connection with Dr. Garrett's Motion for

Summary Judgment, unless this Court converts HSH's Motion into a

motion for summary judgment. This Court declines to do so and

has only considered the factual allegations in the Revised TAC,

which are assumed to be true for purposes of the instant Motion.

Viewing the Revised TAC under the motion to dismiss

standards, Spriestersbach has stated a plausible vicarious

liability claim against HSH under ADA Title II. See Iqbal, 556

U.S. 678 ("To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face. A claim has

---

[9] The March 15, 2024 order is also available at 723 F. Supp.
3d 955. The order noted that Lee has been overruled on other
grounds. See 723 F. Supp. 3d at 962 n.7.

facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." (citations and
internal quotation marks omitted)). HSH's Motion is therefore
denied. The denial of the Motion is without prejudice to HSH's
filing of a motion for summary judgment.

<u>**CONCLUSION**</u>

For the foregoing reasons, HSH's Motion to Dismiss
Third Amended Complaint, filed August 30, 2024, and
Dr. Garrett's joinder in the Motion, filed November 26, 2024,
are HEREBY DENIED. Because this Court has granted Spriestersbach
leave to file a fourth amended complaint, neither HSH nor any of
the other defendants are required to file answers to the Revised
TAC. Their answers to the fourth amended complaint will be due
in the normal course.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 20, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge

**JOSHUA SPRIESTERSBACH VS. STATE OF HAWAII, ET AL; CV 21-00456
LEK-RT; ORDER DENYING DEFENDANT HAWAII STATE HOSPITAL'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT AND DENYING
DEFENDANT ALLISON GARRETT, M.D.'S JOINDER IN THE MOTION**