UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JOSHUA SPRIESTERSBACH,<br><br>        Plaintiff,<br><br>  vs.<br><br>STATE OF HAWAII, CITY AND COUNTY OF HONOLULU, OFFICER ABRAHAM K. BRUHN, DEPARTMENT OF PUBLIC SAFETY, OFFICE OF THE PUBLIC DEFENDER, NIETZSCHE LYNN TOLAN, MICHELLE MURAOKA, LESLIE MALOIAN, JACQUELINE ESSER, JASON BAKER, MERLINDA GARMA, SETH PATEK, DR. JOHN COMPTON, DR. MELISSA VARGO, DR. SHARON TISZA, HAWAII STATE HOSPITAL, DR. ALLISON GARRETT, JOHN/JANE DOES 1-20,<br><br>        Defendants. | CIV. NO. 21-00456 LEK-RT |

**ORDER GRANTING DEFENDANT HAWAII STATE HOSPITAL'S
MOTION FOR SUMMARY JUDGMENT, [FILED 2/28/25 (DKT. NO. 608)]**

This civil action starts with the arrest and prosecution of Plaintiff Joshua Spriestersbach ("Spriestersbach") on May 11, 2017 based on a bench warrant for Thomas Castleberry ("Castleberry"), a completely different person. As a result, Spriestersbach was detained as Castleberry at the Oahu Community Correctional Center ("OCCC") and civilly committed at the Hawaii State Hospital ("HSH") from September 8, 2017 until January 17, 2020. Spriestersbach initially filed his lawsuit against several defendants on November 21, 2021, and the

operative pleading currently is his Second Revised Fourth
Amended Complaint ("Fourth Amended Complaint"), filed on
January 3, 2025. [Dkt. no. 595.] The sole claim against HSH in
the Fourth Amended Complaint is based upon vicarious liability
under Title II of the Americans with Disabilities Act ("ADA"),
Title 42 United States Code Section 12101, *et seq.*
("Count III"). [Id. at ¶¶ 166-71.] HSH seeks summary judgment on
this claim. [HSH's Motion for Summary Judgment, filed 2/28/25
(dkt. no. 608) ("Motion").] As follows, summary judgment is
appropriate and granted.

## BACKGROUND

The factual background of the litigation is familiar
to the parties and does not bear repeating here, except as
salient to the motion for summary judgment. Count III alleges
Spriestersbach is a person with a disability for purposes of the
ADA, [Fourth Amended Complaint at ¶ 167 (citing 42 U.S.C.
§ 12102),] and HSH is a public entity for purposes of the ADA,
[id. at ¶ 170 (citing 42 U.S.C. § 12131)].[1] Spriestersbach

---

[1] HSH admits that Spriestersbach suffers from a disability
and that it is a public entity. See HSH's Answer to Fourth
Amended Complaint, filed 1/13/25 (dkt. no. 600) ("HSH Answer"),
at Second Defense, ¶¶ h, i. In connection with the instant
Motion, HSH admits Spriestersbach has schizophrenia. See
Plaintiff's Concise Statement of Facts in Support of His
Opposition to Defendant HSH's Motion for Summary Judgment, filed
                                            (. . . continued)

alleges HSH is vicariously liable for the discriminatory acts committed by Defendant Allison Garrett, M.D. ("Dr. Garrett"), an HSH employee. See id. Spriestersbach argues Dr. Garrett discriminated against him based on his disability because Dr. Garrett would have taken similar statements of innocence seriously if the statements had been made by a person with a different mental disability. [Id. at ¶ 168.] Spriestersbach alleges Dr. Garrett was deliberately indifferent when she failed to investigate his claims of misidentification because she recklessly disregarded a substantial risk that Spriestersbach was being wrongfully detained based on a mistaken identification, resulting in his detention at HSH for almost three years. [Id. at ¶ 169.] HSH does not deny Dr. Garrett was an employee of HSH as a psychiatric physician and acted in that capacity at all relevant times in this matter. See HSH Answer at Second Defense, ¶ d (admitting Dr. Garrett was employed as a doctor at HSH); HSH Reply CSOF at ¶ 5 (admitting Dr. Garrett was the leader of the team treating Spriestersbach).

---

3/28/25 (dkt. no. 613) ("Spriestersbach Opp. CSOF"), at ¶ 1; HSH's Response to Plaintiff's Concise Statement of Facts in Support of His Opposition to Defendant HSH's Motion for Summary Judgment, filed 4/4/25 (dkt. no. 616) ("HSH Reply CSOF"), at ¶ 1 (admitting that portion of Spriestersbach's ¶ 1).

Spriestersbach was identified and arrested as
Castleberry on a bench warrant for a violation of Castleberry's
probation associated with a 2006 criminal case. See
Spriestersbach Opp. CSOF, Declaration of John Washington
("Washington Decl."), Exh. 7 at PageID.14277 (page 3 of Paul S.
Appelbaum, M.D.'s report dated 2/12/24 ("Appelbaum Report"));
id., Exh. 9 at PageID.14298 (Bench Warrant issued on 12/18/07
for Castleberry ("Castleberry Warrant")). The original charges
against Castleberry were unauthorized control of a propelled
vehicle, promoting a dangerous drug in the third degree, and
unlawful use of drug paraphernalia, based on conduct that
resulted in an arrest on June 30, 2006. See id., Exh. 9
(Castleberry Warrant and Honolulu Police Department ("HPD")
report for the 6/30/06 arrest ("Castleberry Police Report")).
Following his arrest on a bench warrant for Castleberry,
Spriestersbach appeared in state court for a hearing on June 14,
2017, where his counsel requested a competency evaluation. See
PD Defendants' Concise Statement of Material Facts,[2] filed
5/28/24 (dkt. no. 456), Declaration of Nietzsche Lynn Tolan at
¶¶ 29, 53.

---

[2] "PD Defendants" and "OPD Defendants" refer collectively to
Defendants Office of the Public Defender ("OPD"), Nietzsche Lynn
Tolan, Michele Muraoka, Lesley Maloian, Jason Baker, and Seth
Patek.

Following their evaluation, the three-panel of
examiners issued letters dated August 30, 2017 and August 31,
2017 opining that Spriestersbach, who was misidentified as
Castleberry, should be civilly committed. See Washington Decl.,
Exh. 12 at PageID.14315-21 (letter dated 8/30/17 to the state
court from Melissa Vargo, Psy.D.); id. at PageID.14322-26
(letter dated 8/31/17 to the state court from Sharon M. Tisza,
M.D., F.A.P.A.).[3] Dr. Tisza's letter includes a summary of the
incident on June 30, 2006 and of the court proceedings in 2007
involving Castleberry, as well as Spriestersbach's statements
that he was on Hawaiʻi Island or in California in 2006. [Id. at
PageID.14323.] As a result, the court ordered Spriestersbach
admitted to HSH (under the name of Castleberry) on September 8,
2017, and he was placed in Dr. Garrett's unit on October 6,
2017. See Washington Decl., Exh. 4 at PageID.14114 (page 1 of
Discharge Summary signed by Dr. Garrett on 1/29/20 ("Discharge
Summary")).

During his hospitalization at HSH, he identifies
himself as "Spriestersbach" but also alludes to being referred
to as "Castleberry". See Washington Decl., Exh. 4 at

---

[3] Melissa Vargo, Psy.D., Sharon M. Tisza, M.D., F.A.P.A.,
and John M. Compton, Ph.D., are referred to collectively as "the
Panel Examiners."

PageID.14138 (Master Recovery Plan and Review, dated 12/4/19, reproducing a 10/9/17 comment that: "Mr. Castleberry attended this meeting. Upon inquiry, he reported he prefers to be called Joshua. . . . He said that 'Castleberry' is a name the police used with him." (alteration in original)); id. at PageID.14158 (handwritten progress note dated 5/1/19 with similar statement); id. at PageID.14204 (Master Recovery Plan and Review, dated 10/9/17, with similar statement); id. at PageID.14210 (progress note dated 9/8/17 stating "Pt claimed his name was 'Joshua Spriestersbach' when pt questioned about the name on his legal papers he stated, 'the officer guessed my name.'"); id. at PageID.14214 (HSH Mental Illness/Substance Abuse (MISA) First Impression Screening dated 9/13/17 stating: "Mr. Castleberry stated about his name: 'that a [sic] nick name that they gave me' and it has stuck ever since . . . my name is Joshua." (ellipsis in original)); id. at PageID.14221 (Nursing Admission Assessment dated 10/6/17 stating "Pt reports his name is 'Joshua Spriestersbach'").

By February 18, 2018, the HSH treatment team possessed the birth certificate, Social Security Number, and state identification card in Spriesterbach's name. See Spriestersbach Opp. CSOF at ¶ 31; Reply CSOF at ¶ 31 (admitting Spriestersbach's ¶ 31). Dr. Daniel Chidpungtam, who was the

psychiatrist covering for Dr. Garrett and treating
Spriestersbach from May 3 to 18, 2018, stated in a progress note
on May 18, 2018 that Spriestersbach had been treated at Hilo
Medical Center in 2005 and 2007, and in California in 1999,
2002, and 2003. See Emails from Dr. Garrett's counsel
transmitting exhibits, filed 7/8/24 (dkt. no. 501)
("Dr. Garrett's Exhibits (dkt. no. 501)"), Exh. A (excerpts of
trans. of 1/18/24 videoconference depo. of Dr. Garrett ("Garrett
Depo.")) at 31, 33; id. at PageID.9883-84 (Progress Notes dated
5/18/18, signed by Dr. Chidpungtam). This note also stated that
Spriestersbach had been previously prescribed lithium. See id.
at PageID.9884. Dr. Garrett, upon reading this note, requested
Spriestersbach's medical records and, during the week of
June 29, 2018, she received partial records and was informed
that additional records would be sent. See Washington Decl.,
Exh. 1 (Garrett Depo.) at 110-11; id., Exh. 4 at PageID.14169
(Dr. Garrett's Weekly Psychiatric Progress Note dated 6/29/18).
Dr. Garrett received and reviewed Spriestersbach's medical
records from Puna Health Clinic during the week of July 6, 2018,
and these records confirmed Spriestersbach had been medicated
with lithium. See Washington Decl., Exh. 1 (Garrett Depo.) at
111, 188; id. at PageID.9810 (Dr. Garrett's Weekly Psychiatric
Progress Note dated 7/6/18).

On August 12, 2019, HSH changes its Avatar system to
reflect the patient's name as "Joshua Charles Spriestersbach"
instead of "William Castleberry."[4] See Washington Decl., Exh. 5
at PageID.14245 (email dated 8/12/19 from Stacie K. Hara, HSH
Quality Management Services, to Dr. Garrett and others).
Subsequently, the Addressograph in HSH records referred to him
as Thomas R. Castleberry, also known as William C. Castleberry,
also known Joshua Spriestersbach. See, e.g., id., Exh. 4 at
PageID.14118-32 (Master Recovery Plan and Review dated 1/2/20).

Spriestersbach gave his consent during the week of
January 3, 2020 for the release of his medical information from
a facility in Angwin, California, where he believed he was
hospitalized in 2006. During that week, he reported that he was
hospitalized in Kona in 2006. See Dr. Garrett's Exhibits (dkt.
no. 501), Exh. A (Garrett Depo.) at PageID.9846 (Dr. Garrett's
Weekly Psychiatric Progress Note dated 1/3/20). Dr. Garrett
contacted the Angwin facility and learned that Spriestersbach
was hospitalized there in 2003. [Id. at 226-27.] During the week

---

[4] Spriestersbach started using the name Castleberry in 2009
"as an actor," and he used the first names Wolfgang and William
as an actor. [Concise Statement in Support of Defendant Allison
Garrett, M.D.'s Motion for Summary Judgment, filed 5/29/24 (dkt.
no. 460), Declaration of Counsel, Exh. O (excerpts of trans. of
12/4/23 Videotaped Deposition of Joshua Spriestersbach, vol. I,
and 12/5/23 Videotaped Deposition of Joshua Spriestersbach,
vol. II) at 19-20.]

of January 10, 2020, Dr. Garrett discusses the hospitalization
in Angwin with Spriestersbach, and he tells her that he was
receiving treatment in Puna on Hawaiʻi Island and was not on
Oʻahu at the time Castleberry committed his original offenses.
She then reviews the panel examiners' letters and the Puna
Health Clinic records and determines that Spriestersbach could
not have been physically located on Oʻahu on the dates of
Castleberry's original offenses, and thus Spriestersbach was not
the person who committed the probation violation for which he
was arrested and subsequently committed to HSH. See
Dr. Garrett's Exhibits (dkt. no. 501), Exh. A (Garrett Depo.) at
PageID.9847 (Dr. Garrett's Weekly Psychiatric Progress Note
dated 1/10/20).

On January 21, 2020, Spriestersbach is discharged from
HSH and released from custody. See Washington Decl., Exh. 4 at
PageID.14114-15 (pages 1-2 of Discharge Summary).

**STANDARD**

I.    **Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides for
summary judgment when "there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter
of law." The moving party bears the initial burden of
demonstrating the absence of a genuine issue of material fact

9

for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
256 (1986). A fact is material if it could affect the outcome of
the suit under the governing substantive law. Id. at 248. The
burden then shifts to the nonmoving party to establish, beyond
the pleadings, that there is a genuine issue for trial. Celotex
Corp. v. Catrett, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ.
P. 56(e)).[5] When considering a motion for summary judgment, the
record must be viewed in the light most favorable to the
nonmoving party. Harris v. Cnty. of Orange, 17 F.4th 849, 855
(9th Cir. 2021).

## II.  **Title II ADA Claim**

"Title II of the ADA prohibits public entities from
discriminating on the basis of disability." Payan v. Los Angeles
Cmty. Coll. Dist., 11 F.4th 729, 737 (9th Cir. 2021) (citing 42
U.S.C. § 12132). In order to prevail on his ADA Title II claim

---

[5] At the time of the 1986 Celotex decision, Rule 56(e)
stated, in pertinent part:

> The judgment sought shall be rendered forthwith
> if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together
> with the affidavits, if any, show that there is
> no genuine issue as to any material fact and that
> the moving party is entitled to a judgment as a
> matter of law. . . .

Celotex, 477 U.S. at 322 n.4 (quoting Rule 56(e)). Similar
language is contained in the current Rule 56(a) and Rule 56(c).

against HSH at trial, Spriestersbach will be required to prove that "(1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of [his] disability." See Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002) (citing omitted).

It is undisputed that HSH is a public entity for purposes of the ADA and that Spriestersbach has schizophrenia. See supra Background Section at n.1. There are no disputes of fact, and this Court concludes, as a matter of law, that Spriestersbach has a disability for purposes of the ADA. See 42 U.S.C. § 12102(1) ("The term "disability" means, with respect to an individual — (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)).").

Because Spriestersbach seeks monetary damages as to each of his claims in this case, see Fourth Amended Complaint at pg. 51, ¶ A, to ultimately prevail on his ADA Title II discrimination claim, he is required to prove intentional discrimination in the exclusion from or denial of HSH's

11

services. See Updike v. Multnomah Cnty., 870 F.3d 939, 950 (9th
Cir. 2017). "To show intentional discrimination, this circuit
requires that the plaintiff show that a defendant acted with
'deliberate indifference,' which requires both knowledge that a
harm to a federally protected right is substantially likely, and
a failure to act upon that likelihood." Id. at 950-51
(alteration, citation, and internal quotation marks omitted);
see also Order Granting in Part and Denying in Part the State
Defendant's Motion to Dismiss or in the Alternative for Judgment
on the Pleadings, filed 7/19/24 (dkt. no. 518), at 21.[6]

## DISCUSSION

To plead a plausible ADA Title II claim against HSH
based on vicarious liability, Spriestersbach must state
"plausible factual allegations that, if proven, would support a
finding that Dr. Garrett intentionally discriminated against him
by making the treatment decision to continue to hospitalize him
for reasons unrelated to his schizophrenia and mental health
disability." Id., 2024 WL 3488365, at *8. This Court has found
that there is no controlling Ninth Circuit law as to an ADA
Title II claim in this context and therefore the reasoning set
forth by the Second Circuit was adopted, which noted that an ADA

---

[6] The Order is also available at 2024 WL 3488365.

Title II claim does not federalize medical malpractice but
requires intentional discrimination. Id. *6-7 (discussing
McGugan v. Aldana-Bernier, 752 F.3d 224, 233-34 (2d Cir. 2014)).
In considering the instant Motion, the Court finds the analysis
for a claim of deliberate indifference to serious medical needs
asserted by a pretrial detainee analogous to Spriestersbach's
ADA Title II claim in the medical treatment context.

A claim for deliberate indifference to serious medical
needs (in this case, Spriestersbach's schizophrenia and mental
health disability) by a pretrial detainee,[7] is analyzed under an
objective standard:

> [W]e hold that claims for violations of the right
> to adequate medical care "brought by pretrial
> detainees against individual defendants under the
> Fourteenth Amendment" must be evaluated under an
> objective deliberate indifference standard.
> Castro [v. Cnty. of Los Angeles], 833 F.3d
> [1060,] 1070 [(9th Cir. 2016) (en banc)]. Based
> thereon, the elements of a pretrial detainee's
> medical care claim against an individual
> defendant under the due process clause of the
> Fourteenth Amendment are: (i) the defendant made
> an intentional decision with respect to the
> conditions under which the plaintiff was
> confined; (ii) those conditions put the plaintiff
> at substantial risk of suffering serious harm;
> (iii) the defendant did not take reasonable
> available measures to abate that risk, even
> though a reasonable official in the circumstances
> would have appreciated the high degree of risk

---

[7] Spriestersbach was in a position similar to that of a
pretrial detainee because he was charged with a probation
violation allegedly committed by Castleberry.

> involved — making the consequences of the
> defendant's conduct obvious; and (iv) by not
> taking such measures, the defendant caused the
> plaintiff's injuries. "With respect to the third
> element, the defendant's conduct must be
> objectively unreasonable, a test that will
> necessarily 'turn[] on the facts and
> circumstances of each particular case.'" <u>Id.</u> at
> 1071. (quoting <u>Kingsley [v. Hendrickson]</u>, 135 S.
> Ct. [2466,] 2473 [(2015)]; <u>Graham v. Connor</u>, 490
> U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443
> (1989)). The "'mere lack of due care by a state
> official' does not deprive an individual of life,
> liberty, or property under the Fourteenth
> Amendment." <u>Id.</u> (quoting <u>Daniels [v. Williams]</u>,
> 474 U.S. [327,] 330-31, 106 S. Ct. 662 [(1986)]).
> Thus, the plaintiff must "prove more than
> negligence but less than subjective intent —
> something akin to reckless disregard." <u>Id.</u>

<u>Gordon v. Cnty. of Orange</u>, 888 F.3d 1118, 1124-25 (9th Cir.
2018) (some alterations in <u>Gordon</u>) (footnote omitted). It is in
this context that the Court considers HSH's motion for summary
judgment – that is, the third element of whether there is a
genuine issue of material fact as to whether Dr. Garrett acted
with more than negligence but less than subjective intent and
something akin to reckless disregard because of Spriestersbach's
disability. Specifically, whether the lengthy delay in releasing
Spriestersbach despite his protestations that he was not
Castleberry and did not commit the probation violation for which
he was being held amounted to deliberate indifference.

I. __Identification as Joshua Spriestersbach__

By November 11, 2017, approximately two months after
Spriestersbach's civil commitment, Dr. Garrett was aware that
the patient who was committed under the name "Thomas
Castleberry" was named "Joshua Spriestersbach". See
Spriestersbach Opp. CSOF at ¶ 32; Reply CSOF at ¶ 32. By
February 2018, approximately five months after Spriestersbach's
civil commitment, Spriestersbach had obtained identity
documents, including a birth certificate and state
identification, stating that he was Joshua Spriestersbach.
Dr. Garrett admits to seeing the birth certificate and state
identification. See Spriestersbach Opp. CSOF at ¶ 31; Reply CSOF
at ¶ 31. In August 2019, approximately eleven months after
Spriestersbach's civil commitment, HSH's Avatar systems was
changed to reflect that the patient previously admitted as
"William Castleberry" was now identified as "Joshua Charles
Spriestersbach." See Washington Decl., Exh. 5 at PageID.14245
(8/12/19 email from Stacie K. Hara to Dr. Garrett and others).
Thus, as of February 2018, Dr. Garrett was aware that the person
charged with a probation violation as "Thomas Castleberry" had
the birth name and state identification record of "Joshua
Charles Spriestersbach." By an objective standard and looking at
the evidence in the light most favorable to Spriestersbach,

15

Dr. Garrett's knowledge of Spriestersbach's identity alone does not establish reckless disregard of Spriestersbach's statements that he did not commit the probation violation for which he was being detained. His identification documents do not establish that he did not commit the probation violation for which he was being detained and therefore did not oblige Dr. Garrett to seek his release from civil commitment. Thus, evaluating the evidence in the light most favorable to the non-moving party, her failure to do so can, at best, be cast as negligence and fails to meet the standard of intentional discrimination based on his disability.

## II.  Substance Abuse Diagnosis and Failure to Obtain Police Report

Dr. Garrett was the leader of the team responsible for Spriestersbach's treatment at HSH. See Spriestersbach Opp. CSOF at ¶ 5; Reply CSOF at ¶ 5. Her duties included assessing Spriestersbach's fitness to proceed in Castleberry's criminal case and restoring Spriestersbach to competency. See Spriestersbach Opp. CSOF at ¶ 4; Reply CSOF at ¶ 4 (admitting that portion of Spriestersbach's ¶ 4). To do so, Dr. Garrett reviewed Spriestersbach's prior HSH records and the Panel Examiners' reports. See Spriestersbach Opp. CSOF at ¶¶ 7-8; Reply CSOF at ¶¶ 7-8. The assessment included assessing his mental health needs to develop his treatment plan. See

16

Spriestersbach Opp. CSOF at ¶ 9; Reply CSOF at ¶ 9. HSH records
described Spriestersbach as having a "history of cocaine use
disorder." See Washington Decl., Exh. 4 at PageID.14134
(Dr. Garrett's Weekly Psychiatric Progress Note, dated 12/6/19).
Spriestersbach argues the substance abuse diagnosis was based on
the 2006 charges in Castleberry's criminal case. [Spriestersbach
Opp. CSOF at ¶ 20.]

        During his commitment at HSH, Spriestersbach denied
drug use. See, e.g., Washington Decl., Exh. 4 at PageID.14218
(page 1 of Psychological Admission Assessment, by Frank
Bartolone, Psy.D., dated 9/12/17); id. at PageID.14180 (page 6
of Master Recovery Plan and Review, dated 1/10/18).

        Dr. Garrett wrote to the state court about the
defendant in Castleberry's criminal case on several occasions,
and she had access to a forensic coordinator. See Spriestersbach
Opp. CSOF at ¶ 11; Reply CSOF at ¶ 11 (admitting those portions
of Spriestersbach's ¶ 11). Dr. Garrett's letters to the state
court do not mention Spriestersbach denying his identity as
Castleberry. See Washington Decl., Exh. 5 at PageID.14247,
PageID.14252, PageID.14253, PageID.14255.

        Spriestersbach contends that Dr. Garrett was required
by HSH policy to request the police report of Castleberry's
original criminal offense; that if she had obtained the report,

17

the photograph of Castleberry in the police report would have confirmed that Spriestersbach was not the person accused of the probation violation; and that the police report would have required Dr. Garrett to seek his release from confinement at HSH. Her failure to obtain the police report was because of her deliberate discrimination based on his disability. Simply put, because of his mental illness, he contends, Dr. Garrett ignored his protestations that he was not Castleberry and refused to investigate his statements by obtaining the police report. He cites the following HSH policy as support that Dr. Garrett was required to obtain the police report of Castleberry's original offense:

> **POLICY:**
>
> Hawaii State Hospital (HSH) seeks to obtain a complete criminal history on patients in order to perform adequate risk assessment, as well as inform risk management and risk reduction treatment. Treatment teams need access to criminal history information on their patients; however, it is necessary to prevent unauthorized access to protect third party information.
>
> HRS 704-404(9) states:
>
> *If, pursuant to this section, the court orders the defendant committed to a hospital or other suitable facility under the control of the director of health and the defendant copies of all police reports from cases filed against the defendant that have been adjudicated by the acceptance of a plea of guilty or no contest, a finding of guilt, acquittal, acquittal pursuant to section 704-400, or by the entry of plea of*

18

> *guilty or no contest made pursuant to
> chapter 853 . . . .*
>
> . . . .
>
> **RESPONSIBILITY STATEMENT:**
>
> • Forensic Services or designee is responsible
>   for obtaining Hawaii Rap Sheets/National
>   Crime Information Center (NCIC) Reports and
>   responding to treatment teams' requests for
>   police reports.
>
> • Medical Records is responsible for storing
>   and securing police reports and maintaining
>   a list of available police/arrest reports.
>   The list of police reports is made available
>   upon request.
>
> . . . .
>
> **PROCEDURE:**
>
> . . . .
>
> **B.    Police and Arrest Report:**
>
>   1.    HSH treatment teams may request police
>         reports on criminal court committed
>         patients through Forensic Services or
>         designee for adjudicated
>         offenses. . . .

[Id., Exh. 14 (HSH's Response to Plaintiff's Second Set of

Requests for Production to Defendant Hawaii State Hospital) at

PageID.14353-54 (pages 1-2 of HSH Policy and Procedure

Number: 04.004 regarding Access and Storage of Criminal History

Information, effective 4/12/07).]

        Spriestersbach argues that the HSH policy about

requesting criminal records and Dr. Garrett's responsibility to

19

restore his ability to participate in the legal proceedings
against him obligated Dr. Garrett to obtain relevant criminal
records. These records would have included a photograph of
Thomas Castleberry that could have been compared to
Spriestersbach and would thus would have shown that
Spriestersbach was mistakenly arrested as Thomas Castleberry.
[Mem. in Opp. at 3.] For example, the Follow-Up report for the
June 30, 2006 arrest includes an HPD Photographic Report with
photographs of Thomas Castleberry. See Spriestersbach's Concise
Statement of Facts in Support Plaintiff's Opposition to OPD
Defendants' Motion for Summary Judgment, filed 7/17/24 (dkt.
no. 513), Exh. 8 at PageID.11427-28. In the Castleberry Police
Report, Thomas Castleberry is described as 6'4" in height and
weighing 235 pounds, with brown hair and green eyes. [Washington
Decl., Exh. 9 at PageID.14299.] Spriestersbach's state
identification card, issued in 2018, states that Spriestersbach
is 5'7" and 184 pounds, with brown eyes. See id., Exh. 10 at
PageID.14303 (copy of Spriestersbach's state identification
card). By comparing the police report's photograph of
Castleberry and Spriestersbach's state identification card, Dr.
Garrett would have discovered that Castleberry was a completely
different person from Spriestersbach and not merely an alias
identity. Therefore, Dr. Garrett's failure to obtain the police

20

report and to do the comparison, Spriestersbach argues, was
because of intentional discrimination based on his disability.
Not so.

First, Dr. Garrett's treatment plan for substance
abuse despite any clinical evidence or medical history that
Spriestersbach abused substances may well be evidence of
negligent treatment but fails to raise an issue that Dr. Garrett
was presented with facts that would question whether
Spriestersbach could have committed the probation violation for
which he was criminally charged and civilly committed. Second,
the HSH policy relating to requests for police reports points to
Dr. Garrett's discretionary ability to request such reports.
Spriestersbach fails to raise a material issue of fact as to
what facts were presented to Dr. Garrett that would trigger a
responsibility to exercise such discretion and seek the police
report.

Under an objective standard and looking at the
evidence in the light most favorable to Spriestersbach,
Dr. Garrett's plan of substance abuse assessment despite
Spriestersbach's lack of substance abuse history in his prior
HSH records and Dr. Garrett's failure to request the police
report for Castleberry's criminal case do not establish reckless
disregard of Spriesterbach's statements that he did not commit

21

the probation violation for which he was being detained. When
the evidence is evaluated in the light most favorable to the
non-moving party, the treatment plan for substance abuse and the
failure to exercise her discretion under HSH policy to request
police records do not suggest that Spriestersbach could not have
committed the probation violation for which he was arrested.
These failures, at best, may possibly constitute negligence but
fail to marshal forth an issue of material fact that Dr. Garret
intentionally discriminated against Spriestersbach based on his
disability by assigning a treatment plan for substance abuse and
by failing to seek the police report for Castleberry's criminal
case.

III. **Puna Health Clinic and Angwin Hospital Records**

The Discharge Summary states:

At his treatment team meeting on 1-2-20 when
reviewing fitness concepts and the outcome his
[sic] previous court hearing he reported that he
was not Thomas Castleberry and therefor he did
not have his probation. He reported that he
didn't know why there were drug charges
associated with him as he never used drugs and
while he knew something about an issue with a
car, he'd never had issues with a truck. He then
reported that he wasn't even living on Oahu in
2006 so it couldn't be him in regards to the
charges. **While he had denied being Thomas
Castleberry before and had denied having
probation, this was the first time he actually
denied that the charges had anything to do with
him and provided information that he wasn't on
Oahu at the time of the original charge.** He
reported being hospitalized in California at that

22

time. He provided consent to obtain information
from the hospital in question in Angwin
California. This writer was able to locate
Crestwood Behavioral Health in Angwin, California
and while they destroyed full records after
7 years, they did have an admission documented
for the patient in 2003 but no admission in
2006. . . .

[Washington Decl., Exh. 4 at PageID.14116 (page 3 of Discharge
Summary) (emphasis added).] Spriestersbach argues the statement
in bold above is false. See Spriestersbach Opp. CSOF at ¶ 39.
During her deposition, Dr. Garrett explained the reason that
prompted her to investigate Spriestersbach's statements in 2020:

He directly told me those things. He gave me the
name of a place that I had -- I could look at. He
had also had improvement in his reports. So
things were more coherent.

So it was directly telling me. It was also a
shift in his story that didn't sound like what he
had said before. So there were multiple reasons,
at that point, in 2020, that things were
different, and that I looked into what he is
telling me at that point in time.

[Washington Decl., Exh. 1 (Garrett Depo.) at 282.]

Spriestersbach argues the Motion must be denied
because there are genuine issues of material fact, and a
reasonable jury could find in his favor as to his ADA claim
against HSH. See Mem. in Opp. at 9-20. However, he fails to
raise any conflicting material fact and, instead, falls upon a
general denial that Dr. Garrett's testimony is false or

23

mistaken. What Spriestersbach must demonstrate to defeat the

instant Motion is to raise specific affirmative facts.

> The movant has the burden of showing that there
> is no genuine issue of fact, but the plaintiff is
> not thereby relieved of his own burden of
> producing in turn evidence that would support a
> jury verdict. Rule 56(e) itself provides that a
> party opposing a properly supported motion for
> summary judgment may not rest upon mere
> allegation or denials of his pleading, but must
> set forth specific facts showing that there is a
> genuine issue for trial. Based on that Rule,
> [First National Bank of Arizona v.] Cities
> Service [Co.], 391 U.S.[ 253,] 290 [(1968)], held
> that the plaintiff could not defeat the properly
> supported summary judgment motion of a defendant
> charged with a conspiracy without offering "any
> significant probative evidence tending to support
> the complaint." As we have recently said,
> "discredited testimony is not [normally]
> considered a sufficient basis for drawing a
> contrary conclusion." Bose Corp. v. Consumers
> Union of United States, Inc., 466 U.S. 485, 512
> (1984). Instead, the plaintiff must present
> affirmative evidence in order to defeat a
> properly supported motion for summary judgment.
> This is true even where the evidence is likely to
> be within the possession of the defendant, as
> long as the plaintiff has had a full opportunity
> to conduct discovery. We repeat, however, that
> the plaintiff, to survive the defendant's motion,
> need only present evidence from which a jury
> might return a verdict in his favor. If he does
> so, there is a genuine issue of fact that
> requires a trial.

Anderson, 477 U.S. at 257 (some alterations in Anderson); see

also supra note 5 (discussing version of Rule 56(e) in effect in

1986). An issue of fact is a genuine issue if it reasonably can

be resolved in favor of either party. Anderson, 477 U.S. at 251-

52. "Thus, mere disagreement or the bald assertion that a genuine issue of material fact exists no longer precludes the use of summary judgment." Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989) (citing California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied* 484 U.S. 1006, 108 S. Ct. 698, 98 L. Ed. 2d 650 (1988)).

HSH, as the moving party, has the burden of demonstrating the absence of a genuine issue of fact for trial and, if it satisfies this burden, then Spriestersbach must set forth specific facts showing that there remains a genuine issue for trial. See Fed. R. Civ. P. 56(c)(1). HSH has offered evidence that when Spreistersbach became more coherent and told Dr. Garrett that he could not have committed the underlying offenses because he was hospitalized and not on Oʻahu in 2006, and gave his consent to obtain the medical records from the facility in Angwin, California. Dr. Garrett then had new information and investigated whether Spreistersbach was in fact physically on Oʻahu at the time of the underlying offenses for which Castleberry was convicted. Dr. Garrett reviewed these records together with those from the Puna Health Clinic (which she initially reviewed in 2018). She concluded Spriestersbach was not physically on Oʻahu and therefore could not have

committed the underlying offenses that Castleberry was convicted

of. Shortly thereafter, on January 21, 2020, she had

Spriestersbach discharged.

Thus, it is incumbent upon Spriestersbach to make a

sufficient showing of evidence that Dr. Garrett was told or

given facts **before** January 2020 that Spriestersbach was not on

Oʻahu at the time Castleberry committed the underlying offenses

that led to the probation violation for which Spriestersbach was

arrested and subsequently civilly committed; that she failed or

refused to investigate whether Spriestersbach was on Oʻahu and

thus could not have committed the underlying offenses; and that

her failure or refusal to investigate was because she

intentionally discriminated against him by making the treatment

decision to continue to hospitalize him for reasons unrelated to

his schizophrenia and mental health disability. He, however,

does not make any showing but simply refutes HSH's showing with

a general denial that Dr. Garrett's discharge summary in HSH's

records contains a lie. This is insufficient to establish a

genuine, triable issue of material fact and HSH is entitled to

summary judgment on the claim. See Celotex, 477 U.S. at 324.

### CONCLUSION

For the reasons stated, Defendant Hawaii State

Hospital's Motion for Summary Judgment, [filed 2/28/25 (dkt.

26

no. 608),] is GRANTED as to Count III of the Second Revised
Fourth Amended Complaint, [filed 1/3/25 (dkt. no. 595),].

There being no remaining claims against HSH, the
Clerk's Office is DIRECTED to terminate HSH as a party on
**September 17, 2025.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 2, 2025.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

JOSHUA SPRIESTERSBACH VS. STATE OF HAWAII, ET AL; CV 21-00456
LEK-RT; ORDER GRANTING DEFENDANT HAWAII STATE HOSPITAL'S MOTION
FOR SUMMARY JUDGMENT, [FILED 2/28/25 (DKT. NO. 608)]